**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>Plaintiff,<br><br>v.<br><br>Central Coast Agriculture Incorporated,<br><br>Defendant. | No. CV-19-05216-PHX-MTL<br><br>**ORDER** |

This matter is before the Court on Defendant Center Coast Agriculture Incorporated's ("CCA") Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Transfer Venue. (Doc. 14.) For the reasons set forth below, Defendant's Motion is denied.[1]

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, BBK Tobacco & Foods LLP, d/b/a HBI International ("BBK"), is an Arizona limited liability partnership with its principal place of business in Arizona. (Doc. 1 at 2.) BBK manufactures, distributes, and sells smoking-related products bearing its trademarked "RAW" branding. (Doc. 16 at 3.) These products include cigarette rolling papers, filters, electronic vaporizers, and other branded merchandise like lanyards and ashtrays. (*Id.* at 4.) BBK maintains multiple internet domains, titled with the RAW

---

[1] Defendant requested oral argument. (Doc. 14 at 1.) After reviewing the pleadings, however, the Court has determined that oral argument would not have aided the Court's decisional process. *See* LRCiv 7.2(f).

designation,[2] through which it has sold products within the United States since approximately 2009. (*Id.*)

Defendant CCA is a Delaware corporation with its principal place of business in Buellton, California. (Doc. 14-1 at 3.) Although CCA primarily manufactures and sells cannabis products exclusively in California, it also sells promotional merchandise nationwide. (Doc. 14 at 6, 8.) CCA utilizes the designation "Raw Garden" on *both* its cannabis and promotional products. (Doc. 14 at 8.) CCA maintains a website – http://rawgarden.farm (the "informational website") – from which it disseminates information about its cannabis products. (*Id.*) The informational website provides users with a link, labeled "Merch," which, if clicked on, transports users to a different website – http://rawgarden.co (the "merchandise website"). (*Id.*) The merchandise website allows individuals to purchase promotional products bearing the "Raw Garden" branding. (Doc. 16 at 5.) These products include lanyards, electric vaporizer batteries, shirts, hats, stickers and buttons. (*Id.*)

On September 18, 2019, BBK filed a complaint alleging trademark infringement, cybersquatting, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); as well as claims of trademark infringement and unfair competition under Arizona common law. (Doc. 1.) In response, CCA filed its Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue or, in the alternative, Transfer Venue. (Doc. 14.)

## II.   LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move, "prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that an exercise of jurisdiction is proper. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).

---

[2] BBK's online presence includes the following RAW domain names: www.rawthentic.com, www.rawvapor.com, www.rawsmoke.com, and www.rawfoundation.com. (Doc. 16 at 4.)

However, "in the absence of an evidentiary hearing," a plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal citation omitted). When examining whether there is a prima facie showing of jurisdictional facts, any "uncontroverted allegations in [the complaint] must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (internal quotation marks and citations omitted); *see also Sher*, 911 F.2d at 1361 (treating plaintiff's allegations as true).

## III.  DISCUSSION

As a general matter, if a relevant federal statute does not provide for personal jurisdiction, a "district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). Here, Arizona's long-arm statute is coextensive with the requirements of federal due process. Ariz. R. Civ. P. 4.2(a);[3] *see also A. Uberti and C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (discussing the intention behind Arizona's long-arm statute). Consequently, the analyses of personal jurisdiction under Arizona law and federal due process are the same. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). For an exercise of personal jurisdiction to comport with federal due process, the non-resident defendant must have certain "minimum contacts" with the forum state such that an exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general (based on a forum connection unrelated to the underlying suit) or specific (based on an affiliation between the forum and the underlying controversy). *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (*citing Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)). BBK relies on specific jurisdiction only.

---

[3] Specifically, Arizona's long-arm statute states that a court "may exercise personal jurisdiction over a person, whether found within or outside Arizona, to the maximum extent permitted by the Arizona Constitution and the United States Constitution."

### A. Specific Jurisdiction

The Ninth Circuit employs a three-prong test to assess whether a defendant has sufficient minimum contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot*, 780 F.3d at 1211 (*citing Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). The burden initially falls on the plaintiff to show the first two prongs but subsequently shifts to the defendant to show the third. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

### 1. Purposeful Direction

The first required element of specific jurisdiction, "purposeful direction,"[4] is measured using the "effects" test put forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The effects test requires the defendant to "have (1) committed an intentional

---

[4] Although "purposeful availment" is often used as shorthand to mean both purposeful availment and purposeful direction, it is important to understand them as distinct concepts requiring distinct tests. *Schwarzenegger*, 374 F.3d at 802. The precise analysis depends on the type of claim brought – "for claims sounding in tort, [the Court] appl[ies] a purposeful direction test and look[s] to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot*, 780 F.3d at 1212. Because the claims brought by BBK in its complaint (Doc. 1) are tort-like, the Court applies the purposeful direction test. *See e.g.*, *Mavrix Photo*, 647 F.3d at 1228 (holding copyright infringement to be a "tort-like cause of action," and subsequently applying purposeful direction test); *Best W. Int'l Inc. v. I-70 Hotel Corp.*, 11-CV-1281-PHX-FJM, 2012 WL 2952363, at *2 (D. Ariz. July 19, 2012) (utilizing purposeful direction test in a trademark infringement dispute).

act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks and citations omitted). "The proper question is not where the plaintiff experiences a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

For the reasons stated below, the Court finds that the purposeful direction element of the Ninth Circuit's specific jurisdiction test is satisfied.

### a. Intentional Act

The intentional act requirement connotes an "intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. BBK made a prima facie showing that CCA committed an intentional act. CCA printed the allegedly infringing mark on its promotional merchandise. *See Axiom Foods, Inc.*, 874 F.3d at 1069 (holding that the addition of an allegedly infringing logo to a newspaper was "unquestionably an intentional act"). And CCA intentionally shipped at least three allegedly infringing products to Arizona. Either of these acts satisfies the intentional act portion of the effects test.

### b. Express Aiming

The Court next considers whether CCA's conduct was expressly aimed at Arizona. An "express aiming" analysis centers on whether "the defendant's allegedly tortious action was expressly aimed at the forum state." *Picot*, 780 F.3d at 1214 (*citing Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)) (internal quotation marks omitted). The precise form of analysis depends largely upon the "specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. Here, BBK alleges that CCA's operation of the merchandise website, and the sales it made through the website, were expressly aimed at Arizona. (Doc. 16 at 7.) The Court agrees.

While a defendant's operation of an informational or passive website is insufficient to establish the express aiming prong of the effects test, *see e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Cybersell, Inc. v. Cybersell, Inc*, 130 F.3d

414, 418 (9th Cir. 1997), "operating even a passive website in conjunction with 'something more'–conduct directly targeting the forum–is sufficient to confer personal jurisdiction." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (*citing Panavision*, 141 F.3d at 1322). When examining whether a nonresident defendant has done "something more," a court looks to "the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant individually targeted a plaintiff known to be a forum resident." *Mavrix Photo*, 647 F.3d at 1229 (internal quotation marks and citations omitted).

### i. Website Interactivity

BBK argues that CCA's merchandise website is "interactive" and therefore meets the requirement of "something more," or express aiming at Arizona. (Doc. 16 at 8.) CCA contends that its website is "generally accessible." (Doc. 14 at 12.) However, CCA provides no authority stating that a generally accessible website cannot also be interactive. *Cf.* (Doc. 14 at 13) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1157 (9th Cir. 2006) and *Bellagio, LLC v. Bellagio Car Wash & Exp. Lube*, 116 F. Supp. 3d 1166, 1173 (D. Nev. 2015) which involved *passive* websites or websites that did not target forum residents).

The Court agrees with BBK that CCA does not have merely a passive website. CCA's merchandise website allows users to purchase products bearing the allegedly infringing designation – collecting their information in the process. (Doc. 14 at 8.) Further, the merchandise website allows users to have their orders shipped specifically to Arizona by providing a drop-down menu which auto-populates the state query with the Arizona state abbreviation. (Doc. 16 at 8.) The website also encourages users to contact CCA if they wish to ship internationally. (*Id.*) In conjunction, these attributes place the merchandise website squarely in the interactive category. *See BBK Tobacco & Foods LLP v. Juicy eJuice*, 13-CV-00070-PHX-GMS, 2014 WL 1686842, at *7 (D. Ariz. Apr. 29, 2014) (websites that "collect customer information… and sell allegedly infringing products" are interactive); *see also Cybersell*, 130 F.3d at 418 (describing interactive

websites as those that allow "users [to] exchange information with the host computer").

### ii. Commercial Ambitions

Also relevant to the "something more" inquiry is the allegation that CCA has filed five U.S. federal trademark registration applications for use of its "Raw Garden" designation on both its cannabis and non-cannabis products (Doc. 16 at 11), reflecting an intention to enlarge the geographic scope of its commercial activities. While CCA is correct that commercial ambitions *alone* would not support an exercise of jurisdiction, "commercial ambitions" properly constitute *part* of the analysis into whether "something more" is present. *See Mavrix Photo*, 647 F.3d at 1229.

### iii. Individual Targeting

BBK has also shown that CCA individually targeted it. *Axiom Foods*, 874 F.3d at 1070 (while individual targeting "will not, on its own, support an exercise of specific jurisdiction," it remains "relevant to the minimum contacts inquiry"). A defendant individually targets a plaintiff when the defendant is alleged to engage in "wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* at 1069 (internal quotation marks and citation omitted). Here, CCA utilized the allegedly infringing "Raw Garden" designation on products it sold to consumers it knew resided in Arizona. (Doc. 16 at 12.) CCA is alleged to have willfully infringed on BBK's trademark with knowledge of the trademark's existence and the forum of the trademark's holder. (*Id.*) As in the analogous property right realm of copyright infringement, willful infringement combined with this knowledge constitutes individual targeting. *See Axiom Foods*, 874 F.3d at 1069.

### iv. Sales to Arizona Residents

Alongside its operation of the merchandise website, CCA made three sales of allegedly infringing products to Arizona residents. (Doc. 14 at 13.) CCA argues that the Court should discount one of the sales because it was executed by an agent of BBK. (Doc. 18 at 6.) The Court agrees, as "it is the defendant who must create contacts with the forum state, not the plaintiff or plaintiff's contact with the defendant." *Bellagio*, 116 F.Supp.3d

at 1172 (*citing Walden*, 571 U.S. at 291). In any event, the Court's findings are unchanged by the discounting of BBK's purchase. *See Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (discussing that even *one* contact may be enough to establish specific jurisdiction); *see also Juicy eJuice*, 2014 WL 1686842, at *7 (finding personal jurisdiction despite there being only a *single* sale to an Arizona consumer in a trademark dispute between BBK and a Florida company making sales of allegedly infringing materials via the internet).

CCA also maintains that its sales to Arizona residents are *de minimis* and that they fall "far short of satisfying the purposeful direction test." (Doc. 14 at 7, 12.) In support of its argument, CCA cites *ThermoLife Int'l LLC v. NetNutri.com LLC*, 18-CV-04248-PHX-JJT, 2019 WL 3220547, at *1 (D. Ariz. July 17, 2019), where this District found no specific jurisdiction when the only evidence of contacts were online sales to customers who happened to be Arizona residents. (Doc. 14 at 12.) However, in *ThermoLife*, the plaintiff did not supply the Court with "a single fact or allegation that would constitute 'something more.'" 2019 WL 3220547, at *3. As previously discussed, BBK has provided the Court with multiple allegations that CCA has done "something more" entailing purposeful direction.

CCA further argues that because sales of its promotional merchandise constitute "less than 2 percent of CCA's business," it cannot be subject to jurisdiction. (Doc. 14 at 12.) The Court is unpersuaded that percentage of revenue is a factor indicative of purposeful direction, and CCA cites no authority to that effect. Likewise, CCA incorrectly relies on *Southwest Specialty Foods, Inc. v. Crazy Uncle Jester's Inferno World, LLC*, 11-CV-00048-PHX-SRB, 2011 WL 13234183, at *1-2 (D. Ariz. June 22, 2011), to argue that it is not subject to jurisdiction in Arizona. In that case, the evidence of contacts with Arizona was limited to sales of *non-infringing* products and distribution of defendant's products to a national retailer who happened to have three Arizona locations that did not offer the product for sale in Arizona. *Southwest Specialty Foods*, 2011 WL 13234183, at *5.

In sum, CCA's operation of its interactive website, combined with its commercial

ambitions and individual targeting of a forum-resident (i.e., "something more"), as well as its purposeful sales to Arizona residents, coalesce to satisfy the express aiming requirement of the effects test.

### c. Harm

The third part of the *Calder* effects test is satisfied when the defendant's "intentional acts [have] foreseeable effects in the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010) (internal quotation marks and citation omitted). "In appropriate circumstances [,] a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Mavrix Photo*, 647 F.3d at 1231 (*quoting Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1113 (9th Cir. 2002)). Furthermore, in cases of trademark infringement, the brunt of the harm will be felt at a plaintiff's principal place of business. *See e.g.*, *Panavision*, 141 F.3d at 1321 (reasoning that Panavision would feel the brunt of the infringement harm in California – its principal place of business); *see also Precision Craft Log Structures, Inc. v. Cabin Kit Co.*, 05-CV-199-S-EJL 2006 WL 538819, at *5 (D. Idaho Mar. 3, 2006) ("When a corporations copyright is infringed, the corporation suffers harm in its principal place of business.") (citation omitted).

In the instant case, CCA knew that BBK was based in Arizona and that any harm from its allegedly infringing activities would be felt in Arizona – BBK's principal place of business. *See Juicy eJuice*, 2014 WL 1686842, at *7. In fact, BBK alleges that CCA previously contacted it to arrange a co-branding agreement, and that CCA knew both BBK and the relevant consumers who purchased CCA's promotional products were in Arizona. (Doc. 18 at 8; Doc. 16 at 13; Doc. 14 at 12.)

CCA argues that it is not possible Arizona residents were confused by the allegedly infringing products because CCA does not sell cannabis in Arizona. (Doc. 14 at 13.) But this argument is misplaced because it goes to the merits of the BBK's claims. The relevant inquiry for this stage of the effects test relates to the economic loss inflicted on the plaintiff, rather than consumer confusion. *See Mavrix Photo*, 647 F.3d at 1231. Moreover, CCA

ignores the possibility of consumer confusion with non-cannabis products and unsoundly suggests that BBK would solely be harmed by the purchase of CCA's cannabis products in California. The Court is not persuaded by CCA's arguments.

The Court finds that CCA committed intentional acts expressly aimed at Arizona which it knew would cause harm in the state. Accordingly, CCA's contacts satisfy the three-part effects test from *Calder* and, as a result, the purposeful direction element of the Ninth Circuit's specific jurisdiction test.

### 2. Claims arising out of forum-related activities

The second element of the Ninth Circuit's specific jurisdiction test requires BBK's claims to arise out of CCA's Arizona-related activities. When determining if the plaintiff has met the second prong, the Ninth Circuit employs a "but for" test. *See e.g.*, *Rio Props.*, 284 F.3d at 1021; *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). The plaintiff must show that "but for [defendant's] conduct, [the] injury would not have occurred." *Panavision*, 141 F.3d at 1322. Thus, this requirement is satisfied if BBK would not have been injured "but-for" CCA's conduct in Arizona. *Rio Props.*, 284 F.3d at 1021.

Once again, CCA makes much of the likelihood of consumer confusion, a discussion to be had at a later stage. (Doc. 18 at 7.) In its Reply (Doc. 18), CCA does not argue against a "but-for" finding. Instead, it argues that the only location where harm is possible is California. (*Id.*) At this stage, the Court need only inquire into whether the but-for test is met. As previously mentioned, the allegedly infringing products had the effect of harming BBK in Arizona – its principal place of business. *See Panavision*, 141 F.3d at 1322 (reasoning that registration of infringing trademarks has the effect of injuring a business entity in its home state). Here, but for CCA's activities directed at Arizona, BBK would not have suffered the alleged injury. Therefore, the Court finds that BBK's claims arise out of CCA's forum-related activities.

### 3. Reasonableness

The third and final element of the Ninth Circuit's test, the reasonableness prong, shifts the burden to the defendant to "set forth a compelling case that the exercise of

jurisdiction would not be reasonable." *Picot*, 780 F.3d at 1211 (internal quotation marks omitted); *see also Ballard*, 65 F.3d at 1500 (only a "compelling case that the presence of some other considerations would render jurisdiction unreasonable" is enough to meet this burden) (internal quotation marks and emphasis omitted). An "otherwise valid exercise of specific jurisdiction is [presumed] reasonable." *Ballard*, 65 F.3d at 1500 (*citing Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990)). When considering whether an exercise of jurisdiction is reasonable, the Court considers the following seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (*citing Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003)).

The first factor weighs heavily in favor of a finding of reasonableness. As previously examined, CCA purposefully directed its activities at Arizona, thus purposefully interjecting itself into Arizona's affairs. The second factor sets a high bar as "the inconvenience [must be] so great as to constitute a deprivation of due process." *Panavision*, 141 F.3d at 1323 (*quoting Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128-29 (9th Cir. 1995)). Here, CCA's inconvenience does not meet this high bar. In the era of COVID-19, both the judiciary and advocates alike have learned and adapted to ever-changing circumstances to ensure that due process and justice withstand. Claiming that travel to a neighboring state is so inconvenient as to constitute a deprivation of due process is, in the Court's estimation, an untenable position. Thus, the second factor weighs in favor of reasonableness. The third factor is neutral as there are no issues relating to conflict of sovereignty. An analysis of Lanham Act and Arizona common-law claims would be similar in Arizona and California (CCA's proposed venue and principal place of business),

although this district is more familiar with Arizona common law. The fourth factor favors a finding of reasonableness. Arizona has a compelling interest in protecting the intellectual property rights of its residents. *See e.g., Cave Man Kitchens, Inc. v. Caveman Foods, LLC*, 18-CV-01274 RAJ, 2019 WL 3891327, at *7 (W.D. Wash. Aug. 19, 2019) (reasoning that Washington has a "legitimate interest in protecting the intellectual property rights of its residents"); *see also Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir. 1996) (discussing California's interest in providing redress to residents who allege tortious injury). Arizona has a strong interest in ensuring that BBK, an Arizona resident, has its claims effectively and efficiently adjudicated. The fifth factor is neutral, and it is "no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323. The sixth factor is also weighed less heavily. *Id.* at 1324. However, it weighs slightly in favor of reasonableness. BBK must be assumed to have chosen this District because it thought that it would receive convenient and effective relief here. The seventh factor favors CCA. The Central District of California is an available alternative forum. Although it may be inconvenient for BBK to litigate in California, it nonetheless serves as an alternative forum. *See e.g.*, *id.* (holding that this factor weighed against a plaintiff when there was an alternative forum). In balancing these factors, the Court finds that CCA has not shown that an exercise of jurisdiction would be unreasonable. The Court finds no reason to dispense with the presumption of reasonableness entitled to this claim of jurisdiction.

BBK has made a prima facie showing of jurisdictional facts to demonstrate that CCA purposefully directed some of its activity at Arizona, that BBK's claims arise out of that activity, and that an exercise would not be unreasonable. Accordingly, the Ninth Circuit's three-prong test for specific personal jurisdiction is met, and the exercise of jurisdiction comports with federal due process and Arizona's long-arm statute.

### B. Improper Venue

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[5]  28 U.S.C. § 1391(b)(2). In a Lanham Act trademark suit, a "substantial part of the events giving rise to the claims occur in *any* district where consumers are likely to be confused by the accused goods." *Golden Scorpio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282, 1286 (D. Ariz. 2009) (emphasis added) (citations omitted). More precisely, in suits "involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956); *see also John Stagliano, Inc. v. Direct Distributions, Inc.*, 12-CV-5565 PSG, 2012 WL 12892939, at *6 (C.D. Cal. Nov. 28, 2012) ("Consumers are likely to be confused in any district in which the alleged passing off of the trademarked goods occurred."). As a result, "the place where the alleged passing off occurred… provides an obvious correct venue." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).

In the instant matter, BBK alleges, and CCA does not dispute, that CCA made sales of the allegedly infringing products to Arizona consumers. (Doc. 16 at 9.) These products were shipped to Arizona – where the consumers received them. (*Id.*) Therefore, the "passing off" occurred in Arizona. Consequently, Arizona is a district in which consumers are likely to be confused, and in turn, a district in which a "substantial part of the events giving rise to the claims" occurred.

CCA argues that its sales are *de minimis* and fall below a sales threshold found in proper venue analyses. (Doc. 14 at 17.) For venue to be proper, plaintiffs must "show some sales of the allegedly infringing product in the district, though the amount of sales may be modest." *Stagliano*, 2012 WL 12892939, at *6 (*citing Allstar Marketing Group, LLC v.*

---

[5] Because the Lanham Act has no special venue provision, the general venue provision applies. *See Allstar Marketing Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009).

*Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1130 (C.D. Cal. 2009)). In *Stagliano*, the Court found venue proper by relying on the plaintiff's general allegations in the complaint despite finding that the plaintiff had not alleged "the specific number of sales made in [the district]." *Id.* at *7. Unlike the plaintiff in *Stagliano*, BBK has provided specific and measurable claims of sales in the forum. The Court is also unpersuaded by CCA's other cited authorities.[6] (Doc. 18 at 10.) Finally, CCA argues that there is a higher likelihood of consumer confusion in California. (Doc. 18 at 11.) However, venue is proper wherever consumers are likely to be to be confused, "whether that occurs solely in one district or in many." *Golden Scorpio*, 596 F. Supp. 2d at 1286 (internal quotation marks and citation omitted). CCA provides no reason why the possibility of confusion on the part of California consumers precludes Arizona as an appropriate venue.

BBK has set forth a prima facie case that CCA made sales of allegedly infringing products to Arizona consumers. In doing so, BBK showed that there is a likelihood of consumer confusion in Arizona. Accordingly, a substantial part of the events giving rise to BBK's claims occurred in the District of Arizona. The Court finds that BBK has carried its burden in showing that venue is appropriate under 28 U.S.C. § 1391(b)(2).

### C. Transfer of Venue

Alternatively, CCA's motion asks for this case to be transferred to the Central District of California. (Doc. 14 at 7.) Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

---

[6] In *Delta Sigma Theta Sorority Inc. v. Bivins*, 20 F. Supp. 3d 207, 212 (D.D.C. 2014), the plaintiff utilized two purchases to claim venue was proper. However, the plaintiff had orchestrated one of the those purchases and the second, non-party, purchase was cancelled – leaving the court to analyze only the singular plaintiff-orchestrated purchase. When analyzing venue, sales orchestrated by the plaintiff are discounted by the Court. *See Allstar Mktg.*, 666 F. Supp. 2d at 1129. Unlike the present matter, *Lee v. Haj*, 15-CV-8608 DMG, 2016 WL 7486599 at *2 (C.D. Cal. Jan. 4, 2016) concerned only *one* sale into the proposed venue. Moreover, the sale in *Lee* was orchestrated by an employee of the plaintiff. *Presidio Home Care, LLC v. B-East, LLC*, 14-CV-1864 RSWL, 2014 WL 2711299, at *5 (C.D. Cal June 13, 2014) involved a passive website and a plaintiff who did not provide evidence of specific sales to consumers in the venue. Instead, the plaintiff there provided evidence of two incidents of consumer confusion. *Id.* It is important to note that *Allstar* requires a modest amount of *sales*, not confusion. Finally, because the plaintiff orchestrated the sales in *Vera Bradley Designs, Inc. v. Denny*, 1:18-CV-70-TLS, 2018 WL 3633986, at *4 (N.D. Ind. July 30, 2018) it too is inapposite.

action to any other district or division where it might have been brought." District courts have "discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (*citing Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (internal quotation marks omitted). When analyzing whether transfer is appropriate, the Court performs a two-step analysis: first, it determines "whether the case could have been brought in the forum to which the moving party seeks to transfer the case," and second, "whether the proposed transferee district is a more suitable choice of venue based upon the convenience of the parties and witnesses and the interests of justice." *R. Prasad Indus. v. Flat Irons Envtl. Sols. Corp.*, 12-CV-08261-PCT-JAT, 2017 WL 4409463, *2-3 (D. Ariz. Oct. 4, 2017) (citations omitted). Here, it is undisputed that the case could have been brought in the Central District of California. (Doc. 16 at 16.) Thus, the Court's analysis will center on the second step.

In determining whether the proposed transferee district is a more suitable choice of venue, the Ninth Circuit enumerated the following eight factors to be considered by the Court: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498-99. The Court will analyze each in turn.

Both parties contend that the first factor is inapplicable here because the claims at issue do not pertain to a specific agreement. (Doc. 16 at 17; Doc. 18 at 11.) The Court agrees.

The second factor, the state most familiar with the governing law, weighs in favor of denying transfer. In its complaint, BBK alleges Lanham Act violations as well as Arizona common law claims. (Doc. 1.) Federal district courts are equally familiar with

federal law claims, so the Lanham Act claims do not add weight to either conclusion. *See e.g.*, *RV Savvy Prods., Inc. v. RV Masters, LLC*, 6:19-CV-00184-MK, 2019 WL 5858192, at *11 (D. Or. July 19, 2019) (finding that federal district courts are equally familiar with the governing law when a plaintiff brings a federal claim). While the Court does not doubt the Central District of California's ability to adjudicate Arizona common law claims, there is no question that the District of Arizona is the *most* familiar with such claims. *See e.g.*, *Conte v. Ginsey Indus.*, 12-CV-0728-PHX-JAT, 2012 WL 3095019, at *3 (D. Ariz. July 30, 2012) ("A state's familiarity with the governing law [,]rather than its ability to merely access or research that law[,] does factor into the appropriateness of venue transfer.") (*citing Jones*, 211 F.3d at 498); *Cave Man Kitchens Inc. v. Caveman Foods, LLC*, 2:18-CV-01274, 2019 WL 3891327, at *8 (W.D. Wash. August 19, 2019) (holding that a district court in Washington was more familiar with claims based on Washington law). As such, the second factor weighs against transfer.

The third factor, the plaintiff's choice of forum, weighs against transferring the case. This district has found that a plaintiff's "choice of forum is to be given greater deference where the plaintiff has chosen its home forum." *Conte*, 2012 WL 3095019, at *2 (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 266 (1981)). BBK presumably chose this district after considering which district best served its interests. BBK surely considered that this district serves as its home. As plaintiff's home state, BBK's choice of forum is entitled to some deference.

The fourth and fifth factors relate to the parties' contacts with the forum. BBK has extensive and continuous contacts with Arizona that make it "at-home" in this forum. (Doc. 1 at 2; Doc. 16 at 3, 17.) As explored above, CCA also maintains contacts with Arizona because it has purposefully directed some of its activity at Arizona. CCA consummated three sales with Arizona residents via its interactive website, and it subsequently shipped its merchandise to the state. While CCA may not have as wide-ranging and systematic contacts with the forum as BBK, it nonetheless has enough contacts to satisfy personal jurisdiction requirements. *RV Savvy Prods.*, 2019 WL 5858192, at *11

(holding that contacts satisfying personal jurisdiction requirements weigh in favor of denying transfer). Thus, the fourth factor weighs against transfer. The fifth factor analyzes the contacts relating to the plaintiff's cause of action in the chosen forum. BBK is based in Arizona and it alleges to have suffered harm in this district as a result of CCA's actions. BBK's claims arise out of CCA's conduct directed at the forum. These contacts directly relate to the claims made by BBK. Consequently, this factor also favors denial of transfer.

The sixth factor examines the differences in the costs of litigation in the respective forums. The Court properly looks to the location of witnesses and evidence. *See Gomez v. Wells Fargo Bank, NA*, 09-CV-00181-PHX-GMS, 2009 WL 1936790, at *2-3. For a district court to transfer, defendants need to "allege actual cost savings due to the forum transfer and not merely the shifting of costs between parties." *RV Savvy Prods.*, 2019 WL 5858192, at *11 (*citing Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1983)). Neither party presents particularly strong evidence of cost savings. CCA generally alleges that third-party witnesses are in California. (Doc. 14 at 20; Doc. 18 at 12, 13.) However, it fails to specifically identify the witnesses in California or how it would utilize their testimony in a way that it could not do with Arizona witnesses. *Cf. Gomez*, 2009 WL 1936790, at *3 ("Defendants identify many of these individuals by name."). Furthermore, CCA does not dispute the possibility of witnesses being present in this district. BBK also fails to point to specific witnesses present in this district. Instead, it argues that CCA's defense in this district would not be overly burdensome. (Doc. 16 at 19.) Both parties' arguments merely shift cost from one to another without successfully convincing the Court that one forum is significantly more expensive than the other. As such, this factor is neutral.

The seventh factor, the availability of compulsory processes to compel attendance of unwilling third-party witnesses, is also neutral. This district is more than 100 miles from the California border and this district's subpoena power would not reach third-party witnesses located in California. *See* Fed. R. Civ. P. 45(c). However, neither party has particularly alleged that specific third-party witnesses would need to be compelled to

appear. *See e.g., Gomez*, 2009 WL 1936790, at *4 ("While it is true that third-party witnesses… would be beyond the subpoena power of courts in the other forum, none of those witnesses have been identified with sufficient particularity to merit consideration."). Further, if the case were transferred, any unwilling third-party witnesses in Arizona would also be beyond the Central District of California's subpoena power. Thus, like the litigation cost factor, a transfer would merely shift the burden from one party to the other.

The eighth factor, the ease of access to sources of proof, is not advanced by transfer. CCA's employee witnesses and documentary evidence are located in the Central District of California. (Doc. 14 at 21.) However, it may be assumed that CCA's employee witnesses "will cooperate with [CCA's] trial efforts." *Gomez*, 2009 WL 1936790, at *4 (*citing FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993)). BBK does not specify where its sources of proof are, but, in any event, even if there were "more documentary evidence in California than in [Arizona]… modern technology tends to make access to documentary proof easy from virtually any location." *Caveman Kitchens*, 2019 WL 3891327, at *8. Moreover, assuming BBK's documentary evidence and witnesses are primarily located in this district, transferring to California would once again merely shift the costs onto BBK rather than decrease them overall.

The Court believes that the factors set out by the Ninth Circuit favor denial of transfer. One of the factors is inapplicable, three are neutral, and four of them favor BBK. Therefore, the Court finds that transfer to the Central District of California is not warranted.

//
//
//
//
//
//
//
//

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED denying** Defendant's request for oral argument (part of Doc. 14).

**IT IS FURTHER ORDERED denying** Defendant's Motion to Dismiss Complaint or, in the alternative, Transfer Venue (Doc. 14).

Dated this 10th day of July, 2020.

Michael T. Liburdi
United States District Judge