1  Brian W. Lacorte (AZ Bar No. 012237)
   *LaCorteB@ballardspahr.com*
2  Jonathon A. Talcott (AZ Bar No. 030155)
   *TalcottJ@ballardspahr.com*
3  **BALLARD SPAHR LLP**
   1 East Washington Street, Suite 2300
4  Phoenix, AZ 85004-2555
   Tel:    602.798.5400
5  Fax:    602.798.5595

6  Brett M. Schuman (SBN 189247)
   *BSchuman@goodwinlaw.com*
7  Jeremy N. Lateiner (SBN 238472)
   *JLateiner@goodwinlaw.com*
8  Nicholas M. Costanza (SBN 306749)
   *NCostanza@goodwinlaw.com*
9  **GOODWIN PROCTER LLP**
   Three Embarcadero Center
10 San Francisco, California  94111
   Tel:    415.733.6000
11 Fax:    415.677.9041

12 *Attorneys for Defendant/Counterclaimant*
   *Central Coast Agriculture, Inc.*
13

14                **UNITED STATES DISTRICT COURT**

15                      **DISTRICT OF ARIZONA**

16 BBK Tobacco & Foods, LLP, an Arizona          Case No. CV-19-05216-PHX-MTL
   Limited liability partnership, d/b/a HBI
17 International,                                 **DEFENDANT AND**
                                                  **COUNTERCLAIMANT CENTRAL**
18              Plaintiff/Counter-defendant,      **COAST AGRICULTURE, INC.'S**
                                                  **ANSWER AND COUNTERCLAIMS**
19        v.

20 Central Coast Agriculture, Inc., a Delaware
   Corporation,
21
                Defendant/Counterclaimant.
22

23

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

1   Defendant and Counterclaimant Central Coast Agriculture, Inc. ("CCA") answers

2   the Complaint filed by Plaintiff and Counter-defendant BBK Tobacco & Foods, LLP,

3   d/b/a HBI International ("BBK") as follows:

4                              **NATURE OF CASE**

5   CCA states that the allegations contained in the un-numbered paragraph at page 1,

6   lines 22-25 of the Complaint make legal conclusions to which CCA need not respond.  To

7   the extent a response is required, CCA denies the allegations in the un-numbered

8   paragraph at page 1, lines 22-25 of the Complaint.

9                              **THE PARTIES**

10   1.   CCA lacks knowledge and information sufficient to form a belief about the

11   truth of the allegations of paragraph 1 of the Complaint and therefore denies the same.

12   2.   Admitted.

13   3.   Admitted.

14   4.   Admitted.

15   5.   Denied.

16   6.   Admitted.

17   7.   Admitted.

18                        **JURISDICTION AND VENUE**

19   8.   CCA states that the allegations contained in the paragraph 8 of the

20   Complaint make legal conclusions to which CCA need not respond.  To the extent a

21   response is required, CCA denies the allegations in paragraph 8 of the Complaint.

22   9.   CCA admits that CCA employee Samantha Brown submitted a written

23   inquiry to BBK on or about January 26, 2017.  The document speaks for itself.  To the

24   extent a response is required, CCA denies the remaining allegations of paragraph 9 of the

25   Complaint.

26   10.   CCA admits that CCA employee Samantha Brown submitted a written

27   inquiry to BBK on or about January 26, 2017.  The document speaks for itself.  To the

28

1

1  extent a response is required, CCA denies the remaining allegations of paragraph 10 of the
2  Complaint.

3       11.     CCA admits that BBK's response to Ms. Brown's written inquiry makes
4  reference to "RAW WHOLESALE INQUIRY [#6992]."  CCA lacks knowledge and
5  information sufficient to form a belief about the truth of the remaining allegations of
6  paragraph 11 of the Complaint and therefore denies the same.

7       12.     CCA admits that Ms. Brown received an email on January 26, 2017 in
8  response to her written inquiry that stated it was from a BBK sales representative named
9  Brad Hill.  The email speaks for itself.   To the extent a response is required, CCA denies
10  the remaining allegations of paragraph 12 of the Complaint.

11       13.     CCA admits that Ms. Brown received an email on January 26, 2017 in
12  response to her written inquiry to BBK, which stated it was from a BBK sales
13  representative named Brad Hill.  The email speaks for itself.   To the extent a response is
14  required, CCA denies the remaining allegations of paragraph 13 of the Complaint.

15       14.     CCA admits that Ms. Brown received a further email on January 26, 2017 in
16  response to her written inquiry to BBK, which stated it was from a BBK sales
17  representative named Brad Hill and attached three forms.  CCA lacks knowledge and
18  information sufficient to form a belief about the truth of the remaining allegations of
19  paragraph 14 of the Complaint and therefore denies the same.

20       15.     Admitted.

21       16.     Admitted.

22       17.     CCA admits that it operates www.rawgarden.co, which is the merchandise
23  section of the www.rawgarden.farm website.  CCA denies the remaining allegations of
24  paragraph 17 of the Complaint.

25       18.     CCA lacks knowledge and information sufficient to form a belief about the
26  truth of the allegations of paragraph 18 of the Complaint and therefore denies the same.
27  / / /
28  / / /

19.     CCA admits that www.rawgarden.co offers for sale some "Raw Garden"-branded apparel and promotional merchandise.  CCA denies the remaining allegations of paragraph 19 of the Complaint.

20.     CCA admits that www.rawgarden.co offers for sale some "Raw Garden"-branded apparel and promotional merchandise.  CCA denies the remaining allegations of paragraph 20 of the Complaint.

21.     CCA admits that consumers can place orders for "Raw Garden"-branded apparel and promotional items at www.rawgarden.co.  CCA states that the remaining allegations contained in the paragraph 21 of the Complaint make legal conclusions to which CCA need not respond.  To the extent a response is required, CCA denies the remaining allegations in paragraph 21 of the Complaint.

22.     Denied.

23.     CCA admits that purchases have been made for "Raw Garden"-branded promotional merchandise on www.rawgarden.co by a limited number of individuals who submitted an Arizona billing and shipping address, and that CCA filled those orders.  CCA lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of paragraph 23 of the Complaint and therefore denies the same.

24.     CCA admits that it has caused a limited amount of Raw Garden-branded promotional merchandise to be shipped to addresses in Arizona.  CCA lacks knowledge and information sufficient to form a belief about whether the individuals who ordered the merchandise were in fact residents of Arizona.  CCA states that the remaining allegations contained in the paragraph 24 of the Complaint make legal conclusions to which CCA need not respond.  To the extent a response is required, CCA denies the remaining allegations in paragraph 24 of the Complaint.

25.     CCA admits that some Raw Garden-branded apparel and promotional merchandise is available for purchase by Arizona residents through www.rawgarden.co.  CCA lacks knowledge and information sufficient to form a belief about whether BBK's place of business is in this District.  CCA states that the remaining allegations contained in

the paragraph 25 of the Complaint make legal conclusions to which CCA need not respond.  To the extent a response is required, CCA denies the remaining allegations in paragraph 25 of the Complaint.

**GENERAL ALLEGATIONS**

**BBK's Products, Trademarks and Domain Names**

26.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 26 of the Complaint and therefore denies the same.

27.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 27 of the Complaint and therefore denies the same.

28.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 28 of the Complaint and therefore denies the same.

29.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 29 of the Complaint and therefore denies the same.

30.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 30 of the Complaint and therefore denies the same.

31.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 31 of the Complaint and therefore denies the same.

32.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 32 of the Complaint and therefore denies the same.

33.     CCA admits that BBK purportedly uses the www.rawthentic.com and www.rawsmoke.com websites to provide information about "RAW"-branded products. CCA lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of paragraph 33 of the Complaint and therefore denies the same.

34.     CCA admits that BBK purportedly uses an Instagram account entitled @rawlife247.  CCA lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of paragraph 34 of the Complaint and therefore denies the same.

35.     CCA admits that BBK purportedly uses a Facebook page entitled RAW Rolling Paper.  CCA lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of paragraph 35 of the Complaint and therefore denies the same.

36.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 36 of the Complaint and therefore denies the same.

37.     CCA admits that BBK uses the word "RAW," alone or in combination with other words and/or images, as trademarks to promote some of its products.  CCA lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of paragraph 37 of the Complaint and therefore denies the same.

38.     CCA admits that BBK uses the word "RAW," alone or in combination with other words and/or images, as trademarks to promote some of its products.  CCA lacks knowledge and information sufficient to form a belief about the truth of the remaining allegations of paragraph 38 of the Complaint and therefore denies the same.

39.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 39 of the Complaint and therefore denies the same.

40.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 40 of the Complaint and therefore denies the same.

41.     CCA lacks knowledge and information sufficient to form a belief about the truth of the allegations of paragraph 41 of the Complaint and therefore denies the same.

**Defendant's Products, Product Name, Domain Name, Instagram and Facebook**

42.     Admitted.

43.     Admitted.

44.     Admitted.

45.     Admitted.

46.     CCA admits that it operates www.rawgarden.co, which is the merchandise section of the www.rawgarden.farm website; www.rawgarden.co offers for sale some "Raw Garden"-branded apparel and promotional merchandise and CCA uses the

www.rawgarden.farm website to provide information about CCA's cannabis products.
CCA denies the remaining allegations of paragraph 46 of the Complaint.

47.     Admitted.

48.     Admitted.

49.     CCA lacks knowledge and information sufficient to form a belief about the
truth of the allegations of paragraph 49 of the Complaint and therefore denies the same.

### Defendant's PTO Applications for the Raw Garden Product Name

50.     CCA admits that it is the owner of record for trademark applications
pending with the United States Patent and Trademark Office (USPTO) that bear Serial
Numbers 88266152 and 88488733, and that both applications include the words "RAW
GARDEN" as at least part of the mark.  CCA denies the remaining allegations of
paragraph 50 of the Complaint.

51.     CCA admits that Appendix B to the Complaint makes reference to the
USPTO trademark applications bearing Serial Numbers 88266152 and 88488733.  CCA
denies the remaining allegations of paragraph 51 of the Complaint.

52.     CCA admits that it became the owner of record of the USPTO trademark
application bearing Serial Number 88266152 by assignment from Central Coast
Agriculture, LLC.  CCA denies the remaining allegations of paragraph 52 of the
Complaint.

53.     CCA admits that the USPTO trademark applications bearing Serial
Numbers 88266152 and 88488733 were filed after January 2017.  CCA denies the
remaining allegations of paragraph 53 of the Complaint.

54.     CCA admits that the USPTO trademark application bearing Serial Number
88266152 seeks the registration of "RAW GARDEN" as a standard character mark for
goods that do not contain any substance deemed a controlled substance by the controlled
substances act, 21 U.S.C. §§801-971, including, among other things, essential oils, dried
herbs, herbs for smoking, candy, cartridges sold filled with chemical flavorings in liquid
form for electronic cigarettes, cartridges sold filled with vegetable glycerin for electronic

cigarettes, and oral vaporizers for smoking purposes.  CCA further admits that the USPTO trademark application bearing Serial Number 88488733 seeks the registration of "RAW GARDEN REFINED LIVE RESIN" as part of a design plus words, letters and/or numbers mark for goods that contain CBD derived from cannabis with a delta-9 THC concentration of not more than 0.3% on a dry weight basis and goods that do not include any goods noncompliant with U.S. federal law, including, among other things, essential oils.  CCA denies the remaining allegations of paragraph 54 of the Complaint.

**Defendant's Infringing Acts**

55.   Denied.

56.   Denied.

57.   Denied.

58.   Denied.

59.   Denied.

60.   Denied.

<u>**COUNT 1**</u>

**(Federal Trademark Infringement)**

**(15 U.S.C. § 1114)**

61.   CCA restates and incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

62.   CCA states that the allegations contained in the paragraph 62 of the Complaint make legal conclusions to which CCA need not respond.  To the extent a response is required, CCA denies the allegations in paragraph 62 of the Complaint.

63.   Denied.

64.   Denied.

65.   Denied.

66.   Denied.

67.   Denied.

68.   Denied

69.     Denied.

## COUNT 2

**(Federal False Designation of Origin and Representation)**

**(15 U.S.C. § 1125(a))**

70.     CCA restates and incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

71.     CCA states that the allegations contained in the paragraph 71 of the Complaint make legal conclusions to which CCA need not respond.  To the extent a response is required, CCA denies the allegations in paragraph 71 of the Complaint.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

## COUNT 3

**(Anti-Cybersquatting Consumer Protection)**

**(15 U.S.C. § 1125(d))**

79.     CCA restates and incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

80.     Denied.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

## COUNT 4

### (Trademark Infringement under Arizona Common Law)

92.     CCA restates and incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

93.     CCA states that the allegations contained in the paragraph 93 of the Complaint make legal conclusions to which CCA need not respond.  To the extent a response is required, CCA denies the allegations in paragraph 93 of the Complaint.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

## COUNT 5

### (Unfair Competition under Arizona Common Law)

99.     CCA restates and incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

100.    CCA states that the allegations contained in the paragraph 100 of the Complaint make legal conclusions to which CCA need not respond.  To the extent a response is required, CCA denies the allegations in paragraph 100 of the Complaint.

101.    Denied.

102.    Denied.

103.    Denied.

1

## **PRAYER FOR RELIEF**

CCA denies any and all allegations contained in the remainder of the Complaint, including any of the headings, and denies that BBK is entitled to any of the relief requested in its prayer for judgment, or to any other relief, in any form, whatsoever.

## **AFFIRMATIVE DEFENSES**

Without any admissions as to burdens of proof or persuasion, and expressly reserving its right to assert additional defenses, CCA states the following affirmative defenses:

## **FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim upon which relief can be granted.

## **SECOND AFFIRMATIVE DEFENSE**

CCA has not infringed, contributed to the infringement, or induced infringement of any of BBK's trademarks.

## **THIRD AFFIRMATIVE DEFENSE**

BBK's claims are barred, in whole or in part, by the doctrine of laches.

## **FOURTH AFFIRMATIVE DEFENSE**

BBK's claims are barred, in whole or in part, by the doctrine of waiver.

## **FIFTH AFFIRMATIVE DEFENSE**

BBK's claims are barred, in whole or in part, by the doctrine of estoppel.

## **SIXTH AFFIRMATIVE DEFENSE**

BBK's claims are barred, in whole or in part, by the doctrine of acquiescence.

## **SEVENTH AFFIRMATIVE DEFENSE**

BBK has not and will not suffer irreparable harm from the denial of the relief it seeks.  BBK has adequate legal remedies.

## **EIGHTH AFFIRMATIVE DEFENSE**

BBK's claims are barred, in whole or in part, by the applicable statutes of limitations.

**NINTH AFFIRMATIVE DEFENSE**

BBK's claims are barred, in whole or in part, by BBK's unclean hands.

**TENTH AFFIRMATIVE DEFENSE**

BBK has not incurred any actual damages, harm, and/or other injuries justifying a claim for actual damages as a result of the alleged conduct of CCA.

**ELEVENTH AFFIRMATIVE DEFENSE**

BBK's claims are barred, in whole or in part, because BBK has not appropriately or adequately mitigated its damages, to the extent it incurred any damages at all.

**TWELFTH AFFIRMATIVE DEFENSE**

CCA hereby gives notice that it will rely upon such other and further defenses as may become apparent during the course of this action.

**COUNTERCLAIMS**

Defendant and Counterclaimant Central Coast Agriculture, Inc. ("CCA") hereby alleges the following Counterclaims against Plaintiff and Counter-defendant BBK Tobacco & Foods, LLP d/b/a HBI International ("BBK"):

**NATURE OF ACTION**

1.      This is a dispute between two cannabis companies.  BBK is not the "tobacco" company it claims to be in the Complaint.  Compl., at ¶ 26.  Rather, BBK is a cannabis company that masquerades "with a wink and a nod" as a tobacco company.  *See* https://www.inc.com/will-yakowicz/josh-kesselman-raw-rolling-papers.html.

2.      BBK makes and sells products, including under the "RAW" brand, that are primarily intended or designed for use in preparing and inhaling cannabis.  In other words, BBK makes and sells "drug paraphernalia," as that term is defined under the Controlled Substances Act (CSA).

3.      The United States Patent and Trademark Office (USPTO) does not register trademarks for use with drug paraphernalia, including drug paraphernalia that is intended for use with cannabis, because it is illegal under the CSA.  *See, e.g.*, *In Re Jj206, LLC, DBA Juju Joints*, 120 U.S.P.Q.2d 1568, at *3, 5 (T.T.A.B. 2016) ("Applicant's devices are

designed and intended for the introduction of marijuana or cannabis into the human body … [B]ecause Applicant's identified goods constitute illegal drug paraphernalia under the CSA, Applicant's use and intended use of the applied-for marks on these goods is unlawful, and cannot serve as the basis for federal registration.").

4.      In order to secure trademark registrations from the USPTO, BBK has, as it did in the Complaint in this case, repeatedly misrepresented itself as a tobacco company and misrepresented its products as being tobacco products.  BBK then aggressively seeks to enforce its fraudulently-obtained trademark registrations, including filing the present case against CCA, where there is simply no evidence or likelihood of confusion between CCA's marks and any of BBK's marks.  CCA seeks the cancellation of BBK's federal trademark registrations pursuant to 15 U.S.C. § 1064(3) because (1) the "registration[s] [were] obtained fraudulently" and (2) BBK's marks are not being used in lawful commerce.

## THE PARTIES

5.      CCA is a Delaware corporation with its principal place of business in Buellton, California.

6.      On information and belief, BBK is an Arizona limited liability partnership with its principal place of business in Arizona.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

8.      The Court has personal jurisdiction over BBK because, among other reasons, BBK is a resident of this District.  Venue is proper in this District for the same reason.

/ / /

/ / /

/ / /

/ / /

**GENERAL ALLEGATIONS**

**A. Cannabis And "Drug Paraphernalia" Are Illegal Under Federal Law.**

9.     Although the possession, consumption, manufacture, distribution, and/or sale of cannabis is legal, in at least some form, in a majority of states in the United States, cannabis remains listed as a Schedule I substance under the CSA.

10.     Section 863 of the CSA makes it unlawful for any person to sell or offer for sale "drug paraphernalia," defined as "any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing a controlled substance into the human body … includ[ing] items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing *marijuana*[1] …."  21 U.S.C. § 863(a), (d).

11.     Several factors are considered in determining whether an item constitutes illegal "drug paraphernalia" under the CSA, including "instructions, oral or written, provided with the item concerning its use," "descriptive materials accompanying the item which explain or depict its use," "national and local advertising concerning its use," "the manner in which the item is displayed for sale," and "expert testimony concerning its use," among others.  21 U.S.C. § 863(e).  Moreover, certain items – for example, "bongs" and "roach clips" – are explicitly identified as "drug paraphernalia" under the CSA.  21 U.S.C. § 863(d)(5), (12).

12.     The CSA identifies certain products as "exempt[]" from being encompassed within the definition of "drug paraphernalia," including "any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and ***traditionally intended for use with tobacco products***, including any pipe, paper, or accessory."  21 U.S.C. § 863(f) (emphasis added).

---

[1] The terms cannabis and marijuana are sometimes used interchangeably.  Cannabis is a genus of plants.  Marijuana is a term used to classify varieties of cannabis that contain more than 0.3% of tetrahydrocannabinol (THC).  THC can induce psychotropic or euphoric effects on the user.

**B. CCA Is A Cannabis Company.**

13.    CCA is a Buellton, California-based cannabis company.  CCA grows cannabis at farms in California, which it then uses to manufacture cannabis products that are available for sale only in California to medical cannabis patients and/or adult recreational cannabis users through licensed dispensaries or mobile delivery services. CCA's cannabis products include cannabis concentrates that are sold under the brand and mark "Raw Garden."

**C. BBK Also Is A Cannabis Company.**

14.    BBK makes no mention in the Complaint in this case of its cannabis-related products.  Rather, as it has done for years with the USPTO, BKK asserts that it "produces, distributes and sells tobacco and related products, including cigarette rolling papers, smoking accessories and merchandise, including apparel, and information services regarding these and other products …."  Compl., at ¶ 26.

15.    BBK has caused several "RAW" (and related) marks to be registered with the USPTO in connection with certain purported tobacco-related products, including those set forth in the following chart (collectively, the "BBK Marks" and the "BBK Products"):

| Mark | Goods | Reg. No. and Date | Purported First Use In Commerce |
|------|-------|-------------------|-------------------------------|
| RAW | Cigarette rolling papers made from processed paper<br><br>Plastic or metal hand held cigarette rolling Machines | 2989221 (8/30/05) | 6/7/02 |
| 100% CHLORINE FREE 100% VEGAN RAW NATURAL UNBLEACHED ROLLING PAPERS<br><br> | Cigarette rolling papers | 3422929 (5/6/08) | 8/11/05 |

| Mark | Goods | Reg. No. and Date | Purported First Use In Commerce |
|------|-------|-------------------|--------------------------------|
| SUPERNATURAL RAW | Cigarette papers; Cigarette rolling papers | 4041076 (10/18/11) | 1/23/06 |
| RAW | Cigarette tubes<br><br>Cigarette-rolling machines | 4074036 (12/20/11) | 12/3/07 |
| RAW ARTESANO | Cigarette rolling trays | 4325822 (4/23/13) | 1/21/13 |
| RAW | Shredders for tobacco and smokeable herbs not for industrial use<br><br>Cigarette rolling trays<br><br>Cigar rolling trays<br><br>Pocket apparatus for rolling cigarettes, namely, Scoops to assist in the rolling of one's own cigarette | 4412202 (10/1/13) | 10/1/12 |
| RAW ORGANIC HEMP AUTHENTIC PUREST NATURAL HEMP FIBERS UNREFINED RAY NATURAL UNREFINED HEMP ROLLING PAPERS  | Cigarette paper; Cigarette papers; Cigarette rolling papers: all of the foregoing made from natural, organic hemp | 4647824 (12/2/14) | 2/26/09 |
| RAW | Grinders for tobacco and herbs for smoking<br><br>Machines for injecting tobacco into cigarette | 4766952 (7/7/15) | 1/30/14 |

15

| Mark | Goods | Reg. No. and Date | Purported First Use In Commerce |
|---|---|---|---|
|  | tubes |  |  |
| RAW | Cigarette holders, cigarette holders not of precious metal | 4675473 (1/20/15) | 7/15/14 |
| RAW | Flying disc rolling tray for cigarettes, cigars, and smokeable herbs | 4921168 (3/22/16) | 2/20/14 |
| RAW | Providing consumer and business information and related news in the fields of marijuana and cannabis and medicinal and therapeutic marijuana and cannabis | 5046495 (9/20/16) | 5/15/16 |

16.     BBK advertises the BBK Marks and Products for use with cannabis through, among other places, its website (www.rawthentic.com) (the "BBK Website"), its Instagram account, @rawlife247 (www.instagram.com/rawlife247), the Instagram account of its founder, Josh Kesselman, @rawkandroll (www.instagram.com/rawkandroll), its Facebook account, RawRollingPaper (www.facebook.com/RawRollingPaper/?ref=page_internal), its Twitter account, @RAWLIFE247 (https://twitter.com/rawlife247?lang=en), and its YouTube channel, RawPapersOfficial (www.youtube.com/user/RawPapersOfficial) (collectively the "BBK Social Media Accounts").

17.     Even a cursory scroll through the BBK Social Media Accounts shows that the promotional posts for the BBK Products (and other "RAW"-branded products) are intended to promote their use in the preparation and consumption of cannabis, not tobacco.  On information and belief, the material inside the BBK rolling papers is cannabis, not tobacco:

/ / /

/ / /

16



https://www.instagram.com/p/B6T7m1CJSg2/



https://www.instagram.com/p/B32uyhbpm1j/

18.     BBK Products are sold in retail cannabis dispensaries in at least California, and, on information and belief, in other states where cannabis is legal.  For example, the BBK Products containing the BBK Marks are available for sale at Marijuana Packaging, which describes itself as the "#1 Trusted One-Stop Shop For All Dispensaries" and touts on its "RAW" page that BBK Products "are must-have items for all cannabis dispensaries."  https://www.marijuanapackaging.com/collections/raw.

19.     Although BBK avoids expressly saying the words "cannabis" or "marijuana" in its social media posts, it frequently posts "memes" that are directed to cannabis consumers, which include references to "420,"[2] and getting "lit," "high," "lifted" or "baked,"[3] or "dank"[4]:



https://www.instagram.com/p/BDMSsIiNy4cGB1GNg1Am-3w1FboF6UYm6AypAI0/

---

[2] The term "420" is a reference to April 20, which has become an annual holiday in the cannabis industry for the consumption of cannabis since at least the 1970s.  *See* https://www.nytimes.com/2012/04/21/us/4-20-a-holiday-for-fans-of-liberalized-marijuana-laws.html.

[3] The terms "lit," "high," "lifted" and "baked" refer to the euphoric effects of THC.

[4] The terms "dank" or "buds" refer to the cannabis flower.



https://www.instagram.com/p/BsELV3VgTQW2jNYBRchY29nELCfE18I30w3fjg0/

20.     BBK's founder, Mr. Kesselman, makes appearances at retail cannabis dispensaries to promote the use of BBK Products for the consumption of cannabis:

https://www.facebook.com/RawRollingPaper/photos/a.115582461791619/28048177328
68065/

21.     Mr. Kesselman also attends cannabis-specific events on behalf of BBK to promote the BBK Products for use in the preparation and consumption of cannabis.  For instance, on information and belief, on April 20, 2020, *i.e.*, 4/20 or 420, at 4:20 p.m., Mr. Kesselman attended "The World's Largest 420 Cannabis Sesh" on Instagram Live, hosted by Green Holdings Group (a multi-state cannabis grower, manufacturer, and retailer), wherein "Josh Kesselman of RAW Papers" was identified as a "famed cannabis entrepreneur[]" special guest for the event, along with other notable cannabis celebrities, such as Tommy Chong of "Cheech and Chong." https://www.reggaeville.com/dates/festival-details/the-worlds-largest-420-cannabis-sesh-2020/details/.

22.     BBK also has longstanding collaborations with cannabis companies and high-profile entertainers known primarily for being associated with cannabis.  For example, the BBK Website touts BBK's "20+ year[]" collaboration with High Times Magazine.  https://rawthentic.com/collabs/.  High Times Magazine describes itself, and is prominently known among the cannabis industry as, "the definitive resource for all things cannabis…[and] the preeminent source for cannabis information since 1974."  High Times Magazine is also the creator and host of the famous "High Times Cannabis Cup" competition and trade show that is hosted throughout the United States. https://www.cannabiscup.com/.  On information and belief, BBK and its founder attend the "High Times Cannabis Cup" to promote the use of BBK Products with cannabis.  In addition, High Times Magazine recently named Mr. Kesselman's Instagram account, where he actively promotes the BBK Products, as one of "19 excellent weed Instagram accounts" that it recommended its readers follow.  https://hightimes.com/culture/the-best-of-instagram/.

23.     On information and belief, BBK employees have attended and promoted the use of BBK Products with cannabis at other cannabis events including the ERRL Cup, which is marketed as "Arizona's biggest Cannabis awards and festival event," and Chronic Con 2019, a cannabis trade show and promotional event at a cannabis dispensary

1   in San Diego, California.  https://www.theerrlcup.com/about/;

2   https://www.yewonline.com/2019/07/14/chronic-con-is-coming/.

3       24.    BBK has collaborated with famous hip hop artists to promote the BBK

4   Products to cannabis consumers including Wiz Khalifa and Curren$y.  BBK has had a

5   near decade-long collaborative partnership with Wiz Khalifa, who is well known

6   throughout the entertainment industry as an ambassador for, and consumer of, cannabis.

7   In an interview in or around 2010, Wiz Khalifa touted that he was spending at least

8   $10,000 per month on cannabis.  https://www.thefader.com/2010/11/16/wiz-khalifa-

9   spends-10000-a-month-on-weed-may-be-a-bad-guy.  It was even reported that with

10  "[Wiz] Khalifa's shameless promotion of rolling papers in his lyrics [including at least

11  one song, titled "RAW," that is promoted through the BBK Social Media Accounts], the

12  trend [of smoking cannabis with rolling papers] caught on with his devoted fanbase and

13  spread like wildfire."  https://www.revolt.tv/2019/7/26/20839179/7-ways-wiz-khalifa-

14  impacted-stoner-culture.

15      25.    BBK has utilized its ongoing collaboration with Wiz Khalifa to market the

16  BBK Products primarily for use with the preparation and consumption of cannabis, as

17  evident through at least the following examples of BKK's promotion of Wiz Khalifa using

18  BBK Products to consume cannabis:

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

2

3



4

5

6

7

8

9

10

11

12

13

14

15

16   https://www.facebook.com/watch/?v=576206289902658[5]

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27

28   [5] To "wake and bake" means to consume cannabis in the morning.
     https://www.urbandictionary.com/define.php?term=Wake-and-Bake.



https://www.facebook.com/watch/?v=271689526884003





https://www.facebook.com/RawRollingPapr/photos/a.115582461791619/2329802497036260/

23

1  **D. BBK's Fraud On The USPTO.**

2      26.     In connection with filing the applications for the BBK Marks, BBK

3  affirmatively represented to the USPTO that the BBK Marks would be used in connection

4  with the BBK Products.

5      27.     Trademarks registered with the USPTO must be accompanied by a

6  declaration of use in commerce, often provided in the initial application, which is a

7  "statement [that] shall be verified by the applicant and specif[ies] that…the mark is in use

8  in commerce," among other verifications.  15 U.S.C. § 1051(a)(3)(C).

9      28.     Registered trademarks must then be renewed regularly, generally between

10  their 5th & 6th anniversary, their 9th and 10th anniversary, and between every 9th and

11  10th anniversary thereafter.  In filing the renewal application, a registrant must also

12  include a similar declaration of use in commerce.  15 U.S.C. §§ 1058, 1065.  As such, and

13  in the case of each of the BBK Marks, a BBK representative signed either the declaration

14  of use in commerce and/or the renewal declaration(s) of use in commerce.

15      29.     For instance, in connection with BBK's Reg. No. 2989221, a BBK

16  representative represented to the USPTO on March 23, 2004: "In International Class 034,

17  the mark was first used at least as early as 06/07/2002, and first used in commerce at least

18  as early as 06/07/2002, and is now in use in such commerce."  In connection with BBK's

19  "Combined Declaration of Use and Incontestability under Sections 8 & 15" for the same

20  registration, on August 30, 2010, a BBK representative represented to the USPTO: "The

21  mark is in use in commerce on or in connection with the goods and/or services identified

22  above... The mark has been in continuous use in commerce for five (5) consecutive years

23  after the date of registration… and is still in use in commerce."  And in connection with

24  BBK's "Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal

25  of Registration of a Mark under Sections 8 & 9" for the same registration, on September

26  3, 2014, a BBK representative represented to the USPTO: "…the mark is in use in

27  commerce on or in connection with the goods/services identified above…."

28

1    30.    BBK's declaration of use and/or renewal  declarations of use were made to

2    the USPTO for each of the BBK Marks on the following dates:

3

| Reg. No. for BBK Marks | Declaration of Use Date | Declaration of Use Under Sections 8 and/or 15 | Declaration of Use Under Sections 8 and 9 |
|---|---|---|---|
| 2989221 | 3/23/04 | 8/30/10 | 9/3/14 |
| 3422929 | 4/26/06 | 9/18/13 | 2/14/18 |
| 4041076 | 2/8/11 | 10/18/16 | -- |
| 4074036 | 5/11/11 | 12/20/16 | -- |
| 4325822 | 1/29/13 | 4/24/18 | -- |
| 4412202 | 10/9/12 | 10/1/18 | -- |
| 4647824 | 10/21/13 | 12/4/19 | -- |
| 4766952 | 2/24/14 | -- | -- |
| 4675473 | 7/17/14 | 7/21/20 | -- |
| 4921168 | 2/25/15 | -- | -- |
| 5046495 | 7/19/16 | -- | -- |

14

15    31.    BBK's declarations of use in commerce submitted to the USPTO on the

16    aforementioned dates were intentionally false, as BBK knew at the time of making these

17    representations to the USPTO that the BBK Marks were not lawfully used in commerce

18    because the respective BBK Products are drug paraphernalia under the CSA.  Further, and

19    at the very least, BBK made partial representations but fraudulently concealed material

20    facts, i.e., that the respective BBK Products are primarily intended or designed for use in

21    preparing and/or inhaling cannabis.

22    32.    Postings on the BBK Social Media Accounts and the BBK Website relating

23    to the BBK Products, and statements by BBK and its founder regarding the purpose of the

24    BBK Products, show that the BBK Products are designed, marketed, and sold for

25    primarily for use with the preparation and/or consumption of cannabis.

26    33.    For "[c]igarette holders, cigarette holders not of precious metal" (Reg No.

27    4675473), below are just a few examples of BBK promoting these products primarily for

28    use in the consumption of cannabis:

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   https://www.facebook.com/watch/?v=377121096218011

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /



https://www.facebook.com/watch/?v=450933809075668

34.     These purported "cigarette holders" are not products that are traditionally intended for use with tobacco such that they would be exempt from the definition of "drug paraphernalia" under the CSA.

35.     Unlike cannabis "joints," tobacco cigarettes are not traditionally consumed several at the same time.  This is because consuming, for example, five cannabis joints using this BBK Product will increase the amount of THC being consumed.  The same is not true for tobacco.

36.     Moreover, BBK's description of this product on its website explicitly states that the product was designed to "[s]moke 1, 2, 3, or 5 *RAW Cones* at once" which, as discussed in paragraph 46, *infra*, are also not products traditionally intended for use with tobacco:



https://rawthentic.com/accessories/ (emphasis added); https://rawthentic.com/holders/.

37.     For "[s]hredders for tobacco and smokeable herbs not for industrial use" (Reg No. 4412202) and "[g]rinders for tobacco and herbs for smoking" (Reg No. 4766952), below are a few examples of BBK promoting these products primarily for use in the preparation of cannabis:



https://www.instagram.com/p/BBSzwJOty0XyAbrqEMg_3QPMuchM2UgeO2hFE00/

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



https://www.instagram.com/p/B01marfgSX4Ku62P8vDo7su7cuibMqMGLFj9H80/

19       38.     These "shredders" and "grinders" are not products that are traditionally

20   intended for use with tobacco.

21       39.     BBK's description of these products on its website explicitly states that they

22   were "[d]esigned to not only grind your herbs but to fluff while breaking up *chunks*,

23   giving you the perfect consistency smoking *materials*":

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

29



https://rawthentic.com/accessories/ (emphasis added); https://rawthentic.com/grinders-shredders/.

40.     Traditionally, tobacco is not ground in "chunks"; rather, it is ground or shredded in a more thin, leaf form:



*See, e.g.,* https://wholeleaftobacco.com/product/budget-manual-shredder-0-8mm/.

41.     Cannabis flower, on the other hand, *is* sold in chunks that must be ground into a more fine substance before being rolled into a joint.

42.     Further, BKK uploaded a video to its YouTube channel wherein Mr. Kesselman promoted and discussed the purpose of the design of this product. https://www.youtube.com/watch?v=V-cZZ9IQibQ&has_verified=1.  In this video, Mr. Kesselman stated that the product is not a "normal grinder" because it is "all modular" and breaks into over 15 components for various purposes.  In discussing one of the components, Mr. Kesselman almost explicitly stated that the product was designed for cannabis, but then caught himself, saying instead:  "I like to keep it all in [the grinder].

I'm not a fan of separating the… whatever you want to call it…out.  I like to keep it all together."  Mr. Kesselman then went on to say: "You want to smoke whole plants, because the one thing you take out may be the one thing that you needed to stop your….I shouldn't say it, but I will.  Am I allowed to say it?  Jack said it was to stop cancer, that was Jack."  Generally, cigarettes and tobacco have been linked as causing cancer, whereas cannabis has been linked to treating certain side-effects of cancer.

43.     BKK also uploaded a video to BBK's YouTube page wherein Mr. Kesselman promoted and discussed the purpose of the design of a BBK "grinder" product. https://www.youtube.com/watch?v=nYj0BJ7kDds&has_verified=1.  In the video—which appears to be filmed at a cannabis trade show—Mr. Kesselman described the product as "world's best commercial grinder" that was "designed for the stickiest[6] shit in the fucking world."  Mr. Kesselman then proceeded to grind what appears to be a pound of cannabis flower.

44.     For (1) "[m]achines for injecting tobacco into cigarette tubes" (Reg. No. 4766952), (2) "[p]ocket apparatus for rolling cigarettes, namely, Scoops to assist in the rolling of one's own cigarette" (Reg. No. 4412202), (3) "[c]igarette rolling trays" (Reg Nos. 4325822 and 4412202) and "Cigar Rolling Trays" (Reg. No. 4412202), and (4) "[c]igarette tubes" (Reg. No. 4074036), below are examples of BBK promoting these products primarily for use in the preparation of cannabis:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[6] The term "sticky" is a term used to describe highly potent cannabis, sometimes also referred to as "sticky icky." https://www.urbandictionary.com/define.php?term=sticky%20icky.

31

1

<u>Machines</u>

2
3
4
5
6
7
8
9
10
11
12
13
14



15  https://www.instagram.com/p/CB0uNdPpfX-/

16
17
18
19
20
21
22
23
24
25
26
27



28  https://www.instagram.com/p/81vyEWtyyTM8j_Lwfvq_W2rFJlT0eIk1mQMiU0/

1

### Scoops



2 3 4 5 6 7 8 9 10 11 12 13

https://www.instagram.com/p/_7ZKO5ty6YmN2ypfxXPmCURVad3xvAI79lHLA0/

14

### Trays

15 16 17 18 19 20 21 22 23 24 25 26 27 28

https://www.instagram.com/p/ByGm7jRgDEvL5jNebrNeZ0mqevO_m9SHU-bbmc0/

Tubes



https://www.instagram.com/p/Bj5rk9insLW4w5rBfhD2JzawMlCAYm8boPmdhk0/

45.    These "machines," "scoops, "trays," and "tubes" are not products that are traditionally intended for use with tobacco, as they were specifically designed to be used with BBK's "RAW Cone" products, which is not a product traditionally intended for use with tobacco, either.

46.    BBK's RAW Cones are not traditional rolling papers that a consumer can use to roll their own tobacco cigarette.  Instead, the RAW Cones are material that is pre-rolled by BBK into a *cone* shape that is skinny at the base and larger towards the end. While it is not uncommon for tobacco companies to sell pre-rolled cigarette *tubes* that look like a standard cigarette, such tubes are not in a cone shape.  On information and belief, BBK designed the RAW Cone to be in a cone shape, rather than a tube, so that consumers can pack more cannabis into a single cone than they would be able to pack into a more traditional tube that has a consistent shape throughout.  This is further supported by the fact that BBK manufactures the RAW Cones in comically large sizes, as shown here with both an image describing all of the RAW Cone sizes (not to scale) followed by

34

1    an image of Mr. Kesselman smoking a massive, "3 POUND RAW CONE," filled with

2    what appears to be cannabis and using a flamethrower to light it:



15   https://rawthentic.com/cones/.



28   https://www.youtube.com/watch?v=lE1UAwEe5Aw&t=2s

35

47.     As shown above, the "machines," "scoops," "trays," and "tubes" were designed specifically for the preparation and consumption of cannabis using the RAW Cone products.

48.     The "machines" have the words "Cone Filler" or "Cone Maker" affixed to them.  *See* images at ¶ 44, *supra*.

49.     In at least one video that BBK uploaded its YouTube channel, Mr. Kesselman refers to the "scoops" as the "Raw Cone Loader," and proceeds to load what appears to be cannabis into a RAW Cone:



https://www.youtube.com/watch?v=RTjhnZJ3oOM&t=233s

50.     Many of the "trays" are designed with holes specifically for RAW Cones to sit upright so that they may be filled with cannabis.  *See* images at ¶ 44, *supra*.

51.     And the "tubes," as Mr. Kesselman states in a December 13, 2017 video uploaded to his Instagram account, were designed specifically to fit "every one of [BBK's] pre-roll[ cones]."  https://www.instagram.com/p/BcqYEVylFuVuQwwPbQN-rXvBY8WLy8ts8oQ6s00/.  Further, in this video, Mr. Kesselman touts that these tubes are made of certain material (aluminum and cork) that make the tubes "odorless" and "air

1  tight" so that, per Mr. Kesselman, if you are "lighting up at the club" and "security flashes

2  a light at you," you can "drop it in" and "it will immediately go out," so there is no smell

3  or smoke.

4       52.    For "[f]lying disc rolling tray for cigarettes, cigars, and smokeable herbs"

5  (Reg. No. 4921168), below is an example of BBK promoting this product for use in the

6  preparation of cannabis:




19  https://www.facebook.com/RawRollingPaper/photos/a.709941405689052/114284433906

20  5421/

21       53.    These "flying discs" are not traditionally intended for use with tobacco

22  because, obviously, frisbees are not tobacco-related products.

23       54.    For "cigarette rolling papers" and "rolling papers" (Reg. Nos. 2989221,

24  3422929, 4041076, 4647824), below are examples of BBK promoting these products

25  primarily for use in the preparation and consumption of cannabis:

26  / / /

27  / / /

28  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17



18  https://www.instagram.com/p/B_3LzVTAPRg5cbLpUiCgm1Fb0jRtZZeP2Y8_HA0/

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /



https://www.instagram.com/p/B5Qmhw7gerihbFC-X8bzOghJp01BiEFptgOX0w0/

55.     These purported "cigarette rolling papers" are not products that are traditionally intended for use with tobacco products.  Mr. Kesselman has admitted that BBK's rolling papers were specifically designed to be consumed with *cannabis*, not tobacco.  For instance, in response to an interview question from a journalist with the High Times Magazine (again, a cannabis publication) about "[w]hat makes Raw different," Mr. Kesselman responded by explaining the "science" behind the creation of the "RAW" branded rolling papers: "The most important thing is something called joules, where you're trying to match the joules stored in the paper to your material. And as materials change in the world, I had to make new paper in order to match the new,

*incredibly high-end strains* that are so moist and so perfect and beautiful that we now

have. I had to make a paper *for that*."  https://hightimes.com/culture/josh-kesselman-raw-

rolling-papers-high-times-interview/  (emphasis added).  Mr. Kesselman is clearly

referring to cannabis when he says BBK's rolling papers were created to be used with

"incredibly high-end strains."  This is evident from, at a minimum: (i) the fact that Mr.

Kesselman was providing this information to a cannabis magazine, not a tobacco

magazine; and (ii) Mr. Kesselman frequently used the term "material" in his response,

rather than saying "tobacco."

56.     For "[p]lastic or metal hand held cigarette rolling machines" (Reg. Nos.

2989221 and 4074036), below is an example of BBK promoting these products primarily

for use in the preparation of cannabis:



https://www.instagram.com/p/BzyyhlzgicNGBncu_RMum_31h1M4HazOx-KhDw0/

57.     These purported "cigarette rolling machines" are not products that are traditionally intended for use with tobacco because they were specifically designed for use with BBK rolling papers, which, as shown above, were specifically designed to be consumed with cannabis.

58.     Finally, for "[p]roviding consumer and business information and related news in the fields of marijuana and cannabis and medicinal and therapeutic marijuana and cannabis" (Reg. No. 5046495), BBK committed fraud on the USPTO in response to an Office Action issued in connection with its then-pending trademark application. Specifically, on September 24, 2015, Mr. Kesselman submitted a declaration which read as follows:

> Applicant, BBK … is a large company that has manufactured *tobacco rolling papers, tubes and other related tobacco accessories for nearly 20 years*. Because of inquiries, BBK determined it should present consumer information about the status of medical marijuana on its website, although it has not done so yet. This information will include the current legal status in various jurisdictions as well any potential changes in federal law. The website will contain links to information in support and opposition of medical marijuana as well as references to medical journals and studies. The website will also provide customers an opportunity to comment. The services described do not involve in any way the sale, provision, and/or possession of marijuana, marijuana- based preparations, or marijuana extracts or derivatives, synthetic marijuana, or any other illegal controlled substances. All the services described above comply fully with the Controlled Substances Act, 21 U.S.C. §§ 801-971. (emphasis added).

59.     In reliance upon Mr. Kesselman's declaration, the USPTO granted Reg. No. 5046495.  However, Mr. Kesselman's statement was knowingly false or, at the very least, it was a partial representation that fraudulently concealed material facts relating to BBK making and selling non-exempt drug paraphernalia.

60.     Just one day before Mr. Kesselman's declaration was submitted to the USPTO, BBK posted an advertisement for a BBK Product appearing to contain cannabis and asking consumers "who's down to blaze?!":[7]

/ / /

/ / /

---

[7] The term "blaze" means to smoke cannabis.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



https://twitter.com/RAWLIFE247/status/646656948864073728

61.    Mr. Kesselman's September 24, 2015 statement was also knowingly false for the reasons identified above pertaining to BBK's design, marketing, and promotion of the BBK Products primarily for use in connection with the preparation and/or consumption of cannabis.

42

**FIRST CAUSE OF ACTION**

**(Petition to Cancel the BBK Marks for Fraud on the USPTO)**

**(15 U.S.C. § 1064(3))**

62.     CCA realleges and incorporates by reference paragraphs 1 through 61 of its Counterclaims as if fully set forth herein.

63.     CCA filed applications with the USPTO for the BBK Marks and obtained registrations for the BBK Marks in connection with the BBK Products, as set forth in detail in paragraph 15, above.

64.     In connection with filing the applications for the BBK Marks, BBK affirmatively represented to the USPTO that the BBK Marks would be used in connection with the BBK Products.

65.     For each of the BBK Marks, BBK's declaration of use in commerce and/or renewal  declarations of use in commerce were made to the USPTO on the following dates:

| Reg. No. for BBK Marks | Declaration of Use Date | Declaration of Use Under Sections 8 and/or 15 | Declaration of Use Under Sections 8 and 9 |
|---|---|---|---|
| 2989221 | 3/23/04 | 8/30/10 | 9/3/14 |
| 3422929 | 4/26/06 | 9/18/13 | 2/14/18 |
| 4041076 | 2/8/11 | 10/18/16 | -- |
| 4074036 | 5/11/11 | 12/20/16 | -- |
| 4325822 | 1/29/13 | 4/24/18 | -- |
| 4412202 | 10/9/12 | 10/1/18 | -- |
| 4647824 | 10/21/13 | 12/4/19 | -- |
| 4766952 | 2/24/14 | -- | -- |
| 4675473 | 7/17/14 | 7/21/20 | -- |
| 4921168 | 2/25/15 | -- | -- |
| 5046495 | 7/19/16 | -- | -- |

66.     BBK's declarations of use in commerce submitted to the USPTO on the aforementioned dates were intentionally false, as BBK knew at the time of making these representations to the USPTO that the BBK Marks were not lawfully used in commerce

because they are not traditionally intended for use with tobacco products and are primarily intended or designed for use with cannabis.  Further, and at the very least, BBK made partial representations but fraudulently concealed material facts, i.e., that the BBK Products are primarily intended or designed for use in preparing or inhaling cannabis.

67.     BBK's statements to the USPTO, including at least Mr. Kesselman's September 24, 2015 statement and the declarations of use in the trademark applications and renewals for the BBK Marks, were false, deceptive and misleading when made, made with the requisite intent to deceive the USPTO, and were relied upon by the USPTO.

68.     Had BBK not misrepresented to the USPTO that the BBK Products were used in lawful commerce, and instead disclosed to the USPTO the true nature of the BBK Products—*e.g.*, that they were designed, marketed, promoted and sold specifically for use in the preparation and consumption of cannabis—the USPTO would not have issued registrations for the BBK Marks in connection with the BBK Products.

69.     Because the registrations for the BBK Marks were obtained through fraud, the BBK Marks should be cancelled.

70.     Cancellation of the BBK Marks is necessary to prevent harm to CCA, including at least because BBK has sued CCA for federal trademark infringement under the Lanham Act based on its purported ownership of the BBK Marks that were procured by BBK through fraudulent means.

## SECOND CAUSE OF ACTION

### (Petition to Cancel the BBK Marks for Unlawful Use)

### (15 U.S.C. § 1064(3))

71.     CCA realleges and incorporates by reference paragraphs 1 through 70 of its Counterclaims as if fully set forth herein.

72.     CCA filed applications with the USPTO for the BBK Marks and obtained registrations for the BBK Marks in connection with the BBK Products, as set forth in detail in paragraph 15, above.

73.     At all relevant times, BBK has used the BBK Marks in connection with the BBK Products.

74.     Use of a mark in commerce must be lawful use to be the basis for federal registration of the mark and for the owner of the mark to be entitled to federal trademark protection and common law trademark protection.  *See, e.g., CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007); 37 C.F.R. § 2.69; Trademark Manual of Examining Procedure § 907.

75.     The BBK Products constitute unlawful, non-exempt drug paraphernalia under 21 U.S.C. § 863 because, among other reasons, they are primarily intended or designed for use in preparing and/or inhaling cannabis, and they are not traditionally intended for use with tobacco products.

76.     BBK's sales and shipments of the BBK Products in commerce bearing the BBK Marks directly forms a nexus between BBK's use of the marks and its material violations of the laws, which so taint the goods and marks that they cannot be conferred trademark rights.

77.     Cancellation of the BBK Marks is necessary to prevent harm to CCA, including at least because BBK has sued CCA for federal trademark infringement under the Lanham Act based on its purported ownership of the BBK Marks that are not being used in lawful commerce.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaimant Central Coast Agriculture, Inc. prays for judgment against Plaintiff/Counter-defendant BBK Tobacco & Foods LLP as follows:

A.     Dismissal of BBK's Complaint in its entirety;

B.     An order requiring the USPTO to cancel the registrations for the BBK Marks in connection with the BBK Products;

C.     Attorneys' fees and costs; and

D.     Such other relief as the Court deems just and proper.

1

## **DEMAND FOR JURY TRIAL**

2     Defendant/Counterclaimant Central Coast Agriculture, Inc. hereby demands a trial

3  by jury on all issues so triable.

4

5     RESPECTFULLY SUBMITTED this 14th day of August, 2020.

6                                   By:   */s/ Brian W. LaCorte*

7                                         Brian W. Lacorte (AZ Bar No. 012237)
                                          *LaCorteB@ballardspahr.com*

8                                         Jonathon A. Talcott (AZ Bar No. 030155)
                                          *TalcottJ@ballardspahr.com*

9                                         **BALLARD SPAHR** **LLP**
                                          1 East Washington Street, Suite 2300

10                                        Phoenix, AZ 85004-2555
                                          Tel:    602.798.5400

11                                        Fax:    602.798.5595

12                                        Brett M. Schuman (SBN 189247)
                                          *BSchuman@goodwinlaw.com*

13                                        Jeremy N. Lateiner (SBN 238472)
                                          *JLateiner@goodwinlaw.com*

14                                        Nicholas M. Costanza (SBN 306749)
                                          *NCostanza@goodwinlaw.com*

15                                        **GOODWIN PROCTER** **LLP**
                                          Three Embarcadero Center

16                                        San Francisco, CA 94111
                                          Tel:    415.733.6000

17                                        Fax:    415.677.9041

18                                        *Attorneys for Defendant/Counterclaimant*
                                          *Central Coast Agriculture, Inc.*

19

20

21                          ## **CERTIFICATE OF SERVICE**

22     I certify that on the 14th day of August, 2020, I electronically transmitted a PDF

23  version of the foregoing document to the office of the Clerk of the Court, using the CM/ECF

24  system for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants

25  listed for this matter.

26

27  By:  */s/ Vicki L. Morgan*

28