1   **WO**

2

3

4

5

6                   **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9   BBK Tobacco & Foods LLP,                     No. CV-19-05216-PHX-MTL

10                   Plaintiff,                   **ORDER**

11   v.

12   Central Coast Agriculture Incorporated, et
    al.,

13
                    Defendants.
14

15         Before the Court are Defendants' motion to dismiss Plaintiff BBK Tobacco & Foods

16   LLP's ("BBK") Amended Complaint (Doc. 70) and BBK's motion to dismiss

17   Defendant/Counterclaimant Central Coast Agriculture Inc.'s ("CCA") Counterclaims

18   (Doc. 77). For the following reasons, Defendants' motion is granted in part and denied in

19   part; Plaintiff's motion is denied.[1]

20   **I.     BACKGROUND**

21         As the Court noted in a previous order, BBK is an Arizona limited liability

22   partnership with its principal place of business in Arizona.  (Doc. 10 at 1; Doc. 60 ¶ 1.)

23   BBK manufactures, distributes, and sells smoking-related products bearing its trademarked

24   "RAW" branding.  (Doc. 60 ¶¶ 34-37.) BBK's marks include the following: "RAW,"

25   "RAW ORGANIC," "RAW ARTESANO," "SUPERNATURAL RAW," "RAW

26   CONNOISSEUR," and "RAW BLACK." (*Id*. ¶ 41.) BBK asserts that the word "raw" is a

27   ───────────────

28   [1] Both parties have submitted legal memoranda and oral argument would not have aided
    the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998);
    *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

"distinctive enough" identifier "to trigger recognition in and of the RAW Brand Products and Services." (*Id*. ¶ 42.) BBK promotes 70 product brands including include cigarette rolling papers, smoking accessories, and merchandise, as well as information services regarding its products.  (*Id.* ¶ 34.) BBK maintains multiple internet domains incorporating the RAW designation.[2] (*Id.* ¶¶ 51–62.)

Defendant CCA is a Delaware corporation with its principal place of business in Buellton, California. (*Id*. ¶ 2.) CCA sells cannabis products exclusively in California and promotional merchandise nationwide. (*Id*. ¶ 121.) CCA identifies, or has identified, its products using the names "Raw Garden," "Raw Gardener," and "Raw CO2" since 2015. (*Id*. ¶¶ 66–67.) It maintains two websites: www.rawgarden.farm and www.rawgarden.co. (*Id*. ¶ 25.) CCA offers merchandise for sale bearing the "Raw Garden" name through www.rawgarden.co. (*Id*. ¶ 27.)  (*Id.*) The products for sale include water bottles, posters, T-shirts, hoodies, baseball caps, pin, lanyards, and "dab mats." (*Id*. ¶ 177.) BBK claims that CCA has infringed on its trademarks by making, using, promoting, advertising, distributing, selling, and offering to sell its products using "Raw Garden" and related names. (*Id*. ¶ 78.)

The Court previously denied CCA's motion to dismiss for lack of personal jurisdiction and improper venue on July 10, 2020. (Doc. 19.) BBK later moved to amend the Complaint on the December 10, 2020 deadline to amend the pleadings, which the Court granted. (Docs. 54, 59.)

The operative Amended Complaint names three additional defendants, each a subsidiary of CCA: Central Coast Ag Farming, LLC ("CCA Farming"), Central Coast Ag Distribution, LLC ("CCA Distribution"), and Central Coast Ag Products, LLC ("CCA Products") (collectively, the "Subsidiary Defendants"). (Doc. 60 at 2–4.) As did the original Complaint, the Amended Complaint brings claims for trademark infringement,

---

[2]   BBK's online presence includes the following RAW domain names: www.rawthentic.com, www.rawsmoke.com, and www.rawfoundation.com.  (*Id.* ¶ 54.) It also uses the Instagram "handles" @rawkandroll and @rawlife247.com and the Facebook page titled "RAW Rolling Paper." (*Id.* ¶¶ 57, 58.)

false designation of origin and representation, and anti-cybersquatting consumer protection under federal law, and trademark infringement and unfair competition claims under Arizona law. The Amended Complaint also adds two new claims, Counts 6 and 7, to void CCA's trademark applications and for false advertising under the Lanham Act, respectively.

Defendants now move to dismiss the Subsidiary Defendants for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, or, alternatively, under Rule 12(b)(6) for failure to state a claim. CCA also moves to dismiss the two new claims under Rule 12(b)(6). That motion is now fully briefed. (Docs. 79, 103.)

CCA separately answered Counts 1 through 5 of the Amended Complaint and filed two counterclaims against BBK. Both counterclaims seek to cancel BBK's specified marks for fraud on the United States Patent and Trademark Office ("USPTO") and for unlawful use. (Doc. 71 at 49–51.) BBK has moved to dismiss the counterclaims pursuant to Rule 12(b)(6). (Doc. 77.) That motion is also now fully briefed. (Docs. 89, 101.)

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a defendant may move, "prior to trial, to dismiss the complaint for lack of personal jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that an exercise of jurisdiction is proper. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). However, "in the absence of an evidentiary hearing," a plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (internal citation omitted). When examining whether there is a prima facie showing of jurisdictional facts, any "uncontroverted allegations in [the complaint] must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." *A T & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (internal quotation marks and citations omitted); *see also Sher*, 911 F.2d at 1361

1  (treating plaintiff's allegations as true).

2      **B.**    **Rule 12(b)(6)**

3          To survive a motion to dismiss for failure to state a claim, a complaint must contain

4  "a short and plain statement of the claim showing that the pleader is entitled to relief" such

5  that the defendant is given "fair notice of what the . . . claim is and the grounds upon which

6  it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P.

7  8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be

8  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

9  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

10  (9th Cir. 1988). A complaint should not be dismissed "unless it appears beyond doubt that

11  the plaintiff can prove no set of facts in support of the claim that would entitle it to relief."

12  *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

13          The Court must accept material allegations in the Complaint as true and construe

14  them in the light most favorable to Plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*,

15  720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint

16  have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City*

17  *of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Review of a Rule 12(b)(6) motion is

18  "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581.

19  **III.**    **DISCUSSION**

20      **A.**    **Defendants' Motion (Doc. 70)**

21          Defendants move to dismiss the newly-added Subsidiary Defendants for lack of

22  personal jurisdiction pursuant to Rule 12(b)(2), or for failure to state a claim pursuant to

23  Rule 12(b)(6). Defendant CCA further moves to dismiss BBK's newly-added sixth and

24  seventh claims for failure to state a claim. (Doc. 70 at 2.) The Court first addresses two

25  preliminary matters before turning to these arguments.

26      **1.**    **LRCiv 12.1(c) Conferral Requirements**

27          The Court first addresses BBK's suggestion that Defendants did not fully comply

28  with Rule 12.1 of the Local Rules of Civil Procedure ("LRCiv") in filing the present

motion. That rule provides that no motion to dismiss for failure to state a claim will be considered unless the moving party certifies that, "before filing the motion, the movant notified the opposing party of the issues asserted in the motion and the parties were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party." LRCiv 12.1(c). A motion that "does not contain the required certification may be stricken summarily." *Id*. BBK asserts that in a "lengthy conference call," BBK's counsel outlined proposed revisions to the Amended Complaint that would "obviate the need for filing the present motion, at least in substantial part." (Doc. 79 at 2.) In particular, BBK's counsel stated that it would add allegations regarding the alter ego nature of Defendants. (*Id*.) Nonetheless, BBK asserts that Defendants "filed the present motion the next day" without addressing BBK's proposed revisions. (*Id*.)

In a prior filing, the parties stipulated to a two-day extension in which for Defendants to respond to the Amended Complaint. The stipulation stated, in part, "Defendants will be in a position as of Friday, February 5, 2021 to either bring their Rule 12(b)(6) motion (in which case Plaintiff BBK may suggest its intended further amendments will merit denial of the motion and Defendant may rebut the same) or stipulate to further amendment of BBK's First Amended Complaint." (Doc. 66 at 2.) Defendants have since filed the present motion. BBK's response relies in significant part on a proposed "Revised Amended Complaint," attached as Exhibit A to its response, which contains allegations regarding the alter ego nature of Defendants. (Doc. 79 at 2; Doc. 79-1.) The Revised Amended Complaint has not been otherwise filed on the case docket, nor has BBK moved to amend its operative Amended Complaint.

The Court will not strike Defendants' motion for failure to comply with LRCiv 12.1(c). Defendants certified compliance with the rule, stating, "[c]ounsel for both sides met and conferred before the filing of this Motion. (See Doc. 66). Based on the statements made by BBK during the conference, CCA believes that the deficiencies highlighted in this Motion are unable to be cured through amendment." (Doc. 70 at 2 n.2.) They continued, "BBK's supposed new theories and allegations that may follow this Motion, now fifteen

1    months into the case, would be a futile attempt to salvage its claims." (*Id*.) Ultimately, "the

2    parties were unable to agree that the pleading was curable in any part by a permissible

3    amendment offered by the pleading party." LRCiv 12.1. Defendants accordingly complied

4    with their referral requirements. *See Andrich v. Navient Sols. Inc.*, No. CV-18-02766-PHX-

5    SMB, 2020 WL 1515664, at *2 (D. Ariz. Mar. 30, 2020) (finding that defendants satisfied

6    LRCiv 12.1 by "providing sufficient "written notice of the issues" they intended to

7    assert.").

8              **2.      "Revised Amended Complaint"**

9              The Court next turns to BBK's inclusion of, and reference to, its proposed "Revised

10   Amended Complaint." (Doc. 79-1.) The Court understands BBK's position to be that the

11   parties agreed, pursuant to the conferral process, that BBK would rebut Defendants' motion

12   with its "intended further amendments." (Doc. 66 at 2.) Nonetheless, as described below,

13   BBK's reliance on the Revised Amended Complaint does not comply with the Federal

14   Rules of Civil Procedure, and the Court will therefore not consider it.

15             As noted, the deadline to amend the pleadings was December 10, 2020.[3] (Doc. 41.)

16   On that date, BBK filed a motion for leave to file the Amended Complaint, which the Court

17   granted. (Docs. 54, 59.) Neither party has since moved to extend that deadline. BBK filed

18   its response to the present motion on March 8, 2021—nearly three months after the

19   amendment deadline. (Doc. 79.) At this stage in the case, Rule 15(a) of the Federal Rules

20   of Civil Procedure would permit further amendment only upon the "opposing party's

21   written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). BBK never specifically seeks

22   leave to amend the Amended Complaint, nor do Defendants indicate their consent.

23             Further, when the pleading amendment deadline has passed, as in this case, a party

24   must first comply with Rule 16's "good cause" standard to amend the case scheduling order

25   before the court turns to Rule 15(a).[4] *See Johnson v. Mammoth Recreations, Inc*., 975 F.2d

26   _____

27   [3] The initial deadline was November 10, 2020; this deadline was extended once pursuant
     to the parties' stipulation. (Docs. 31, 40.)

28   [4] The Court is aware of Ninth Circuit authority requiring *sua sponte* leave to amend from
     a dismissal for failure to state a claim, unless the court determines that the pleading could

604, 609 (9th Cir. 1992) ("Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."). Generally, to meet its burden under Rule 16's "good cause" standard, the movant is required to show:

> (1) that [the movant] was diligent in assisting the Court in creating a workable Rule 16 order; (2) that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [the movant's] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [the movant] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with the order.

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citations omitted). BBK has not attempted to make any such showing.

Even were the Court inclined to generously construe BBK's response as a motion to amend, BBK has not otherwise complied with LRCiv 15.1. That rule requires a party seeking leave to amend to "attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added.to amend." LRCiv 15.1(a). BBK has only submitted a clean copy of the Revised Amended Complaint. (Doc. 79-1.) For all of these reasons, the Amended Complaint remains the operative complaint in this case. And "by definition," a motion to dismiss involves analysis "of the operative complaint." *Figueroa v. L. Offs. of Patenaude & Felix, A.P.C.*, No. EDCV 14-325 JGB (DTBX), 2014 WL 12597118, at *2 (C.D. Cal. May 30, 2014). *See also Ramos v. FCA US LLC*, 385 F. Supp. 3d 1056, 1066 (E.D. Cal. 2019)

---

not possibly be cured by the allegation of other facts, but such circumstances are not present here. *See Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (en banc) (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

("Therefore, the Court rejects the arguments from Plaintiffs that assume that Plaintiffs' proposed amended complaint is the operative complaint. It is not. The operative complaint is Plaintiffs' original complaint."). The Court will not consider BBK's attached "Revised Amended Complaint," or any references to it in BBK's response, in connection with Defendants' pending motion to dismiss.

### 3.     Lack of Personal Jurisdiction

The Court now turns to the merits of Defendants' motion. Defendants first argue that the Subsidiary Defendants are not subject to personal jurisdiction in Arizona. (Doc. 70 at 3.) They acknowledge that the Court previously denied CCA's motion to dismiss for lack of personal jurisdiction. (Doc. 19.) In that order, the Court found that CCA was subject to specific personal jurisdiction in Arizona due to its operation of a merchandise website, http://rawgarden.co, and sales it made in Arizona.[5] (Doc. 19 at 4–12.) In the present motion, the Subsidiary Defendants argue that they "do not operate that website," "are not involved of the fulfillment of orders made on that website," and "conduct no business in Arizona and have no contacts with Arizona." (Doc. 70 at 3.) Accordingly, the Subsidiary Defendants argue that they are not subject to specific jurisdiction in Arizona. (*Id.*)

BBK appears to tacitly agree that personal jurisdiction does not exist under the Amended Complaint, stating that it "recognized and acknowledged" during the meet-and-confer process "that the First Amended Complaint needed to be augmented with allegations establishing that Defendant CCA and its subsidiaries operate as a combined entity." (Doc. 79 at 5.) The Court agrees with Defendants—and, seemingly, with BBK—that the Amended Complaint does not demonstrate that the Subsidiary Defendants are subject to personal jurisdiction in Arizona.

As the Court has previously noted, if a relevant federal statute does not provide for personal jurisdiction, generally a "district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)

---

[5] The Court also found that venue was proper in this District (*id.* at 13–18), but such an argument is not present in the pending motion.

(citing Fed. R. Civ. P. 4(k)(1)(A)). Because Arizona's long-arm statute conforms with the requirements of federal due process, the analyses of personal jurisdiction under Arizona law and federal due process are the same. *See* Ariz. R. Civ. P. 4.2(a);[6] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004).

To comport with federal due process, the non-resident defendant must have certain "minimum contacts" with the forum state such that an exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id*. at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be general or specific. A court may exercise general jurisdiction "when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017, 1024 (2021) (citation omitted). General jurisdiction extends to "any and all claims" brought against a defendant. *Id.* BBK does not assert that the Subsidiary Defendants are subject to general personal jurisdiction.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id*. Specific jurisdiction requires a defendant to have taken "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The act must show "that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id*. at 1025 (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). These rules seek to "ensure that States with little legitimate interest in a suit do not encroach on States more affected by the controversy." *Id*.

The Ninth Circuit employs a three-prong test to assess whether a defendant has sufficient minimum contacts with the forum state to be subject to specific personal jurisdiction:

---

[6] Arizona's long-arm statute states that a court "may exercise personal jurisdiction over a person, whether found within or outside Arizona, to the maximum extent permitted by the Arizona Constitution and the United States Constitution." Ariz. R. Civ. P. 4.2(a).

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Schwarzenegger*, 374 F.3d at 802) (internal citations omitted). The burden initially falls on the plaintiff to show the first two prongs but then shifts to the defendant to show the third. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

In cases involving tortious conduct, the first required element, "purposeful direction," is measured using the "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The effects test requires the defendant to "have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks and citations omitted). The Court addresses these requirements in turn.

### a.      Intentional Act

The intentional act requirement connotes an "intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. Accepting BBK's allegations as true, the Subsidiary Defendants committed intentional acts by infringing on BBK's intellectual property rights "by making, using, promoting, advertising, distributing, selling, and offering to sell" its products using BBK's "Raw Garden Names." (*See, e.g.*, Doc. 60 ¶ 7.) Accordingly, *Calder*'s first part is satisfied.

### b.      Express Aiming

An "express aiming" analysis centers on whether "the defendant's allegedly tortious

1   action was expressly aimed at the forum state." *Picot*, 780 F.3d at 1214 (citing *Brayton*

2   *Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)) (internal

3   quotation marks omitted). The precise form of analysis depends largely on the "specific

4   type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. The

5   Amended Complaint asserts that CCA Farming "cultivates cannabis that is used in the

6   manufacturing of certain cannabis products," that CCA Distribution "distributes cannabis

7   that is used for the production of certain cannabis products," and that CCA Products

8   "manufactures certain cannabis products." (Doc. 60 ¶¶ 9, 13, 16.) The entities' growing,

9   manufacturing, and selling of cannabis occur exclusively in California. (*Id.* ¶ 121.)

10       As noted, "[i]n opposing a defendant's motion to dismiss for lack of personal

11   jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."

12   *Mavrix Photo, Inc.*, 647 F.3d at 1223. The only Amended Complaint allegations that

13   potentially support personal jurisdiction over the Subsidiary Defendants in Arizona—

14   which BBK does not invoke in its response—are that "Defendants use the Website domain

15   names: www.rawgarden.farm and www.rawgarden.co," "Defendants operate a website at

16   the www.rawgarden.co domain name," and "Defendants" have fulfilled orders to one or

17   more Arizona consumers. (Doc. 60 ¶¶ 25, 26, 31, 32.) Upon a Rule 12(b)(2) motion, a court

18   "may not assume the truth of allegations in a pleading which are contradicted by affidavit.*"*

19   *Data Disc, Inc.*, 557 F.2d at 1284. Defendants have submitted a declaration from CCA's

20   Chief Operating Officer, Thomas Martin, who asserts that the Subsidiary Defendants "have

21   never had any role in the operation of the www.rawgarden.co website" or in the fulfillment

22   of orders made on such website. (Doc. 70-1 ¶¶ 12–13.)  Those entities maintain offices in

23   Buellton, California; have never had any offices, employees, or bank accounts in Arizona;

24   and have not filed tax returns or advertised in the state. (*Id.* ¶¶ 14–18.) The Court will

25   accordingly not assume the truth of BBK's allegations in light of Mr. Martin's declaration.

26   *Data Disc, Inc.*, 557 F.2d at 1284.

27       Further, a plaintiff cannot "simply rest on the bare allegations of its complaint"

28   when facing a motion to dismiss for lack of personal jurisdiction. *Schwarzenegger*, 374

F.3d at 800 (citing *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). As Defendants note, the original Complaint asserted that CCA (only) operated the merchandise website. The Amended Complaint now simply substitutes the word "Defendants" for "Defendant" without any additional factual support. (Doc. 70 at 9.) These bare allegations, with respect to the Subsidiary Defendants, are not sufficient to make a showing of personal jurisdiction. *See also Sher*, 911 F.2d at 1365 ("Regardless of their [alleged] joint liability, jurisdiction over each defendant must be established individually.").

BBK asserts that its proposed Revised Amended Complaint, discussed above, and the materials it references, demonstrate that Defendants "in fact operate as a single combined entity for all practical purposes." (Doc. 79 at 5.) It asserts that "[b]ased on the alter ego nature of the relationship between CCA and the subsidiaries, the Court's determination of personal jurisdiction with respect to CCA also applies to the subsidiaries." (*Id.* at 10.) But as noted, the operative Amended Complaint contains no such allegations. In fact, as Defendants state, the "phrase 'alter ego' does not appear anywhere" in the Amended Complaint. (Doc. 103 at 8 n.3.)  This argument is not persuasive.

Lastly, the Court is aware that, in the context of a motion to dismiss for lack of personal jurisdiction, a plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986) (quoting *Amba Marketing Systems, Inc.*, 551 F.2d at 787). BBK cites authority indicating that it could rely on "affidavits and discovery material" to demonstrate personal jurisdiction. (Doc. 79 at 4) (citing *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1187 (9th Cir. 2002)). But BBK has produced no affidavits or discovery material in connection with the pending motion. BBK has also not provided persuasive authority indicating that the Court may consider the Revised Amended Complaint's allegations as "facts" for purposes of the present motion.[7]

---

[7] BBK also asserts that the Revised Amended Complaint's allegations must be "taken as true." (*Id.*) Its cases are not persuasive. For example, in *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014), the issue of personal

1    For all of these reasons, the Court finds that BBK has not established specific

2    personal jurisdiction over the Subsidiary Defendants.[8] It will grant the Subsidiary

3    Defendants' Rule 12(b)(2) motion.

4                    **4.    Failure to State a Claim**

5    The Court next addresses arguments by CCA's motion to dismiss BBK's two

6    newly-added claims under Rule 12(b)(6).

7              **a.    Trademark Applications "Void Ab Initio" (Count 6)**

8    In Count 6 of the Amended Complaint, BBK asserts a new claim for "Lack of Bona

9    Fide Intent to Use—Applications *Void Ab Initio*" against CCA. (Doc. 60 ¶ 224–28.) A

10   trademark registration applicant based on intent to use must have, at the time it files the

11   application, a "bona fide intention, under circumstances showing good faith of such person,

12   to use a trademark in commerce." 15 U.S.C. § 1051(b); (Doc. 60 ¶ 225). It alleges that

13   CCA did not have such an intention with respect to its specified trademark applications.

14   BBK alleges that such applications are "therefore *void ab initio* and not entitled to

15   registration."[9] (*Id.* ¶¶ 226–28.) It seeks a judgment declaring that the specified applications

16   are void and an "injunction directing either CCA to expressly abandon these applications

17   or the Director of the [USPTO] to refuse registration of these applications." (*Id.* at 49.)

18   CCA moves to dismiss this claim on grounds that a federal court is not empowered

19   to cancel federal trademark applications. The Court observes that CCA first states that it

20   moves under Rule 12(b)(6) for failure to state a claim (Doc. 70 at 2), and later asserts that

21

22   _____

jurisdiction was not before the court, and the court cited the general proposition that the
23   factual allegations of the (operative) complaint are "taken as true" for purposes of resolving
     a 12(b)(6) motion. *Id.* at 996 (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

24   [8] Because the Court finds that the Subsidiary Defendants are not subject to personal
25   jurisdiction in this District, the Court need not address the Subsidiary Defendants'
     alternative argument pursuant to Rule 12(b)(6).

26   [9] The specified trademark applications are Serials Nos. 88978396, 88978412, 88978328,
     88978410, 88978326, 88978393, 88978394, 88978395, 88978335, 88978431, 88978432,
27   88978433, 88978415, 88978337, 88978414, 88978413, 88978329, 88978411, 88488733,
     88978409, 88318474, 88978408, 87324208, 8732412, 88978327, 88978336, 88266152.
28   (*Id.* at 49.)

the Court "has no jurisdiction to grant the relief BBK requests," seemingly invoking Rule 12(b)(1). (*Id.* at 14.) Regardless, although the Ninth Circuit Court of Appeals does not appear to have ruled that BBK's requested relief may be granted, other circuits have held as much in recent years. *See, e.g., M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 1375 (Fed. Cir. 2015) ("Because this court has not previously done so, we first address the issue of whether lack of a bona fide intent is proper statutory grounds on which to challenge a trademark application. The PTO has long held that lack of such intent is a proper basis on which an opposer can challenge an applicant's registration. We agree."); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 21 (D.C. Cir. 2008) ("A bona fide intent is a statutory requirement of a valid trademark application under § 1(b), and the lack of such intent is therefore a ground on which [plaintiff] may oppose [defendant's] application."); *Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 863–64 (6th Cir. 2017) ("We therefore join the Federal and D.C. Circuits and hold that a lack of bona fide intent is a proper ground on which to oppose an [intent-to-use] application.").[10]

CCA attempts to distinguish these cases, noting that *M.Z. Berger & Co.* and *Aktieselskabet AF 21. Nov. 200* were appeals from Trademark Trial and Appeals Board decisions (first appealed to the relevant district court), and that the parties stipulated to the district court's review of the applications' validity in *Kelly Services, Inc.* (Doc. 103 at 10.) The cases' holdings are not specifically limited to such circumstances, though. Further, district courts in the Ninth Circuit appear to have awarded the relief that BBK seeks. *See, e.g., Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1193 (D. Nev. 2003) ("The Court therefore finds that [defendant's] intent to use applications for COLOSSEUM and EMPIRE were not made with a bona fide intent to use and are void.").

Accordingly, and without commenting on the likelihood that BBK will prevail on the merits, the Court concludes that BBK has sufficiently stated the minimal requirements

---

[10] To the extent that BBK's response invokes the "Revised Amended Complaint" (Doc. 79 at 15–16), those references, and that document, are disregarded as previously indicated. The present order assesses only the substance of the operative Amended Complaint. (Doc. 60.)

to proceed on its claim to void CCA's trademark applications. CCA's motion to dismiss Count 6 of the Amended Complaint is denied.

### b.    False Advertising (Count 7)

In Count 7, BBK asserts a false advertising claim against CCA under the Lanham Act, 15 U.S.C. § 1125(a).[11] A false advertising claim under Section 43(a) of the Lanham Act requires the following elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). BBK alleges that CCA has "made false statements in advertising that is used in interstate commerce; that deceive or are likely to deceive consumers; that are likely to influence consumer decisions; and that have injured or are likely to injure BBK." (Doc. 60 ¶ 47.) Specifically, BBK alleges that CCA has falsely advertised that it was founded in 2007, and that "Raw Garden" branding began in 2007, 2008, or 2011, when in fact CCA formed in 2015 and began using "Raw Garden" in 2016. (*Id.* ¶¶ 154–173.) BBK argues that "cannabis consumers in California base their purchasing choices in part on the amount of time a company and its products have been in existence and on the market." (*Id.* ¶ 175) It asserts that CCA's statements have caused consumers to believe that CCA and BBK, which was formed on an unspecified date, are "comparable and the companies who produced those two product lines are likely to be the same or related," which has resulted in consumer confusion. (*Id.* ¶ 178–79.)

---

[11] The claim references "Defendants"; because the Court has already determined that the Subsidiary Defendants are not subject to personal jurisdiction, the Court addresses this claim only as to CCA. (Doc. 60 ¶ 230.)

CCA moves to dismiss on grounds that BBK does not have standing to assert a false advertising claim under the Lanham Act. (Doc. 70 at 14.) In *Lexmark International, Inc.*, the Supreme Court "determined that a plaintiff seeking to pursue a Lanham Act claim must demonstrate standing beyond the typical Article III requirements." *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014)). A false advertising plaintiff must have an Article III injury falling within the Lanham Act's "zone of interests." *Lexmark Int'l, Inc.*, 572 U.S. at 131. To "come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131–32. A false advertising plaintiff must also show an injury that is "proximately caused by violations of the statute." *Id.* at 132. In sum, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133–34.

BBK's first failure, according to CCA, is its "inability to show that BBK and CCA are competitive in any market." (Doc. 70 at 15.) It points to BBK's self-described sales of "smoking products" and that CCA is a cannabis company that sells promotional merchandise on its website. (Doc. 60 ¶¶ 35, 93, 96.) "There are simply no allegations that plausibly support a claim that BBK and CCA compete in any market." (Doc. 70 at 15–16.) To the extent that CCA suggests that BBK's claim fails because the two are not direct competitors, the Court rejects that argument. *See Mitcheson v. El Antro LLC*, No. CV-19-01598-PHX-GMS, 2020 WL 7075239, at *15 (D. Ariz. Dec. 3, 2020) (" In establishing the zone of interest analysis, the Court explicitly rejected bright line competition rules like the 'direct-competitor test.'") (citing *Lexmark Int'l, Inc.*, 572 U.S. at 136); *see also ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2019 WL 3840988, at *6 (D. Ariz. Aug. 15, 2019) ("However, a plaintiff does not have to be a direct competitor of the defendant to be injured and, therefore, have standing to bring a false

advertising claim under the Lanham Act.").

Nonetheless, the Court agrees that BBK has failed to state a claim because, at minimum, it does not adequately allege that CCA's purportedly false advertising proximately caused any reputational or economic injury to BBK. Count 7 asserts that CCA has made false statements that deceive or are likely to deceive consumers, that are likely to influence consumer decisions, and therefore "have injured or are likely to injure BBK." (Doc. 60 ¶ 230.) The Court finds these allegations to be similar to those in *Bobbleheads.com, LLC*, in which the complaint asserted that defendants engaged in false advertising and "this has somehow caused Plaintiff to suffer damages. . . . There are no more specific allegations of, at the very least, lost sales or damage to its reputation." 259 F. Supp. 3d at 1097. The court found, as does this Court, that those allegations are "insufficient to plead proximate causation to support a Lanham Act claim." *Id.*

Further, to state a plausible reputational or competitive injury, a "plaintiff must allege some factual support for its allegations." *Thermolife Int'l, L.L.C. v. NeoGenis Labs, Inc.*, No. 2:18-CV-2980-HRH, 2019 WL 1438293, at *6 (D. Ariz. Apr. 1, 2019). BBK does not allege any such facts. "Because [BBK] does not allege any facts indicating how its sales or reputation may have been or will be affected by [CCA's] alleged conduct, the Court finds that it does not allege a plausible competitive injury." *Am. Fitness Wholesalers LLC*, 2019 WL 3840988, at *7. The Court finds that BBK's conclusory allegations are not sufficiently supported by alleged facts. It has failed to allege proximate cause and therefore standing to assert a false advertising claim under the Lanham Act. CCA's motion to dismiss Count 7 pursuant to Rule 12(b)(6) is granted.[12]

\*                    \*                    \*

In sum, the Court grants Defendants' motion to the extent that BBK's Amended Complaint (Doc. 60) fails to assert personal jurisdiction over the Subsidiary Defendants—CCA Farming, CCA Distribution, and CCA Products—in Arizona, and that Count 7, for

---

[12] Because the Court finds that the Amended Complaint does not sufficiently allege standing for BBK to bring its false advertising claim, the Court need not reach the parties' other arguments related to this claim.

false advertising under the Lanham Act, fails to state a claim against CCA. It denies CCA's request to dismiss Count 6, for invalidation of trademark applications, under Rule 12(b)(6).

**B.  BBK's Motion (Doc. 77)**

In the second motion pending before the Court, BBK moves to dismiss Counts 1 and 2 of CCA's counterclaims for failure to state a claim under Rule 12(b)(6). (Doc. 77.) Both claims seek to cancel BBK's trademarks due to their apparent connection to cannabis, which is a prohibited controlled substance under the Controlled Substances Act. *See* 21 U.S.C. § 812.

**1.  Cancellation of Marks—Fraud on the USPTO (Count 1)**

CCA's first counterclaim is for cancellation of BBK's specified marks for fraud on the USPTO pursuant to 15 U.S.C. § 1064(3). CCA states that BBK filed applications with the USPTO for its "RAW" (and related) marks,[13] and obtained registrations for such marks, as identified in paragraph 15 of its Counterclaim.[14] (Doc. 71 ¶¶ 15, 63.) In connection with these applications, BBK "affirmatively represented to the USPTO that the BBK Marks would be used in connection with the BBK Products." (*Id*. ¶ 65.) CCA claims that these declarations were intentionally false because BBK knew when making them that the marks "were not lawfully used in commerce because they are not traditionally intended for use with tobacco products and are primarily intended or designed for use with cannabis." (*Id*. ¶ 66.) BBK's statements to the USPTO were allegedly "false, deceptive and misleading when made, made with the requisite intent to deceive the USPTO, and were relied upon by the USPTO." (*Id*. ¶ 67.)

An aggrieved party may "petition to cancel a registration of a mark . . . [a]t any time if . . . its registration was obtained fraudulently." 15 U.S.C. § 1064(3).  Such fraud "occurs when an applicant knowingly makes false, material representations of fact in connection

---

[13] As identified by CCA, these include Registration Nos. 2989221, 3422929, 4041076, 4074036, 4325822, 4412202, 4647824, 4766952, 4675473, 4921168, 5046495. (*Id*. at 20–22.)

[14] Paragraph 63 of CCA's Counterclaim states, "CCA filed applications with the USPTO for the BBK Marks…" (*Id*. ¶ 63.) The Court understands the reference to "CCA," as opposed to "BBK," to be a typographical error.

with an application." *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006). A prima facie case of fraudulent procurement requires "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)). The heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, requiring that fraud "be stated with particularity," applies to claims of fraud in the procurement of trademarks. *See Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F.Supp.2d 950, 953 (N.D. Cal. 2005); Fed. R. Civ. P. 9(b). In the Ninth Circuit, pleadings satisfy Rule 9(b) when they "identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (citation omitted).

BBK argues that CCA's Count 1 fails as a matter of law because it is based on the "false presumption" that BBK had an "affirmative duty" to disclose "all uses of a product when making any declaration of use of the trademark for the product."[15] (Doc. 77 at 13.) It cites three USPTO disclosure rules—Trademark Manual of Examining Procedure § 818 and Trademark Rules 2.61 and 2.69—none of which, it argues, require voluntarily disclosure of all potential product uses. (*Id.* at 14.) Because the USPTO could have asked BBK for information about the potential uses of its products, but did not do so for 10 of the 11 applications at issue, BBK argues that there is no legal basis to claim that BBK knowingly made false statements or fraudulently concealed material facts. (*Id.* at 15.)

CCA responds that it does not contend that BBK had an affirmative duty to disclose all potential uses of its products. Rather, CCA asserts that BBK knew that it made false

---

[15] BBK also argues that the products at issue fall under the "tobacco exemption" of 21 U.S.C. § 863(f)(2). (*Id.*) As discussed below, however, the Court is not persuaded by this argument at the motion to dismiss stage.

statements to the USPTO when it stated that its products were in lawful use in commerce. CCA identifies two specific representations to the USPTO: first, BBK's filed declarations representing that its products were "lawfully used in commerce," and second, a statement from BBK's founder, Josh Kesselman, in response to a USPTO Office Action. (Doc. 89 at 15.)

Upon review, the Court finds that CCA has sufficiently explained the "who, what, when, where, and how" of the alleged fraud, and why it was false. *Cafasso*, 637 F.3d at 1055. CCA has identified the relevant declarations of use, submitted to the USPTO on specified dates, and signed by the relevant BBK representative. (Doc. 89 at 16; Doc. 71 ¶¶ 15, 28, 30.) CCA claims that the representations made therein were false because the products at issue are illicit "drug paraphernalia," and therefore the marks were not in a lawful use in commerce. (Doc. 89 at 16; Doc. 71 ¶ 66.) CCA also identifies a September 25, 2015 declaration submitted to the USPTO by Mr. Kesselman, stating that BBK "is a large company that has manufactured tobacco rolling papers, tubes and other related tobacco accessories for nearly 20 years." (Doc. 89 at 17; Doc. 71 ¶ 58.) CCA argues that this statement "was knowingly false or, at the very least, it was a partial representation that fraudulently concealed material facts relating to BBK making and selling non-exempt drug paraphernalia." (Doc. 71 ¶ 58.) BBK responds that Mr. Kesselman's statement "is entirely true, evident from public information." (Doc. 77 at 16.)  The Court will not resolve such factual disputes upon a motion to dismiss. Rather, the Court agrees with CCA that these "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *BBK Tobacco & Foods LLP v. Skunk Inc.*, No. CV-18-02332-PHX-JAT, 2019 WL 6050200, at *3 (D. Ariz. Nov. 15, 2019) (citing *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)). The Court will deny BBK's motion to dismiss Count 1 of CCA's counterclaim.

### 2.      Cancellation of Marks—Unlawful Use (Count 2)

For its second counterclaim, CCA moves to cancel BBK's marks for unlawful use

pursuant to 15 U.S.C. § 1064(3). CCA claims that BBK's products constitute unlawful drug paraphernalia under 21 U.S.C. § 863 because they are primarily intended or designed for use in preparing or inhaling cannabis. Doc. 71 ¶¶ 74.) CCA seeks cancellation of BBK's marks on this basis. (*Id.* ¶ 77.) The Court first addresses BBK's request for judicial notice, and then turns to the merits of BBK's motion to dismiss.

### a.    Judicial Notice

As a preliminary matter, the Court addresses BBK's request that the Court take judicial notice of 23 exhibits largely comprised of "BBK's catalog and certain public advertising statements whose authenticity CCA cannot question." (Doc. 77 at 3 n.2.; Docs. 27-1–27-9.) BBK asserts that these materials demonstrate that the products at are "traditionally intended for use with the 'RYO' ('roll-your-own') tobacco cigarette products that have existed for centuries," as opposed to products used in connection with cannabis. (Doc. 77 at 7.) CCA opposes the request. (Doc. 89 at 4.)

Generally, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee*, 250 F.3d at 688 (citation omitted). Rule 12(d) expressly provides that when, upon a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). There are two exceptions to this rule. First, a court may consider "material which is properly submitted as part of the complaint" without converting the motion to dismiss into a motion for summary judgment. *Lee*, 250 F.3d at 688. If the documents are not physically attached to the complaint, they may be considered if their "authenticity . . . is not contested" and "the plaintiff's complaint necessarily relies" on them. *Lee*, 250 F.3d at 688 (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir.1998)). Second, a court may take judicial notice of "matters of public record" under Fed. R. Evid. 201. *Id.*

BBK asserts that the advertisements are "undisputed documentation" and that CCA's counterclaim references BBK's advertisements "generally." (Doc. 77 at 3 n.2.) It claims that because the materials are "not subject to reasonable dispute, the Court may take

judicial notice of such materials without converting this motion to a Rule 56 motion." (Doc. 77 at 9.) The Court generally does not agree. Rule 201 of the Federal Rules of Evidence permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citing Fed. R. Evid. 201(b)). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id*. (citing Fed. R. Evid. 201(b)(1)–(2)). The documents at issue are not specifically referenced in CCA's Counterclaim. CCA also disputes the accuracy of these materials. (Doc. 89 at 6.) The Court accordingly will not take judicial notice of BBK's advertising and related materials, with two exceptions.

BBK's Exhibits B and D are both public records. Exhibit B contains records in connection with a USPTO application filed by CCA. (Docs. 27-2, 27-3.) The Court may take judicial notice of USPTO records "only for the limited purpose of demonstrating that the filings and actions described therein occurred on certain dates." *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014). Exhibit D is a U.S. Food and Drug Administration ("FDA") website regarding "Roll-Your-Own Tobacco" products. (Doc. 27-4 at 8–11.) The Court may take judicial notice of the FDA's website. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) ("The Court may take judicial notice of materials available on government agency websites."). The Court ultimately is not persuaded by these materials. Nonetheless, the Court grants BBK's request for judicial notice as to Exhibits B and D, attached to BBK's original motion to dismiss (Docs. 27-2, 27-3, 27-4 at 8–11), and otherwise denies the request.

### b.    Merits of Unlawful Use Claim

To register a trademark, an applicant must show that the mark "is in use in commerce" or that the applicant has a "bona fide intention to use the mark in commerce[.]" 15 U.S.C. §§ 1051(a)(3)(C), (b)(3)(B). "It has long been the policy of the [USPTO]'s Trademark Trial and Appeal Board that use in commerce only creates trademark rights when the use is *lawful*." *CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th

Cir. 2007) (emphasis in original). The lawful use requirement is applicable to a claim for cancellation of a registered mark. *See GoClear LLC v. Target Corp.*, No. C 08-2134 MMC, 2009 WL 160624, at *3 (N.D. Cal. Jan. 22, 2009).

As noted, Count 2 of CCA's counterclaim seeks to cancel BBK's specified marks because they constitute unlawful, non-exempt drug paraphernalia that "are primarily intended or designed for use in preparing and/or inhaling cannabis." (Doc. 71 at 51.) BBK moves to dismiss this counterclaim on grounds that the Controlled Substances Act exempts from the definition of "drug paraphernalia . . . any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory." 21 U.S.C. § 863(f)(2). BBK relies in significant part on the aforementioned exhibits, which it argues "require the conclusion that BBK's products are 'traditionally intended for use with tobacco products' and therefore expressly exempt under the [Controlled Substances Act]." (Doc. 77 at 7.)

The Court construes the allegations in CCA's counterclaim in the light most favorable to CCA. *North Star Int'l*, 720 F.2d at 580. CCA has plausibly alleged that the BBK products at issue are not, in fact, traditionally intended for use with tobacco products. It cites, for example, an interview in which Mr. Kesselman stated that the "RAW" branded rolling papers were developed "in order to match the new, incredibly high-end strains that are so moist and so perfect and beautiful that we now have." (Doc. 71 ¶ 55.) CCA asserts that Mr. Kesselman was "clearly referring to cannabis." (*Id.*; Doc. 89 at 10–11.) As another example, BBK asserts that its "cone" products are "traditional tobacco products." (Doc. 77 at 10.) But CCA points to a BBK advertisement of a "cone" product containing a green substance and the text "who's down to blaze?!" (Doc. 71 ¶ 60; Doc. 89 at 12.) CCA argues that "at the very least, [BBK] posts photographs of its cones on social media that contain a substance that is meant to appear to be cannabis." (Doc. 89 at 12.) The Court agrees with CCA that a motion to dismiss is not the appropriate stage at which to resolve these factual disputes.

1   The Court also notes, in particular, that it is not persuaded by BBK's invocation of

2   Judge Teilborg's recent decision in *BBK Tobacco & Foods LLP v. Skunk Inc.*, No. CV-18-

3   02332-PHX-JAT (D. Ariz. Dec. 15, 2020) (Doc. 77 at 11). BBK cites this order for the

4   position that, "as a matter of law, cigarette rolling papers, lighters, cigarette tubes, cigarette

5   glass tips, hemp pre-rolled smoking tubes, and hemp cigarette rolling papers all 'fall within

6   § 863(f)(2)'s traditional-tobacco-use exemption and are, therefore, not drug paraphernalia

7   under the CSA.'" (Doc. 77 at 10.) In that order, upon a motion for summary judgment—as

8   opposed to a motion to dismiss—the court found that defendant Skunk, Inc. did "not even

9   attempt to specify which of the SKUNK and SKUNK BRAND products it believes are

10   within or excluded from the traditional-tobacco-use exemption." (Doc. 77-1 at 39.) As

11   described above, the same is not true of CCA in this case. Accordingly, the Court does not

12   believe that this order stands for the universal proposition that BBK suggests.

13   For all of these reasons, BBK's motion to dismiss Count 2 of CCA's counterclaim

14   is denied.

15   **IV.    CONCLUSION**

16   Accordingly,

17   **IT IS ORDERED granting** Defendants' Motion to Dismiss First Amended

18   Complaint (Doc. 70) to the extent that Defendants CCA Farming, CCA Distribution, and

19   CCA Products are dismissed for lack of personal jurisdiction and that Count 7 (false

20   advertising) is dismissed for failure to state a claim. The motion to dismiss Count 6

21   (invalidation of trademark applications) is **denied**.

22   **IT IS FURTHER ORDERED denying** Plaintiff BBK's Motion to Dismiss

23   Counterclaimant's Counterclaims. (Doc. 77.)

24   Dated this 4th day of May, 2021.

25

26

27   Michael T. Liburdi

28   United States District Judge