Brian W. LaCorte (012237)
LaCorteB@ballardspahr.com
Jonathon A. Talcott (030155)
TalcottJ@ballardspahr.com
Mitchell Turbenson (033278)
TurbensonM@ballardspahr.com
**BALLARD SPAHR LLP**
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Tel:    602.798.5400
Fax:   602.798.5595

Brett M. Schuman (*pro hac vice*)
BSchuman@goodwinlaw.com
Jeremy N. Lateiner (*pro hac vice*)
JLateiner@goodwinlaw.com
Nicholas M. Costanza (*pro hac vice*)
NCostanza@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel:    415.733.6000
Fax:   415.677.9041
*Attorneys for Defendant and Counterclaimant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| BBK Tobacco & Foods, LLP, an Arizona Limited liability partnership, d/b/a HBI International,<br><br>    Plaintiff,<br>v.<br>Central Coast Agriculture, Inc., a Delaware corporation,<br><br>    Defendant. | Case No. CV-19-05216-PHX-MTL<br><br>**CENTRAL COAST AGRICULTURE, INC.'S RESPONSE TO BBK'S MOTION FOR RULING ON BBK'S OBJECTION TO CCA'S "HIGHLY CONFIDENTIAL" DESIGNATIONS (DOC. 255) AND RESPONSE TO MOTION TO SEAL (DOC. 257)** |
| Central Coast Agriculture, Inc., a Delaware corporation,<br><br>    Counterclaimant,<br>v.<br>BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>    Counterdefendant. | |

**I.     INTRODUCTION.**

Plaintiff and Counterdefendant BBK Tobacco & Foods, LLP's ("BBK's") Motion regarding Confidentiality Designations (Doc. 255)—which attaches the bulk of Defendant and Counterclaimant Central Coast Agriculture, Inc.'s ("CCA's") "HIGHLY CONFIDENTIAL" deposition transcript designations—takes BBK's goal of making this litigation as expensive to CCA as possible to new heights.  Fact discovery closed *seven months ago* and BBK has had some of these designations for over *nine months*; yet, BBK only now seeks to contest the bulk of CCA's "HIGHLY CONFIDENTIAL" designations, citing its own difficulty abiding by the Court's Protective Order as the basis for doing so. (*See* Doc. 255 at 3 (referencing "HIGHLY CONFIDENTIAL" information must "be reviewed with CCA in a last-minute process with extremely tight time deadlines," but failing to acknowledge that **BBK** proposed those timelines, Doc. 51));[1] *see* Doc. 259 at 10 ("BBK has undoubtedly been careless with respect to certain of its filings" under the Protective Order)).

The Court should deny BBK's Motion for at least three reasons.  First, and most fundamentally, this is a joint discovery dispute and should be brought to the Court as such under the Court's Scheduling Order.  (Doc. 31 at 4–5).  BBK initially acknowledged this issue should be brought to the Court as a joint discovery dispute but then, suddenly, reversed position on the ***day of filing*** and filed this motion.  As will be discussed below, BBK's refusal to file a joint discovery motion has caused BBK to present unnecessary "objections" to the Court on material that is not designated "HIGHLY CONFIDENTIAL."[2]

---

[1] BBK's objection on this ground is confusing at-best.  First, BBK only objects to certain "HIGHLY CONFIDENTIAL" designations but the Protective Order requires the same process for conferring prior to filing a motion to seal for the lesser "CONFIDENTIAL" standard. (Doc. 52 at 7–8).  Further, while BBK apparently *now* takes the position that all of the identified excerpts do not meet the lesser *Confidential* standard (Doc. 255 at 4), the parties ***did not*** meet and confer on that issue, as required under the Protective Order.  (Doc. 52 at 7–8).  In fact, despite being asked during the meet and confer conference that BBK provide specific objections to excerpts that it believed did not meet the "CONFIDENTIAL" standard (as opposed to the "HIGHLY CONFIDENTIAL" standard), BBK provided no further objections.  (*See* Declaration of Mitchell Turbenson ("**Dec.**") at ¶¶ 5–7).

[2] BBK further includes in its Motion, deposition excerpts that CCA *already informed BBK* are public prior to BBK filings its Motion.

1

Second, fact discovery closed *seven months ago* and BBK has had some of these confidentiality designations for *nine months* (and at the very least for around seven months).[3]  As the Court has made clear:

> Absent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery . . . . Delay in presenting discovery disputes for resolution is not a basis for extending discovery deadlines.

(Doc. 31 at 5).  These designations all relate to *fact discovery* depositions and, thus, should have been brought during or shortly after the close of fact discovery.  BBK completely ignores the Court's guidance on timely resolving fact discovery disputes and suggests that it plans to bring many other discovery disputes to the Court that arose over seven months ago.  (Doc. 255 at 10 (stating BBK plans to next file motions relating to confidentiality designations in CCA's "MIDP and discovery responses," all of which were served at least *seven months ago*)).  The Court should not permit BBK's continued campaign to draw up needless disputes (especially when BBK was apparently content to permit designations to remain in place for *months*).

Third, CCA's designations are proper under the "HIGHLY CONFIDENTIAL" standard in the Protective Order.  Indeed, the Court has already ruled that much of this information (which fall under the categories of "financial," "product development" and "market research" information) meet the higher sealing standard.  (Doc. 259 at 6).  As the Court can generally see, CCA's designations are not wholesale; rather, they are tailored to a few lines or discrete lines of questioning.[4]  For example, among those designations the parties *actually* contest, BBK objects to designations on just 19 pages of the Darren Clark

---

[3] The last set of confidentiality designations contested by BBK (those for Grant Carmichael's April 30, 2021 deposition) were transmitted to the Court Reporter on May 14, 2021. (Dec. ¶ 4).

[4] BBK's attachments are incomplete deposition transcripts that highlight just the portion of designations that BBK's objects to (not the entire portion of the transcript designated confidential).  In many cases, the context of the deposition transcript provides greater justification for the designation and required CCA to designate (for example) questions restating answers as "HIGHLY CONFIDENTIAL."  Not only is BBK's excerpting inconsistent with the Protective Order (Doc. 52 at 8 (stating "the document shall be submitted to the Court")) but it robs the Court of the ability to review the designated information in context.

deposition (which is *289 pages* long).

## II. LEGAL STANDARD

Designating information as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" under the Court's Protective Order is based on the subjective "good faith ***belief***" of each party and party's counsel, as elaborated by the following:

> For "CONFIDENTIAL" information: "in the good faith belief of such party and its Counsel, the information is not publicly available and the unrestricted disclosure of such information could be harmful to the business or operations of such party.
>
> For "HIGHLY CONFIDENTIAL" information: "in the good faith belief of such party and its Counsel, the information is among that considered to be most sensitive by the producing party, including but not limited to trade secrets, under applicable law, or other highly sensitive and proprietary confidential information, the value of which depends on protecting it from disclosure to other businesses or commercial entities. HIGHLY CONFIDENTIAL – FOR COUNSEL EYES ONLY information can include market research, product development plans, financial data, sales records or customer related data.

(Doc. 52 at 2–3). In evaluating similar provisions under Protective Orders, courts tend not to second guess a designating party's subjective "good faith belief" in designating information under a confidentiality level, unless the nondesignating party provides specific justification to do so. *See, e.g.*, *Bayer AG v. Sony Elecs., Inc.*, 202 F.R.D. 404, 409 (D. Del. 2001) ("The Court concludes that Plaintiff fails to provide sufficient justification to rebut Defendants' good faith belief that the powders warrant 'highly confidential' status. Therefore, the powders will be afforded such status in accordance with the stipulated protective order.").

Separately, the Protective Order disclaims that marking information "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL" does not relieve a party of justifying information should not be publicly disclosed under the "compelling reasons" or "good cause" standards for motions to seal. (Doc. 52 at 6–7).

3

Case 2:19-cv-05216-MTL   Document 264   Filed 12/06/21   Page 5 of 11

## III. DISCUSSION

### A. The Court Should Deny BBK's Motion Because It Was Not Filed as a Joint Discovery Dispute, Which Would Permit BBK to Fix Errors in Its Motion.

The Court's Scheduling Order provides that:

> In the course of written discovery, if a discovery dispute arises and cannot be resolved despite sincere efforts to resolve the matter through personal consultation (in person or by telephone), the parties shall <u>jointly</u> file (1) a joint motion containing a written summary of the dispute, not to exceed three pages, with explanation of the position taken by each party, and (2) a <u>joint</u> written certification that counsel or the parties have attempted to resolve the matter through personal consultation and sincere efforts as required by Local Rule of Civil Procedure 7.2(j).

(Doc. 31 at 4–5). The Order further notes "If the opposing party has refused to personally consult, the party seeking relief shall describe the efforts made to obtain personal consultation." (Doc. 31 at 5). The Protective Order, which permits filing objections, does not contradict the Scheduling Order but merely sets forth a longer meet-and-confer period of 14 calendar days before approaching the Court via a motion. (Doc. 52 at 7–8).

As BBK acknowledges in its Motion, it agreed that its objections would be presented as a joint discovery motion and only informed CCA it changed positions ***on the day of filing*** its Motion. (Doc. 255 at 10; Dec. at ¶¶ 8–11). The practical effect of BBK's sudden reversal in submitting a joint discovery motion is that it has unnecessarily submitted objections to: (1) material that ***CCA long ago*** informed BBK were no longer designated "HIGHLY CONFIDENTIAL"[5]; and (2) general information that CCA already permitted BBK to file publicly because it did not meet the "compelling reasons" standard.[6] That material—which, to be clear, is no longer "HIGHLY CONFIDENTIAL" by operation of

---

[5] For example, CCA's counsel sent BBK an e-mail on October 27, 2021 containing de-designations and re-designations for 19 excerpts of depositions, some of which BBK has preposterously included in its Motion. (*See* **Exhibit 2**).

[6] BBK's filing of the same general information as that previously marked "HIGHLY CONFIDENTIAL" occurred after the parties met and conferred and, thus, CCA did not have an opportunity to discuss waiver of designations with BBK before BBK filed its Motion. (*See* Dec. at ¶¶ 11–12).

4

the Court's Protective Order—includes the following:[7]

| Deposition | De-Designated Excerpt(s) |
|---|---|
| Al-Naser Deposition | 37:5–23, 38:2–7; 71:11–18; 125:13–21 |
| Carmichael Deposition | 66:25–67:17 |
| De Friel Deposition | 82:7–85:9, 85:19–86:8, 86:11–87:13, 87:20–88:14, 115:11–18, 115:24–116:4, 124:5–12 |
| Enoki Deposition | 38:17–41:13, 145:8–147:3, 148:17–23, 149:2–151:6, 151:13–152:22, 159:22–161:21 |
| Bobzin Deposition | 113:10–17, 113:24–114:1 |
| Clark Deposition | 65:4–13, 67:2–6 (but not 67:7–10), 123:10–18, 211:18–19, 211:25–212:7, 274:6–13 |

Similarly, although referenced in BBK's Motion, BBK did not attach transcripts for the following excerpts, and, thus, does not appear to their "HIGHLY CONFIDENTIAL" designations:

| Deposition | Uncontested Excerpt(s) |
|---|---|
| Bobzin Deposition | 26:15–27:4, 27:10–29:18, 29:21–32:18, 33:2–4, 33:8–34:18, 48:15–23, 50:2–55:20 |
| Clark Deposition | 67:18–69:14, 69:18–22, 120:23–121:1, 238:4–10 |
| Carmichael Deposition | 68:14–69:9 |

The above excerpts demonstrate the wisdom of the Court's joint discovery motion protocol applying to all fact discovery motions. Were BBK to have exchanged portions of its dispute with CCA prior to filing its Motion (as opposed to giving CCA less than five hours' notice of the filing, Dec. at ¶ 10), CCA would have been able to identify the above-referenced excerpts and minimized the burden on the Court. Because BBK did not file its motion as a joint discovery motion, the Court should deny BBK's Motion for failing to follow the protocol.

---

[7] As CCA informed BBK, because much of the material BBK was seeking to lodge under seal was no longer designated "HIGHLY CONFIDENTIAL," CCA needed a little time to review the material before joining the motion to seal. To the extent a motion to seal is required, CCA does not oppose BBK's motion to seal (Doc. 257), with the exception of the "De-Designated Excerpts," which should not be lodged under seal.

### B. BBK Cannot Justify Waiting *Nine Months* to Contest Confidentiality Designations

The Court's Scheduling Order provides:

> Absent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery . . . . Delay in presenting discovery disputes for resolution is not a basis for extending discovery deadlines.

(Doc. 31 at 5). CCA circulated the designations BBK now objects to as long as over *nine months ago*; the last of the designations challenged in BBK's improper motion were made nearly *seven months ago*. (**Exhibit 1**; Dec. ¶¶ 3, 4). Although BBK obviously has had difficulty abiding by the Court's Protective Order and sealing orders, that does not justify de-designating good faith confidentiality designations. (Doc. 51). Thus, while BBK suggests that its difficulty abiding by the Protective Order is the reason it is only now seeking to de-designate the bulk of CCA's "HIGHLY CONFIDENTIAL" designations, (Doc. 255 at 3), that difficulty can hardly constitute "extraordinary circumstances" justifying BBK's lengthy delay. Indeed, BBK alludes that it will present further motions for discovery responses circulated over *seven months ago* (and for which BBK has not yet sent objections to CCA) if the Court permits BBK to raise such delayed objections. (Doc. 255 at 10). Apparently, according to BBK itself, this is just the first of several motions to come. (Doc. 255 at 10).

At this point, given how much time has elapsed since fact discovery closed in May 2021, the Court should deny BBK's Motion. To the extent either party seeks to file or use information designated "HIGHLY CONFIDENTIAL" in later motions or at trial, the Protective Order's procedures for filing motions to seal are sufficient to address BBK's concerns.

### C. BBK's Remaining Objections Are Unfounded and CCA's Designations Are Properly Asserted Under CCA's Good Faith Belief.

Putting aside BBK's delay and sudden decision to forego filing a joint discovery dispute motion, CCA is a privately held company and the material BBK objects to should

retain its "HIGHLY CONFIDENTIAL" designation given CCA and its counsel believe in good faith the information constitutes "market research, product development plans, financial data, sales records or customer related data" which is "highly sensitive and proprietary," and "the value of which depends on protecting it from disclosure." (Doc. 52 at 2–3). Specifically, BBK objects to the following categories of information, each of which the Court has recognized meet the higher sealing standard (*see* Doc. 259):[8]

| Category of Information | Deposition Transcript Excerpts |
|---|---|
| **Financial Information** | Carmichael: 65:6–66:23 |
| | De Friel: 112:16–113:7, 113:12–15 |
| | Enoki: 125:13–20, 126:21–24 |
| **Product Development Information** | Al-Naser: 71:24–74:16 |
| | De Friel: 135:13–137:4, 199:18–23, 200:16–21 |
| | Bobzin: 56:18–63:9, 64:19–65:16, 65:23–69:1, 72:9–73:5, 80:12–85:11, 86:3–5, 103:25–104:1, 106:14–108:6, 108:18–24, 109:7–15, 111:22–112:15, 114:8–16, 115:5–8, 116:17–19, 116:25–117:3, 118:18–119:3, 120:10–24, 122:10–15 |
| | Clark: 67:7–10, 276:9–17 |
| **Market Research Information** | Al-Naser: 105:11–107:3, 107:18–110:16 |
| | Clark: 224:11–13, 224:17–23, 225:6–18, 226:19–227:18, 227:25–228:3, 230:14–19, 239:8–21, 240:19–241:9, 251:4–19, 281:19–284:1, 286:2–289:1 |

First, as to financial and accounting information, the Protective Order explicitly permits this type of information to be marked "HIGHLY CONFIDENTIAL" and, indeed, the Court has recognized that CCA's financial information is confidential (under the higher "compelling reasons" motion to seal standard). (Doc. 259 at 7). BBK's objections are fundamentally misleading. For example, BBK objects to the ***disclosure of CCA's revenue numbers*** because BBK states they relate to "products sold publicly." (Doc. 255 at 5

---

[8] CCA does not intend to waive any confidentiality designations except those explicitly identified. CCA has grouped objections in categories to most expeditiously address them.

(Carmichael: 65:6–66:23); *see also* Enoki at 125:13–20). But just because CCA's products are sold publicly—most companies products are sold publicly, of course—that does not mean that CCA has disclosed ***its revenue*** from sales of those products. BBK points to no evidence that CCA has disclosed its revenues to the public. As another example of BBK's disingenuous objections, BBK seeks de-designation of a question in which BBK's counsel ***reveals the amount of money in CCA's checking/savings accounts*** on the grounds that the "Witness does not know source of funds." (Doc. 255 at 6 (De Friel: 112:16–113:15)). Of course, whether CCA's CEO John De Friel knows the *source* of the funds or not, the money in CCA's bank accounts is highly secretive despite BBK's mischaracterizations of the transcript contents. As yet another example, BBK objects where a CCA witness's *personal* income is being discussed. (Enoki at 126:21–24). Because information relating to private financial and accounting information (including amounts of money and accounting practices) should remain private, the Court should overrule all of BBK's objections to the designations of that testimony.

Second, product development is another category that the Protective Order permits to be marked as "HIGHLY CONFIDENTIAL." Again, BBK's objections are disingenuous. These excerpts largely relate to CCA's current product development processes and development plans—i.e., what CCA has chosen to develop and not to develop. (*See, e.g.*, Al-Naser: 71:24–74:16; De Friel: 199:18–23; Bobzin: 56:18–63:9, 64:19–65:16, 65:23–69:1, 72:9–73:5, 80:12–85:11, 86:3–5, 103:25–104:1, 106:14–108:6, 108:18–24, 109:7–15, 111:22–112:15, 114:8–16, 115:5–8, 116:17–19, 116:25–117:3, 118:18–119:3, 120:10–24, 122:10–15; Clark: 67:7–10, 276:9–17) Both sets of information fall under the umbrella of "business plans," which the Court has recognized meet the higher sealing standard. (Doc. 259 at 6). But more fundamentally, BBK is attempting to gain knowledge of the products CCA *is* developing by objecting to those limited products CCA is choosing not to develop. Such information obviously is a reflection of CCA's market research that CCA believes BBK is not entitled to. As another example, questions about CCA's "goals" in changing production are highly proprietary and should not be disclosed. (*See* De Friel: 135:13–

137:4). Finally, BBK disingenuously believes that when its counsel *restates* CCA's testimony about products being developed or information is requested through a leading question, that information should be immune from confidentiality. (*See* De Friel: 200:16–21; Bobzin: 86:3–5). Not true. Because information about CCA's product development is inherently business plan information, the Court should overrule BBK's objections.

Third, market research is another category that the Protective Order permits to be marked as "HIGHLY CONFIDENTIAL." Once again, BBK's objections misstate the transcripts. For example, BBK objects that testimony regarding changes to CCA's website are public information. (Doc. 255 at 10 (Clark: 281:19–284:1)). While CCA acknowledges website changes are public, the testimony goes further into describing how the changes were made *based on* certain market research. That is purely private and cannot be known by simply looking at a list of website changes. Similarly, these deposition transcript excerpts relate to CCA's impressions of the cannabis market's direction, which obviously is proprietary information that should *not* simply be handed over to BBK and published to the public, including CCA's competitors in the cannabis industry. (*See* Al-Naser: 105:11–110:16 (includes specific observations ("half of all shoppers are thinking. . . ."))). Finally, despite BBK's vague objections, CCA strongly believes its methods of performing market research—including the specific survey questions and other information it uses—is confidential. (*See* Clark: 224:11–23, 225:6–18, 226:19–227:18, 227:25–228:3, 230:14–19, 239:8–21, 240:19–241:9, 251:4–19, 281:19–284:1, 286:2–289:1). Again, just because BBK's counsel is the person restating the confidential information about market research does not insulate the information from being designated confidential. (*See* Clark: 230:14–19). The Court should overrule BBK's objections as to CCA's market research information.

Overall, BBK's inability to abide by the Protective Order is not a justification to disregard CCA's good faith belief in information it has designated as "HIGHLY CONFIDENTIAL" under the Protective Order.

**IV.    CONCLUSION**

The Court should deny BBK's Motion because it: (1) was not brought as a joint

discovery motion; (2) is filed too late; and (3) asserts objections to information that was clearly designated in good faith. If the Court is inclined to reduce any "HIGHLY CONFIDENTIAL" designations, CCA respectfully requests those be reduced to "CONFIDENTIAL" under the Protective Order.

Dated: December 6, 2021

Respectfully submitted,

By: */s/ Mitchell Turbenson*
Brian W. LaCorte
Jonathon A. Talcott
Mitchell Turbenson
**BALLARD SPAHR LLP**
1 East Washington Street, Suite 2300
Phoenix, AZ  85004-2555

Brett M. Schuman
Jeremy N. Lateiner
Nicholas M. Costanza
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA  94111
*Attorneys for Defendant and Counterclaimant*