Frank G. Long (#012245)
flong@dickinsonwright.com
J. Alex Grimsley (#019111)
jagrimsley@dickinsonwright.com
Charles S. Price (#006197)
cprice@dickinsonwright.com
Cindy A. Villanueva (#028163)
cvillanueva@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
Phone: (602) 285-5000
Fax: (844) 670-6009
Firm Email:  courtdocs@dickinsonwright.com

*Attorneys for Plaintiff/Counterdefendant*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>Plaintiff,<br><br>v.<br><br>Central Coast Agriculture, Inc., a Delaware corporation,<br><br>Defendant.<br>_____<br><br>Central Coast Agriculture, Inc., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>Counterdefendant. | Case No. 2:19-cv-05216-PHX-MTL<br><br><br>**BBK'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(REDACTED)**<br><br>**(Oral Argument Requested)** |

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

I.      CCA'S UNCLEAN HANDS BARS ITS EQUITABLE DEFENSES ................... 1

II.     CCA LACKS STANDING TO ASSERT ITS COUNTERCLAIMS .................... 3

III.    CCA'S "DEFENSES" THAT ARE NOT AFFIRMATIVE DEFENSES ............. 4

IV.     CCA'S UNSUPPORTED AFFIRMATIVE DEFENSES ....................................... 5

        A.      CCA's Laches Defense Fails as a Matter of Law ....................................... 5

                1.      There Was No Unreasonable Delay as a Matter of Law ................. 5

                2.      CCA Cannot Demonstrate the Requisite Prejudice ........................ 7

        B.      CCA's Acquiescence Defense Fails as a Matter of Law ............................ 9

        C.      CCA's Waiver Defense Fails as a Matter of Law ..................................... 10

        D.      CCA's Estoppel Defense Fails as a Matter of Law ................................. 11

        E.      CCA's Unclean Hands Defense Fails as a Matter of Law ........................ 12

V.      CCA'S FRAUD COUNTERCLAIM FAILS AS A MATTER OF LAW ........... 13

        A.      No Duty To Disclose All Potential Uses ................................................... 14

        B.      There is no Fraud as to BBK's Declaration for PTO Reg. No.
                5046495 ..................................................................................................... 15

        C.      BBK's "Use in Commerce" Declarations Were Not Fraudulent .............. 16

                1.      Section 863(f)(2) is an Objective Standard, Not a Subjective
                        Inquiry Into the Intent of a Particular Defendant ........................... 17

                2.      Rolling papers are *per se* "traditionally intended" for use with
                        tobacco ........................................................................................... 19

                3.      Each of the Challenged Goods is an example of items that are
                        "traditionally intended" for use with tobacco ................................ 20

VI.     CCA CANNOT PROVE ITS UNLAWFUL USE COUNTERCLAIM .............. 22

VII.    CCA LACKED THE *BONA FIDE* INTENT TO USE THE RAW
        GARDEN MARK WITH THE GOODS COVERED BY THE ITU
        APPLICATIONS ......................................................................................................... 23

        A.      The Applicable Law And Burdens ............................................................ 24

        B.      CCA Has No Competent Evidence Of A Bona Fide Intent To Use .......... 24

RELIEF REQUESTED ........................................................................................................ 25

ii

TABLE OF AUTHORITIES

**Cases**

*3 Point Distribution, LLC v. CafePress.com, Inc.*,
    2008 WL 11337274 (C.D. Cal. Feb. 25, 2008) .................................................... 12

*578539 B.C., Ltd. v. Kortz*,
    2014 WL 12572679 (C.D. Cal. Oct. 16, 2014) ....................................................... 4

*adidas-Am., Inc. v. Payless Shoesource, Inc.*,
    546 F. Supp. 2d 1029 (D. Or. 2008) ............................................................... 10, 11

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*,
    525 F.3d 8 (D.C. Cir. 2008) ............................................................................ 23, 24

*Already, LLC v. Nike*,
    568 U.S. 85 (2013) ............................................................................................... 3

*Amini Innovation Corp. v. McFerran Home Furnishings Inc.*,
    2014 WL 360048 (C.D. Cal. Jan. 31, 2014) ........................................................... 4

*Anhing Corp. v. Thuan Phong Co. Ltd.*,
    215 F. Supp. 3d 919 (C.D. Cal. 2015) ............................................................. 13, 14

*Arizona v. ASARCO*,
    2010 WL 11519286 (D. Ariz. May 4, 2010) ......................................................... 21

*Boston Dental Grp., LLC v. Affordable Care, LLC*,
    2018 WL 1566331 (D. Nev. March 29, 2018) ......................................... 6, 8, 9, 23

*Bubis v. Blanton*,
    885 F.2d 317 (6th Cir. 1989) ................................................................................. 3

*Catch a Wave, Inc. v. Sirius XM Radio, Inc.*,
    2013 WL 1996134 (N.D. Cal. May 13, 2013) ......................................................... 4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................... 5, 21

*Citibank v. Citibanc Group, Inc.*,
    724 F.2d 1540 (11th Cir.1984) .............................................................................. 9

*Classic Concepts, Inc. v. Linen Source, Inc.*,
    2006 WL 4756377 (C.D. Cal. Apr. 27, 2006) ......................................................... 4

*Coach Servs., Inc. v. Triumph Learning LLC*,
    668 F.3d 1356 (Fed. Cir. 2012) ............................................................................. 3

*Commodores Ent. Corp. v. McClary*,
    879 F.3d 1114 (11th Cir. 2018) ........................................................................... 10

*Conan Props., Inc. v. Conans Pizza, Inc.*,
    752 F.2d 145 (5th Cir.1985) .................................................................................. 9

*DC Comics & Marvel Characters, Inc.,*
   2009 WL 4085622 (TTAB Aug. 21, 2009)..........................................................25

*Dolby v. Robertson*,
   654 F. Supp. 815 (N.D. Cal. 1986) .....................................................................8

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   905 F. Supp. 1403 (E.D. Cal. 1994).....................................................................9

*Eat Right Foods v. Whole Foods Mkt., Inc.*,
   880 F.3d 1109 (9th Cir. 2018)..............................................................................7

*Eat Right Foods, Ltd. v. Whole Foods Market, Inc.*,
   2018 WL 2387638 (W.D. Wash. May 25, 2018)...................................................8

*Elvis Presley Enters., Inc. v. Capece*,
   141 F.3d 188 (5th Cir.1998)................................................................................9

*Floral v. Wald Imports, Ltd.*,
   2012 WL 424491 (W.D. Wash. Feb. 9, 2012) ......................................................4

*General Mills Inc. v. Health Valley Foods*,
   24 U.S.P.Q.2d 1270 WL 296518 (T.T.A.B. 1992) .............................................23

*Glaser v. Connell*,
   266 F.2d 149 (9th Cir. 1958)................................................................................1

*Grand Canyon Trust v. Tucson Elec. Power Co.*,
   391 F.3d 979 (9th Cir. 2004)................................................................................9

*Hecht Co. v. Bowles*,
   321 U.S. 321 (1944) .............................................................................................9

*Hokto Kinoko Co. v. Concord Farms Inc.*,
   738 F.3d 1085 (9th Cir. 2013).............................................................................13

*Honda Motor Co., Ltd. v. Friedrich Winkelmann*,
   90 U.S.P.Q.2d 1660 (TTAB 2009)................................................................24, 25

*Hope Med. Enters. Inc. v. Fagron Compounding Servs., LLC*,
   2021 WL 4963516 (C.D. Cal. Oct. 26, 2021) ......................................................4

*In re Beaty*,
   306 F.3d 914 (9th Cir. 2002)................................................................................7

*In re Brazier Forest Prod., Inc.*,
   921 F.2d 221 (9th Cir. 1990)................................................................................5

*In re Medpoint Mgmt., LLC*,
   528 B.R. 178 (D. Ariz. B.R. 2015), *vacated in part on other grounds*,
   2016 WL 3251581 (9th Circ. 2016) .....................................................................2

*Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*,
   559 F.3d 985 (9th Cir. 2009)............................................................................5, 9

*iShow.com, Inc. v. Lennar Corp.*,
  2017 WL 1050344 (W.D. Wash. March 17, 2017)...................................................6

*Kaiser v. CSL Plasma Inc.*,
  240 F. Supp. 3d 1129 (W.D. Wash. 2017) .............................................................4

*Kiva Health Brands LLC v. Kiva Brands, Inc.*,
  439 F. Supp. 3d 1185 (N.D. Cal. 2020) ................................................................2

*Lanard Toys Ltd. v. Anker Play Prod., LLC*,
  2020 WL 6873647 (C.D. Cal. Nov. 12, 2020) .......................................................4

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*,
  15 F. Supp. 2d 389 (S.D.N.Y. 1998), *aff'd*, 192 F.3d 337 (2d Cir. 1999)..............23

*Law v. Harvey*,
  2007 WL 2990426 (N.D. Cal. Oct. 11, 2007) ........................................................3

*Levi Strauss & Co. v. Papikian Enters., Inc.*,
  2011 WL 5192237 (N.D. Cal. Nov. 1, 2011)...........................................................7

*Lifted Ltd., LLC v. Novelty, Inc.*,
  2021 WL 4480566 (D. Colo. September 30, 2021) ...........................17, 18, 19, 22

*M.Z. Berger & Co., Inc. v. Swatch AG*,
  787 F.3d 1368 (Fed. Cir. 2015) ...........................................................................24

*Matlow v. PopWrapped Ent't Grp., LLC*,
  2018 WL 11356879 (C.D. Cal. Jan. 1, 2018)..........................................................4

*Melendres v. Arpaio*,
  154 F. Supp. 3d 845 (D. Ariz. 2016).................................................................7, 8

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
  703 F. Supp. 2d 1307 (S.D. Fla. 2010)................................................................10

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
  894 F.3d 1015 (9th Cir. 2018)................................................................................2

*Posters 'N' Things v. U.S.*,
  511 U.S. 513 (1994) ...............................................................17, 18, 19, 22

*Republic Molding Corp. v. B.W. Photo Utilities*,
  319 F.2d 347 (9th Cir. 1963)...........................................................................3, 12

*Robi v. Five Platters, Inc.*,
  918 F.2d 1439 (9th Cir. 1990)..............................................................................13

*Scivally v. Graney*,
  1993 WL 207758 (D. Mass. June 7, 1993) .............................................................3

*Sierra Med. Servs. Alliance v. Kent*,
  883 F.3d 1216 (9th Cir. 2018)................................................................................5

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
  537 F.3d 1357 (Fed. Cir. 2008) ...........................................................................13

v

*Swiss Grill Ltd. v. Wolf Steel Ltd.*,
    2015 WL 5675642 (TTAB 2015).........................................................24

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011)..............................................................1

*U.S. v. Dyer*,
    750 F. Supp. 1278 (E.D. Va. 1990)....................................................18

*United States v. Sullivan*,
    68 Fed. App'x 811 (9th Cir. 2003).......................................................7

*Veliz v. Veliz*,
    2021 WL 4538489 (S.D. Tex. Aug. 12, 2021).....................................14

*Vosk Int'l v. Zao Gruppa Predpriyatij Ost*,
    2013 WL 5588296 (W.D. Wash. Oct. 9, 2013) .................................23

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002)..............................................................4

**Rules**

Fed. R. Civ. Proc. 12(b)(1) .........................................................................5

Fed. R. Civ. Proc. 12(b)(6) .........................................................................5

Fed. R. Civ. Proc. 30(b)(6) ...........................................................7, 10, 12

**Statutes**

15 U.S.C. § 1051(b).................................................................................24

15 U.S.C. § 1064 .......................................................................................3

15 U.S.C. § 1116(a)...................................................................................4

15 U.S.C. § 1125(a).................................................................................12

15 U.S.C. §1117(a)....................................................................................9

21 U.S.C. § 387t.......................................................................................21

21 U.S.C. § 857(f) ...................................................................................18

21 U.S.C. § 863 ..................................................................................passim

21 U.S.C. § 863(a) ...................................................................................20

21 U.S.C. § 863(d)...................................................................................19

21 U.S.C. § 863(f) ..............................................................12, 18, 20, 22

21 U.S.C. § 863(f)(2).............................................................17, 18, 19, 21

Calif. Health & Safety Code, §11362.5....................................................6

**Other Authorities**

McCarthy on Trademarks and Unfair Competition ................................... 10, 14, 15

TMEP §1110.01 ........................................................................................ 23

Plaintiff/Counterdefendant BBK Tobacco & Foods, LLC ("BBK") respectfully moves for partial summary judgment in its favor on: (i) all affirmative defenses asserted by Defendant/Counterclaimant Central Coast Agriculture, LLC ("CCA"); (ii) the counterclaims asserted by CCA and BBK's affirmative defenses thereto; and (iii) Count VI of BBK's Amended Complaint.  This motion represents a critical opportunity for the Court to narrow the issues for trial, based on several undisputed issues of material fact.

First, the consequences of CCA admitting that its business is illegal under federal law include barring CCA's equitable defenses and denying CCA standing to assert its counterclaims. Second, several of CCA's so-called affirmative defenses are unsupported by any facts and are indeed improper as a matter of law. Third, the undisputed facts show that CCA cannot prove its remaining affirmative defenses. Fourth, CCA's counterclaims, alleging that certain of BBK's products are drug paraphernalia, fail on the undisputed facts and the plain language of applicable federal statutes. Finally, there are no disputed facts as to BBK's claim based on CCA's lack of bona fide intent (Doc. 60, Count VI), and judgment should be entered in BBK's favor on that claim.[1]

## I.    CCA'S UNCLEAN HANDS BARS ITS EQUITABLE DEFENSES.

CCA's equitable affirmative defenses—laches, waiver, estoppel and acquiescence—are barred because they are based on CCA's own inequitable conduct, namely CCA's illegal sales of marijuana products using the Raw Garden name as early as 2016. It is a fundamental principle of equity that, "[h]e who seeks equity must do equity— Equity will not aid him who comes with unclean hands." *Glaser v. Connell*, 266 F.2d 149, 152 (9th Cir. 1958). Unclean hands consists of: (1) inequitable conduct (2) related to the subject matter of the lawsuit. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 833 (9th Cir. 2011). Both elements are undisputedly established here.

---

[1] BBK incorporates by reference BBK's Opposition to CCA's Renewed Motion for Partial Summary Judgment ("BBK's MSJ Opposition") [Doc. 246 (redacted), Doc. 260 (sealed)] and all Exhibits submitted with BBK's MSJ Opposition.

1    CCA admits its Raw Garden marijuana product sales are illegal under federal law.[2]

2  Illegal conduct satisfies the "inequitable" conduct element of the unclean hands doctrine.

3  *See In re Medpoint Mgmt., LLC*, 528 B.R. 178, 186 (D. Ariz. B.R. 2015) (knowledge of

4  illegal marijuana sales satisfied requirements of unclean hands), *vacated in part on other*

5  *grounds*, 2016 WL 3251581 (9th Cir. 2016); *Pinkette Clothing, Inc. v. Cosmetic Warriors*

6  *Ltd.,* 894 F.3d 1015, 1029 (9th Cir. 2018).[3]

7    Adding to the evidence of inequitable conduct is the fact that CCA's alleged

8  marijuana product sales prior to 2018 also violated California law. CCA's proposed

9  California cannabis market expert, Khurshid Khoja, testified that any sales of marijuana

10  by CCA prior to 2018 would have been illegal sales if CCA were not a medical marijuana

11  collective. [Ex. 1 at 148:25-149:8; *see also id.* 54:6-13 (only collectives could sell

12  marijuana); 64:20-23 (collective could only grow marijuana themselves or obtain it from

13  their members)][4] CCA founder and CEO, Mr. DeFriel, testified CCA was not ever a

14  collective.  [Doc. 229-7 at 78:22-79:3]

15    When a litigant's illegal conduct relates to the cause in controversy, the Court

16  should not "lend its judicial power" to allow the litigant to escape liability. *See Medpoint*,

17  528 B.R. at 186; *see also Kiva Health Brands LLC v. Kiva Brands, Inc.*, 439 F. Supp. 3d

18  1185, 1197 (N.D. Cal. 2020). Here, CCA's inequitable conduct indisputably relates to the

19  subject matter of this lawsuit and of CCA's equitable defenses. Those defenses are

20  predicated on BBK's alleged knowledge of CCA's sale of illegal products using the Raw

21  Garden name, and on the likelihood that consumers will confuse them as coming from the

22

---

23  [2] *See* Doc. 203, p.15 ("CCA's Raw Garden-branded cannabis concentrates are Schedule 1
24  drugs under the Controlled Substances Act"); Doc. 74, pp.4-7 (admitting that CCA's
activities are illegal under federal drug laws).
25  [3] The disputed fact issue as to whether CCA sold Raw Garden Products before 2018 (*see*
BBK's MSJ Opposition at 9-11), does not preclude summary judgment against CCA on
26  its equitable affirmative defenses, since any such sales (even if CCA proves they occurred)
would have been illegal and thus cannot support an equitable defense.
27  [4] Mr. Khoja also testified that anyone who cultivated marijuana for the collective was
required to be a member of the collective.  [*Id.* at 149:9-150:20]  Thus, even providing
28  such services to a collective was illegal for CCA, which, as an entity, by definition could
not be a "qualified patient" entitled to join a collective.

2

same source as BBK's RAW® products. *Republic Molding Corp. v. B.W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963).

## II.   CCA LACKS STANDING TO ASSERT ITS COUNTERCLAIMS.

CCA also invokes equity in its counterclaims, under 15 U.S.C. § 1064, asking that the Court cancel (or partially cancel) eleven (11) of BBK's United States Patent and Trademark Office ("PTO") registrations for alleged fraud on the PTO and ten (10) of those registrations also for alleged "unlawful use" of the marks. [Doc. 169, pp. 57-59] Even if CCA's counterclaims were well-founded—which they are not (*see* Sections V and VI, *infra*)—CCA's illegal activity cannot confer standing to bring claims under 15 U.S.C. § 1064.

Section 1064 relief is available only to a "person who believes that he is or will be damaged . . . by the registration of a mark on the principal register . . . ." 15 U.S.C. § 1064. To have standing, CCA must show that it has a "real interest" in the proceeding. *Law v. Harvey,* 2007 WL 2990426, *5 (N.D. Cal. Oct. 11, 2007) ("[P]laintiff still has not alleged how he would be damaged by the mark. Indeed, he has not pleaded facts sufficient to distinguish himself from the 'mere intermeddler' with no real interest in the registrations"). "[A] real interest in the proceeding" means the petitioner has "a legitimate personal interest" in the cancellation, *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1376 (Fed. Cir. 2012), because its ***legitimate commercial interest*** will be harmed through the enforcement of trademark rights. *See Already, LLC v. Nike*, 568 U.S. 85, 92 (2013).

CCA does not engage in legitimate business activity and its illegal conduct cannot confer standing under 15 U.S.C. § 1064. *Cf. Scivally v. Graney*, 1993 WL 207758, at *3 (D. Mass. June 7, 1993) (holding that unlawful conduct could not satisfy injury necessary for standing under federal RICO statute because it was not "legitimate"); *Bubis v. Blanton*, 885 F.2d 317, 319-320 (6th Cir. 1989) (finding no legitimate interest sufficient for standing under federal antitrust statutes where appellant's alleged interest was unlawful).

3

1

### III.   CCA'S "DEFENSES" THAT ARE NOT AFFIRMATIVE DEFENSES.

2

3      "A defense which demonstrates that plaintiff has not met its burden of proof is not

4  an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.

5  2002). CCA asserts a number of "affirmative defenses" that are merely different ways of

6  stating that BBK "has not met its burden of proof" (*id.*) and thus are not true affirmative

   defenses that would negate liability.  That issue eliminates CCA's defenses of:

7      • Failure to state a claim [Doc. 169, p.24, First Aff. Def.]; *see Kaiser v. CSL*
8        *Plasma Inc.,* 240 F. Supp. 3d 1129, 1134 (W.D. Wash. 2017) (granting
         summary judgment because failure to state a claim is not an affirmative
9        defense); *Lanard Toys Ltd. v. Anker Play Prod., LLC,* 2020 WL 6873647, at
         *21 (C.D. Cal. Nov. 12, 2020);

10     • Non-infringement [Doc. 169, p.24, Second Aff. Def.]; *see 578539 B.C., Ltd. v.*
11       *Kortz,* 2014 WL 12572679, at *8 (C.D. Cal. Oct. 16, 2014) (on motion to strike,
         rejecting defense of noninfringement as a matter of law);

12     • Lack of irreparable harm [Doc. 169, p.25, Seventh Aff. Def.]; *see 578539 BC*,
13       2014 WL 12572679 at *7-8 (on motion to strike, rejecting as a matter of law
         lack of irreparable harm defense); *Catch a Wave, Inc. v. Sirius XM Radio, Inc.*,
14       2013 WL 1996134, at *4 (N.D. Cal. May 13, 2013);  *see also* 15 U.S.C. §
15       1116(a) (presumption of irreparable harm);

16     • Lack of actual damages [Doc. 169, p.25, Tenth Aff. Def.]; *see Classic Concepts,*
17       *Inc. v. Linen Source, Inc.,* 2006 WL 4756377, at *8 (C.D. Cal. Apr. 27, 2006)
         (granting summary judgment; defense of "no damages" is not a valid
18       affirmative defense);

19     • Failure to mitigate damages [Doc. 169, p. 25, Eleventh Aff. Def.]; *see 578539*
         *BC*, 2014 WL 12572679 at *8 (on motion to strike, rejecting as a matter of law
20       affirmative defense of "failure to mitigate damages"); *Hope Med. Enters. Inc.*
         *v. Fagron Compounding Servs., LLC,* 2021 WL 4963516, at *18 (C.D. Cal. Oct.
21       26, 2021); *Matlow v. PopWrapped Ent't Grp., LLC*, 2018 WL 11356879, at *1
22       (C.D. Cal. Jan. 1, 2018); and

23     • Reserving additional defenses [Doc. 169, p. 25, Thirteenth Aff. Def.]; *see Amini*
24       *Innovation Corp. v. McFerran Home Furnishings Inc.,* 2014 WL 360048, at *5
         (C.D. Cal. Jan. 31, 2014) (defense that reserves the right is not an affirmative
25       defense).

26     Because CCA has produced (and can produce) no facts in support of any of the

27  above defenses, BBK is entitled to summary judgment. *See Floral v. Wald Imports, Ltd.*,

28  2012 WL 424491, at *8 (W.D. Wash. Feb. 9, 2012).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    CCA'S UNSUPPORTED AFFIRMATIVE DEFENSES.[5]

Summary judgment is appropriate as to CCA's affirmative defenses of laches, acquiescence, waiver, estoppel, and unclean hands as "there is an absence of evidence to support [the non-movant's] case." *Sierra Med. Servs. Alliance v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). CCA cannot make a showing of specific facts to demonstrate genuine issues for trial as to all the elements for any of those defenses.  *In re Brazier Forest Prod., Inc.,* 921 F.2d 221, 223 (9th Cir. 1990).  Further, the issue raised by CCA's Twelfth Affirmative Defense has already been resolved in BBK's favor.[6]

### A.    CCA's Laches Defense Fails as a Matter of Law.

#### 1.    There Was No Unreasonable Delay as a Matter of Law.

BBK filed its complaint on September 18, 2019. [Doc. 1]  There is no evidence that BBK knew, before September 18, 2016, of any lawful sales of Raw Garden products, because as a matter of undisputed fact there were no such sales. Unlawful sales cannot support an equitable defense. *See* Section I, *supra*. Further, there is no evidence that BBK knew, before September 18, 2016, of the likelihood of confusion necessary to trigger an obligation to bring suit. *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc*., 559 F.3d 985, 990 (9th Cir. 2009) (for laches, "the question is when [plaintiff] knew or should have known about the likelihood of confusion between its mark and [defendant's] mark").  CCA alleges that BBK learned of CCA's use of the name "Raw Garden" as early as mid-July 2016, but there is no evidence that BBK knew CCA was selling Raw Garden branded products at that time. [*See* BBK's MSJ Opposition, pp.1-3 & 9-10 (and exhibits referenced therein)] Nor does CCA's evidence show that BBK knew of any likelihood of

---

[5] This Section assumes that the Court permits CCA to pursue its equitable affirmative defenses despite basing those defenses on CCA's own illegal conduct.

[6] The Court's order dated March 4, 2021 denied CCA's Rule 12(b)(6) and 12(b)(1)  motion to dismiss BBK's claim of "Void Ab Initio" for lack of bona fide intent,  rejecting CCA's jurisdictional argument, stating, "[D]istrict courts in the Ninth Circuit appear to have awarded the relief that BBK seeks." [Doc. 151, pp.13-15] CCA's Twelfth Affirmative Defense [Doc. 169, p. 25] is the same rejected argument, masquerading as a defense. It should meet the same fate for the same reasons.

1    confusion, especially given that CCA had only a minor, isolated presence (even by its own

2    allegations) in 2016, limited to providing only consulting services to the private, members-

3    only, medical use-only, marijuana market.   [*Id.* at pp.1-3, 11 & 13-14 (and exhibits

4    referenced therein)][7]

5          Even using CCA's inapplicable mid-July 2016 starting date, the 3-year, 2-month

6    period before BBK filed suit is reasonable because of the intervening seven months BBK

7    spent (1) engaging in good faith settlement discussions, and (2) formally opposing CCA's

8    efforts to register Raw Garden with the PTO as a trademark. *Boston Dental Grp., LLC v.*

9    *Affordable Care, LLC*, 2018 WL 1566331, at *10 (D. Nev. March 29, 2018) (no

10   unreasonable delay based on TTAB proceedings and settlement discussions); *iShow.com,*

11   *Inc. v. Lennar Corp.*, 2017 WL 1050344, at *4 (W.D. Wash. March 17, 2017).

12         On April 27, 2017, the very day BBK learned that CCA filed its application to

13   register RAW GARDEN as a mark for website services, BBK filed with the PTO a formal

14   protest to the application. [Doc. 229-2, ¶¶28-29] On January 16, 2018, the day the PTO

15   published the CCA application for opposition, BBK filed a 90-day extension to oppose

16   the application, and CCA received notice of that. [*Id.*, ¶¶30-31] CCA cannot argue that it

17   was unaware of BBK's position after January 2018. When BBK then filed its May 2, 2018,

18   Notice of Opposition [*id.*, ¶32], CCA contacted BBK about settlement and BBK agreed,

19   starting on May 31, 2018, to multiple ***CCA requests to extend the time***, so the parties

20   could continue settlement negotiations. [*Id.*, at Ex. 18 & ¶34] Those negotiations, though

21   ultimately futile, continued from May 2018 through December 2018. [*Id.*, ¶35; Doc. 260-

22

23   [7] BBK had no reason to know of sales of Raw Garden products by CCA before 2018.
     Prior to 2018, California law only permitted qualified patients to cultivate or possess
24   marijuana for medical purposes, individually [Calif. Health & Safety Code, §11362.5] or
     together as a "collective" [*id.*, §13362.775 (repealed)].   [*See also* Ex. 1 at 52:21-53:8,
25   54:6-12, 55:19-23] BBK first learned that CCA sold products using the Raw Garden name
     on ████████████████████████████████████████████
26   [Doc. 260-1, ¶36; *see also* Ex. 2 ]  CCA was not a collective [Doc. 229-7 78:22-79:3] and,
     as an entity, was not an individual "patient."  Any provision of products by CCA under
27   the guise of "consultation" was, on the undisputed facts, unknown to BBK. Such sales
     would have been, at most, only ████████████████████████ [Doc. 260-2,
28   ¶¶10-18], and would have been unlawful.  CCA has cited no cases, and BBK is aware of
     none, where a laches period was triggered by sales that were unlawful at the state and
     federal levels.

1, at Ex. 19; *see also* Ex. 2]   The parties' 7-month period of good faith settlement

negotiations shows that BBK's alleged "delay" of 2 months beyond the presumptive 3-

year period was reasonable.

### 2.    CCA Cannot Demonstrate the Requisite Prejudice.

There is no evidence that the passage of time prejudiced CCA. "[L]aches is not a

doctrine concerned solely with timing. Rather, it is primarily concerned with prejudice."

*In re Beaty*, 306 F.3d 914, 924 (9th Cir. 2002). Because prejudice is an "essential element"

of laches, *Melendres v. Arpaio*, 154 F. Supp. 3d 845, 853 (D. Ariz. 2016), CCA's inability

to demonstrate prejudice entitles BBK to summary judgment on CCA's laches defense.

*United States v. Sullivan*, 68 Fed. App'x 811, 811-812 (9th Cir. 2003); *Levi Strauss & Co.

v. Papikian Enters., Inc.*, 2011 WL 5192237, at *7 (N.D. Cal. Nov. 1, 2011).

CCA cannot show any claimed expectations-based prejudice.

**First**, to demonstrate prejudice, CCA must show that it "took actions or suffered

consequences that it would not have, had [BBK] brought suit promptly."   *Eat Right Foods

v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1119 (9th Cir. 2018). CCA admitted that it

"can't point to specific things that we would not have done and tell you here today that

we specifically would not have done this." [Doc. 229-9 at 189:3-5] [8] CCA also testified:

Q.    Okay. So if BBK had just filed suit in January of 2019 instead of
September '19, what would CCA have done differently?

A.    I wouldn't know.  I have no idea.

[Doc. 229-9 at 189:10-16 (objection omitted)]   CCA's Rule 30(b)(6) witness could not

even say that CCA would have adopted a name other than Raw Garden if BBK had filed

suit earlier. [*Id.* at 188:14-20]

**Second**, CCA admitted that its claim of prejudice is "speculation" at best. [*Id.* at

185:2-4 ("I don't know if I have an affirmative answer on that. That's difficult to

speculate, Mr. Grimsley"; 185:14-15 ("that's speculation and difficult to ascertain");

186:7 ("we cannot speculate at this time"); 187:7-8 ("I would prefer not to speculate on

---

[8] Topic 8.5 for the Rule 30(b)(6) deposition asked:  "What, if anything, CCA did that it
would not have done if BBK had filed suit prior to September 2019." [Doc. 230-2, p.6]

7

that"); 187:22 ("Again, I don't know")] "Mere speculation is not enough to establish prejudice. Delay is not prejudicial where [the] alleged harm [is] entirely hypothetical." *Melendres*, 154 F. Supp. 3d at 854.

**Third**, CCA cannot rely on any claimed prejudice after the date it was put on notice of BBK's objection. A defendant cannot demonstrate reliance—and, thus, the requisite prejudice—after the point that the defendant was put on notice that the trademark owner objected to the defendant's use. *See Eat Right Foods, Ltd. v. Whole Foods Market, Inc.*, 2018 WL 2387638, at *7 (W.D. Wash. May 25, 2018) (evaluating prejudice from 2010 to 2012, the point at which "Plaintiff demanded that Defendants stop using the [contested] mark"); *see also Dolby v. Robertson*, 654 F. Supp. 815, 922 (N.D. Cal. 1986).  On January 16, 2018, BBK filed a request for a ninety-day extension to oppose the CCA application to register RAW GARDEN as a mark for services involving a website discussing cannabis. [Doc. 229-2, ¶31]  Thus, CCA knew of BBK's objection as of at least January 2018 and must show prejudice before that time, which it cannot.

**Fourth**, "[t]o show prejudice, [CCA] must demonstrate more than expenditures incurred as a result of expansion, as the defense of laches is meant to protect an infringer whose efforts have been aimed at building a valuable business *around its trademark* and an important reliance *on the publicity of [its] mark*." *Boston Dental Group, LLC v. Affordable Care, LLC*, 2018 WL 1566331, at *9 (D. Nev. Mar. 29, 2018)  (emphasis in original). CCA has not identified any effort to build a business around the "Raw Garden" brand before January 2018, even assuming CCA could base a prejudice argument on building a business illegal under federal law.  CCA did not exist prior to October 23, 2015, [Doc. 229-3 at 11:8-11] and therefore could not have used "Raw Garden" as a name for any product until after October 2015.  Even then, through the end of 2016, more than ██ ████████████████████████████ [Doc. 260-2, ¶15]—which were not even sold under the Raw Garden brand [Doc. 229-7 at 129:17-130:5]. Moreover, CCA asserts that, "[p]rior to 2018," "CCA (including Central Coast Farmer's Market Management, LLC) consulted with medical cannabis collectives"  "for the sale of medical cannabis

products" under the Raw Garden name. [Doc. 229-10, pp. 24-25; Doc. 230-1, p.41]  But such "consultation," even if it took place, does not constitute product sales.

**Finally**, CCA must show that "during [BBK's] delay in bringing suit, the infringer [CCA] developed an identity as a business based on its mark." *Boston Dental*, 2018 WL 1566331, at *9 (quoting *Internet Specialties*, 559 F.3d at 992).  CCA's own market research reveals that CCA built its business around the ███████████ of its illegal drugs, not a brand name. [Doc. 260-3, p.20][9]

In short, CCA's alleged expectations prejudice is based largely on its promotion of "Raw Garden" products *after* BBK filed suit in September 2019 [Doc. 203, pp. 9-10; Docs. 204-8, 204-11 to 204-13],[10] and virtually entirely after CCA learned of BBK's position in January 2018.  CCA's conduct after its receipt of BBK's clear and express objections is irrelevant to any argument of prejudice. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir.1998);  *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151–52 (5th Cir.1985); *Citibank v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546–47 (11th Cir.1984).[11]

### B.  CCA's Acquiescence Defense Fails as a Matter of Law.

Estoppel by acquiescence includes the elements of laches plus affirmative conduct inducing the belief that the claimant has abandoned its claim. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 905 F. Supp. 1403, 1414 (E.D. Cal. 1994). "The distinguishing feature

---

[9]  CCA's own market research shows that, even by the 4th quarter of 2019 (*after* BBK filed suit), ██████ California cannabis consumers were aware of the "Raw Garden" name [*id.*, p. 9] and ██████ "Raw Garden" product purchases were made based on brand recognition. [*Id.*, p. 20].

[10]  BBK moved to strike for non-disclosure CCA's effort to cast allegedly increased "profits" as prejudice [BBK's MSJ Opposition, p.8, n. 9; Doc. 271, p.1] In any event, even if disgorgement of some part of CCA's profits might not be equitable, "laches is not the most appropriate vehicle for avoiding that inequity." *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 989 (9th Cir. 2004) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)); *see also* 15 U.S.C. §1117((a) (discretion to "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case").

[11] Despite the Court's MIDP Order [Doc. 5], CCA never disclosed any alleged evidentiary prejudice. Instead, CCA disclosed only its alleged economic/expectation prejudice.  [Doc. 230-3, p.81]  Accordingly, in BBK's MSJ Opposition, BBK moved to strike CCA's newly minted claim of evidentiary prejudice. [BBK's MSJ Opposition, p.9 n.10]

of the acquiescence defense is the element of *active* or *explicit* consent to the use of an allegedly infringing mark." *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1075 (D. Or. 2008) (emphasis in original); *see* J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 31:41 (5th ed.) ("MCCARTHY").

CCA cannot establish—indeed there is no evidence—that BBK actively or explicitly consented to CCA's use of the "Raw Garden" mark. Further, as discussed in Section IV(A), *supra*, CCA cannot prove either element of laches.

**C.    CCA's Waiver Defense Fails as a Matter of Law.**

CCA's affirmative defense of "waiver" fails because there is no affirmative defense of "waiver" to a claim of trademark infringement. *See, e.g., Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1142 (11th Cir. 2018); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 703 F. Supp. 2d 1307, 1314, n.7 (S.D. Fla. 2010). Even if waiver were an available affirmative defense, "Waiver is the intentional relinquishment of a known right…." *adidas-Am., Inc.*, 546 F. Supp. 2d at 1074 (granting summary judgment where there was no evidence of intent to waive). There is no evidence of BBK intentionally relinquishing its right to pursue CCA for trademark infringement; CCA cannot rely solely on any BBK failure to act. *Id.*

As discussed in BBK's MSJ Opposition, there is no evidence that BBK knew until October 2018 of a likelihood of confusion claim against CCA based on CCA's sale of Raw Garden brand products [BBK's MSJ Opposition, pp. 9-11; Doc. 229-2, ¶¶27, 32, 34, 35 and Ex. 18; Doc. 229-7 at 30:14-31:13, 78:18-20, 78:22-79:3; Doc. 229-9 at 78:19-79:11; Doc. 229-10, p. 24; Doc. 230-1, p. 41] The absence of knowledge eliminates even the possibility of an intentional relinquishment.  Moreover, the factual record is utterly—indeed admittedly—devoid of the required "clear decisive and unequivocal" evidence of waiver.  *adidas-Am. Inc.*, 546 F. Supp. 2d at 1074.  CCA's Rule 30(b)(6)  witness testified:[12]

---

[12] Topic 8.6 for the Rule 30(b)(6)  deposition of CCA asked:  "What actions or statements, if any, by BBK led CCA to believe prior to September 2019 that BBK had elected not to seek to enforce any trademark rights against CCA."  [Doc. 230-2, p. 6]

10

Q.    Okay.  Was there ever a time that CCA believed that BBK had decided not to enforce trademark rights against CCA?

A.    I do not know.  I'm not aware of such information.

[Ex. 4, at 200:20-201:1 (objection omitted)][13]

### D.    CCA's Estoppel Defense Fails as a Matter of Law.

CCA cannot prove any of the required elements for its equitable estoppel defense. CCA must prove: (1) BBK knew CCA was selling potentially infringing products; (2) BBK's actions or failure to act led CCA to reasonably believe that BBK did not intend to enforce its trademark right against CCA; (3) CCA did not know that BBK actually objected to the sale of its potentially infringing products; and (4) due to its reliance on BBK's actions, CCA will be materially prejudiced if BBK is allowed to proceed with its claim. *adidas-Am., Inc.*, 546 F. Supp. 2d at 1075. "Where any one of the elements of equitable estoppel is absent, the claim must fail." *Id.*

CCA cannot prove the first element that, before October 2018, BBK "knew that [CCA] was selling potentially infringing" Raw Garden products. [*See* BBK's MSJ Opposition, pp. 9-11 and exhibits cited therein; see also Section IV(A)(1), *supra*]

CCA cannot prove the second element because CCA cannot identify any acts or omissions by BBK that led CCA to reasonably believe that BBK did not intend to enforce its trademark right against CCA. [*See* Ex. 4 at 196:23-200:1 & 200:20-201:1]

CCA cannot prove the third element because CCA knew, even before BBK objected in October 2018 to CCA's sale of Raw Garden products, that BBK requested in January 2018 an extension of time to oppose CCA's application for a PTO registration of Raw Garden as an intended mark for website services (and then filed a May 2018 opposition). [*See* BBK's MSJ Opposition, pp.  2-3, 12; Doc. 229-2 ¶¶ 31-32]

---

[13] CCA testified that it cannot say that the actions or statements of anyone associated with BBK caused CCA to believe that BBK intended to waive its rights, that any such suggestion would be "speculative," and ultimately: "**I don't know if I can specifically state that the interaction, or any other previous interactions I just alluded to, gave us any indication that BBK was specifically trying to wave [sic] or defer a right**." [*See id.* at 196:23-200:1  (emphasis added)]

CCA cannot prove the fourth element because, as already discussed (Section II, *supra*), alleged harm to CCA's illegal marijuana business is not a cognizable, legitimate interest to protect and, as recited in BBK's MSJ Opposition (at 7), CCA's Rule 30(b)(6) witness testified that "I can't point to specific things that we would not have done and tell you here today that we specifically would not have done this." [Doc. 229-9 at 189:3-5]

### E.    CCA's Unclean Hands Defense Fails as a Matter of Law.

CCA cannot prove its unclean hands defense [Doc. 169, p.25, Ninth Aff. Def.], based on BBK's alleged "unlawful acts of obtaining its trademarks from the PTO, and subsequently maintaining them, for illegal drug paraphernalia." [Ex. 5 p. 85]

**First**, CCA's unclean hands allegations are no defense to BBK's infringement claims based on common law rights under 15 U.S.C. § 1125(a) or state law (*i.e.*, Counts 2, 4 & 5). The "inequitable conduct" alleged by CCA does not relate to "acquiring the [common-law] right [BBK] now asserts" or "render[] inequitable the assertion of such [common-law] rights against" CCA.  *Republic Molding*, 319 F.2d at 349.  "[E]ven if the registered marks were cancelled, [BBK] could still pursue its trademark infringement claims on the basis of common law rights." *3 Point Distribution, LLC v. CafePress.com, Inc.*, 2008 WL 11337274, at *5 (C.D. Cal. Feb. 25, 2008).

**Second**, although BBK bases its registered-rights claim on at least 17 different PTO registrations [Doc. 60, App. A], CCA's unclean hands allegations challenge at most 11 of BBK's PTO registrations.  CCA's unclean hands defense is no defense to any of BBK's claims premised on the other, unchallenged PTO registrations.

**Finally**, as discussed in more detail in Section V, *infra*, CCA's allegation that BBK engaged in any intentional misconduct in obtaining PTO registrations is contrary to both fact and law. The only evidence of record is that the goods identified in the PTO registrations that CCA is challenging are types of items that are "traditionally intended" for use with tobacco that, according to the statute itself, the "drug paraphernalia" provisions of the Controlled Substance Act "shall not apply." ("CSA"), 21 U.S.C. § 863(f).

12

## V.     CCA'S FRAUD COUNTERCLAIM FAILS AS A MATTER OF LAW.[14]

CCA's counterclaim for fraud on the PTO [Doc. 169, p. 57, First Cause of Action ("Fraud Counterclaim")] cannot succeed because CCA cannot prove with clear and convincing evidence: (1) a false representation regarding a material fact; (2) the declarant's knowledge or belief that the representation is false; (3) the declarant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance. *Hokto Kinoko Co. v. Concord Farms Inc.,* 738 F.3d 1085, 1097 (9th Cir. 2013); *In re Bose Corp.,* 580 F.3d 1240, 1243 (Fed. Cir. 2009) ("Deception must be willful to constitute fraud").[15]

CCA "bears a heavy burden of proof. . . . Indeed, 'the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party.'" *Id.* (citations omitted). Circumstantial evidence will satisfy CCA's "clear and convincing" burden only where the inference that CCA seeks to draw from that evidence is: (1) reasonable; (2) based on sufficient evidence; ***and also*** (3) "the single most reasonable inference." *Anhing Corp. v. Thuan Phong Co. Ltd.,* 215 F. Supp. 3d 919, 937 (C.D. Cal. 2015) (citing *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,* 537 F.3d 1357 (Fed. Cir. 2008)).

CCA alleges that BBK (1) misrepresented to the PTO that BBK is a tobacco company whose smoking products are sold in lawful commerce and (2) failed to disclose that its smoking products are "primarily intended" by BBK to be used with  marijuana.[16] First, CCA's reliance on an alleged failure to disclose an alleged subjective intent regarding all possible uses of BBK's RAW® branded products fails as matter of law

---

[14] This section assumes that the Court permits CCA to pursue this Counterclaim despite CCA's admitted illegal conduct.  *See* Section I, *supra*.

[15] *See Robi v. Five Platters, Inc.,* 918 F.2d 1439, 1444 (9th Cir. 1990) (party seeking to cancel a mark must prove fraudulent procurement by clear and convincing evidence).

[16] Doc. 169, pp. 57-58, ¶¶66-67. Attached as Exhibit 6 is a summary exhibit setting forth, for each registration that CCA seeks to cancel (the "Challenged Registrations"), the registered mark, the identified goods, and the date of the declarations.  CCA must prove its fraud claim separately as to each Challenged Registration, and CCA cannot do so.

13

because no such duty to disclose exists.   <u>Second</u>, CCA cannot prove by clear and convincing evidence that the representation that "BBK is a tobacco company" is false, or material, or that the PTO relied on the statement.   <u>Third</u>, CCA cannot prove "to the hilt" that any representation that the goods identified in various trademark applications were "used in commerce" was false.

**A.     No Duty To Disclose All Potential Uses.**

CCA's reliance on an alleged BBK omission fails as a matter of law because "[t]here is no affirmative duty of disclosure on an applicant." MCCARTHY § 31:69.  CCA alleges that, even if BBK's affirmative statements were true (and they were), BBK "fraudulently concealed material facts, i.e., that the respective BBK Products are primarily intended or designed for use in preparing and/or inhaling cannabis." [Doc. 169, p. 39, ¶31] As discussed herein, the undisputed facts show that BBK's products undeniably have legal uses and thus BBK's representation that the marks were used with the products "in [lawful] commerce" was and is true.  CCA's MIDP disclosure statement cited no law, regulation or case law requiring BBK or any other trademark registrant to identify existing or potential unlawful uses of a product that indisputably has legal uses and is thus in lawful commerce.  BBK is aware of no such authority. Courts in analogous contexts have rejected any such duty of additional disclosure where a trademark applicant's statements to the PTO are true and the PTO asks no questions that would require further disclosure. *See, e.g., Veliz v. Veliz,* 2021 WL 4538489, at *5 (S.D. Tex. Aug. 12, 2021) ("A trademark applicant does not have an 'affirmative duty to disclose all other uses of the mark'") (citing *San Juan Prods, Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 474 (10th Cir. 1988); *see also Anhing Corp. v. Thuan Phong Co. Ltd.,* 215 F. Supp. 3d 919, 936 (C.D. Cal. 2015) (applicant had no duty to disclose geographic reference implied by mark when asked only for a translation). CCA cites no factual evidence suggesting that the PTO was unaware that, for example, RAW brand rolling papers, like all other brands of rolling papers, can be used to consume cannabis, and it is indeed inconceivable that that is the case.

14

**B.      There is no Fraud as to BBK's Declaration for PTO Reg. No. 5046495.**

The PTO issued to BBK Registration No. 5046495 of RAW® as a mark for "[p]roviding consumer and business information and related news in the fields of marijuana and cannabis and medicinal and therapeutic marijuana and cannabis." [Doc. 60, App. A] CCA alleges that a related declaration, submitted on behalf of BBK in response to a request from the PTO, was fraudulent.  [Doc. 169, p.55, ¶58]  CCA cannot prove that allegation by clear and convincing evidence.[17]

The PTO asked BBK to explain whether the services identified in the application comply with the CSA.  BBK's substantive response to that inquiry stated:

> The services described do not involve in any way the sale, provision, and/or possession of marijuana, marijuana-based preparations, or marijuana extracts or derivatives, synthetic marijuana, or any other illegal controlled substances. All of the services described above comply fully with the Controlled substances act, 21 U.S.C. *?? [sic]* 801-971.

[Ex. 7] CCA does not contend that anything in the above-quoted response is false.  Rather, CCA contends BBK's response includes false surplusage describing BBK as "a large company that has manufactured tobacco rolling papers, tubes and other related tobacco accessories for nearly 20 years."  [*Id.*]  That statement cannot support CCA's Fraud Counterclaim.

First, the surplus statement about products BBK manufactures is not material.  The PTO asked BBK to describe the ***services*** it intended to offer on the website and whether those ***services*** would comply with the CSA. The added statement about ***products*** that BBK manufactures was superfluous to the request from the PTO seeking additional information about BBK's ***services*** and could not have affected the decision to register. *See* MCCARTHY § 31:67 ("To constitute "fraud" the knowing misrepresentation to the PTO must be 'material' in the sense that but for the misrepresentation, the federal registration either would not or should not have issued"). CCA has made, and can make, no such showing.

Second, the surplus statement is true.  BBK does make and sell "tobacco rolling

---

[17] CCA previously made clear that this is the sole basis on which CCA seeks to invalidate Reg. No. 5046495.  [Doc. 89, p.17 n.11]

papers, tubes and other related tobacco accessories."  In fact, CCA seeks relief from this Court based at least in part on CCA's submission, as an undisputed fact, that BBK's products *are* "smoker's accessories" sold in "smoke shops." [Doc. 203, p.15 (citing evidence); *see also id.,* p.20 ("there is no overlap between the Raw Garden cannabis concentrate products and BBK's RAW branded smoker's accessories" and "BBK sells RAW-branded rolling papers everywhere, including brick-and-mortar 'smoke shops'"), and p. 21 (discussing "[a] tobacco smoker looking to roll his own tobacco cigarettes with RAW rolling papers")]  Further proof that BBK does offer tobacco products is found in the undisputed facts that BBK holds tobacco licenses in nearly 40 states [Ex. 8] and has paid ███ of dollars of taxes to state and local governments to sell tobacco products [Ex. 9, p. 16].

Moreover, the surplus statement about "tobacco" products encompasses the plethora of tobacco products BBK offers under various brands, as well as the RAW® brand. [Ex. 10 and Ex. 11]  Even if it were assumed for the sake of argument (and contrary to the law and the evidence) that RAW® branded products are "drug paraphernalia," nearly ███ of BBK total sales in 2020 were tobacco products and accessories that CCA does not even allege are "drug paraphernalia. [Ex. 12]  Thus, even proof of CCA's "drug paraphernalia" allegations would not demonstrate anything false in BBK's declaration that it is "a large company that has manufactured tobacco rolling papers, tubes and other related tobacco accessories for nearly 20 years."

### C.     BBK's "Use in Commerce" Declarations Were Not Fraudulent.

CCA seeks to cancel (or partially cancel) ten (10) of the Challenged Registrations on the basis that the "use in commerce" declaration in the related BBK application was false because some of the goods identified in those registrations are allegedly "drug paraphernalia" under section 863 of the CSA, 21 U.S.C. § 863 ("Section 863").

Even accepting CCA's allegations as true, those allegations do not encompass all

the goods identified in the challenged PTO applications.[18]  CCA does not allege all the identified goods are "drug paraphernalia," so there is no alleged fraud with respect to those identified goods and no basis (or claim) to cancel the registration as to those goods. For clarity, BBK will refer to the goods that CCA does allege are "drug paraphernalia" as the "Challenged Goods."[19]

As to the Challenged Goods, Section 863, by its terms, "shall not apply to . . . any item that . . . is  . . . traditionally intended for use with tobacco products, including any pipe, paper, or accessory."   21 U.S.C. § 863(f)(2) (the "Tobacco Exemption").  Thus, to invoke Section 863, CCA first must demonstrate that each of the Challenged Goods does not fall within a category of items that are "traditionally intended for use with tobacco products."  If the Tobacco Exemption of § 863(f)(2)  applies to a product, then that product is excluded from "drug paraphernalia" provisions of the CSA. *Lifted Ltd., LLC v. Novelty, Inc.*, 2021 WL 4480566, at *3 (D. Colo. September 30, 2021) (rejecting argument that defendant's marketing was relevant and holding "the tobacco exemption removes from Section 863's purview any item that is 'traditionally intended' for use with tobacco, regardless of any of the other factors in the statute").

### 1.    Section 863(f)(2)  is an Objective Standard, Not a Subjective Inquiry Into the Intent of a Particular Defendant.

In *Posters 'N' Things v. U.S.*, 511 U.S. 513 (1994), the Supreme Court held that "traditionally intended for use with tobacco products," as used in §863(f)(2) (previously

---

[18] For example, with respect to Reg. No. 4325822, CCA does not allege any fraud with respect to cigarette filters.  Thus, there is no basis to cancel the registration as to cigarette filters. Registration Nos. 4412202 and 4766952 also include identified goods as to which CCA does not allege fraud. [*See* Ex. 6]

[19] CCA must prove the knowing falsity of the "use in commerce" statement separately as to each of the Challenged Goods and registered mark in each Challenged Registration ***at the time of each declaration.***  For example, RAW® Black Organic Hemp rolling papers were first sold in December 2020 only ***after*** the date of the last declaration relating to any registration for cigarette rolling papers.  [*Compare* Ex. 6 *with* Ex. 13] Thus, no analysis of RAW® Black Organic Hemp rolling papers is relevant to CCA's Fraud Counterclaim. It should be noted that the packaging for Black Organic Hemp rolling papers states "not for use with tobacco" because FDA approval for tobacco use for that specific product was still pending. [Ex. 13]

codified at § 857(f)), is an ***objective*** standard that looks to the traditional use of similar products and ***not*** the subjective intent of a particular party regarding its particular product. The Court explained:

> An objective construction of the definitional provision also finds support in § 857(f), which establishes an exemption for items "traditionally intended for use with tobacco products." ***An item's "traditional" use is not based on the subjective intent of a particular defendant.***

511 U.S. at 520 (emphasis added).  In a concurring opinion joined by Justices Kennedy and Thomas, Justice Scalia explained that § 863(f)(2)  makes any "intent" analysis irrelevant when the items fall into the category of items traditionally used with tobacco:

> Because of the ready (though not ordinary) use of items such as cigarette paper and tobacco pipes for drug purposes, tobacconists would have been in constant danger of being accused of having an unlawful intent in their sales— so Congress gave them what amounts to a career exception.

*Id.* at 529 (Scalia, J., concurring).

The objective standard of § 863(f)(2) evaluates the "traditional use" of an item by reference to the historical use of the type of item in question: "An item can only be 'traditionally intended for use with' tobacco by reference to history, past practice, and other objective factors."  *U.S. v. Dyer,* 750 F. Supp. 1278, 1287 (E.D. Va. 1990).

The question, then, is not whether BBK's specific Challenged Goods themselves are "traditionally intended for use with tobacco products," as CCA seems to argue,[20] but whether such products are items that in general have been traditionally intended for such use.  Adopting CCA's approach would run afoul of the Supreme Court's directive in *Posters 'N' Things* that "[a]n item's "traditional" use is not based on the subjective intent of a particular defendant."  511 U.S. at 520. For example, in *Lifted Ltd.,* the Court examined whether a "Toker Poker" product consisting of a lighter case, a tamper, and a poker was "traditionally intended" for use with tobacco.  The court first concluded that, in general, lighter cases, tampers and pokers are all items "traditionally associated with tobacco use" and observed that the each of those categories of item is specifically listed

---

[20] [Ex. 5, at p. 71 ("The BBK Products are drug paraphernalia that are not 'traditionally intended for use with tobacco products.' 21 U.S.C. § 863(f) ")]

within Class 34 of the PTO's trademark classifications. 2021 WL 4480566, at * 2.[21]  The

court then held that the unique design of the product at issue "does not make the Toker

Poker any less 'traditionally intended for use with tobacco products.'"  *Id.* (quoting 21

U.S.C. § 863(f)(2)).  Finally, the court rejected the argument that marketing or other

indicia of intent was relevant to the "traditionally intended" for use with tobacco:

> Since a lighter holder, a tamper, and a poker are all products traditionally
> intended for tobacco use, regardless of any other uses they might have,
> plaintiff's marketing does not change a traditional use to a non-traditional
> one.  As the Supreme Court has stated, "[a]n item's 'traditional' use is not
> based on the subjective intent of a particular defendant."

*Id.,* at *3 (quoting *Posters 'N' Things*, 511 U.S. at 520-21).

## 2.    Rolling papers are *per se* "traditionally intended" for use with tobacco.

Just as § 863(d) identifies items that are *per se* within the definition of "drug

paraphernalia," § 863(f)(2)  identifies "papers" as items that are *per se* within the items

"traditionally intended" for use with tobacco.[22] The Food and Drug Administration

("FDA") regulates rolling papers as tobacco products.[23] As a matter of law, Congress

specified rolling papers (by whomever manufactured and distributed, and however

advertised) as an item "traditionally intended" for use with tobacco that pursuant to §

863(f)(2) **cannot** constitute "drug paraphernalia" under Section 863.  As matter of law,

CCA's Fraud Counterclaim fails as a whole with respect to Reg. Nos. 2989221, 3422929,

---

[21] Several of Challenged Goods—cigarette rolling papers and cigarette papers, cigarette filters, cigarette tubes, cigarette-rolling machines and smokers' rolling trays—likewise appear in the PTO Acceptable Identification of Goods Manual in Class 34. [*See* idm-tmng.uspto.gov/id-master-list-public.html (last visited February 9, 2022)]

[22] This does not mean that every rolling paper can necessarily be used with every type of tobacco.  Certain cuts of tobacco do not burn as easily (and should be ground into smaller pieces).  [Ex. 14 at 327:20-330:20]  As BBK's founder explained, "[a]ll RAW rolling papers are suitable for use with tobacco" [*id.* at 330:21-24], "are designed for use with tobacco and are tested with tobacco" [*id.* at 332:23-333:1].

[23]   *E.g.,*   www.fda.gov/tobacco-products/products-ingredients-components/roll-your-own-tobacco (last visited February 9, 2022), which includes the following statement:

**FDA Regulation of Roll-Your-Own Tobacco Products**
FDA regulates the manufacture, import, packaging, labeling, advertising, promotion, sale, and distribution of roll-your-own tobacco and cigarette tobacco under the Federal Food, Drug, and Cosmetic Act (FD&C Act) and its implementing regulations. FDA also regulates the tobacco rolling paper.

4041076 and 4647824, each of which is for use of RAW® (or another mark) only with rolling papers, and fails in part with respect to Reg. Nos. 4074036 and 4325822, which are for use of RAW® (or another mark) with rolling papers and other identified goods.

### 3. Each of the Challenged Goods is an example of items that are "traditionally intended" for use with tobacco.

At the motion to dismiss stage, CCA promised the Court that "CCA will prove that the products are not subject to the tobacco exemption at the appropriate time." [Doc. 34, p. 2] The time has come. Despite the close of all discovery, CCA has not identified any expert opinion or fact on the historical use of any of the categories of items within which the Challenged Goods fall. Indeed, the opening report of CCA's proposed "drug paraphernalia" expert, Thomas Tiderington, the Chief of Police of a small township in Michigan [Ex. 15 at 10:9-13] *did not even consider* § 863(f).[24]  Mr. Tiderington disclosed no opinions in either report as to whether rolling papers or any of the other categories into which the Challenged Goods fall are "traditionally intended" for use with tobacco. [*Id.* at 137:17-22; 183:3-9; 185:8-18; 185:19-186:2; 187:2-11; 188:10-13; 188:14-18; 188:19-25; 189:1-3; 189:4-6]

Moreover, Mr. Tiderington admitted that he is not qualified to testify on the issue:

Q.   Now you don't cite in your initial report, Exhibit 1, any experience that you had personally in the tobacco industry; is that right?

A.   That's correct.

Q.   And you don't consider that you have any expertise in that area; is that right?

A.   No.

Q.   Correct?

A.   Correct.

Q.   Okay. You don't consider yourself an expert in what products, in general, have traditionally been used as tobacco products; is that

---

[24] *See* Ex. 16 ¶30 ("In order to accurately assess and determine if each of the products constitutes drug paraphernalia, I considered the following," listing only 21 U.S.C. § 863(a) and (d)); *see also* Ex. 15 at 62:18-22:

Q.   When you say in paragraph 30 that you considered the following and you cite some provisions from Section 863, those are the ones you considered, right?

A.   That's correct.

right?

A.      That's correct; I do not.

[*Id*. 15 at 37:4-16]  CCA has no witness and no other relevant evidence to show that the Challenged Goods are not types of products that are "traditionally intended" for use with tobacco. Summary judgment is proper because CCA cannot prove this essential, threshold issue. *Arizona v. ASARCO*, 2010 WL 11519286, at *2 (D. Ariz. May 4, 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986)).[25]

The only evidence of record concerning whether the Challenged Goods are types of products that are "traditionally intended" for use with tobacco comes from BBK's expert, Lou Maiellano, a 35-year veteran of the tobacco industry with specific expertise in the billion-dollar roll-your-own segment of the tobacco market.  [Ex. 17 at 2-3]  In light of specific historical information and the use of each item by roll-your-own tobacco enthusiasts, Mr. Maiellano opines that each of the Challenged Goods falls within a category of "items traditionally used, or intended to be used, with tobacco."  [Ex. 17 at 12; *see id*. at 12-19 (rolling papers); 19-24 (shredders and grinders); 24-27 (hand-held rolling machines); 27-42 (cigarette tubes); 42-45 (scoops); 45-48 (injectors); 48-52 (rolling trays); and 52-56 (cigarette holders)]

Mr. Tiderington's belated attempt to analyze the issue in rebuttal to Mr. Maiellano's opinions is not available for CCA's case in chief because it was not timely disclosed as an opinion on an issue on which CCA has the burden of proof. [Doc. 31, ¶5(a)]  In any event, Mr. Tiderington's rebuttal report reflects his admitted lack of qualifications on the "traditionally intended for tobacco use" issue and applies an incorrect

---

[25] It is undisputed that, although BBK imports virtually all of the Challenged Goods, BBK has never had a shipment seized or refused entry by Customs and Border Patrol.  [Ex. 9, p.17]  Seizures of shipments not involving BBK cannot discharge CCA's burden because there is no evidence of what standard was employed, whether the Tobacco Exemption in Section 863(f)(2)  was considered, or whether the involved non-party presented any evidence concerning the Tobacco Exemption.  Mr. Tiderington does not know what statutes were cited in seizure reports he referenced. [Ex. 15 at 166:2-170:21]  In fact, one of those reports cites 21 U.S.C. § 387t as the basis for seizing Raw-branded goods, which provides labelling requirements for tobacco products other than cigarettes, indicating that the agency considered the products to be ***tobacco products.***  [Ex. 15 at 166:21-170:6, Ex. 22; Ex. 23].

standard.[26]  Violating  basic  principles  of  statutory  construction,  Mr.  Tiderington improperly substitutes the statutory "drug paraphernalia" analysis for the "traditionally used with tobacco" analysis that must be conducted before the "drug paraphernalia" analysis can be applied.  [Ex. 15 at 137:17-22; 185:8-187:11]  Mr. Tiderington's belated Tobacco  Exemption  analysis  was  wrongly  premised  on  "the  subjective  intent  of  a particular defendant," an analysis expressly precluded by *Posters 'N Things*.

CCA may ask the Court to misread the statute and improperly conflate the "drug paraphernalia" inquiry with the "traditionally used with tobacco" inquiry by considering evidence of BBK's design or marketing efforts.  That suggestion should be rejected, and any such evidence disregarded, because it violates the Supreme Court's holding that "*[a]n item's 'traditional' use is not based on the subjective intent of a particular defendant.*" *Posters 'N Things*, 511 U.S. at 520 (emphasis added); *e.g.*, *Lifted Ltd.*, 2021 WL 4480566, at *2-*3 (rejecting similar attempt).  Any such suggestion also violates basic statutory construction by applying the "drug paraphernalia" analysis to determine whether an item is excluded from the "drug paraphernalia" analysis by reason of the Tobacco Exemption— rendering the exemption meaningless. Section 863(f) provides a complete exemption for categories of items that have been traditionally intended for use with tobacco, and for such items the statute's criteria for "drug paraphernalia" simply do not come into play.

## VI.   CCA CANNOT PROVE ITS UNLAWFUL USE COUNTERCLAIM.[27]

The  above  discussion,  incorporated  herein  by  reference,  demonstrates  that  CCA cannot prove that any of the Challenged Goods are "drug paraphernalia."  That allegation serves as the entire basis for CCA's Unlawful Use Counterclaim.  [Doc. 169, p. 58, Second Cause of Action]  CCA's Unlawful Use Counterclaim necessarily fails.

CCA's Unlawful Use Counterclaim fails for an additional, independent reason:

Courts have held that "a use can be held unlawful **only when the issue of compliance  has  previously  been  determined** (with  a  finding  of  non-

---

[26] Mr. Tiderington's testimony should be precluded for these same reasons.  *See* Motion To Exclude Testimony And Opinions Of Defendant's Expert Thomas Tiderington.
[27] This Section assumes the Court permits CCA to pursue this Counterclaim despite CCA's illegal conduct.  *See* Section I, *supra*.

compliance) by a court or government agency having competent jurisdiction under the statute involved, **or where there has been a per se violation of a statute** regulating the sale of a party's goods."

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.,* 15 F. Supp. 2d 389, 397 (S.D.N.Y. 1998), *aff'd*, 192 F.3d 337 (2d Cir. 1999) (citing cases) (emphasis added).[28]

The Challenged Goods are not types of goods identified in Section 863 as *per se* "drug paraphernalia," and CCA has never alleged to the contrary.  CCA also has no evidence of any prior agency or court ruling that BBK's sale of its RAW® products is unlawful for any reason, much less because they constitute "drug paraphernalia."

## VII.   CCA LACKED THE *BONA FIDE* INTENT TO USE THE RAW GARDEN MARK WITH THE GOODS COVERED BY THE ITU APPLICATIONS.

BBK seeks to void four intent-to-use ("ITU") applications (and the child applications of those ITU applications) filed by CCA[29] to register RAW GARDEN as a mark with various goods identified in those applications:

1.  Serial No. 87/324,212 ('212 Application), filed on February 3, 2017;[30]

2.  Serial No. 88/266,152 ('152 Application), filed January 17, 2019;

3.  Serial No. 88/328,474 ('474 Application), filed March 6, 2019; and

4.  Serial No. 88/488,733 ('733 Application), filed June 25, 2019.[31]

---

[28] *See also Boston Dental Group, LLC v. Affordable Care, LLC*, 2018 WL 1566331, at *6-7 (D. Nev. Mar., 29, 2018); *Vosk Int'l v. Zao Gruppa Predpriyatij Ost*, 2013 WL 5588296, at * (W.D. Wash. Oct. 9, 2013); *General Mills Inc. v. Health Valley Foods*, 24 U.S.P.Q.2d 1270, 1274, 1992 WL 296518 (T.T.A.B. 1992).

[29] CCA admits that Central Coast Agriculture, LLC is CCA's predecessor.  [Doc. 169, pp.14-16, ¶¶99-115]  BBK therefore uses the term "CCA" to refer both to the current Delaware corporation and its predecessor Delaware limited liability company.  BBK originally asserted a claim against the application for RAW GARDEN, Serial No. 87/324, 208.  [Doc. 60, p.46]. CCA abandoned this application, and so the claim is moot as to that application.

[30] BBK's claim with respect to the '212 Application is unaffected by the registration of the mark on September 21, 2021, as the claim looks at the intent as of the 2017 date when the application was filed and not evidence as of 2021. *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 21 (D.C. Cir. 2008).

[31] CCA subsequently divided the '474 and '733 Applications to create forty-two (42) child applications.  [Ex. 18]  Each child application relates back to the date of filing of the parent application and identifies a subset of the goods identified in the parent application.  TMEP §1110.01. BBK's claim as to the parent applications applies equally to each of the child applications.  The '212, '152, '474, and '733 Applications, together with any child applications, will be referred to collectively as the "ITU Applications."

23

CCA did not, and cannot, produce any evidence that CCA had a *bona fide* intent when CCA filed the ITU Applications to use the mark with the identified goods.

### A.     The Applicable Law And Burdens.

The Lanham Act permits a party who has a *bona fide* intent to use a mark in commerce to file an ITU application before actual use, 15 U.S.C. § 1051(b), and upon registration, the mark is granted a priority date based on the ITU application date.  A valid ITU application requires "both actual intent to use a mark in commerce and evidence, contemporary with the application, that objectively demonstrate such an intent." *Aktieselskabet*, 525 F.3d at 21.  For an intent to be "bona fide," the intent must be "firm," "demonstrable" with "objective evidence of intent" and "more than a mere subjective belief." *M.Z. Berger & Co., Inc. v. Swatch AG*, 787 F.3d 1368, 1375-76 (Fed. Cir. 2015).

BBK discharges its burden to prove CCA's lack of *bona fide* intent by showing the "absence of any documentary evidence on the part of [CCA] regarding such intent." *Swiss Grill Ltd. v. Wolf Steel Ltd.*, 2015 WL 5675642, *8 (TTAB 2015). CCA must rebut that *prima facie* case through more than a mere statement of subjective intention. *Id.*; *Honda Motor Co., Ltd. v. Friedrich Winkelmann*, 90 U.S.P.Q.2d 1660 (TTAB 2009).

### B.     CCA Has No Competent Evidence Of A Bona Fide Intent To Use.

Despite the Court's MIDP requests for relevant documents, and a specific document request from BBK [Ex. 19], CCA produced no document concerning any of the goods listed in the ITU Applications, much less documents showing CCA's alleged intent, ***as of the dates CCA filed each ITU Application*** with the PTO in 2017 and 2019, to use in commerce the RAW GARDEN marks on the products covered in the ITU Applications.[32] Further, CCA's sworn interrogatory response affirmatively avers that, with respect to the goods in the ITU Applications, CCA has "no specific date range of planned use, or specific date of intended first use." [*See* Doc. 230-10, p.32]

---

[32] When CCA filed the '212 Application, the CSA did not exclude "hemp" from the definition of "marijuana," a Schedule 1 drug. CCA signed both a declaration and a separate statement that the goods listed in the '212 Application do not include hemp or marijuana. [Ex. 20]

1    The lack of documentary evidence demonstrating CCA's bona fide intent to use

2 the RAW GARDEN mark in commerce as of the date CCA filed the ITU Applications

3 discharges BBK's burden and warrants summary judgment for BBK. *See Honda Motor*

4 *Co.,* 90 U.S.P.Q.2d at 1663-64; *DC Comics & Marvel Characters, Inc.,* 2009 WL

5 4085622, at *5 (TTAB Aug. 21, 2009).  Further, CCA cannot rebut BBK's prima facie

6 case of lack of bona fide intent to use.  CCA's own officers testified that CCA █████

7 ████████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████████

9 █████. [Ex. 21 at 62:13-24; 70:12-22; 72:9-73:5; 73:15-18; 73:24-74:13; 78:15-79:2;

10 79:3-5; 79:6-11; 80:19-81:2; 83:7-17; 88:22-89:8; 95:22-96:4; 96:13-19; 97:18-24; 100:5-

11 11; 103:10-104:1; 106:1-25; 108:13-21; 109:6-12; 110:7-12; 110:8-13; 111:22-25; 112:1-

12 4; 112:10-15; 120:19-121:6; 122:10-13; 123:3-8; Ex. 3 at 47:11-23; 149:10-12; 149:14-

13 23; 150:5-151:4; 160:11-25;  201:8-202:3]

14    CCA's lack of the requisite *bona fide* intent to use the RAW GARDEN mark in

15 commerce with the goods listed in the ITU Applications at the time the ITU Applications

16 were filed warrants summary judgment for BBK on BBK's Count 6 (Doc. 60).

### Relief Requested

18    For the reasons stated, BBK respectfully requests the Court grant BBK's Motion

19 for Partial Summary Judgment in its entirety and enter summary judgment in favor of

20 BBK on all of CCA's affirmative defenses, both of CCA's counterclaims, and Count VI

21 of BBK's Amended Complaint.

22    RESPECTFULLY SUBMITTED this 11th day of February, 2022.

23                                        */s/ Charles S. Price*
                                         Frank G. Long
24                                       J. Alex Grimsley
25                                       Charles S. Price
                                         Cindy A. Villanueva
26                                       **DICKINSON WRIGHT, PLLC**
27                                       1850 N. Central Avenue, Suite 1400
                                         Phoenix, Arizona 85004-4568
28                                       *Attorneys for Plaintiff and Counterdefendant*

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of February, 2022, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants.

By:  */s/ Veronica Newbanks*

4822-0543-1807

26