Frank G. Long (#012245)
flong@dickinsonwright.com
J. Alex Grimsley (#019111)
jagrimsley@dickinsonwright.com
Charles S. Price (#006197)
cprice@dickinsonwright.com
Cindy A. Villanueva (#028163)
cvillanueva@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
Phone: (602) 285-5000
Fax: (844) 670-6009
Firm Email:  courtdocs@dickinsonwright.com

*Attorneys for Plaintiff/Counterdefendant*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>        Plaintiff,<br><br>    v.<br><br>Central Coast Agriculture, Inc., a Delaware corporation,<br><br>        Defendants. | Case No. 2:19-cv-05216-PHX-MTL<br><br>**BBK'S RESPONSE TO CCA'S MOTION TO EXCLUDE THE TESTIMONY OF BBK'S EXPERT LOUIS MAIELLANO** |
| Central Coast Agriculture, Inc., a Delaware corporation,<br><br>        Counterclaimant,<br><br>    v.<br><br>BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>        Counterdefendant. | |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

I.   MR. MAIELLANO'S OPINIONS ARE BASED ON HIS SPECIALIZED KNOWLEDGE AND ARE SUPPORTED BY AMPLE FACTS AND DATA. ............................................................................................................................ 1

    A.   Mr. Maiellano's Opinons Are Relevant ........................................................ 2

    B.   Mr. Maiellano Is Well-Qualified. .................................................................. 5

    C.   Mr. Maiellano's Opinions Are Reliable. ....................................................... 9

II.  MR. MAIELLANO IS NOT OFFERING A LEGAL OPINION. ......................... 13

Relief Requested ..................................................................................................................... 14

# TABLE OF AUTHORITIES

Cases

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014) ................................................................................. 9
*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................................ 5
*Eisenbise v. Crown Equip. Corp.*,
   260 F. Supp. 3d 1250 (S.D. Cal. 2017) .................................................................. 12
*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ................................................................................. 14
*In re Citimortgage, Inc. HAMP Litig.*,
   No. MDL 11-2274 DSF, 2013 WL 8844095 (C.D. Cal. Oct. 7, 2013) .................. 12
*In re Packaged Seafood Prods. Antitrust Litig.*,
   2020 WL 5739316 (S.D. Cal. Sept. 24, 2020) ....................................................... 12
*In re Roundup Prod. Liab. Litig.*,
   390 F. Supp. 3d 1102 (N.D. Cal. 2018) ................................................................... 9
*Lifted Ltd., LLC v. Novelty, Inc.*,
   2021 WL 4480566 (D. Colo. September 30, 2021) ................................................. 3
*New Jersey v. TLO*,
   469 U.S. 325 (1985) .............................................................................................. 11
*Posters 'N' Things v. U.S.*,
   511 U.S. 513 (1994) ..................................................................................... 3, 4, 11
*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010) ................................................................................... 5
*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*,
   752 F.3d 807 (9th Cir. 2014) ................................................................................... 7
*Rock v. Arkansas*,
   483 U.S. 44 (1987) .................................................................................................. 5
*Smilovits v. First Solar, Inc.*,
   2019 WL 6875492 (D. Ariz. Dec. 17, 2019) ......................................................... 12
*Specht v. Jensen*,
   853 F.2d 805 (10th Cir.1988) ................................................................................ 14
*State v. Brown*,
   801 S.W.2d 474 (Mo. Ct. App. 1990) ................................................................... 11
*Thomas v. Newton Int'l Enters.*,
   42 F.3d 1266 (9th Cir. 1994) ................................................................................... 7
*United States v. Dyer*,
   750 F. Supp. 1278 (E.D. Va. 1990) ......................................................................... 9

Statutes

21 U.S.C. §863(f)(2) ............................................................................................... 1, 2
21 USC Section 863(f) ............................................................................................. 13

Rules

Federal Rule of Evidence 702(a) ............................................................................ 7, 8

Plaintiff and Counterdefendant BBK Tobacco & Foods, LLP ("BBK") respectfully submits this memorandum in opposition to CCA's Motion to Exclude the Testimony of BBK's Expert Louis Maiellano [Doc. 317] ("Motion").

## INTRODUCTION

CCA's Motion should be denied because it: (1) inaccurately describes Mr. Maiellano's qualifications; (2) inaccurately identifies the issues addressed by Mr. Maiellano; (3) misstates the nature of Mr. Maiellano's opinions; and (4) fails to consider fully the basis of those opinions.

Mr. Maiellano offers no opinions in his report or deposition —and will offer none at trial—as to any question of law. Rather, he opines on a factual issue that is relevant to the Tobacco Exemption of the Controlled Substances Act ("CSA"). The Exemption, set forth in 21 U.S.C. §863(f)(2), is based on a determination whether an item is one "traditionally intended for use with tobacco products, including any pipe, paper, or accessory." A factual issue in this case is whether BBK's RAW® brand rolling papers and other smoking products and accessories are within categories of products that are "traditionally intended for use with tobacco products, including any pipe, paper, or accessory." Mr. Maiellano's extensive professional experience in the tobacco industry, particularly the roll-your-own segment of that industry, is precisely the kind of "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue" under Federal Rules of Evidence, Rule 702(a).

The vast majority of the issues raised in CCA's Motion can be resolved conclusively against CCA on the basis of the plain language of the Tobacco Exemption and Maiellano's report. Any remaining issues are, at most, more appropriate as subjects for cross-examination at trial.

## ARGUMENT

**I.   MR. MAIELLANO'S OPINIONS ARE BASED ON HIS SPECIALIZED KNOWLEDGE AND ARE SUPPORTED BY AMPLE FACTS AND DATA.**

1

CCA's Motion should be denied because Mr. Maiellano is well qualified to offer his opinion about the historical or "traditional" intended use of items with tobacco products discussed in his expert report. Also, Mr. Maiellano's opinion is relevant because it applied the correct standard when reviewing the type of products claimed by CCA to be outside the Tobacco Exemption and within the CSA.

## A. Mr. Maiellano's Opinons Are Relevant.

Mr. Maiellano will be able to explain to the jury the nature and extent of the roll-your-own ("RYO") segment of the tobacco market, and will be able to identify to the jury items those items traditionally intended by participants in that part of the tobacco market to be used with tobacco products. That testimony will assist the jury to understand the evidence, as that information that is not within the common knowledge of the average layperson. Further, the factual inquiry of whether or not certain types of items are traditionally used with tobacco products, such as with RYO tobacco consumption, is directly relevant to CCA's counterclaims premised on the allegations that some of BBK's RAW® products are "drug paraphernalia," outside the Tobacco Exemption and within the CSA.

The Tobacco Exemption of the CSA provides, in 21 U.S.C. §863(f)(2), that "this section" (*i.e.* the entirety of the section of CSA section 863 defining and prohibiting the sale of "Drug Paraphernalia") "shall not apply to . . . any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory." Under the Tobacco Exemption, Congress expressly provided that "paper" is an example of an "item traditionally intended for use with tobacco products," and, thereby, per se included "paper" as an "item" for which the prohibition of Section 863 is not applicable. Likewise, Congress provided under the Tobacco Exemption that any other "item" that is "traditionally intended for use with tobacco products" is also excluded from prohibition as "drug paraphernalia" under the CSA. 21 U.S.C. §863(f)(2).

As BBK has shown in other filings [*e.g.* Doc. 293 at 17-19 and Doc. 306 at 2-4], the inquiry under the Tobacco Exemption relates to the traditional use of categories of items in general, not the subjective intent of a user or seller of a particular "item." *See Posters 'N' Things v. U.S.,* 511 U.S. 513, 521 (1994) ("An item's 'traditional' use is not based on the subjective intent of a particular defendant"). In *Lifted Ltd., LLC v. Novelty, Inc.*, 2021 WL 4480566 (D. Colo. September 30, 2021), the court examined the traditional use of the types or categories of items involved, *i.e.* lighter holders, tampers and pokers. The court did not—indeed it declined to—analyze the intent (or the "traditional intent") of the particular party to the lawsuit, stating the following: "Since a lighter holder, a tamper, and a poker are all products traditionally intended for tobacco use, regardless of any other uses they might have, plaintiff's marketing does not change a traditional use to a non-traditional one. As the Supreme Court has stated, '[a]n item's "traditional" use is not based on the subjective intent of a particular defendant.'" 2021 WL 4480566 at *3.

CCA's criticism of Mr. Maiellano for ignoring BBK's specific marketing or other activities ignores the fact that any such evidence is irrelevant. As the Supreme Court has held, the question under the Tobacco Exemption is not whether an individual seller's or user's products are, or were, traditionally used or intended for use with tobacco products. Not only does it stretch words beyond their normal meaning to refer to the "traditional intent" of a single party, but such an inquiry is indeed plainly contrary to, and improper under, to the statutory construction articulated in *Posters 'N' Things*.[1] In short, CCA is criticizing Mr. Maiellano for not engaging in an exercise that Justice Scalia, in his concurring opinion in *Posters 'N' Things*, said Congress intended the Tobacco Exemption to prevent: an inquiry into the marketing efforts of an individual seller, like

---

[1] Under CCA's focus on a particular brand of a type of item, no newly launched brands would ever fall within the Tobacco Exemption as they would have no history of use with tobacco. The Tobacco Exemption should not be interpreted as applying only to particular "brands" of items traditionally used with tobacco, nor does the statutory language permit such a narrowing.

3

1  BBK. As the late Justice wrote: "Because of the ready (though not ordinary) use of items
2  such as cigarette paper and tobacco pipes for drug purposes, tobacconists would have
3  been in constant danger of being accused of having an unlawful intent in their sales—so
4  Congress gave them what amounts to a career exception." 511 U.S. at 529.  CCA's entire
5  approach, in all the briefing on the Tobacco Exemption and in its current Motion
6  objecting to the testimony of Mr. Maiellano, creates the exact "danger" that Justice Scalia
7  warned about, since the essence of CCA's approach is precisely to "accuse [BBK] of
8  having an unlawful intent in [its] sales."

9  Rather than focusing on BBK's or anyone else's subjective intent, Mr. Maiellano
10 correctly focused his inquiry on the traditional use with tobacco products of the type of
11 items that CCA alleges are prohibited by the CSA as "drug paraphernalia," *i.e.* rolling
12 papers, rolling machines, grinders, scoops, injectors and other smoking accessories. That
13 objective, historical focus is not an indication that Mr. Maiellano's opinions lack
14 "sufficient facts or data," as CCA argues. [Motion at 5:24-25]  Rather, it shows that Mr.
15 Maiellano focused on the correct (and only relevant) issue under the Tobacco Exemption
16 as construed by *Posters 'N' Things:* namely, whether there is evidence that each category
17 of item was traditionally intended for use with tobacco products, regardless of any other
18 uses they might have and not based on the subjective intent of any particular user or
19 seller.

20 CCA's argument that Mr. Maiellano's opinions are not based on sufficient "facts
21 and data" is further undermined by even a cursory review of his report, attached as
22 Exhibit 1 to CCA's Motion. As shown in that report, Mr. Maiellano: (1) discussed the
23 general history of the RYO ("roll your own") tobacco market and its increasing
24 significance over time in light of increasing tobacco taxation among other factors (Ex. 1
25 at 4-8); (2) provided a detailed explanation of the traditional use of rolling papers with
26 tobacco (*id*. at 12-19); (3) provided a similarly detailed (37-page) historical analysis
27 relating to shredders, grinders, rolling machines, cigarette tubes, scoops, injectors, rolling
28

4

trays, and cigarette holders, (*id*. at 19-56); and (4) set forth a detailed analysis of the history of tobacco smoking and accessories in general (*id*. at 57-63).

Any argument that Mr. Maiellano's opinions are not based on "facts and data" is demonstrably incorrect. The fact that CCA may wish to have the jury consider additional, or different, (and clearly irrelevant) "facts and data" is for cross-examination (if allowed), but is not a basis for exclusion. Opinions like Mr. Maiellano's that are admissible and helpful to the jury should be subject to cross-examination rather than being excluded. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence") (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27, 2010) (reversing exclusion of expert testimony: "For scientific opinion, the court must assess the reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one. Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion").

    **B.**    **Mr. Maiellano Is Well-Qualified.**

BBK has requested that the Court rule as a matter of law that the BBK products challenged by CCA are exempt from the CSA prohibitions of drug paraphernalia due to the Tobacco Exemption. [Doc. 293] In the event the Court determines that CCA's claims with respect to some or all of those products present issues for trial, Mr. Maiellano is well-qualified to provide expert testimony that will be of assistance to the jury. CCA's attempt to denigrate and minimize Mr. Maiellano's background, and the basis of his opinions, is flatly contradicted by Mr. Maiellano's report and presents, at most, fodder for argumentation and cross-examination at trial.

Mr. Maiellano, in fact, has 35+ years of experience in the tobacco industry, and specialized knowledge of the RYO segment of that industry. Although the RYO segment

5

of the tobacco industry has been around for centuries, it is not as "mainstream" today as, for example, manufactured, pre-packaged cigarettes. The RYO tobacco segment, and the items that are traditionally used by participants, are not things with which the average layman is likely to be familiar. Mr. Maiellano's knowledge of, and experience working in, the RYO segment of the tobacco market and products used in that market can assist the jury by explaining that market segment and its traditional products. Mr. Maiellano's knowledge is based on, among other things, the following experiences:

- He sold tobacco product for three industry-leading retailers [CCA Ex. 1 at 2];
- As a retailer, he developed a marketing program from 2001 to 2004 that focused on the RYO segment of the tobacco market and involved research into that segment [*id*. at 4];
- He was the marketing manager of tobacco products for Sunoco APlus, in which capacity he directly oversaw the marketing of such products for over 1100 convenience stores and tobacco outlets and indirectly at over 5000 retail/gas locations [*id*.];
- As marketing manager of tobacco, he "had a well-diversified offering that included RYO tobacco products and accessories" [*id*.];
- He served on the retailer advisory boards of United States Smokeless Tobacco, RJ Reynolds Tobacco and Phillip Morris Tobacco [*id*.];
- He served as the Chair of the Tobacco Subcommittee of the Convenience Retailer Conference Advisory Council and as a member of other industry association boards [*id*.];
- He has been a tobacco industry consultant for the last 17 years, working with numerous retailers who have a "significant RYO offering" [*id*. at 3];
- He regularly visits tobacco stores as part of his business, and for purposes of his report documented such outlets with photographs and interviewed tobacco store owners [*id*. at 3, 10-11, 17-19, 28-30; 32-34];

6

1  - As a result of long experience in the tobacco industry and the RYO segment in particular, he has familiarity with FDA guidance and tobacco industry market research relating to the RYO market [*id.* at 4-8]; and

- He has personally recommended to various retailers that they carry many of the items at issue as part of a well-rounded RYO offering [*e.g.*, Depo. at 22:24-24:9].

Plainly, that background (almost none of which is mentioned by CCA in its Motion) provides Mr. Maiellano with the "specialized knowledge" in the RYO tobacco industry that qualifies him as an expert under Federal Rule of Evidence 702(a). *See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (holding that trial court abused its discretion in determining witness with 38 years of experience in property damage repair was not qualified as an expert); *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (reversing exclusion as abuse of discretion because expert on industry custom was "clearly" qualified when he had "29 years of longshore experience, and … worked in a variety of job categories for numerous stevedoring companies"). It is reductive and highly inaccurate to claim that his report is based "almost entirely on Google searches." In fact there are likely only a handful of experts in the country with the background and experience to conduct the research and draft a report as informed and as comprehensive as Mr. Maiellano's. What we do know is that CCA did not retain such an expert, even though proving the applicability of the CSA (in the face of the Tobacco Exemption) is an essential element of CCA's prima facie case.

CCA's claim that Mr. Maiellano "testified that the average roll-your-own consumer could do the same research and write the same report he prepared" [Motion at 1:20-21; 6:17-22] is inaccurate. While Mr. Maiellano acknowledged that information on Google is generally available to the average RYO consumer (as it is to the general public), he further testified that evaluating that information and drafting his report required the specialized knowledge that he has, based on his industry experience:

7

1
2   Q. BY MR. TING: Would you have been able to write your expert report without your industry experience?
3
4   A. No, not at all.
5   Q. Why not?
6   A. I've worked in this industry for 35 years. I've dabbled in all parts of it. I have live experience. I may not have been a roll-your-own consumer myself, but I don't partake of any tobacco or any nicotine. But I looked and researched information using Google, even for, you know, other reports all the time, my presentations, I've spoken frequently. So I hope that answers your question.
7
8
9
10
11  Q. Without your expert experience would you still have been able to do the same Google searches and find the same information you use in your report?
12
13
14  MR. GRIMSLEY: Foundation.
15  THE WITNESS: Would I have found the information? Yes.
16  Q. BY MR. TING: Would you have been able to take that information and write up a similar history of tobacco as you presented in section 6 of your report?
17
18
19  A. I don't believe I would have. I believe each individual part people could have found, I found. But I knew more about tobacco through my experience and my expertise, working with manufacturers, retailers, that stood in the history when it came to tobacco.
20
21
22
23     Ex. A (Maiellano Depo.) at 197:14-198:19.
24     In short, Mr. Maiellano has substantial tobacco industry experience, especially in
25  the RYO segment, and "specialized knowledge" that qualify him as a Rule 702(a) expert.
26  The jury will be assisted by his testimony. CCA's claim that "Mr. Maiellano's testimony
27  presents a case study in why a purported expert should be excluded" [Motion at 5:11-12]
28

depends on a systematic misrepresentation of his background and disregard of his expertise.

CCA presents the kind of lawyer argumentation that is, at best, appropriately reserved for cross-examination or closing argument. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (trial court abused discretion in excluding expert testimony because even "'[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.' The judge is 'supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.' Simply put, '[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury'") (citations omitted); *In re Roundup Prod. Liab. Litig.*, 390 F. Supp. 3d 1102, 1109 (N.D. Cal. 2018) ("[T]he case law—particularly Ninth Circuit case law—emphasizes that a trial judge should not exclude an expert opinion merely because he thinks it's shaky, or because he thinks the jury will have cause to question the expert's credibility. So long as an opinion is premised on reliable scientific principles, it should not be excluded by the trial judge; instead the weaknesses in an unpersuasive expert opinion can be exposed at trial, through cross-examination or testimony by opposing experts").

### C. Mr. Maiellano's Opinions Are Reliable.

In its attempt to establish the supposed unreliability of Mr. Maiellano's opinions, CCA cites a single sentence from *United States v. Dyer*, 750 F. Supp. 1278, 1287 (E.D. Va. 1990), namely the observation that "[a]n item can only be 'traditionally intended for use with' tobacco by reference to history, past practice, and other objective factors."

Yet, it is critical to observe (although CCA does not) that the immediately preceding sentence in that same case emphasizes why Mr. Maiellano's opinions are relevant and reliable. In that sentence, *Dyer* states: "Congress' choice of the modifier 'traditionally' confirms the statute's *objective standard* because *that* term *reaches beyond a defendant's mental state*." *Id.* (emphasis added). The mainstay of CCA's approach is to

focus on BBK's subjective "mental state," contrary to the guidance of one of its principal cases.

Even looking at CCA's one cited sentence from *Dyer* by itself and out of context, as CCA does, CCA's argument quickly falls apart. CCA acknowledges that "Mr. Maiellano's report is saturated with history" [Motion at 2:12] but then proceeds to argue that Maiellano "ignores past practice and objective factors." [*Id.*] Maiellano provides some 60 pages of history (as CCA admits), but that same material also constitutes a detailed discussion of the past practices of RYO tobacco users and tobacco accessory sellers, and of the "objective factors" that establish that the challenged products are types of items that have been traditionally intended for use with tobacco products.

CCA's claim that "Mr. Maiellano testified that he did not examine any of the RAW Products, test them, study them, sample them or thoroughly inspect them" [Motion at 7:6-8] ignores Mr. Maiellano's testimony that he personally: (1) viewed RAW® brand rolling papers in a retail setting [Ex. 2 at 77:10-19]; (2) handled RAW® brand rolling papers and a cone [*id.* at 78:3-8]; (3) "physically touched" the box for a RAW® brand rolling machine [*id.* at 78:18-21]; (4) picked up the package for a RAW® brand cigarette tube [*id.* at 78:24-79:5]; (5) "touched [RAW® brand rolling trays] to see them" [*id.* at 79:6-10]; (6) physically handled, he believes, RAW® brand scoops [*id.* at 7915-17] and (7) studied images of all of the challenged products as shown in BBK's produced documents and elsewhere [*id.* at 12, 19, 24, 27, 32, 37, 42, 45, 48, 50, 52]. In any event, CCA provides no argument whatsoever about what any more thorough examination would have yielded, especially since Mr. Maiellano's report was focused (necessarily and appropriately) on the traditional use of rolling papers and other RYO smoking accessories in general, regardless of any other uses they might have and not based on the subjective intent of any particular user or seller.

CCA also faults Mr. Maiellano for failing to note the potential use of BBK's RAW® branded products, or smoking accessories in general, with cannabis. The CSA requires no such inquiry because of the Tobacco Exemption. The Tobacco Exemption

10

does not require a showing that a particular type of item has been "exclusively" used for tobacco purposes. Indeed, the very purpose of the Tobacco Exemption was to address what Justice Scalia referred to as the "the ready (though not ordinary) use of items such as cigarette paper and tobacco pipes for drug purposes." *Posters 'N' Things*, 511 U.S. at 529 (concurring opinion). That observation reflects the obvious fact that virtually any item suitable for consuming tobacco is also suitable for consuming other smoking materials, including cannabis. It would re-write the CSA (and subvert the intent of Congress in passing the law) if any item could be excluded from the Tobacco Exemption and included in the CSA's prohibition of "drug paraphernalia" merely by a showing that the item had a "ready use for drug purposes." If the item had no such potential use, there would be no need for the Tobacco Exemption in the first place.

Equally unavailing, CCA claims that Mr. Maiellano's opinion is unreliable because he failed to consider particular evidence that **CCA believes** should have been reviewed, specifically various items of evidence that CCA contends show a subjective intent by BBK that its particular products be primarily used with cannabis. [Motion at 9-12] For reasons explored above, and in detail in Doc. 293 and Doc. 306, such an inquiry ignores the statutory interpretation of the CSA articulated in the Supreme Court's holding in *Posters 'N' Things*, namely that "[a]n item's 'traditional' use is not based on the subjective intent of a particular defendant." That Mr. Maiellano did not make a legally irrelevant factual inquiry is not a basis for exclusion.[2]

---

[2] CCA cites two cases in which rolling papers are referred to as potentially being used with cannabis (*New Jersey v. TLO*, 469 U.S. 325 (1985); *Boone v. Commonwealth*, 2008 WL4298322 (Va. Ct. App. 2008)), but in neither of those cases was the defendant charged with possession of "drug paraphernalia" under the CSA. In *TLO* the defendant was charged with possession of cannabis but not possession of "drug paraphernalia," and, in *Boone*, no rolling papers were even found in the defendant's possession. A third case cited by CCA, *State v. Brown*, 801 S.W.2d 474 (Mo. Ct. App. 1990), involved a "drug paraphernalia" charge under state law, but not the CSA, and thus likewise provides no support for CCA's position . None of those cases construe the Tobacco Exemption.

Further, nothing in Rule 702 or *Daubert* required Mr. Maiellano to consider every single piece of evidence in the record. *In re Packaged Seafood Prods. Antitrust Litig.*, 2020 WL 5739316, at *4 (S.D. Cal. Sept. 24, 2020) ("There is no rule that an expert must consider and discuss all of the evidence on the record in order to proffer admissible testimony....Those are grounds for cross-examination."); *In re Citimortgage, Inc. HAMP Litig.*, No. MDL 11-2274 DSF, 2013 WL 8844095, at *3 (C.D. Cal. Oct. 7, 2013) (an expert's "failure to deal with the entire universe of documents is not a reason for exclusion"). Criticism as to what Mr. Maiellano did not review is not a ground for exclusion, but instead goes to weight and should be examined through cross-examination. *Smilovits v. First Solar, Inc.*, 2019 WL 6875492, at *5 (D. Ariz. Dec. 17, 2019) ("[C]riticism of an expert's decision to base an opinion on some facts but not others should be challenged through the traditional means at trial, not through a Daubert motion.") (citation omitted).

That rule applies also to CCA's Exhibit 3, which includes what are purported to be two reports by U.S. Customs and Border Patrol ("CBP") of seizures of "rolling trays" as drug paraphernalia, plus a summary page entitled "Public Notice Search." Exhibit 3 does not purport to relate to any RAW® branded product. It provides no description of the products that were seized. There is no indication of any analysis by CBP, including in particular any consideration of the Tobacco Exemption. Exhibit 3, in short, is wholly irrelevant. If CCA wants to elicit Mr. Maiellano's thoughts about Exhibit 3 at trial (even though it post-dates both his deposition and his report), it is free to attempt to do so. Exhibit 3 certainly provides no basis for exclusion of Mr. Maiellano's opinions.

The remainder of CCA's "unreliability" argument consists of mere lawyer argumentation ("clumsy compilation," Motion at 13:13; "outlandish" photos; *id.* at 13:24; "the RAW-branded 'cigarette holders' are not like the holders depicted in his Report") that is appropriately reserved for cross-examination and closing at trial. Such adjective-driven advocacy is not a basis for exclusion of any expert report. *Eisenbise v. Crown Equip. Corp.*, 260 F. Supp. 3d 1250, 1260 (S.D. Cal. 2017) (denying motion to exclude

expert testimony; "To the extent Crown attacks Smith's methodology, such contentions and possible flaws can be addressed through the presentation of contrary evidence and vigorous cross-examination").

## II.  MR. MAIELLANO IS NOT OFFERING A LEGAL OPINION.

Mr. Maiellano will not attempt to tell the jury what the CSA or the Tobacco Exemption means, or how to interpret either. In fact, he does not even mention the CSA or the Tobacco Exemption in his report.  It is the Court's exclusive role to instruct the jury on the law. In the event the Court allows CCA to interpose its "drug paraphernalia" defense, BBK proposes to offer the testimony of Mr. Maiellano to explain the facts pertaining to the RYO segment of the tobacco industry and the items that are traditionally used by participants in that segment of the tobacco market.  That **factual** opinion testimony will ultimately assist the jury to understand the evidence in light of the Court's instructions on the law.

When he was asked by CCA counsel about the CSA and its Tobacco Exemption, Mr. Maiellano testified as follows:

> Q. You were also asked some questions about a statute with citation 21 USC 863F.  Have you ever read that statute?
>
> A. No.
>
> Q. Did you consider 21 USC Section 863(f) in forming your opinions?
>
> A. Not at all.

Ex. A at 203:2-8.

CCA's argument on alleged "legal opinions" is an inconsistent jumble. CCA argues that: "Mr. Maiellano improperly offers an opinion on the ultimate legal issue— whether RAW Products are traditionally intended for use with tobacco products" [Motion at 2:21-22]. Yet, CCA faults Mr. Maiellano for having ***no*** opinion on that very issue. [*Id*. at 15:2-4 ("[W]hen questioned during his deposition about whether he has 'an opinion as

13

1  to what RAW branded rolling papers are intended to be used for,' Mr. Maiellano
2  unequivocally responded 'no'")]. The plain fact is that the "ultimate legal issue" does not
3  relate to BBK's subjective intent, as outlined above [Sec. I(C)]. In any event, CCA's
4  argument that Mr. Maiellano has no opinion as to BBK's subjective intent negates its
5  argument that he will be presenting a legal opinion on that issue. Moreover, Mr.
6  Mailellano's lack of an opinion on BBK's subjective intent is irrelevant since the proper
7  inquiry is an objective inquiry into the traditional use of an item.
8  An expert may testify regarding issues that will assist the jury in deciding the
9  questions that will be put to the jury in the instructions, even if the witness refers to the
10 law in the course of that testimony (which it is not anticipated that Mr. Maiellano will
11 do). *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)
12 (affirming admission of expert testimony; "[A] witness may refer to the law in expressing
13 an opinion without that reference rendering the testimony inadmissible. Indeed, a witness
14 may properly be called upon to aid the jury in understanding the facts in evidence even
15 though reference to those facts is couched in legal terms," citing *Specht v. Jensen*, 853
16 F.2d 805, 809 (10th Cir.1988)). Mr. Maiellano has not exceeded, and will not exceed, his
17 proper role as an expert witness on relevant facts.

**Relief Requested**

For the foregoing reasons, BBK respectfully requests that the Court deny CCA's Motion to Exclude the Testimony of BBK's Expert Louis Maiellano.

RESPECTFULLY SUBMITTED this 25th day of February, 2022.

*Charles S. Price*
Frank G. Long
J. Alex Grimsley
Charles S. Price
Cindy A. Villanueva
**DICKINSON WRIGHT, PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
*Attorneys for Plaintiff/Counterdefendant*

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of February, 2022, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants.

By: *Veronica S. Newbanks*

4862-1814-5295 v2 [58183-66]