Brian W. LaCorte (012237)
*LaCorteB@ballardspahr.com*
Jonathon A. Talcott (030155)
*TalcottJ@ballardspahr.com*
Mitchell Turbenson (033278)
*TurbensonM@ballardspahr.com*
**BALLARD SPAHR LLP**
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Tel.:   602.798.5400
Fax:   602.798.5595

Brett M. Schuman (*pro hac vice*)
*BSchuman@goodwinlaw.com*
Jeremy N. Lateiner (*pro hac vice*)
*JLateiner@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, CA 94111
Tel:   415.733.6000
Fax:   415.677.9041

*Attorneys for Defendant and Counterclaimant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International, | Case No. CV-19-05216-PHX-MTL |
| Plaintiff, | **CCA'S OPPOSITION TO BBK'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| Central Coast Agriculture, Inc., a Delaware corporation, | |
| Defendant. | |
| Central Coast Agriculture, Inc., a Delaware corporation, | **(Oral Argument Requested)** |
| Counterclaimant, | |
| v. | |
| BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International, | |
| Counterdefendant. | |

**Table of Contents**

I.    INTRODUCTION .......................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 2

  A.   BBK is not Entitled to Summary Judgment on its Assertion of Unclean Hands. ............. 2

  B.   The Court Should Deny BBK's Summary Judgment Motion as to CCA's Affirmative
  Defenses. .......................................................................................................................... 5

    1.   Unclean Hands Cannot Be Resolved on Summary Judgment. ....................................... 5

    2.   Laches Cannot Be Resolved in BBK's Favor on Summary Judgment. ........................... 6

    3.   Acquiescence Cannot Be Resolved in BBK's Favor On Summary Judgment. ................. 9

    4.   Waiver Cannot Be Resolved in BBK's Favor on Summary Judgment. ......................... 10

    5.   Estoppel Cannot Be Resolved in BBK's Favor On Summary Judgment. ...................... 10

    6.   CCA's Other Affirmative Defenses Cannot Be Resolved in BBK's Favor on Summary
    Judgment. ......................................................................................................................... 11

  C.   CCA Has Standing to Assert Its Counterclaims. ............................................................. 12

  D.   The Court Should Deny BBK's Summary Judgment Motion as to CCA's Second
  Counterclaim (Unlawful Use). ........................................................................................... 13

    1.   BBK Has Not Carried Its Burden to Demonstrate There Is No Genuine Dispute of
    Material Fact as to the Tobacco Exemption. ..................................................................... 14

    2.   BBK Misunderstands the Supreme Court's "Objective Standard." ............................... 15

    3.   BBK's Rolling Papers Are Not *Per Se* Exempt from the CSA. ................................... 18

  E.   The Court Should Deny BBK's Summary Judgment Motion as to CCA's First
  Counterclaim (Fraud on the PTO). ..................................................................................... 19

    1.   The Lack of a Duty to Disclose Does Not Create a Right to Defraud. .......................... 20

    2.   Mr. Kesselman's Declaration in Reg. No. 5046495 Highlights BBK's Deceptive Intent.
    22

  F.   The Court Should Deny BBK's Summary Judgment Motion as to Count 6 of BBK's First
  Amended Complaint. .......................................................................................................... 23

III.  CONCLUSION ............................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*AirWair Int'l Ltd. v. Schultz*,
  84 F. Supp. 3d 943 (N.D. Cal. 2015) ....................................................... 10

*Bart Schwartz Int'l. Textiles, Ltd. v. F.T.C.*,
  289 F.2d 665 (C.C.P.A. 1961) ................................................................ 21

*Bikila v. Vibram USA Inc.*,
  218 F. Supp. 3d 1206 (W.D. Wash. 2016) ............................................... 9

*BMG Rights Mgmt. (US) LLC v. Global Eagle Ent. Inc.*,
  No. 2:18-CV-03723-VAP-JEMx, 2019 WL 6315533 (C.D. Cal., Sept. 9,
  2019) ....................................................................................................... 12

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................... 23

*Commodore Elecs. Ltd. v. CBM Kabushiki Kaisha*,
  26 U.S.P.Q.2d (BNA) 1503 (T.T.A.B. 1993) ......................................... 25

*In re Cummins-Cobb*,
  No. 2:17-BK-24993-RK, 2020 WL 634140 (Bankr. C.D. Cal., Feb. 10,
  2020) ......................................................................................................... 3

*D'Agnese v. Novartis Pharms. Corp.*,
  No. CV-12-00749-PHX-JAT, 2013 WL 321773 (D. Ariz. Jan. 28, 2013) ................... 1

*Eat Right Foods, Ltd. v. Whole Foods Market, Inc.*,
  No. C13-2174 RSM, 2018 WL 2387638 (W.D. Wash., May 25, 2018) .................... 11

*GI Sportz, Inc. v. Valken, Inc.*,
  1:16-cv-07170-NLH-KMW, 2017 WL 2600457 (D.N.J. June 15, 2017) ................. 12

*High Volatage Beverages, LLC v. Coca-Cola Co.*,
  No. 3:08CV367, 2011 WL 831523 (W.D.N.C. Mar. 3, 2011) .................................... 24

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  738 F.3d 1085 (9th Cir. 2013) ................................................................. 20

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ..................................................................... 7

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re JJ206, LLC*,
120 U.S.P.Q.2d (BNA) 1568 (T.T.A.B. 2016) ...................................................4, 14, 20

*In re JJ206, LLC.*,
No. 2017-1350, 2017 WL 4077635 (Fed. Cir. 2017) ....................................................14

*Kelly Servs., Inc. v. Creative Harbor, LLC*,
846 F.3d 857 (6th Cir. 2017) ........................................................................................23

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
439 F. Supp. 3d 1185 (N.D. Cal. 2020) ..............................................................4, 6, 10

*Lehman Bros. Holdings, Inc. v. PMC Bancorp*,
612 F. App'x 885 (9th Cir. 2015) .................................................................................8

*Lifted Ltd., LLC v. Novelty Inc.*,
No. 16-cv-03135-PAB-GPG, 2021 WL 4480566 (D. Colo. Sept. 30,
2021) ........................................................................................................................16, 17

*M.Z. Berger & Co., Inc. v. Swatch AG*,
787 F.3d 1368 (Fed. Cir. 2015) ...................................................................................24

*In re Medpoint Mgmt., LLC*,
528 B.R. 178 (Bankr. D. Ariz. 2015) .............................................................................3

*Monster Energy Co. v. Lo*,
No. 91225050, 2018 WL 6179147 (T.T.A.B. Nov. 21, 2018) ....................................24

*In re Morgan Brown*,
119 U.S.P.Q.2d (BNA) 1350 (T.T.A.B. 2016) ................................................13, 14, 21

*Nigro v. Sears, Roebuck & Co.*,
784 F.3d 495 (9th Cir. 2015) ........................................................................................17

*Northbay Wellness Group, Inc. v. Beyries*,
789 F.3d 956 (9th Cir. 2015) ..........................................................................................3

*Northbay Wellness Grp., Inc. v. Beyries*,
No. C 11–06255 JSW, 2012 WL 4120409 (N.D. Cal. Sept. 18, 2012) .........................3

*Novell, Inc. v. Weird Stuff, Inc.*,
No. C92-20467 ...............................................................................................................11

*In re Pedrazzini*,
644 F.2d 756 (9th Cir. 1981) ........................................................................................23

*Perfumebay.com Inc. v. eBay Inc.*,
   506 F.3d 1165 (9th Cir. 2007) ................................................................. 5, 6

*Pfizer, Inc. v. Hamerschlag*,
   No. 118, 181, 2001 WL 1182865 (T.T.A.B. Sept. 27, 2001) ....................... 24

*Pinkette Clothing, Inc. v. Cosmetic Warriors, Ltd.*,
   894 F.3d 1015 (9th Cir. 2018) ...................................................................... 2

*Posters 'N' Things, Ltd. v. U.S.*,
   511 U.S. 513 (1994) ....................................................................... 15, 16, 18

*Purple Heart Patient Ctr., Inc. v. Mil. Order of the Purple Heart of the
   United States of Am., Inc.*,
   No. C 13-00902 WHA, 2014 WL 572366 (N.D. Cal., Feb. 11, 2014) ......... 12

*Rolex Watch U.S.A., Inc. v. PRL USA Holdings, Inc.*,
   No. 12 Civ. 6006, 2015 WL 1909837 (S.D.N.Y. Apr. 27, 2015) ................. 24

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
   627 F. Supp. 2d 1096 (N.D. Cal. July 29, 2008) .......................................... 8

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*,
   621 F.3d 981 (9th Cir. 2010) ....................................................................... 9

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
   537 F.3d 1357 (Fed. Cir. 2008) ............................................................ 17, 22

*United States v. Amwest Sur. Ins. Co.*,
   54 F.3d 601 (9th Cir. 1995) ....................................................................... 10

*United States v. Assorted Drug Paraphernalia Valued at $29,627.07*,
   No. 18-143 GJF/SMV, 2018 WL 6630524, at *10 (D.N.M. Dec. 19,
   2018) ......................................................................................................... 16

*United States v. Dyer*,
   750 F.Supp. 1278 (E.D. Va. 1990) ................................................. 14, 17, 19

*Vignette Corp. v. Marino*,
   No. 91158854, 2005 WL 1801611 (T.T.A.B. July 26, 2005) ..................... 24

*WM Int'l, Inc. v. Golden Lyon Inv. Co.*,
   No. CV 20-00995-CJC, 2020 WL 6826485 (C.D. Cal., Nov. 5, 2020) ....... 13

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*,
   No. 18CV1927 JM (MSB), 2021 WL 4895977 (S.D. Cal., Oct. 20, 2021) ... 12

*Yoplait Marques v. Eldib*,
   No. 91197220, 2015 WL 9900241 (T.T.A.B. July 8, 2015) ........................ 24

**Statutes**

15 U.S.C. § 1064 .................................................................................... 13

15 U.S.C. § 1064(3) ............................................................................... 20

21 U.S.C. § 857 ...................................................................................... 16

21 U.S.C. § 863(e) ....................................................................... 13, 16, 18

21 U.S.C. § 885(a)(1) ............................................................................ 14

26 U.S.C. § 280E ...................................................................................... 4

Controlled Substances Act ............................................................... *passim*

Lanham Act ............................................................................................ 21

**Other Authorities**

Will Yakowicz, *He Started With $500. Now This Entrepreneur Leads an
   Empire Selling 'Vegan' Rolling Papers,* INC. (Apr. 18, 2018),
   https://www.inc.com/will-yakowicz/josh-kesselman-raw-rolling-
   papers.html ........................................................................................... 1

Fed. R. Evid. 1006 ................................................................................... 8

https://hbiinternational.com/contact/ (last visited Mar. 14, 2022) ................ 1

Ian Lovett, *In California, Marijuana Is Smelling More Like Big Business*,
   N.Y. TIMES (Apr. 11, 2016) .................................................................. 7

Dawn Chmielewski, *Pot is Golden in California*, U.S. NEWS & WORLD
   REPORT (May 26, 2017), https://www.usnews.com/news/best-
   states/articles/2017-05-26/pot-is-golden-in-california; ............................ 7

U.S. FOOD & DRUG ADMINISTRATION (Jan. 17, 2017),
   https://www.fda.gov/consumers/consumer-updates/it-really-fda-
   approved ............................................................................................. 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     **INTRODUCTION**[1]

This case is primarily a trademark dispute between two cannabis companies – with one party (Defendant and Counterclaimant Central Coast Agriculture, Inc. ("CCA")) that is honest about the federal illegality of its state-legal cannabis products, and the other (Plaintiff and Counterdefendant BBK Tobacco & Foods LLP ("BBK"))[2] that is engaged in a charade orchestrated by its founder and CEO Josh Kesselman[3] to hide the fact that many of its products are federally-illegal drug paraphernalia. BBK misrepresents the federal illegality of its products so that it can, among other things, secure federal trademark rights, which BBK aggressively litigates against CCA and others. *See* Will Yakowicz, *He Started With $500. Now This Entrepreneur Leads an Empire Selling 'Vegan' Rolling Papers,* INC. (Apr. 18, 2018), https://www.inc.com/will-yakowicz/josh-kesselman-raw-rolling-papers.html ("Although Raw isn't specifically marketed for cannabis, after scrolling through [Mr. Kesselman's] social media pages, you get the wink and nod.").[4]

Once and for all, in this Court, in this case, BBK's charade must come to an end. CCA will prove at trial that a number of BBK products, for which BBK secured federal trademark registrations, are illegal drug paraphernalia, and therefore (1) several of its

---

[1] CCA objects to BBK's blanket incorporation by reference of its opposition to CCA's summary judgment motion (Doc. 296 at 1 n.1), which, in addition to BBK's 32 footnotes and entire page of single-spaced bullets (*id.* at 4), is a violation of the Court's Order denying BBK's motion to extend page limits for the instant motion. (Doc. 282). *D'Agnese v. Novartis Pharms. Corp.*, No. CV-12-00749-PHX-JAT, 2013 WL 321773, at *13 (D. Ariz. Jan. 28, 2013).

[2] Although BBK represents to this Court that it is a tobacco company (Doc. 1 at ¶ 26), its telephone number is 800-420-HERB(4372). (Ex. 1). *See also* https://hbiinternational.com/contact/ (last visited Mar. 14, 2022). In a recent Instagram video post promoting a RAW-branded shredder, Mr. Kesselman states: "If you work in a dispensary make sure you guys use a flow shedder, for all of our sakes, man. Because *we all get higher together*." Superimposed on the video is the following text: "Need one? Call (800) 420-HERB." (Exs. 28, 29).

[3] *See* Ex. 2 at 91:24-92:15 ("Q. You said BBK has gone out of their way to not have representations of cannabis in ads; right? A. In my personal experience, yes, sir. Q. Okay. Did someone communicate that to you? In other words, did someone tell you, in designing advertisements, do not include any representation of cannabis? A. Yes, sir. Q. Who told you that? A. Joshua Kesselman. Q. When did he tell you that? A. I believe that the first time it was ever discussed was maybe back in -- I think I had been here for maybe a year or two. Q. Okay. So that would be around 2012, 2013, approximately? A. Yes, sir.").

[4] Since 2011, BBK has initiated 22 legal actions involving RAW marks in federal court and before the Trademark Trial and Appeal Board. (Doc. 203-16 at 100:15-16).

1

federal trademark registrations (including for its primary product, rolling papers) should be cancelled; and (2) BBK's trademark infringement claims against CCA should be largely barred because of unclean hands. BBK cannot establish as a matter of law that its RAW-branded products—including products like rolling papers that BBK admits are "NOT FOR TOBACCO USE!"—are exempt from the Controlled Substance Act ("CSA"). At a minimum, BBK's own documents, marketing, and conflicting expert testimony create genuine disputes of material fact about these issues, necessitating denial of the motion. *See* Sections II.D and II.E, *infra*.

BBK also moves for partial summary judgment seeking to dispose of all of CCA's equitable defenses simply because CCA is a cannabis company. BBK cites no case holding that CCA cannot defend itself against BBK's baseless claims simply because it is in the cannabis industry. BBK's request for partial summary judgment on all of CCA's equitable defenses—including laches, which is a basis for CCA's own fully-briefed summary judgment motion—should be denied out of hand. *See* Section II.B, *infra*.

Finally, BBK's effort to invalidate CCA's trademark applications should likewise be denied. CCA has produced both documentary and testimonial evidence—mostly ignored by BBK in its motion—that demonstrates CCA's bona fide intention to sell the products identified in CCA's intent-to-use federal trademark applications. At a minimum, the evidence CCA presents demonstrates there is a genuine dispute of material fact on this issue. *See* Section II.F, *infra*.

## II.  ARGUMENT

### A.  BBK is not Entitled to Summary Judgment on its Assertion of Unclean Hands.

BBK's superficial attempt to dispose of CCA's equitable defenses based on its own unclean hands assertions should be rejected, as BBK does not even come close to meeting its burden on summary judgment. Because this is **BBK's** unclean hands defense and **BBK** is moving for summary judgment, BBK has the burden of proving conduct that establishes unclean hands by clear and convincing evidence. *See Pinkette Clothing, Inc. v. Cosmetic*

1   *Warriors, Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018); *In re Cummins-Cobb*, No. 2:17-BK-
2   24993-RK, 2020 WL 634140, at *3 (Bankr. C.D. Cal., Feb. 10, 2020).

3         BBK suggests that because CCA is a cannabis business, it cannot assert equitable
4   defenses. (Doc. 296 at 1-3). For this novel argument, BBK relies primarily on an irrelevant,
5   non-binding bankruptcy court decision, *In re Medpoint Mgmt., LLC*, 528 B.R. 178, 186-87
6   (Bankr. D. Ariz. 2015). In *Medpoint*, creditors filed a petition for involuntary bankruptcy
7   against Medpoint, a cannabis business. *Id.* at 180. The court dismissed the petition, in part,
8   because the unclean hands doctrine barred the creditors in a cannabis business from seeking
9   affirmative relief from the bankruptcy court since the creditors knew that Medpoint's
10  activities were illegal under federal law when they entered into various agreements with
11  Medpoint. *Id.* at 186-87. *Medpoint* clearly does not support BBK's attempt to preclude CCA
12  from asserting equitable defenses in response to BBK's claims in a non-bankruptcy case.

13        More to the point, *Medpoint* relied upon *Northbay Wellness Grp., Inc. v. Beyries*,
14  No. C 11–06255 JSW, 2012 WL 4120409, at *4 (N.D. Cal. Sept. 18, 2012), which the
15  bankruptcy court described as "an unpublished opinion, [that] reached a similar conclusion
16  regarding a marijuana entity in California. . . .[.]" But the Ninth Circuit **reversed** *Northbay*
17  after the *Medpoint* decision. *See Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956
18  (9th Cir. 2015). In *Northbay*, a cannabis dispensary's lawyer absconded with a trust fund
19  set up by the dispensary. *Id.* at 958. After the dispensary obtained a judgement against the
20  lawyer, he filed for bankruptcy. *Id.* The dispensary attempted to collect on the judgment in
21  bankruptcy court, but the court found the dispensary's claim was barred by unclean hands
22  and the district court affirmed. *Id.* at 958-59. The Ninth Circuit reversed, finding the lower
23  courts applied the wrong standard for unclean hands, which is the same (incorrect) standard
24  applied in *Medpoint* and, here, by BBK. *Id.* at 960.

25        In *Northbay*, the Ninth Circuit held that the cannabis dispensary's claim was ***not***
26  barred by the doctrine of unclean hands. *Id.* at 960. Here, BBK fails to address *Northbay*

27

28

altogether—and it should be precluded from doing so for the first time on reply.[5] Even if BBK had addressed the correct test, summary judgment still would be improper because BBK's wrong-doing is worse than CCA simply being a cannabis company whose operations are legal at least under state law. As discussed in Sections II.D and II.E, *infra*, BBK is fraudulently misrepresenting itself to be a tobacco company in order to obtain benefits under federal law, *e.g.*, trademark registrations that cannabis companies cannot secure, tax deductions that cannabis companies cannot take, etc. *See In re JJ206, LLC*, 120 U.S.P.Q.2d (BNA) 1568, 1570 (T.T.A.B. 2016); 26 U.S.C. § 280E. In short, BBK is itself a cannabis company:



(Ex. 3).

Finally, BBK's suggestion that CCA's sales prior to 2018 violated California law is unpled and unsupported by any competent evidence. The unclean hands affirmative defense in BBK's Answer states only that CCA's activities are "illegal under federal law," with no mention of state law. (Doc. 168 at 15-16). In any event, BBK spends exactly one paragraph in its motion attempting to prove that allegation, despite the complexity of California cannabis laws. (Doc. 296 at 2). BBK cites to no law, but instead references the testimony of a California cannabis attorney, Khurshid Khoja, that served as of one of CCA's rebuttal experts. However, both Mr. Khoja and the so-called cannabis industry expert retained by BBK, Lance Ott, confirmed that they have <u>no basis</u> to offer any opinion on CCA's

---

[5] BBK's reliance on *Kiva Health Brands LLC v. Kiva Brands Inc.*, 439 F. Supp. 3d 1185 (N.D. Cal. 2020), is misplaced. Although the defendant in *Kiva* was a cannabis company, the court ***denied*** summary judgment and permitted the defendant there to maintain equitable defenses including laches, acquiescence, waiver and estoppel. *Id.* at 1194, 1199.

compliance with California cannabis laws. (Docs. 307-2 at 8; 338-3 at 133:22-135:2). The *only* evidence that BBK cites is the following Q&A from the deposition of CCA's CEO and co-founder, John De Friel:

> **BBK's counsel**: Did you consider Central Coast Agriculture a collective under the Prop 215 laws?
>
> [CCA's counsel's objection and BBK's counsel's clarification]
>
> **Mr. De Friel**: No.

(Ex. 4 at 78:22-79:3). That testimony does not come remotely close to carrying BBK's burden of proving a pre-2018 violation of California law by CCA. BBK is largely relying on the California Attorney General's 2008 Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use to try to prove CCA's supposed violations of California law prior to 2018. (Doc. 296-33). But, those "guidelines" are not the law. (Docs. 338-3 at 59:10-62:14; 296-33 at 9). Prior to 2018, California's medicinal cannabis market lacked a comprehensive licensing and regulatory framework at the state level. (Doc. 305-1 at 17-18). As such, during that time period, CCA received legal opinions that it shared with business partners to support its intended compliance with pre-2018 California law. (Exs. 4 at 46:2-49:12, 59:24-61:24; 5 at ¶ 2, Ex. A).[6] BBK has completely failed to meet its burden of presenting sufficient evidence of any violation of California law by CCA, not to mention any *intentional* violation. *See Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1177 (9th Cir. 2007) ("Bad intent is the essence of the defense of unclean hands.") (internal quotation marks and citations omitted).

**B.    The Court Should Deny BBK's Summary Judgment Motion as to CCA's Affirmative Defenses.**

**1.    Unclean Hands Cannot Be Resolved on Summary Judgment.**

BBK alleges CCA is infringing 17 of BBK's federal trademark registrations. (Doc.

---

[6] These legal opinions were not requested by BBK in discovery, even though BBK elicited Mr. De Friel's testimony about them at his deposition, and only became relevant when BBK hatched its unpled plan to accuse CCA of non-compliance with pre-2018 California law. (Docs. 307-1; 332).

60 at 7, ¶ 38, Appx. A). In its Counterclaims, CCA alleges that 11 of those registrations should be cancelled. (Doc. 169 at 57-59). BBK argues CCA's unclean hands defense only applies to 11 of the 17 asserted trademarks (BBK's count 1), and does not apply to BBK's federal common law trademark infringement claim (count 2) or its Arizona common law claims (counts 4 and 5). (Doc. 296 at 12). BBK's effort to parse CCA's defenses fails.

*First*, BBK engages in misdirection where it suggests that even if CCA proves fraud on the PTO as to the 11 registrations, BBK can still pursue federal common law trademark infringement (count 2) as to marks used in connection with federally illegal drug paraphernalia. *Id.* BBK ignores that cancellation is also based on unlawful use. (Doc. 169 at 58-59). As discussed in Section II.D., *infra*, the BBK products identified in CCA's Counterclaims (hereinafter, the "Challenged Goods") are illegal drug paraphernalia. If CCA so proves, then BBK loses *all* federal common law trademark rights because the products are not lawful. *See Kiva*, 402 F. Supp. 3d at 900.[7]

*Second*, BBK's reliance on Arizona common law claims is misplaced. (Doc. 296 at 12). It is undisputed that CCA does not sell cannabis products outside California and the only CCA products sold in Arizona are non-cannabis promotional merchandise (*e.g.*, Raw Garden lanyards). (Doc. 335-6 at 9-11). BBK has offered no evidence of a likelihood of confusion relating to non-cannabis products. (Doc. 276-1 at Ex. 3).

## 2. Laches Cannot Be Resolved in BBK's Favor on Summary Judgment.

CCA has already moved for summary judgment as to its laches defense. (Doc. 218 at 7-11). In its opposition to that motion, BBK argued that a laches defense is "seldom susceptible of resolution by summary judgment," and CCA's motion should be denied because of alleged material "factual disputes." (Doc. 260 at 6-15). Now, in its own motion, BBK changes its tune, arguing that *no* material "factual disputes" exist as to laches and that *BBK* is entitled to summary judgment on CCA's laches defense. Not so. (Doc. 296 at 5-7).

---

[7] In its motion, BBK does not address the applicability of unclean hands its anti-cybersquatting claim (count 3), and cannot do so for the first time on reply.

As shown in CCA's summary judgment motion, it is ***undisputed*** that BBK had actual knowledge of CCA's Raw Garden brand of cannabis products by no later than July 2016, more than three years before BBK filed suit. (Docs. 218 at 4-6; 204-17; 206-11). That is when BBK representatives met with CCA representatives at a cannabis festival in California, and a BBK representative made this contemporaneous social media post:



(Doc. 206-11). This undisputed fact gives rise to a strong legal presumption in favor of laches that BBK cannot overcome on its summary judgment motion. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002).

BBK now suggests it was unaware Raw Garden products were being sold prior to September 18, 2016 or, in the alternative, it did not believe there was a likelihood of confusion because "CCA had only a minor, isolated presence…in 2016, limited to providing only consulting services to the private, members-only, medical use-only, marijuana market." (Doc. 296 at 5-6). These lawyer arguments, however, are unsupported by any evidence, because BBK has shrouded in purported privilege communications after a BBK executive raised concerns about Raw Garden to CCA's General Counsel on July 16, 2016. (Doc. 204-17; Ex. 8 at 44:2-47:9). Thus, BBK cannot point to any evidence in the record to support its assertion that it did not take action because it mistakenly thought there were no sales of Raw Garden products (there were plenty of sales, *see, e.g.,* Doc. 230-10 at 31-32 & Doc. 238-1 at ¶¶ 12-18), or that BBK did not take action because it thought the California medical marijuana market at that time, with ***$1.8 billion*** in sales[8]—was so small

---

[8] Medical cannabis sales in California totaled $1.8 billion in 2016 and $2.7 billion in 2015. Dawn Chmielewski, *Pot is Golden in California*, U.S. NEWS & WORLD REPORT (May 26, 2017), https://www.usnews.com/news/best-states/articles/2017-05-26/pot-is-golden-in-california; Ian Lovett, *In California, Marijuana Is Smelling More Like Big Business*, N.Y.

1    that there was no likelihood of confusion.[9]

2           BBK's argument that its delay was reasonable because BBK later opposed a CCA

3    trademark application and the parties subsequently engaged in settlement discussions

4    ignores the applicable legal standard. (Doc. 296 at 6).[10] The laches clock starts when BBK

5    knew or should have known about its potential trademark infringement claim, and stops

6    only when the lawsuit is filed. (Doc. 261 at 2, 4). If that period exceeds three years, which

7    it does here, then there is a strong presumption of laches. (*Id.* at 4). The burden then shifts

8    to BBK to prove that its delay was reasonable under the *E-Systems* factors. (*Id.* at 6-7; Doc.

9    218 at 10). BBK fails to address the *E-Systems* factors in its motion and should be precluded

10   from addressing it for the first time in its reply.

11          Finally, BBK spends three pages of its motion recycling arguments from its earlier

12   summary judgment opposition brief attempting to show CCA was not prejudiced by BBK's

13   delay in filing this lawsuit. (Doc. 296 at 7-9). The parties' prior briefing, which (subject to

14   n.1, *supra*) CCA incorporates by reference and will not repeat here, establishes CCA's

15   prejudice. (Docs. 208 at 9-10; 261 at 4-6).[11]

16   ---

     TIMES (Apr. 11, 2016), https://www.nytimes.com/2016/04/12/us/in-california-marijuana-
17   is-smelling-more-like-big-business.html.
     [9] BBK's suggestion in a footnote that it didn't think there was a likelihood of confusion in
18   2016 because CCA was supposedly not in compliance with California cannabis laws at that
     time is also unsupported. (Doc. 296 at 6 n.7). BBK has proven no such violation and, more
19   to the point, BBK is exclusively relying on information that it learned in discovery in this
     case, not anything it learned in 2016 (which, again, BBK refuses to disclose). *If* there was
20   public information in 2016 that CCA was, for example, being shut down by California
     regulators, *then* that may be relevant to what a reasonable investigation by BBK would have
21   uncovered in 2016. *See Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096,
     1112 (N.D. Cal. July 29, 2008). BBK has presented no such evidence. To the contrary, CCA
22   has consistently sold Raw Garden cannabis products in California from 2016 to the present.
     (Doc. 230-10 at 31-32).
23   [10] CCA objects to BBK's "Summary Exhibit of Settlement Communications" (Doc. 296-1)
     as inadmissible and not properly before the court, because (1) the records on which the
24   summary is based (a handful of emails) are not voluminous; (2) the communications *from
     BBK* in those records, and summarized in the exhibit, are inadmissible hearsay (e.g., the
25   statement from BBK's General Counsel, who BBK has not designated as a witness in this
     case); and (3) BBK failed to submit the foundational documents on which the summary is
26   based, and cannot do so for the first time on reply. Fed. R. Evid. 1006; *Lehman Bros.
     Holdings, Inc. v. PMC Bancorp*, 612 F. App'x 885, 887–888 (9th Cir. 2015).
27   [11] BBK's statement that "CCA's Rule 30(b)(6) witness could not even say that CCA would
     have adopted a name other than Raw Garden if BBK had filed suit earlier" is highly
28   misleading. (Doc. 296 at 7). BBK's counsel asked the witness whether CCA would have

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3.    Acquiescence Cannot Be Resolved in BBK's Favor On Summary Judgment.

BBK argues CCA cannot prove acquiescence because "there is no evidence [] that BBK actively or explicitly consented to CCA's use of the 'Raw Garden' mark." (Doc. 296 at 10). There is such evidence, but BBK ignores it. "Acquiescence. . .limits a party's right to bring suit following an *affirmative* act by word or deed by the party that conveys implied consent to another." *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 988-989 (9th Cir. 2010) (italics in original) (citations omitted). Here, it is *undisputed* that BBK's representatives actually met with CCA's representatives at the Raw Garden booth at the Chalice Festival in July 2016 and exchanged business cards and branded merchandise. (Doc. 218 at 4-5). One BBK representative asked for someone from CCA to get in contact with him about potentially "working together." (Doc. 203-17 at 154-156). Another BBK representative then made a social media post giving a "[s]hout out to @raw_garden for the #Slymer [a strain of CCA cannabis flower] to roll the #rawlife247 way." (Doc. 204-18). Both BBK and CCA executives saw that post, and CCA responded to the BBK representative on social media: "Enjoy! Thank you for the support!" (*Id.*; Ex. 6 at 58-59; Doc. 203-25 at 100-101). Approximately six months later, when CCA was

---

changed its name if BBK had filed suit earlier, without specifying how much earlier (e.g., 1 week, 3 years). (Ex. 7 at 188:14-16). CCA's counsel objected to that question as vague and an incomplete hypothetical, and the witness responded that he could not speculate, but that CCA would have taken the lawsuit into consideration. (*Id.* at 188:17-189:8). BBK's counsel then asked the witness what CCA would have done differently if BBK had filed suit in January 2019 or September 2018. (*Id.* at 189:10-12). CCA's counsel asserted the same objections and the witness again testified he could not speculate. (*Id.* at 189:13-190:17). The witness did testify, though, that "between 2016 and September 2019, CCA steadily invested in and built this business around the 'Raw Garden' mark, including by developing and releasing product under the 'Raw Garden' mark…building the Raw Garden brand through marketing efforts described in response to a previous [deposition] topic…; garnering media coverage and awards; filing and prosecuting state and federal trademark applications for the 'Raw Garden' mark and hiring a large number of employees." (*Id.* at 183:8-184:20). Further, CCA's CEO stated that if BBK had objected to CCA's use of the Raw Garden mark in January 2016, CCA would have had little incentive to maintain the Raw Garden mark and it would have cost CCA around ▮▮▮▮▮▮▮▮ to change brands at that time. (Exs. 5 at ¶ 3; 9 at 179:8-180:23; Doc. 336-2 at 23). In the absence of such objection, CCA continued to build its business around the Raw Garden brand for years to come. (Doc. 206-30). BBK's misleading and out-of-context citation to CCA's 30(b)(6) witness does not overcome the <u>presumption</u> that CCA, whose business has indisputably always been built entirely around the Raw Garden brand, was prejudiced by BBK's delay. *See Bikila v. Vibram USA Inc.*, 218 F. Supp. 3d 1206, 1214 (W.D. Wash. 2016).

1    considering a new pre-roll product, it contacted BBK to price out their papers because of

2    the "positive interaction" at the festival. (Doc. 203-23 at 53). Based on those interactions,

3    CCA reasonably believed it had implied consent to use the word "Raw" in its name, to the

4    extent required. (*Id.*; Ex. 7 at 193:4-195:3). At a minimum, there are triable issues of fact

5    as to whether BBK impliedly consented to CCA's use of the Raw Garden name.

### 4.    Waiver Cannot Be Resolved in BBK's Favor on Summary Judgment.

8        BBK argues that there is no waiver defense to trademark infringement, but cites no

9    Ninth Circuit cases to support its position. *Compare with Kiva*, 439 F. Supp. 3d at 1199

10   (denying summary judgment motion as to waiver defense). Waiver is a defense to a

11   trademark infringement claim. *See AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 957-

12   958 (N.D. Cal. 2015).[12]

13       "An implied waiver of rights will be found where there is 'clear, decisive and

14   unequivocal' conduct which indicates a purpose to waive the legal rights involved." *United*

15   *States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 602–03 (9th Cir. 1995) (citation omitted). The

16   same evidence cited above regarding CCA's acquiescence defense also supports a waiver

17   defense. Despite BBK's contrary positions now, it is undisputed that BBK actually knew

18   about CCA's Raw Garden brand by no later than July 2016 and took no action to stop this

19   alleged infringement for years. (Docs. 203-17 at 154-155; 204-17; 206-11).[13]

### 5.    Estoppel Cannot Be Resolved in BBK's Favor On Summary Judgment.

22       "Unlike waiver, estoppel focuses not on a party's intent, but rather on the effects of

23   his conduct on another. Estoppel arises only when a party's conduct misleads another to

24   believe that a right will not be enforced and causes him to act to his detriment in reliance

---

[12] Also, BBK does not argue that waiver is not a valid defense to its other remaining claims, including cybersquatting and unfair competition, and cannot do so for the first time on reply.

[13] BBK also suggests that CCA's 30(b)(6) witness admitted there is no evidence of waiver. (Doc. 296 at 10-11). That is not true. The witness identified the July 2016 exchange on the BBK representative's Instagram account and the January 2018 interaction between BBK and CCA about a potential co-branding opportunity as evidence that BBK had elected not to enforce its trademark rights. (Ex. 7 at 193:4-195:3, 198:24-200:5).

10

upon this belief." *Novell, Inc. v. Weird Stuff, Inc.*, No. C92-20467 JW/EAI, 1993 WL 13767335, at \*13 (N.D. Cal. Aug. 2, 1993) (citations omitted). These undisputed facts support CCA's estoppel defense and, at a minimum, denial of BBK's motion for summary judgment directed to that defense:

- No later than July 2016, BBK knew that CCA was selling Raw Garden-branded cannabis products;

- Based on BBK's invitation to discuss potentially "working together" and its laudatory social media post in July 2016, CCA reasonably believed that BBK was supportive and not opposed to CCA's Raw Garden brand;

- CCA did not know that BBK objected to CCA's use of the word "Raw" (in a CCA federal service-mark application) until May 2, 2018,[14] when BBK filed its notice of opposition to CCA's application (Doc. 260-1 at Ex. 16); and

- During the almost two years that BBK delayed in notifying CCA of its objection, CCA built its company around the Raw Garden brand. (Ex. 7 at 183:8-184:20).

At the very least there are genuine disputes of material fact regarding estoppel. *See Eat Right Foods, Ltd. v. Whole Foods Market, Inc.*, No. C13-2174 RSM, 2018 WL 2387638 (W.D. Wash., May 25, 2018) (finding that defendant was sufficiently prejudiced by plaintiff's approximately two year delay in providing notice of its objection to defendant's use of a trademark).[15]

### 6.     CCA's Other Affirmative Defenses Cannot Be Resolved in BBK's Favor on Summary Judgment.[16]

BBK argues summary judgment should be granted as to all of CCA's remaining defenses (e.g., non-infringement, lack of irreparable harm, lack of actual damages, failure to mitigate damages) because (1) "CCA has produced (and can produce) no facts in support

---

[14] BBK's January 16, 2018 request for an extension of time only noted that "[t]he *potential* opposer needs additional time to investigate the claim." (Doc. 260-1 at Ex. 15 (emphasis added)). This is not an objection.
[15] BBK cites no authority to support its argument that because CCA is a cannabis business, it cannot prove harm to support an estoppel defense. (Doc. 296 at 12).
[16] BBK accuses CCA of "masquerading" a rejected motion to dismiss argument as its 12th affirmative defense. (Doc. 296 at 5 n.6). This is not true. CCA re-pleaded the defense in its First Amended Answer *solely* to avoid any arguments that CCA had somehow waived its right to appeal by omitting the defense. (Doc. 169 at 25 (12th Affirmative Defense)).

of any of [those] defenses," and (2) the affirmative defenses supposedly are not really affirmative defenses, but rather "merely different ways of stating that BBK has not met its burden of proof[.]" (Doc. 296 at 4 (citations and quotation marks omitted)). Neither is the case. *See, e.g.*, *GI Sportz, Inc. v. Valken, Inc.*, 1:16-cv-07170-NLH-KMW, 2017 WL 2600457, at *8 (D.N.J. June 15, 2017) (barring trademark infringement claim based on affirmative defense of "no irreparable harm"). Regardless, BBK's conclusory statement that CCA supposedly has no evidence to support its defenses fails to meet its burden on summary judgment. *See BMG Rights Mgmt. (US) LLC v. Global Eagle Ent. Inc.*, No. 2:18-CV-03723-VAP-JEMx, 2019 WL 6315533, at *9 (C.D. Cal., Sept. 9, 2019); *Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, No. 18CV1927 JM (MSB), 2021 WL 4895977, at *26 (S.D. Cal., Oct. 20, 2021).[17]

### C.     CCA Has Standing to Assert Its Counterclaims.

BBK's argument that cannabis companies like CCA cannot assert a claim for cancellation of a trademark was ***rejected*** in *Purple Heart Patient Ctr., Inc. v. Mil. Order of the Purple Heart of the United States of Am., Inc.*, No. C 13-00902 WHA, 2014 WL 572366, at *2 (N.D. Cal., Feb. 11, 2014). In *Purple Heart*, after receiving cease and desist letters from the defendant, the plaintiff (a cannabis company) filed suit to cancel the defendant's trademark registrations. The court stated:

> While it is a concern that plaintiff could flagrantly violate federal laws and simultaneously seek the assistance of a federal court of equity to cancel trademarks, nevertheless, defendants began this controversy by sending cease-and-desist letters forcing plaintiff to defend itself. **If the trademark owner had sued first for damages, would anyone say that the defendant would not have had the right to defend itself in court? No, that would not be the American way**. And if that is so, then declaratory relief is equally available to the accused. **Given that defendants seek relief for alleged trademark infringement arising from registrations which could be invalid, it would be wrong to deny plaintiff the opportunity to defend itself**.

*Id.* at *3 (emphasis added). So too here. Indeed, "numerous courts have concluded that

---

[17]In the event the Court decides to grant summary judgment as to any of these defenses solely on the ground that they are, as BBK claims, "not true affirmative defenses" (Doc. 296 at 4), it should be without prejudice for CCA to raise BBK's lack of proof on the issues underlying the defenses at trial.

1  being sued for trademark infringement is sufficient injury to confer standing to seek

2  cancellation of a mark." *WM Int'l, Inc. v. Golden Lyon Inv. Co.*, No. CV 20-00995-CJC

3  (JPRx), 2020 WL 6826485, at *2 (C.D. Cal., Nov. 5, 2020) (collecting cases). BBK sued

4  CCA for trademark infringement, and therefore, CCA has standing under 15 U.S.C. § 1064

5  to assert its Counterclaims for cancellation of the registrations at issue in BBK's complaint.

6      **D.    The Court Should Deny BBK's Summary Judgment Motion as to**
7             **CCA's Second Counterclaim (Unlawful Use).**

8          BBK argues that CCA's second counterclaim, seeking cancellation of 11 of BBK's

9  federal trademark registrations, is improper because its products have not been adjudged

10  illegal drug paraphernalia and are not the "types of goods identified in Section 863 as *per*

11  *se* 'drug paraphernalia[.]'" (Doc. 296 at 22-23). BBK is wrong on both the law and the facts.

12  First, determining whether there has been a *per se* violation of § 863 is not limited to the

13  non-exhaustive list of products identified in § 863(d) as *examples* of illegal drug

14  paraphernalia (*e.g.*, bongs). *See In re Morgan Brown*, 119 U.S.P.Q.2d (BNA) 1350, 1352-

15  53 (T.T.A.B. 2016). Rather, a *per se* violation can be found where, as here, there is evidence

16  that the Challenged Products violate § 863 under the factors identified in § 863(e). *Id.*

17  Second, there ***is*** evidence of prior agency findings of BBK's § 863 violations, including

18  documentary evidence that BBK's RAW-branded products have been seized as drug

19  paraphernalia by the CBP pursuant to §§ 863(d), (e). (Docs. 318-4; 306-4).[18]

20          BBK primarily argues CCA's second counterclaim should be dismissed because the

21  Challenged Goods are supposedly exempt under the so-called tobacco exemption. (Doc.

22  296 at 20-22 (citing § 863(f)(2))). But, given the conflicting expert testimony and other

23  evidence that the tobacco exemption does not apply, there is (at best for BBK), a genuine

24  dispute of material fact regarding whether the tobacco exemption applies here.

25

26

---

27  [18] BBK suggests that because it has not been the subject of a CBP product seizure, any such
    seizure does not reflect on its products. This argument is illogical, as the CBP objectively
28  enforces the CSA as to the product, not the importer. (*See* Doc. 318-4 (citing enforcement
    of RAW-branded products pursuant to 21 U.S.C. § 863(d), (f))).

1

2

### 1. BBK Has Not Carried Its Burden to Demonstrate There Is No Genuine Dispute of Material Fact as to the Tobacco Exemption.

3

4

5

6

7

8

9

10

11

12

13

BBK cites no authority for its improper attempt to shift the burden to CCA to "demonstrate that each of the Challenged Goods does not fall within a category of items that are 'traditionally intended for use with tobacco products.'" (Doc. 296 at 17). Instead, BBK must show the exemption *does* apply. Under the CSA, "the burden of going forward with the evidence with respect to any such exemption or exception shall be ***upon the person claiming its benefit***." 21 U.S.C. § 885(a)(1) (emphasis added); *see also* Brief and Supp. App. for Appellee – Dir. of the U.S.P.T.O., *In re JJ206, LLC.*, No. 2017-1350, 2017 WL 4077635, at *4 (Fed. Cir. 2017) (Director of the USPTO noting "[t]he CSA places the burden of establishing any such exemption 'upon the person claiming its benefit.'"). In its Answer to CCA's counterclaims, BBK invoked the tobacco exemption. (Doc. 168 at ¶ 2). BBK cannot carry its burden of proving the exemption applies.[19]

14

15

16

17

18

19

20

21

22

23

In attempting to meet its burden on summary judgment, BBK cites the report of its purported expert, Louis Maiellano, as evidence that the RAW-branded products "are types of products that are 'traditionally intended' for use with tobacco."[20] The proper inquiry, however, is not whether a category of items is exempt but, instead, whether BBK's RAW-branded products ***in particular*** satisfy the exemption. *See* Section II.D.2, *infra*. Mr. Maiellano cannot meet this standard because he failed to examine any RAW products, has never seen them used with tobacco, and in some cases, does not even know how the products work. (Docs. 317; 356). And, while Mr. Maiellano offers "specific historical information," his incomplete assessment cannot possibly fulfill the test set forth in *United States v. Dyer*, 750 F.Supp. 1278 (E.D. Va. 1990), which requires an assessment of past practices and other

24

25

26

27

28

[19] In a recent *Daubert* brief, BBK argued that 21 U.S.C. § 885(a)(1) does not apply because "CCA is not the United States and does not stand in the shoes of the United States." (Doc. 349 at 4-5). This is not true. As the party seeking cancellation, CCA stands in the shoes of the PTO, which is charged with not registering trademarks for products and services that violate the CSA. *See In re Morgan Brown*, 119 U.S.P.Q.2d (BNA) 1350 (T.T.A.B. 2016); *In re JJ206, LLC*, 120 U.S.P.Q.2d (BNA) at 1570.
[20] CCA has moved to exclude Mr. Maiellano's opinions on numerous grounds. (Doc. 317). If the Court grants CCA's motion to exclude Mr. Maiellano, BBK has no evidence at all that the exemption applies.

1   objective factors relating to RAW-branded products.

2          Even if BBK had met its initial burden of production, CCA has presented substantial

3   evidence to raise a genuine dispute of material fact precluding summary judgment for BBK.

4   For example, CCA has produced evidence that some of the RAW-branded products are

5   expressly "NOT FOR TOBACCO USE!" (Doc. 335 at 12-13). CCA has also adduced

6   expert opinion testimony from a qualified expert Chief Tiderington (a long-time Chief of

7   Police and former DEA task force supervisor) that the RAW-branded products are drug

8   paraphernalia. (Doc. 306-1). Chief Tiderington's opinions and analyses are entirely

9   consistent with the Supreme Court's opinion in *Posters 'N' Things, Ltd. v. U.S.*, where the

10  court held that the objective standard of the statute regulating drug paraphernalia "refers

11  generally to an <u>item's</u> likely use." 511 U.S. 513, 520-521 (1994) (emphasis added). The

12  Court added that the objective standard is a "particularized definition, reaching beyond the

13  category of items that are likely to be used with drugs by virtue of their objective features.

14  Among the factors that are relevant to whether an item constitutes drug paraphernalia are

15  'instructions, oral or written, provided with the item concerning its use,' and 'the manner in

16  which the item is displayed for sale.'" *Id*. at n.11 (citations omitted).

17         Unlike Mr. Maiellano, Chief Tiderington purchased and examined for himself all of

18  the RAW-Branded Products discussed in his report. (Doc. 306-1 at 7, 26, 29, 31, 34, 36,

19  39). He reviewed the instructional and sales materials promoting BBK products, as well as

20  evidence of how customers generally use the BBK products, to determine whether the

21  products are "drug paraphernalia" under the CSA. (*Id*. at 32, 33, 37-38, 40-41). Chief

22  Tiderington also considered social media posts by BBK and its founder Mr. Kesselman,

23  promoting the RAW-branded products like these. (*Id*. at 33, 37-38).

         **2.      BBK Misunderstands the Supreme Court's "Objective
                   Standard."**

26         BBK relies on three cases to suggest that so long as its products fall within a *category*

27  *of items* "traditionally intended for use with tobacco products," its own products are *per se*

28  traditionally intended for use with tobacco products (and, thus, not "drug paraphernalia").

None of these cases support BBK's position or its motion.

(i) _Posters 'N' Things, Ltd. v. U.S._, 511 U.S. 513 (1994). BBK argues that the _Posters_ court determined that assessing the "traditionally intended for use with tobacco products" element in § 863(f)(2) requires an objective standard and that a defendant's intent is irrelevant. (Doc. 296 at 17-18). But the Supreme Court did not construe or apply the tobacco exemption in _Posters_. The Court held that, under § 857(e)[21] (the subsection describing factors used to assess whether an item constitutes drug paraphernalia) a defendant's knowledge and intent regarding how its product would be used is relevant to a finding of drug paraphernalia, and the court lowered the government's burden of proof regarding what the defendant has to know: "It is sufficient that the defendant be aware that customers in general are likely to use the merchandise with drugs." 511 U.S. at 524. Nothing in _Posters_ supports BBK's argument that drug paraphernalia is exempt under § 863(f)(2) if it is within a "category" of items that "in general" have been used with tobacco. _See United States v. Assorted Drug Paraphernalia Valued at $29,627.07_, No. 18-143 GJF/SMV, 2018 WL 6630524, at *10 (D.N.M. Dec. 19, 2018) (finding the "factors [in § 863(e)] 'focus on the actual use of the item in the community'") (quoting _Posters_, 511 U.S. at 520).

BBK's reliance on Justice Scalia's concurring opinion does not help, either. Of course, Justice Scalia's concurrence is not the court's holding, nor is it precedent. But even so, Justice Scalia concurs that "the sale of items likely to be used for drug purposes, with knowledge of such likely use, violates former 21 U.S.C. § 857[.]" _Posters_, 511 U.S. at 527. While Justice Scalia's concurrence suggests no intent requirement for the tobacco exemption, even that dicta does not support BBK's approach of looking only at "categories" of products "in general" and ignoring entirely the actual items of drug paraphernalia at issue.

(ii) _Lifted Ltd., LLC v. Novelty Inc._, No. 16-cv-03135-PAB-GPG, 2021 WL 4480566 (D. Colo. Sept. 30, 2021). The _Lifted_ plaintiff sued defendant Novelty for infringing a design patent for its Toker Poker invention. Novelty moved to dismiss on the ground that, because Toker Poker constituted drug paraphernalia, the court could not exercise subject

---

[21] § 857 was replaced with § 863. _Posters_, 511 U.S. at 516 n.5.

matter jurisdiction. The court, quoting only to *Posters'* finding that "[a]n item's 'traditional' use is not based on the subjective intent of a particular defendant," held the Toker Poker (and each of its components) was "traditionally associated with tobacco use." *Id*. at *2. The *Lifted Ltd*. court did not analyze what "traditionally intended for use with tobacco products" means and simply cannot support BBK's position.

(iii)   *U.S. v. Dyer*, 750 F.Supp. at 1278. According to *Dyer,* "[a]n item can only be 'traditionally intended for use with' tobacco by reference to history, past practice, and other objective factors." *Id*. at 1287. While BBK properly quotes the opinion, it misses *Dyer's* reference to *an item* and posits instead that, despite the clear language in the opinion, the court meant only look to the "historical use of the type of item in question." (Doc. 296 at 18). The *Dyer* court meant what it said, and courts analyzing the "traditionally intended" use of an item must consider "past practice" and "other objective factors" related to that *item*. As noted, BBK provides no evidence of "past practice" and "other objective factors" of its RAW-branded products.

BBK also ignores substantial objective evidence that its RAW-branded products are not intended for use with tobacco. For instance, some RAW-branded rolling papers specifically note on the packaging: "NOT FOR TOBACCO USE!" (Doc. 335 at 12-13). And Mr. Kesselman told High Times magazine that RAW rolling papers were designed to be used with "incredibly high-end strains that are so moist and so perfect and beautiful that we now have." (Ex. 10 at 6).[22] BBK also told at least one customer that "for product such as *tobacco* our RAW Paper single sheets do[] not adequately allow the burn to be designed for coarse material such as *tobacco*[.]" (Exs. 11 (emphasis added)[23]; 12 (referring to RAW

---

[22] BBK's COO opines that "[t]here is nothing about the design of RAW Black Organic Hemp rolling papers that make [sic] them any less suitable for use with tobacco than any other RAW branded rolling paper, or rolling papers in general." (Doc. 293-22 at ¶ 7). He does not provide any factual basis for this statement nor does he offer any foundation for this conclusion. This self-serving statement should be stricken. *See Nigro v. Sears, Roebuck & Co*., 784 F.3d 495, 498 (9th Cir. 2015) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.") (citation and quotation marks omitted).

[23] Mr. Kesselman attempts to explain this admission away without any factual basis. (Doc. 296 at 19, n.22). Nothing in the customer's complaint supports Mr. Kesselman's self-

BLACK organic hemp rolling papers as a "non-tobacco product")). BBK fails to address its RAW-branded "Phatty" rolling machine that accommodates a 125mm "cigarette," despite its own expert's opinion that even the largest King-sized tobacco cigarette tops out at 110mm. (Doc. 317 at 12). This Phatty rolling machine is intended to be used to roll joints, not tobacco cigarettes. (Doc. 306-1 at 26-28). BBK also ignores its own expert's photos displaying RAW-branded products displayed alongside illegal drug paraphernalia like bongs. (Doc. 317 at 11-12). Per the CSA itself, this is evidence that the RAW-branded products are drug paraphernalia. 21 U.S.C. § 863(e). And, BBK does not mention the hundreds—if not thousands—of social media posts showing RAW products actually used with cannabis, including Mr. Kesselman's recent video about a RAW-branded shredder (where he speaks to "dispensary" workers exclaiming "we all get higher together!"). *See supra*, n.2. CCA is unaware of any tobacco "dispensary."

### 3.     BBK's Rolling Papers Are Not *Per Se* Exempt from the CSA.

Contrary to BBK's argument (Doc. 296 at 19-20), the tobacco exemption does not render all "papers" "items that are *per se* within the items 'traditionally intended' for use with tobacco." (*Id.* at 19). BBK's broad statement that Congress "specified rolling papers (*by whomever manufactured and distributed, and however advertised*) as an item 'traditionally intended' for use with tobacco" is nowhere in the statute. (*Id.* (italics added)). In fact, the so-called "tobacco exemption" does not apply if the proponent of the exemption is not authorized by "local, state or Federal law" (§ 863(f)(1)) or is not a "legitimate seller of lawful products." *See Posters*, 511 U.S. at 526 (finding "Section 857(f)'s exemption for tobacco-related products . . . precludes its enforcement against legitimate sellers of lawful products."). The exemption, thus, does not apply to any and all papers regardless of who manufactures or distributes them. For example, BBK cannot credibly argue that, as a matter of law, the tobacco exemption applies to RAW-branded rolling papers expressly "NOT FOR TOBACCO USE!"

---

serving statement that his employee meant that a particular type of tobacco did not work with the RAW paper single sheets. (Ex. 11).

BBK's unremarkable assertion that the FDA regulates tobacco rolling paper does not mean that all rolling papers are *per se* exempt. (Doc. 296 at 19, n.23). The fact that the FDA includes the descriptor "tobacco" to modify the term "rolling papers," in fact, suggests that even the FDA recognizes that not all "papers" are created equal—or intended for the same purpose. For example, the U.S. Customs Service previously found that certain BBK "tobacco-wrapping papers" called "blunt wrappers" are illegal drug paraphernalia. (Doc. 318-4). Regardless, BBK offers no support for the notion that FDA regulation of the tobacco industry renders RAW-branded rolling papers *per se* exempt under the CSA.[24]

BBK's suggestion that its rolling papers disclaim use with tobacco because BBK does not yet have FDA approval is insufficient to establish as a matter of law that the papers are exempt under the CSA. (Doc. 293-22 at ¶¶ 5-8). First, the FDA does not *approve* tobacco products. *Is It Really 'FDA Approved?'* U.S. FOOD & DRUG ADMINISTRATION (Jan. 17, 2017), https://www.fda.gov/consumers/consumer-updates/it-really-fda-approved. To the extent BBK is suggesting, instead, that it is awaiting a "marketing order"—which BBK's COO, Matt Colvard, does not say—BBK's sale of the Black Organic Hemp rolling papers would run afoul of FDA regulations. "To legally sell or distribute a new tobacco product in the United States, manufacturers must receive a written order from the FDA." *Id.* So, Mr. Colvard is suggesting that BBK is intentionally circumventing FDA regulations because BBK does not have a "marketing order" for those products yet. Given the express instructions on the product itself ("NOT FOR TOBACCO USE!") and the other objective evidence that BBK's RAW-branded rolling papers are intended to be used with cannabis, Mr. Colvard's declaration is insufficient to support summary judgment for BBK.

### E.   The Court Should Deny BBK's Summary Judgment Motion as to CCA's First Counterclaim (Fraud on the PTO).

There is a mountain of evidence confirming that BBK is a cannabis company selling illegal drug paraphernalia. (*See, e.g.,* Docs. 306-2; 318-4; 169). Despite this, BBK has

---

[24] BBK also suggests, without support, that because many similar products appear in the PTO's "Class 34," (Doc. 296 at 19, n.21), its RAW-branded products are *per se* exempt. BBK's assertion ignores the *Dyer* test. *See* Section II.D.2, *supra*.

submitted twenty-two sworn declarations to the PTO deliberately leading the PTO to believe that BBK, whose telephone number is (800) 420-HERB, is a tobacco company and its products are intended for use with tobacco. (Exs. 1; 13). BBK's misdirection was not innocent. It needed to intentionally mislead the PTO because BBK and its founder/CEO Mr. Kesselman, who was convicted of selling drug paraphernalia in the 1990s (Ex. 14 at 37:19-22), know the PTO's strict policy against registering marks intended for use on illegal drug paraphernalia. *In re JJ206, LLC,* 120 U.S.P.Q. 2d (BNA) at 1572.

Such a fraud on the PTO will result in the cancellation of BBK's registrations. 15 U.S.C. § 1064(3). To prove the fraud, CCA must prove: (1) BBK made false representations regarding a material fact, (2) BBK knew that the representations were false, (3) BBK intended the PTO to rely on its misstatements to get its marks registered, (4) the PTO relied thereon, and (5) damages resulted. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013).

Even though fraud hinges on these five *fact-intensive* considerations, BBK seeks summary judgment on fraud as a whole with the misguided argument that the fraud claim fails "as a matter of law." (Doc. 296 at 13). BBK is wrong. Indeed, BBK tried the same thing in a motion to dismiss (Doc. 77 at 10, 12), which the Court appropriately denied because the claim turns on disputed facts, not matters of law. (Doc. 151 at 23). The only difference between the parties' positions then and now is that CCA has developed even more evidence supporting its claim—including the evidence canvassed above. There also is conflicting expert testimony. (Doc. 306-1 at 43 ("The products that BBK sells are, in fact, drug paraphernalia as defined under the [CSA].")). Once BBK's "matter of law" argument falls apart, so too must its summary judgment on fraud because everything else is (at best for BBK) a materially disputed fact.

### 1.   The Lack of a Duty to Disclose Does Not Create a Right to Defraud.

BBK's lead argument for why there is no fraud here is based on its recycled observation that BBK does not have a "duty to disclose all potential uses" to the PTO. (Doc.

296 at 14). As the Court correctly recognized when BBK last made this argument: "CCA responds that it does not contend that BBK had an affirmative duty to disclose all potential uses of its products. Rather, CCA asserts that BBK knew that it made false statements to the USPTO when it stated that its products were in lawful use in commerce." (Doc. 151 at 19-20). CCA's position remains unchanged; whether there is a duty to disclose is irrelevant. The only change since the motion to dismiss stage is that CCA is now armed with even more evidence confirming that BBK is knowingly selling drug paraphernalia. Every time that BBK swore to the PTO that its products were for use in commerce under "International Class 034: Cigarette Rolling Papers and tobacco in the form of leaves," BBK was intentionally misleading the PTO away from the reality that it is a cannabis company and that the marks are intended for use with illegal drug paraphernalia. *Bart Schwartz Int'l. Textiles, Ltd. v. F.T.C.*, 289 F.2d 665, 669 (C.C.P.A. 1961) ("The obligation which the Lanham Act imposes on an applicant is that he will not make knowingly inaccurate or knowingly misleading statements in the verified declaration forming a part of the application for registration.").

BBK attempts to sidestep its misconduct by arguing that it was under no obligation to disclose all other uses of the mark. (Doc. 296 at 14). BBK's cases are off-point because a duty to disclose is not at issue. Instead, at issue is whether BBK was truthful in assertions to the PTO. It was not. And, had BBK truthfully disclosed that the marks were to be primarily used with illegal drug paraphernalia, the PTO would have rejected the registrations. *In re Morgan Brown*, 119 U.S.P.Q.2d (BNA) at 1352 (refusing registration because at least some of the substances sold in the subject store were illegal cannabis even though the store also sold legal substances).[25]

---

[25] BBK's argues its RAW Black Organic Hemp rolling papers are not relevant to CCA's fraud claim because BBK supposedly started selling those "in December 2020 only *after* the date of the last declaration relating to any registration for cigarette rolling papers." (Doc. 296 at 17, n.19 (emphasis in original)). BBK is misleading the Court. BBK told the PTO that it started selling Raw Black-branded rolling papers in April 2018 (Ex. 16), and BBK filed a declaration of use for the RAW mark for organic hemp rolling papers on December 4, 2019. (Doc. 293-7).

## 2. Mr. Kesselman's Declaration in Reg. No. 5046495 Highlights BBK's Deceptive Intent.

Reg. No. 5,046,495 relates to use of the RAW mark with a website for "[p]roviding consumer and business information and related news in the fields of marijuana and cannabis and medicinal and therapeutic marijuana and cannabis." (Doc. 71 at ¶ 58). Because the website description acknowledged that cannabis would be discussed, the PTO immediately took notice. The PTO submitted an office action requesting a declaration regarding the Controlled Substances Act, noting particularly that "[t]he CSA also makes it unlawful to sell, offer for sale, or use any facility of interstate commerce to transport drug paraphernalia." (Doc. 89-1). Despite being invited to provide information regarding BBK's web-based activities in paraphernalia, Mr. Kesselman submitted a declaration plainly intended to deceive. Indeed, Mr. Kesselman intentionally jammed the word "tobacco" into his declaration in hopes that the PTO would not dig further into his cannabis-based activities. (Doc. 293-8 (declaring that BBK is "a large company that has manufactured **tobacco** rolling papers, tubes and other related **tobacco** accessories for nearly 20 years.") (emphasis added)). Mr. Kesselman's scienter is particularly illuminated when considering that the very day before he submitted the "tobacco" declaration, BBK (the applicant) was trolling the internet with a picture of a pile of joints captioned, "Who's down to blaze?!" (Doc. 71 at 48, ¶ 60). It defies logic to think that Mr. Kesselman was unaware of the fact that he was speaking out both sides of his mouth. *See also Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) ("[B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence.") (citation omitted).[26]

---

[26] BBK relies on a declaration from one of its experts, Gregory Lee, to claim that "nearly ▮▮ of BBK total sales in 2020 were tobacco products and accessories that CCA does not even allege are 'drug paraphernalia.'" (Doc. 296 at 16). There are several problems with this statement. First, CCA did not purport to identify all BBK products that are illegal drug paraphernalia; it only identified the products in the trademark registrations for which BBK is alleging infringement. Second, Mr. Lee's statement is inadmissible, as he has not demonstrated personal knowledge that all BBK products (besides the Challenged Products) are "tobacco products and accessories." Even a cursory review of BBK's product catalogue

1    BBK argues that Mr. Kesselman's declaration does not amount to fraud because (1)

2    any falsehoods are "not material" or (2) everything was truthful (Doc. 296 at 15-16). Both

3    arguments fail to support summary judgment for BBK. With respect to (1), the materiality

4    of the false statement is established by the PTO's office action asking for a declaration that,

5    in essence, the services do not involve drug paraphernalia. With respect to (2), truthfulness

6    of a representation generally is an issue of fact. *In re Pedrazzini*, 644 F.2d 756, 758 (9th

7    Cir. 1981). And the evidence cited herein is certainly sufficient to show a genuine dispute

8    of material fact about whether Mr. Kesselman, who was "down to blaze" just the day before

9    submitting this declaration, was being truthful when he made his PTO declaration.[27]

10   **F.    The Court Should Deny BBK's Summary Judgment Motion as to
11         Count 6 of BBK's First Amended Complaint.**

12   BBK's attempt to void CCA's intent-to-use ("ITU") applications on summary

13   judgment should be denied because there is both documentary evidence and testimony of

14   multiple CCA witnesses showing (or at least raising a genuine issue of material fact) that

15   CCA had a bona fide intent to use the Raw Garden mark in commerce.[28]  *Kelly Servs., Inc.*

16   *v. Creative Harbor, LLC*, 846 F.3d 857, 868 (6th Cir. 2017) (holding defendant provided

17   sufficient evidence as to some of the goods and services listed in applications and denying

18

---

19   demonstrates the lack of foundation in Mr. Lee's statement. (Doc. 293-20 at 165 (sticker of
     a supposed "hemp leaf"), 167 (sign stating "Taking a 420 Break"), 168 (novelty inflatable
20   cones, which BBK representatives refer to as inflatable joints (*see* Ex. 17)), 175 (glass water
     pipes)). Further, BBK's insinuation that CCA somehow admitted in its summary judgment
21   motion that BBK is a tobacco company is baseless. (*Compare* Doc. 296 at 15-16, *with* Doc.
     218 at 15 ("BBK's products, on the other hand, are, ***according to BBK***, 'tobacco and related
22   products…'") (emphasis added)).
     [27] In a footnote, BBK argues—without support of any kind—that "CCA must prove the
23   knowing falsity of the 'use in commerce' statement separately as to each of the Challenged
     Goods and registered mark in each Challenged Registration *at the time of each declaration.*"
24   (Doc. 296 at 17 n.19). BBK has, again, failed to satisfy its initial burden of production on
     summary judgment on that issue. As the moving party, BBK must offer more than a
25   "conclusory assertion that [CCA] has no evidence[.]"  *Celotex Corp. v. Catrett*, 477 U.S.
     317, 332 (1986). BBK "must affirmatively demonstrate that there is no evidence in the
26   record to support a judgment for" CCA, and cannot do so for the first time on reply. *Id.*
     [28] CCA's ITU applications include Serial No. 87/324,212 ('212 Application), filed on
27   February 3, 2017; Serial No. 88/266,152 ('152 Application), filed January 17, 2019; Serial
     No. 88/328,474 ('474 Application), filed March 6, 2019; Serial No. 88/488,733 ('733
28   Application), filed June 25, 2019, and the child applications (*see* Doc. 293-27), which are
     referred to collectively as the "ITU Applications."

summary judgment as to those claims). "[T]he factual question of intent is particularly unsuited to disposition on summary judgment." *Rolex Watch U.S.A., Inc. v. PRL USA Holdings, Inc.*, No. 12 Civ. 6006, 2015 WL 1909837, at *6 (S.D.N.Y. Apr. 27, 2015) (citation omitted). CCA "need not produce a 'smoking gun' document that extinguishes all doubt as to its intent to use the trademarks in commerce." *Id.* In fact, "the evidentiary bar is not high" and must be determined on a "case-by-case basis considering the totality of the circumstances." *M.Z. Berger & Co., Inc. v. Swatch AG*, 787 F.3d 1368, 1376 (Fed. Cir. 2015). Here, the documentary evidence and witness testimony show there is at least a genuine dispute of material fact of CCA's bona fide intention to use the mark in commerce, so that summary judgment must be denied. *See, e.g.*, *Yoplait Marques v. Eldib*, No. 91197220, 2015 WL 9900241, at *3 (T.T.A.B. July 8, 2015) ("'[P]roduct or service research or development'…may also indicate sources of objective evidence of an applicant's bona fide intent to use the mark in commerce."); *Monster Energy Co. v. Lo*, No. 91225050, 2018 WL 6179147, at *15 (T.T.A.B. Nov. 21, 2018) ("At a minimum, Applicant's experience and capacity with respect to providing the services identified in his application, and his research of the United States market, raise genuine disputes of material fact as to Applicant's bona fide intention to use the subject mark."); *High Volatage Beverages, LLC v. Coca-Cola Co.*, No. 3:08CV367, 2011 WL 831523, at *1 (W.D.N.C. Mar. 3, 2011); *Vignette Corp. v. Marino*, No. 91158854, 2005 WL 1801611, at *3 (T.T.A.B. July 26, 2005); *Pfizer, Inc. v. Hamerschlag*, No. 118, 181, 2001 WL 1182865, at *2 (T.T.A.B. Sept. 27, 2001).

CCA has multiple ITU Applications identifying dried herbs, candy, bakery products, essential oils, and electronic cigarette liquid "containing hemp with a delta-9 THC concentration of not more than 0.3% on a dry weight basis and not containing added CBD." (Docs. 293-27; 293-28 at Appx. 1).[29] CCA's COO, Thomas Martin, discussed how CCA

---

[29] For the '212 application, CCA subsequently filed a Statement of Use, which the PTO accepted and then issued a registration. (Exs. 15; 26-27). This alone creates an inference that CCA had a bona fide intent at the time the application was filed, and such inference

has long planned to get into the CBD hemp market, explaining that "it's been on the table for quite some time" and that CCA even grew hemp on its farm. (Ex. 18 at 145:14-146:5, 146:6-17). CCA's CEO, John De Friel, testified that CCA grows plants such as hemp and has conducted research projects regarding hemp plant breeding. (Ex. 4 at 89:10-90:10, 154:11-156:10, 171:2-16). He testified that by February 2017, CCA had begun developing screening varietals using hemp, including nutritional supplements and vitamins, and that CCA was also developing hemp in the manufacture of creams, lotions and cosmetic products. (*Id.* at 191:12-192:5, 197:17-198:9).

There also is documentary evidence to corroborate the CCA witness testimony. For example, Mr. De Friel wrote multiple emails regarding exploration and research in hemp and "the industrial hemp opportunity" stemming back to early 2016. (*See, e.g.*, Exs. 19-21). In September 2018, Mr. De Fried emailed a business presentation regarding CCA declaring, "We see a future where California can also fulfill American's . . . hemp demands[.]" (Ex. 22). Since filing its ITU Applications, CCA has been developing its hemp products, including in topicals such as creams, and conducting consumer research in the hemp market. (*See* Exs. 23-25).

BBK is simply mistaken that there is no documentary evidence to show CCA's bona fide intent to use the Raw Garden mark in commerce on the products identified in the ITU Applications. CCA witness testimony and documentary evidence show that CCA had a bona fide intent to use the Raw Garden mark in commerce both as of the dates it filed its ITU Applications and in research and development of products ever since. At a minimum, there is a genuine dispute of material fact necessitating that BBK's motion for summary judgment be denied.

## III.   CONCLUSION

For the foregoing reasons, BBK's motion for partial summary judgment should be denied.

---

creates a genuine issue of material fact. *See Commodore Elecs. Ltd. v. CBM Kabushiki Kaisha*, 26 U.S.P.Q.2d (BNA) 1503, 1507-08 (T.T.A.B. 1993).

Dated: March 14, 2022

By: */s/ Brian W. LaCorte*

BRIAN W. LaCORTE (012237)
*LaCorteB@ballardspahr.com*
JONATHON A. TALCOTT (030155)
*TalcottJ@ballardspahr.com*
**BALLARD SPAHR LLP**
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Tel.: 602.798.5400
Fax: 602.798.5595

BRETT M. SCHUMAN (*pro hac vice*)
*BSchuman@goodwinlaw.com*
JEREMY N. LATEINER (*pro hac vice*)
*JLateiner@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: 415.733.6000
Fax: 415.677.9041

Attorneys for Defendant and Counterclaimant
CENTRAL COAST AGRICULTURE, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Table of Exhibits

| Exhibit Number | Description |
| --- | --- |
| Ex. 1 | Ex. 33 to March 26, 2021 Deposition of Michael D'Aquisto |
| Ex. 2 | Excerpts of May 10, 2021 Deposition of Ian Kobe |
| Ex. 3 | CCA000021 |
| Ex. 4 | Excerpts of April 22, 2021 Deposition of John De Friel |
| Ex. 5 | March 14, 2022 Declaration of John De Friel |
| Ex. 6 | Excerpts of May 10, 2021 Deposition of Dale Kent Mercer |
| Ex. 7 | Excerpts of May 6, 2021 CCA 30(b)(6) Deposition |
| Ex. 8 | Excerpts of May 7, 2021 BBK 30(b)(6) Deposition |
| Ex. 9 | Excerpts of December 7, 2021 Deposition of David Blackburn |
| Ex. 10 | Ex. 11 to May 10, 2021 Deposition of Ian Kobe |
| Ex. 11 | Ex. 3 to May 7, 2021 BBK 30(b)(6) Deposition |
| Ex. 12 | BBK00683238 |
| Ex. 13 | Declarations of Use submitted for BBK Marks 2989221; 3422929; 4041076; 4074036; 4325822; 4412202; 4647824; 4766952; 4675473; 4921168; and 5046495 |
| Ex. 14 | Excerpts of May 11, 2021 Deposition of Joshua Kesselman |
| Ex. 15 | CCA003534 |
| Ex. 16 | Federal Trademark Application (Ser. No 90/343,413) |
| Ex. 17 | Exs. 16-17 to May 12, 2021 Deposition of Matt Colvard |
| Ex. 18 | Excerpts of January 25, 2021 Deposition of Thomas Martin |
| Ex. 19 | CCA002643 |
| Ex. 20 | CCA002644-46 |
| Ex. 21 | CCA002647-69 |
| Ex. 22 | CCA001290-99 |
| Ex. 23 | CCA002572-73 |
| Ex. 24 | CCA002670-71 |
| Ex. 25 | CCA001504-10 |
| Ex. 26 | CCA003537-43 |

| Ex. 27 | CCA003535-36 |
|--------|--------------|
| Ex. 28 | CCA003582-83 |
| Ex. 29 | CCA003544 (DVD subject to Motion for Leave) |