Frank G. Long (#012245)
flong@dickinsonwright.com
J. Alex Grimsley (#019111)
jagrimsley@dickinsonwright.com
Charles S. Price (#006197)
cprice@dickinsonwright.com
Cindy A. Villanueva (#028163)
cvillanueva@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 N. Central Avenue, Suite 1400
Phoenix, Arizona 85004-4568
Phone: (602) 285-5000
Fax: (844) 670-6009
Firm Email:  courtdocs@dickinsonwright.com

*Attorneys for Plaintiff/Counterdefendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>    Plaintiff,<br><br>  v.<br><br>Central Coast Agriculture, Inc., a Delaware corporation,<br><br>    Defendants. | Case No. 2:19-cv-05216-PHX-MTL<br><br>**BBK'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[REDACTED]** |
| Central Coast Agriculture, Inc., a Delaware corporation,<br><br>    Counterclaimant,<br><br>  v.<br><br>BBK Tobacco & Foods, LLP, an Arizona limited liability partnership, d/b/a HBI International,<br><br>    Counterdefendant. | |

## **Table of Contents**

I.  CCA'S COUNTERCLAIMS FAIL. ............................................................................. 1

    A.  CCA Invites Legal Error. ...................................................................... 1

    B.  CCA Has no Evidence of a Prior Finding of Unlawful Use. .............................. 3

    C.  CCA Fails to Make Any Particularized Showing. ................................................ 3

    D.  CCA Has no Clear and Convincing Evidence of Fraud. ....................................... 5

    E.  CCA Lacks Standing to Assert Its Counterclaims. .............................................. 7

II.  CCA'S EQUITABLE DEFENSES FAIL. ............................................................. 7

    A.  CCA's Unclean Hands Bar Its Equitable Defenses. ........................................... 7

    B.  CCA's Laches Defense Fails. ................................................................. 9

    C.  CCA's Acquiescence, Waiver and Estoppel Defenses Fail. ............................. 12

    D.  CCA's Unclean Hands Defense Fails. ................................................... 13

III.  CCA'S NON-DEFENSE "DEFENSES" FAIL. .................................................. 14

IV.  CCA LACKED THE *BONA FIDE* INTENT TO USE THE RAW GARDEN MARK WITH THE GOODS LISTED IN THE ITU APPLICATIONS. ................... 14

1

# <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

4

*adidas Am., Inc. v. Payless Shoesource, Inc.*,
    540 F. Supp. 2d 1176 (D. Or. 2008)...................................................10, 11

5

*adidas-Am., Inc. v. Payless Shoesource, Inc*,
    546 F. Supp. 2d 1029 (D. Or. 2008)...................................................12, 13

6

7

*Augborne v. Filson*,
    2020 WL 5539800 (D. Nev. June 16, 2020) ...........................................4

8

9

*Calif. Cooler, Inc. v. Loretto Winery, Inc.*,
    774 F.2d 1451 (9th Cir. 1985)...............................................................13

10

*Commodore Elecs. Ltd. v. Cbm Kabushiki Kaisha*,
    26 U.S.P.Q.2d 1503 (T.T.A.B. 1993).....................................................14

11

12

*Eat Right Foods v. Whole Foods Mkt., Inc.*,
    880 F.3d 1109 (9th Cir. 2018)..................................................................9

13

14

*FLIR Sys., Inc. v. Sierra Media, Inc.*,
    965 F. Supp. 2d 1184 (D. Or. 2013).......................................................10

15

16

*In re JJ206, LLC*,
    120 U.S.P.Q.2d 1568 (T.T.A.B. 2016)....................................................2

17

18

*In re Morgan Brown*,
    119 U.S.P.Q.2d 1350 (T.T.A.B. 2016).................................................2, 3

19

*In re Thrifty Oil Co.*,
    249 B.R. 537 (S.D. Cal. 2000) ................................................................2

20

21

*In re Yoder*,
    758 F.2d 1114 (6th Cir. 1985)................................................................10

22

23

*Internet Specialities West, Inc. v. Milon-DiGorgio Enters., Inc.*,
    559 F.3d 985 (9th Cir. 2009)..................................................................11

24

25

*JIPC Mgmt.., Inc. v. Incredible Pizza Co., Inc.*,
    2009 WL 10671438 (C.D. Cal. 2009)....................................................12

26

27

*Kelly Servs., Inc. v. Creative Harbor, LLC*,
    846 F.3d 857 (6th Cir. 2017)..................................................................14

28

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
    439 F. Supp. 3d 1185 (N.D. Cal. 2020) .................................................. 13, 14

*L.C. Licensing, Inc. v. Berman*,
    2008 WL 835278 (T.T.A.B. 2008) ......................................................... 15

*Lifted Ltd., LLC v. Novelty Inc.*,
    2021 WL 4480566 (D. Colo. Sept. 30, 2021) ........................................ 2

*Manley v. Rowley*,
    847 F.3d 705 (9th Cir. 2017) ................................................................. 4

*Marketquest Grp., Inc. v. BIC Corp.*,
    316 F. Supp. 3d 1234 (S.D. Cal. 2018) .................................................. 13

*Melendres v. Arpaio*,
    154 F. Supp. 3d 845 (D. Ariz. 2016) ...................................................... 9

*Northbay Wellness Group, Inc. v. Beyries*,
    789 F.3d 956 (9th Cir. 2015) ................................................................. 8

*Nunley v. City of Los Angeles*,
    52 F.3d 792 (9th Cir. 1995) ................................................................... 10

*Posters 'N' Things v. U.S.*,
    511 U.S. 513 (1994) .............................................................................. 2

*Purple Heart Patient Ctr., Inc. v.*
*Mil. Order of the Purple Heart of the U.S. of Am., Inc.*,
    2014 WL 572366, (N.D. Cal. Feb. 11, 2014) ....................................... 7

*Zivkovic v. S. Cal. Edison Co.*,
    302 F.3d 1080 (9th Cir. 2002) .............................................................. 14

**Statutes and Rules**

15 U.S.C. §1116(a) ....................................................................................... 14

21 U.S.C. §863(d) ...................................................................................... 1, 3

21 U.S.C. §863(f) ......................................................................................... 1

Fed. R. Evid 301, Committee Notes on Rules–2011 Amendment................... 10

**Other Authorities**

3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §19.48 ................................................................................................... 15

Trademark Manual of Examining Procedure 309.03 ........................................ 4

U.S. Patent and Trademark Office, Examination Guide 1-19, *Examination of Marks for Cannabis and Cannabis-Related Goods and Services after Enactment of the 2018 Farm Bill*, dated May 2, 2019 ......................................... 15

1    The Court should grant BBK's Motion [Doc. 293] and narrow the issues for trial

2    to those requiring resolution by a finder of fact.  CCA's Opposition [Doc. 364 ("Opp.")]

3    presents rhetoric-rich *ad hominem* attacks, devoid of substance and showing no genuine

4    issue of material fact.  CCA instead asks the Court to: contravene controlling precedent

5    on the Controlled Substances Act ("CSA"); violate rules of statutory construction in

6    interpreting the CSA; disregard CCA's Rule 30(b)(6) testimony in assessing laches

7    prejudice; apply laches presumptions that are legally improper on these facts; allow

8    defenses that protect, and provide CCA a benefit from, CCA's admittedly illegal drug

9    sales; accept irrelevant (and often unauthenticated) evidence as creating issues of fact;

10   and otherwise overlook CCA's lack of evidence, especially on issues as to which CCA

11   bears the burden of proof, in some instances by a clear and convincing standard.

12   **I.    CCA'S COUNTERCLAIMS FAIL.**

13   **A.    CCA Invites Legal Error.**

14   It is undisputed that the "drug paraphernalia" section of the CSA does not apply

15   to "any item . . . traditionally intended for use with tobacco products, including any pipe,

16   paper, or accessory."  21 U.S.C. §863(f).  Items within the "Tobacco Exemption" of

17   863(f) ***cannot*** be "drug paraphernalia" because the "drug paraphernalia" section "shall

18   not apply" at all to such items.  *Id.* CCA's repeated argument that the Challenged

19   Products are not within the Tobacco Exemption ***because*** they are (allegedly) drug

20   paraphernalia under the 8-factor test of section 863(d) violates basic canons of statutory

21   construction, renders the Tobacco Exemption meaningless and ignores the plain

22   language that section 863 "shall not apply" to items within the Tobacco Exemption.

23   Undisputed evidence shows each Challenged Product is an "item . . . traditionally

24   intended for use with tobacco products."  [Motion at 21, citing BBK Ex. 17]  Rather than

25   dispute BBK's evidence, CCA asks the Court to commit legal error by interpreting the

26   Tobacco Exemption to require analysis of "traditional use" of a ***particular brand*** of item

27   based on the ***subjective intent*** of the supplier. CCA's construction would apply the

28   Tobacco Exemption to "items traditionally intended for use with tobacco" ***only if the***

1

***owner of a particular brand of item subjectively intends that the particular brand of the item be used primarily with tobacco***.  The statute contains no such disqualifying language. The Tobacco Exemption is an unambiguous federal statute, the plain terms of which must be applied by the Court as written.  *In re Thrifty Oil Co*., 249 B.R. 537, 553 (S.D. Cal. 2000).  CCA's proposed interpretation invites legal error.[1]

The marketing and other materials submitted by CCA and relied upon in CCA's expert rebuttal report address only BBK's alleged subjective intent, despite the holding of *Posters 'N' Things v. U.S*., 511 U.S. 513, 520-21 (1994) that "[a]n item's 'traditional' use is not based on the subjective intent of a particular defendant." *Lifted Ltd., LLC v. Novelty Inc*., 2021 WL 4480566 (D. Colo. Sept. 30, 2021) properly considered and applied that controlling authority.  CCA's assertion that *Lifted Ltd*. "did not analyze" the Tobacco Exemption [Opp. at 17] is wrong. The court found that the category of items at issue "are all products traditionally intended for tobacco use, regardless of any other uses they might have" and, quoting *Posters*, rejected an effort (identical to CCA's) to focus on plaintiff's subjective intent with respect to its particular brand of such items:

> [P]laintiff's marketing does not change a traditional use to a non-traditional one. **As the Supreme Court has stated, '[a]n item's 'traditional' use is not based on the subjective intent of a particular defendant.'"**

2021 WL 4480566, at *2 and *3 (emphasis added, quoting *Posters*, 511 U.S. at 520-21).

*Lifted Ltd.* found relevant to "traditional use" that the U.S. Patent and Trademark Office ("PTO") list of approved designations for goods in Class 34 includes "cigarette lighter holder[s]," "pipe tampers," and "pipe cleaners." *Id*. at *2. CCA does not dispute that cigarette rolling papers, cigarette filters, cigarette tubes, cigarette-rolling machines and smokers' rolling trays all appear in that same PTO approved list. [Motion at 19 n.21]

---

[1] CCA's argument about the burden of proof (which is wrong) is immaterial because CCA provides no contrary evidence concerning the traditional use of any item. Further, CCA's cases do not support CCA's claim to be "standing in the shoes of the United States."  Neither *In re Morgan Brown*, 119 U.S.P.Q.2d 1350 (T.T.A.B. 2016) nor *In re JJ206, LLC,* 120 U.S.P.Q.2d 1568 (T.T.A.B. 2016) addresses the burden of proof in a private civil case. Both involved conceded cannabis use; neither involved the Tobacco Exemption; and neither involved a private civil case.

CCA's improper focus on BBK's alleged subjective intent as to rolling papers also ignores CCA's admission that "***the tobacco exemption specifically excludes rolling papers from the definition of 'drug paraphernalia*.'**" [Doc. 356 at 9 n.5 (emphasis added)][2]  The Court should reject CCA's effort to inject legal error.

### B.   CCA Has no Evidence of a Prior Finding of Unlawful Use.

CCA does not dispute that a party seeking to invalidate a PTO trademark registration based on unlawful use must show either a *per se* violation of law or a prior adjudication of illegality.  [Motion at 22-23]  Instead, CCA cites an inapposite TTAB decision affirming refusal of a PTO registration where the mark owner admitted the mark was being used with the sale of marijuana, illegal under the CSA.  *In re Morgan Brown*, 119 U.S.P.Q.2d 1350, 1352 (T.T.A.B. 2016).  That decision does not alter the fact that not one of the Challenged Products is, or is argued by CCA to be, a *per se* example of "drug paraphernalia" under the CSA (21 U.S.C. §863(d)(1-15)).

CCA's suggestion that its evidence of Customs and Border Patrol ("CBP") seizures provides "prior agency findings of BBK's § 863 violations" [Opp. at 13] ignores that ***none*** of those seizures involved BBK as either shipper or recipient (there is no evidence that BBK was ever made aware of these seizures) or any CBP consideration of the Tobacco Exemption evidence presented here.  CCA also provides no evidence whether the initial reported seizures were ever challenged by the involved parties or resulted in any final determination.  Further, most of those initial seizures do not involve Challenged Products at all. (Almost all involve cones, which are not included in the Challenged Products and are thus irrelevant to CCA's Counterclaims. *See infra*, n.5.)

### C.   CCA Fails to Make Any Particularized Showing.

In addition to CCA's legally erroneous reading of the Tobacco Exemption, CCA fails to make any showing that ***each*** of the goods with which BBK uses ***each*** registered trademark is outside the Tobacco Exemption and is instead drug paraphernalia. Although

---

[2] CCA's focus on the traditional intended use of particular brand of item would mean the Tobacco Exemption would never apply to a new ***brand*** of tobacco rolling paper or accessory because that brand of products would have no historical, traditional use.

the Trademark Manual of Examining Procedure provides a specific procedure for challenging specific goods identified within a registration,[3] CCA did not pursue that approach, instead choosing to "go for broke" and seeking to cancel *the entirety of* each Challenged Registration as to *all of* the goods identified in each registration.

But, it is undisputed that BBK's PTO Reg. Nos. 4074036 (for "RAW"), 4325822 (for "Raw Artesano"), 4412202 (for "RAW") and 4766952 (for "RAW") include identified goods that are not even alleged by CCA to be "drug paraphernalia" under the CSA.  [*See* BBK Ex. 6]  Since CCA cannot obtain cancellation of those registrations in their entirety, and complete cancellation is the only relief CCA seeks (CCA did not even alternatively seek partial cancellation), summary judgment in BBK's favor is appropriate as to those registrations.

CCA also makes no effort to relate its evidence to any particular Challenged Registration.  For example, CCA refers to the packaging of one BBK rolling paper brand, RAW Black™ Organic Hemp, that includes the language "Not For Use With Tobacco."  First, the undisputed evidence is that: those papers are suitable for use with tobacco; BBK has applied to the FDA for approval to market those papers as a tobacco product; and BBK is using the disclaimer only until the FDA grants that approval. [BBK Ex. 13][4]  Moreover, the product is not relevant to CCA's Counterclaims because the mark is not one of the Challenged Registrations. BBK applied to register the trademark "Raw Black" in November 2020 [CCA Ex. 16], but CCA's Counterclaims do not seek to invalidate either the application or the resulting PTO Reg. No. 6,469,902. Language used on that product's packaging provides no evidence of anything with

---

[3] "A plaintiff may seek to partially cancel a registration, or partially oppose registration only as to specific items in the identification of goods or services…" TMEP 309.03

[4] CCA attempts to dismiss those facts as "self-serving," but "the Ninth Circuit recently clarified that 'because a party's own testimony will nearly always be "self-serving," the mere self-serving nature of testimony permits a court to discount that testimony where it "states only conclusions and not facts that would be admissible evidence.'" *Augborne v. Filson*, 2020 WL 5539800, at *5 (D. Nev. June 16, 2020) (citing *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017)). The facts recited by Mr. Colvard cannot be discounted on the basis that his recitation of facts (which CCA does not dispute) is self-serving.

1    respect to BBK's numerous RAW® rolling paper brands that use a BBK trademark

2    registered by the PTO for use with rolling papers (much less any of the other Challenged

3    Products that are not rolling papers) and do not include any such disclaimer.  [*E.g.*, *id.* at

4    BBK0007021 (RAW® papers); BBK0007022 (RAW® and RAW Supernatural®

5    papers); BBK0007024 (RAW Artesano® and RAW® papers); BBK0007025 (RAW®

6    papers))][5]

7         CCA cannot discharge its burden to show a genuine issue of material fact by

8    forcing the Court to parse through CCA's "evidence" to determine if any of it happens to

9    relate to a particular Challenged Product in a Challenged Registration.[6]

10        **D.    CCA Has no Clear and Convincing Evidence of Fraud.**

11        CCA cannot prove falsity because it is undisputed that all of the Challenged

12   Products fall within the Tobacco Exemption and cannot be "drug paraphernalia."

13        CCA also provides no clear and convincing evidence that BBK's declarants

14   ***knew***, at the time of their PTO declarations, of any reason why the statement that the

15   mark was being used with goods in legal commerce was not true.  BBK's declarants

16   reasonably believed (and believe) the products were (and are) within the Tobacco

17   Exemption. CCA does not attempt to show (and cannot show) that the Challenged

18   Products are ***never*** sold for use with tobacco or legal smoking herbs, much less that

19   BBK's declarants would or could believe that to be so.  CCA attempts to avoid the

20

21   ──────────────

[5] Much of CCA's "evidence" likewise concerns RAW™ cones, despite the fact that

22   ***none*** of the Challenged Registrations cover "cones" and BBK does not own a PTO
     registration of any RAW™ mark for cones.  [*See* BBK Ex. 11 at BBK0007044-49 (using

23   ™ symbol not ® symbol with each RAW™ "cone" product)]

24   [6] As a further example, CCA seeks leave to submit an unauthenticated DVD containing
     a purported video about a new product, the RAW™ Flow Shredder [CCA proposed Ex.

25   29].  CCA does not tie this product to any particular Challenged Registration.  BBK's
     PTO Reg. No. 4412202 is limited to shredders that are "not for industrial use."  That

26   the Flow Shredder can be used by dispensaries to manufacture products [Opp. at 18] shows
     that the Flow Shredder is for industrial use, rendering it outside the scope of the products

27   identified in BBK's registration.  [*See also* Doc. 373]  In any event, the video contains
     nothing (and CCA offers nothing) to controvert that shredders are an item traditionally

28   intended for use with tobacco products and are therefore within the Tobacco Exemption.

undisputed fact that the Challenged Products *are* sold in legal commerce by arguing that BBK did not disclose that the goods *can* be used also with marijuana.  CCA admits there is no affirmative duty to disclose [Opp. at 21], but then claims fraud because BBK allegedly failed to "truthfully disclose[] that the marks were to be primarily used with illegal drug paraphernalia." [*Id.*]  Any such alleged "failure" to disclose is irrelevant in light of the conceded absence of a duty to affirmatively disclose to the PTO.

Further, the record is devoid of any evidence—a survey, financial data, testimony, or any other evidence—demonstrating the alleged "fact," *i.e.*, "primarily used with illegal drug paraphernalia," that CCA claims [Opp. at 21] BBK should have disclosed.  The record is similarly devoid of the required clear and convincing evidence that BBK's declarants knew, at the time of each declaration, that the products identified in the underlying PTO application or registration were "primarily used with illegal drug paraphernalia" (which they are not, and which would be inconsistent with the listing of almost all such products in the PTO's list of approved Class 34 product designations).[7]

CCA also presents no clear and convincing evidence that the PTO relied on the alleged omission by BBK.  CCA does not dispute that the PTO must be aware that rolling papers and the other Challenged Products can be used with tobacco or marijuana,

---

[7] CCA does not dispute that "BBK holds tobacco licenses in nearly 40 states … and has paid millions of dollars of taxes to state and local governments to sell tobacco products." [Motion at 16]  Those facts alone gave BBK's declarants ample basis to state that the products were used in lawful commerce. CCA makes a halfhearted attempt to argue that none of the challenged RAW® rolling papers are suitable for use with tobacco [Opp. at 17], but the suggestion that papers suitable for smoking other materials are unsuitable for smoking tobacco is an absurdity. CCA cites a single casually-worded email by one BBK representative to a single customer to support CCA's argument [*id.*] but Mr. Kesselman explained that the email must have been referring to a certain cut of tobacco that does not burn as easily (and should be ground into smaller pieces) [BBK Ex. 14 at 327:20-330:20]; and that "[a]ll RAW rolling papers are suitable for use with tobacco" [*id.* at 330:21-24] and "are designed for use with tobacco and are tested with tobacco" [*id.* at 332:23-333:1]. CCA refutes none of that, resorting to an argument that the founder of BBK, with decades of experience in tobacco and rolling papers, doesn't know what he is talking about. [Opp. at 17 n. 23 ] There is no genuine issue as to the suitability of RAW® brand rolling papers for tobacco use, or the longstanding and widespread sale of those papers for such use.

nor does CCA contend the PTO asked BBK to declare otherwise.  [Motion at 14]

Finally, as to BBK's Reg. No. 5046495 (relating to information services about cannabis) and Mr. Kesselman's true characterization of BBK as a tobacco company, CCA provides no clear and convincing evidence of falsity or knowledge of falsity. CCA's claims about the Challenged Goods, even taken at face value, cannot discharge CCA's burden because it is undisputed that nearly 80% of BBK total sales do not involve the Challenged Goods and CCA provides no evidence that those other goods are not tobacco products.  [Motion at 16] CCA also provides no clear and convincing evidence that the statement about BBK's ***products*** was material to the PTO question about ***services*** to be provided on a website.   CCA's *ad hominem* attack on Mr. Kesselman and his alleged motives [Opp. at 22] is no substitute for the required evidentiary proof.

### E.    CCA Lacks Standing to Assert Its Counterclaims.

To have standing, CCA must have a ***legitimate commercial interest*** that will be harmed by BBK's trademark registrations.  [*See* Motion at 3]  CCA does not claim any legitimate business interest or argue that there is any issue of fact in that regard. Rather, CCA asks the Court to follow *Purple Heart Patient Ctr., Inc. v. Mil. Order of the Purple Heart of the U.S. of Am., Inc.*, 2014 WL 572366, at *2 (N.D. Cal. Feb. 11, 2014), which allowed a party that "flagrantly violate[d] federal laws," to counterclaim to invalidate PTO registrations, solely because to hold otherwise "would not be the American way." [Opp. at 12] But, it is not "the American way" to allow admitted criminals to use the courts to protect their criminal enterprises.  [*E.g.*, Motion at 3 (citing cases)]   CCA invokes this federal court's equitable powers to insulate it from enforcement of BBK's federal trademark registrations.  CCA's admitted illegal drug activity is an illegitimate commercial interest the Lanham Act cannot be invoked to protect.

## II.    CCA'S EQUITABLE DEFENSES FAIL.

### A. CCA's Unclean Hands Bar Its Equitable Defenses.

CCA admits that its sales of marijuana products are illegal under federal law

[Opp. at 1] and does not dispute that its equitable defenses are predicated on CCA's sale of illegal marijuana products.  [*See* Motion at 2]  There is no genuine issue of dispute as to those material facts.[8]

Despite CCA's misdirection [*e.g.*, Opp. at 3], the legal issue is whether admittedly illegal conduct can support an equitable affirmative defense, not whether a cannabis business can ever assert any equitable affirmative defense.  CCA suggests that *Northbay Wellness Group, Inc. v. Beyries*, 789 F.3d 956 (9th Cir. 2015), holds that illegal marijuana sales are not "inequitable" conduct.  [Opp. at 3-4]  Not so.  *Northbay* held that the creditor company's illegal marijuana sales "must be attributed" also to the debtor, who was a lawyer for, director of, and partner in the creditor company.  *Id.* at 960. Illegal marijuana sales attributable to both parties did not preclude the *criminal* creditor from recovering funds stolen by the *criminal* debtor, their lawyer.  *Id.* at 961.

CCA's admittedly illegal marijuana sales are ***not*** attributable to BBK.  CCA's request that the Court ignore CCA's ***admitted*** unclean hands with respect to conduct at the heart of CCA's affirmative defenses because of BBK's ***alleged*** unclean hands with respect to different conduct ignores settled law that unclean hands concerns only the conduct relating to the claim or defense at issue, not some other claim or defense.  [*See* Motion at 1 (citing cases)]  CCA should not be permitted to use its admittedly illegal

---

[8]  Contrary to CCA's assertion [Opp. at 4], BBK timely disclosed the state-law illegality of CCA's pre-2018 alleged sales as an additional basis for BBK's unclean hands argument [Doc. 251-4, p.22, ll.5-6 (page 148 of disclosure)], and did so no later than BBK's March 31, 2021, disclosure.  In fact, CCA produced its lawyer's letter [CCA Ex. 1 at Ex. A] with Bates number CCA002708 in May 2021, following BBK's disclosure. CCA's lawyer letter creates no disputed issue of fact because it says nothing about whether ***CCA*** could legally ***sell*** marijuana products.  The letter addresses only two individuals, and does not even state that those individuals may ***sell*** marijuana products, only that they "are compliant under state law to cultivate" for one marijuana collective. [*Id.*]  In any event, BBK's unclean hands argument does not depend on whether CCA's alleged pre-2018 sales were illegal under state law.  The admitted federal illegality of CCA's marijuana business establishes CCA's unclean hands.

drug activity as a shield to escape liability for its infringement of BBK's trademarks.[9]

**B.  CCA's Laches Defense Fails.**

To prove laches, CCA ***must prove*** that it "took actions or suffered consequences that it would not have." *Eat Right Foods v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1119 (9th Cir. 2018).  With a Rule 30(b)(6) topic squarely seeking that information [*see* Motion at 7 n.8], CCA's Rule 30(b)(6) designee conceded:

> I can't point to specific things that we would not have done and tell you today that we specifically would not have done this.

[CCA Ex. 7 at 189:3-5; see also Doc. 229-9 at 187:17-22]  CCA does not know and cannot prove what it would have done differently, and thus, cannot prove prejudice.[10]

To deflect attention from this admission, CCA falls back on its Rule 30(b)(6) designee's recitation of a generic prepared statement, read directly from the designee's notes.  [Opp. at 9 n.11; CCA Ex. 7 at 184:7-8 ("Referring here, again, to my notes")]  But, when BBK sought evidentiary details, CCA's designee admitted that CCA premised its generic statement of "prejudice" solely on speculation.  [Doc. 229-9 at 185:2-18, 186:5-11, 187:2-8, 188:14-189:8][11]  "Mere speculation is not enough to establish prejudice." *Melendres v. Arpaio*, 154 F. Supp. 3d 845 (D. Ariz. 2016).

To try to salvage its laches defense, CCA seeks refuge in the presumption of

---

[9] Moreover, as discussed in the Motion (at 12-23)-and herein (*supra*, Section I) summary judgment should be entered in BBK's favor on CCA's claims that BBK engaged in any misconduct.

[10] CCA half-heartedly asks the Court to ignore CCA's 30(b)(6) testimony by arguing in a footnote that CCA's counsel asserted "speculation" or other objections to the questions.  [*E.g.,* Opp. at 9 n.11]  Questions asking CCA to disclose evidence to support an essential element of CCA's defense call for speculation only if the defense is improperly premised on speculation.  Moreover, CCA presents no evidence that CCA would have answered the questions differently absent the alleged form errors (and the witness did not seek to correct or add to the cited testimony in errata).

[11] CCA cannot contradict the testimony of its Rule 30(b)(6) designee through the declaration of Mr. DeFriel.  [CCA Ex. 5, ¶3]  In any event, CCA's "incentive" in January 2016 to keep using the Raw Garden mark is not relevant inasmuch as CCA does not contend that BBK should have filed suit that early.  Moreover, neither Mr. DeFriel's declaration nor any other evidence shows that CCA built a business around the Raw Garden brand or was otherwise prejudiced by any alleged delay.  [Motion at 8-9]

laches (prejudice and undue delay) that arises when a party indisputably filed its infringement claims outside the analogous statute of limitations [Opp. at 9 n.11] and premises its entire argument that any delay was unreasonable on that presumption [Opp. at 7].  That presumption of undue delay and prejudice, however, is a "bursting bubble" that "**completely vanishes**" once BBK produces "a 'minimum quantity of evidence' sufficient to raise a genuine factual issue as to **undue delay or prejudice**."  *adidas Am., Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1180 (D. Or. 2008) (citation omitted, emphasis added); *see also FLIR Sys., Inc. v. Sierra Media, Inc.*, 965 F. Supp. 2d 1184, (D. Or. 2013)("the presumption evaporates when there are 'disputed issues of material fact as to when the [claimant] knew or should have known of the alleged infringer's activity, and thus whether the [claimant] filed suit outside the analogous statute of limitations period'") (citation omitted, alterations in original)[12]

As already discussed, BBK's evidence not only raises an issue as to prejudice, the evidence destroys the presumption of prejudice and undue delay and precludes CCA from proving prejudice.  As discussed below, BBK's evidence also demonstrates that BBK filed suit within three years of when it knew or should have known of the likelihood of confusion required to bring suit and, at the very least, raises an issue of fact as to whether BBK should have filed suit before September 2016.

CCA points to two social media posts and argues "it is undisputed" that BBK knew of CCA's 2016 sales of Raw Garden products before September 2016.  [Opp. at 7] That is wrong. There is an issue of fact as to whether CCA was even selling Raw Garden products in 2016.  [Doc. 260 at 9-10 (and exhibits cited therein)]  And the social media posts themselves do not show that any Raw Garden branded products were being ***sold*** by CCA then.  [*See* Doc. 206-11 (referring to Raw Garden as "a gardening for the

---

[12]  *Nunley v. City of Los Angeles*, 52 F.3d 792, 796 (9th Cir. 1995) holds that Fed. R. Evid. 301 embodies the "bursting bubble" approach.  *In re Yoder*, 758 F.2d 1114, 1119-1120 (6th Cir. 1985) (cited with approval in *Nunley*) discusses the legislative history and language that support this conclusion.  The subsequent 2011 amendments to Rule 301 were "stylistic only."  Fed. R. Evid. 301, Committee Notes on Rules–2011 Amendment.

patients"); Doc. 204-17 (showing growing crops)]  Rather, BBK believed in July 2016 that Raw Garden was a farming operation.  [CCA Ex. 8 at 43:2-15]  That belief is consistent with the social media posts and with: (i) CCA's repeated assertion that in 2016 it only provided consulting services to collectives [Doc. 229-10 at 20:9-12, 21:22-27, 23:5-10, 24:23-25:1; Doc. 230-1 at 38:15-18, 39:11-13, 40:9-11, 41:7-9]; (ii) CCA's founder's testimony that collectives owned the plants and CCA was not a collective but only consulted for collectives on processing medical marijuana products [CCA Ex. 4 at 78:18-80:12]; and (iii) CCA's 2016 lawyer letter asserting that Messrs. Martin and DeFriel were "cultivators" for a collective [CCA Ex. 1 at Ex. A]. Further, BBK's COO expressly testified that, "[p]rior to October 19, 2018, BBK did not know that CCA offered marijuana products using the 'Raw Garden' name."  [Doc. 229-2, at 7, ¶36]

In the face of evidence that (i) BBK was not aware of any confusion in 2016 [Doc. 229-2 at 6, ¶27] and (ii) CCA's Raw Garden products were available (if at all) to members of medical use collectives only in 2016 [Doc. 229-6, Doc. 230-7], CCA likewise submits **no** evidence that BBK should have known in 2016 of a likelihood of confusion with BBK's RAW® brand products.  That lack of evidence is dispositive. *Internet Specialities West, Inc. v. Milon-DiGorgio Enters., Inc.*, 559 F.3d 985, 990 (9th Cir. 2009) (for the start of the laches period, "the question is when [plaintiff] knew or should have known about the likelihood of confusion").[13]

Those facts at a minimum burst the bubble of the presumption, and CCA must therefore "affirmatively prove both elements of laches" without the benefit of any presumption.  [Motion at 5; Doc. 260 at 1-3 and 9-14 (and exhibits cited therein)]  The lack of evidence of prejudice is shown *supra*, p. 9. With respect to delay, CCA likewise cannot seek refuge in the presumption and must **prove** that any delay was unreasonable (with no three-year presumption).  *E.g., adidas Am.*, 540 F. Supp. 2d at 1181-82. Laches

---

[13] CCA improperly attempts to shift to BBK the burden of proving that it was **not** aware of a likelihood of confusion.  [Opp. at 7-8]  CCA bears the burden of proving its affirmative defense, including the critical element of when BBK should have known of a likelihood of confusion with respect to Raw Garden products.

"is a disfavored defense in trademark cases," *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1069 (D. Or. 2008), and, to avoid unnecessarily burdening the courts, a party is not required to file suit when another's infringement is *de minimis*. *JIPC Mgmt., Inc. v. Incredible Pizza Co., Inc.,* 2009 WL 10671438, at *5 (C.D. Cal. 2009). In the Motion (at 5-7), BBK showed that any alleged delay was reasonable based not only on when BBK first learned of any likelihood of confusion but also on: (i) the *de minimis* presence (accepting CCA's assertions) of Raw Garden marijuana products in only a handful of what CCA says were thousands of members-only marijuana collectives [Doc. 260-2 at 3, ¶¶10-14],[14] (ii) BBK's diligence in challenging CCA's attempt to register Raw Garden as a trademark [Motion at 6-7], and (iii) the seven-month period before BBK filed suit during which the parties engaged in substantive settlement discussions [*id.*].[15]  CCA presents no contravening evidence to prove that any delay was unreasonable.

CCA's inability to prove prejudice and CCA's failure to present evidence of undue delay warrant summary judgment in BBK's favor on CCA's laches defense.

## C.  CCA's Acquiescence, Waiver and Estoppel Defenses Fail.

CCA relies solely on BBK's ***in***action to support CCA's acquiescence and waiver defenses. [Opp. at 9-10]   Inaction cannot support either defense.  *adidas-Am.*, 546 F. Supp. 2d at 1074-75. Inaction could support CCA's estoppel defense only if the inaction

---

[14] CCA's reliance on materials not produced in the litigation (and without a request for judicial notice—which would be unjustified in any event) to argue that the California marijuana market was a billion-plus dollar market in 2016 [Opp. at 7 and n.8] is not only improper but misses the point.  By emphasizing the dollar amount of the pre-2018 closed-loop, members'-only, medical use cannabis market, CCA itself further illustrates the miniscule presence of Raw Garden in 2016.  [*See* Doc. 312-1 (lodged under seal) at Ex. 1.0 (row titled "Total CCA-Identified Raw Garden Product Revenues Excluding Flower Products")]  Using revenue calculations that exclude "flower products" is proper based on CCA's recent concession that "CCA has not commercially sold [cannabis flower products] under the allegedly infringing Raw Garden brand." [Doc. 336 at 4 n.1]
[15] CCA objects to BBK Ex. 2, but does not move to strike.  CCA's objection to BBK's Rule 1006 summary exhibit is misplaced.  CCA was a party to all of the referenced communications, and the more than 80 pages of emails were all produced to CCA.

1   led CCA "to reasonably believe that [BBK] did not intend to enforce its trademark

2   right." *Id.* at 1075.  CCA's Rule 30(b)(6) designee testified there was never a time

3   "CCA believed that BBK had decided not to enforce trademark rights against CCA."

4   [BBK Ex. 4 at 200:20-201:1]  CCA's argument for an inference that CCA was misled

5   cannot overcome CCA's outright admission that it was **not** misled.

6        That same admission also precludes CCA from proving (for acquiescence) that

7   BBK's conduct induced "the belief that [BBK] has abandoned its claim." *adidas-Am.*,

8   546 F. Supp. 2d at 1075.  And, since CCA admittedly never believed that BBK decided

9   not to enforce its trademarks, whatever BBK did or did not do could not be a "clear,

10  decisive and unequivocal" expression of intent to relinquish those rights. *Id.* at 1074-75.

11       **D. CCA's Unclean Hands Defense Fails.**

12       CCA does not dispute that CCA's unclean hands defense (i) falls with its

13  Counterclaims and (ii) does not apply to BBK's 15 U.S.C. §1114 infringement claim

14  (Count 1) to the extent premised on the six PTO trademark registrations CCA does not

15  challenge in its Counterclaims.  Instead, CCA argues that its unclean hands defense

16  based solely on alleged misconduct in obtaining federal trademark registrations also

17  applies to claims enforcing BBK's ***common law*** trademark rights.  CCA is wrong. *E.g.*,

18  *Calif. Cooler, Inc. v. Loretto Winery, Inc.*, 774 F.2d 1451, 1454 (9th Cir. 1985)

19  ("deficiencies in registration . . . do not affect common law trademark rights") (citation

20  omitted); *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1277 (S.D. Cal.

21  2018) ("trademark rights . . . continue notwithstanding cancellation of a registration").

22       BBK's claim under 15 U.S.C. §1125(a) (Count 2) is based on common law rights

23  arising from use of the marks in California and Arizona, and BBK's Arizona claims

24  (Counts 4 & 5) are based on BBK's Arizona common law rights.  CCA alleges no

25  misconduct by BBK in obtaining those common law rights.  CCA's own authority

26  recognizes that a party may obtain common law rights in a trademark based on state-

27  legal use regardless of whether that use is a "lawful use in commerce" required for

28  federal trademark registration. *Kiva Health Brands LLC v. Kiva Brands Inc.*, 439 F.

Supp. 3d 1185, 1198-99 (N.D. Cal. 2020).[16]

## III.    CCA'S NON-DEFENSE "DEFENSES" FAIL.

In the Ninth Circuit, "[a] defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).  In **this** Circuit, CCA's 1st, 2nd, 7th, 10th, 11th, and 13th affirmative defenses are not affirmative defenses [Motion at 4], a conclusion CCA admits by asking that the Court preserve CCA's ability "to raise BBK's lack of proof on the issues underlying the defenses at trial."  [Opp. at 12 n.17]  CCA's effort to shift the burden to BBK [*id.* at 12] reinforces that these are not affirmative defenses.[17]

## IV.    CCA LACKED THE *BONA FIDE* INTENT TO USE THE RAW GARDEN MARK WITH THE GOODS LISTED IN THE ITU APPLICATIONS.

CCA's authority, *Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 868 (6th Cir. 2017), affirmed the grant of summary judgment on a lack of *bona fide* intent to use claim where there was no documentary evidence showing an intent, at the time the application was filed, to bring the product to market.  *Id.*  Likewise, BBK provided a *prima facie* case of lack of *bona fide* intent, which CCA failed to rebut in its Opposition.

CCA's only evidence, which all concerns growing hemp or entering the hemp market, is irrelevant to CCA's ITU Applications identifying products that contain **no hemp** whatsoever, including the '212 Application[18] as well as 14 other applications.[19]

---

[16] CCA's assertions [Opp. at 6 n.7 & 10 n.12] that the Motion does not address CCA's waiver and unclean hands defenses with respect to claims other than infringement ignores (i) that BBK's Motion seeks summary judgment on these defenses in their entirety and (ii) that CCA disclosed no such defenses to BBK's cybersquatting claim.

[17] CCA's 13th affirmative defense reserves additional, unidentified defenses, but the time to amend the pleadings has passed.  The time to file a Rule 12 dispositive motion also has passed, justifying summary judgment on CCA's 1st affirmative defense.  Further, 15 U.S.C. §1116(a) establishes a presumption of irreparable harm [Motion at 4], but CCA presents nothing to rebut that presumption, justifying summary judgment on CCA's 7th affirmative defense.

[18] *Commodore Elecs. Ltd. v. Cbm Kabushiki Kaisha*, 26 U.S.P.Q.2d 1503 (T.T.A.B. 1993) does not support CCA's assertion [Opp. at 24 n.29] that its post-application statement of use for the '212 Application "creates an inference that CCA had a bona fide intent at the time the application was filed."  In *Commodore*, the court noted that an inference might be permitted where the applicant was already marketing the same

14

[*See* BBK Ex. 18]  CCA's failure to produce any evidence of a ***firm and demonstrative*** intent to use the RAW GARDEN mark with the ***non-hemp*** goods in those ITU Applications warrants summary judgment in BBK's favor.

None of CCA's ***hemp*** "evidence" creates a fact dispute as to any of CCA's other ITU Applications either, because nothing shows CCA had a ***firm and demonstrative*** intent to bring to market using the Raw Garden Mark the ***particular identified products*** that contain ***hemp*** (dried herbs, candy, bakery products, essential oils, and electronic cigarette liquid).[20]  Mr. Martin's pie-in-the sky statement that hemp was "on the table," does not show a *bona fide* intent to use the mark with particular products.  *See L.C. Licensing, Inc. v. Berman,* 2008 WL 835278, at *10 (T.T.A.B. 2008); 3 J. Thomas McCarthy, McCarthy On Trademarks And Unfair Competition §19.48. In fact, CCA conveniently ignores evidence that Mr. Martin admitted: (i) there was no current plan to bring hemp products to market [BBK Ex. 4 at 147:11-23; 160:11-25]; and (ii) he knew of no plans by CCA to manufacture any candy products or other "ingestibles"

---

products with another mark.  That is not the case here, and CCA failed to produce any documents as of the date of the '212 Application showing any CCA intent ***at that time*** to bring the product to market.

[19] CCA's ITU Applications covering goods that contain ***no hemp*** are: Ser. Nos. 88/981,035; 88/981,034; 88/981,016; 88/981,017; 88/981,018; 88/978,412; 88/980,930; 88/981,186;  88/981,187;  88/981,188;  88/981,163;  88/981,164;  88/980,419;  and 88/980,421.  An application covering hemp must state that the product contains "less than .3% THC on a dry-weight basis."  *See* U.S. Patent and Trademark Office, Examination Guide 1-19, *Examination of Marks for Cannabis and Cannabis-Related Goods and Services after Enactment of the 2018 Farm Bill*, dated May 2, 2019 ("If an applicant's goods are derived from "hemp" as defined in the 2018 Farm Bill, the identification of goods must specify that they contain less than 0.3%THC"), at https://www.uspto.gov/sites/default/files/documents/Exam%20Guide%201-19.pdf (accessed March 16, 2022).

[20] CCA cites the testimony of Mr. DeFriel for statements that CCA began "developing screening varietals using hemp, including nutritional supplements and vitamins, and that CCA was also developing hemp in the manufacture of creams, lotions and cosmetic products." However, the pages cited to support these statements are not part of the record at CCA Exhibit 4.  Regardless, Mr. DeFriel's testimony about screening hemp varietals and lotions and creams is again irrelevant since none of the ITU Applications cover lotions and creams.

1  (which include bakery products) [*Id.* at 149:14-23, 150:5-151:4].

2      Similarly, email exchanges in REDACTED (when

3  hemp was still federally illegal) [CCA Exs. 19-21] do not show an intent at the time of

4  filing in 2019 to bring to market the dried herbs, candy, bakery products, essential oils,

5  and electronic cigarette liquid that contain hemp listed in the ITU Applications.  The

6  vague 2018 marketing statement that CCA sees REDACTED

7  REDACTED

8  [CCA Ex. 22 (emphasis added)] is not evidence of any firm intent *by CCA* to bring to

9  market *any of the specific products* listed in the ITU Applications.  Moreover, a single

10  2019 email stating that REDACTED [CCA Ex. 23] is not

11  evidence of firm steps to bring to market products in the ITU Applications, which do not

12  even cover REDACTED [*See* BBK Ex. 18] Finally, the email where an employee stated

13  that REDACTED

14  REDACTED

15  REDACTED [CCA Ex. 23] and the email with a line stating that REDACTED

16  REDACTED [CCA Ex. 24] are equally general and are not evidence of a firm and

17  demonstrative intent to use the mark in commerce with any specific product.

18      CCA's attempt to portray these vague "hemp" statements as evidence of a firm

19  and demonstrative intent to bring specific products to market is foreclosed by the

20  testimony of CCA's VP for R&D, whose job responsibilities include evaluation of new

21  opportunities through the launch of new products, that none of the products identified in

22  the ITU Applications have moved beyond a "very conceptual" stage involving no

23  specific plans. [*Id.* at 83:7-17; 95:22-96:4; 97:18-24; 100:5-11; 103:10-104:1; 106:1-25;

24  109:6-12; 110:8-13; 111:22-25; 112:10-15; 121:7-12;122:10-13; 123:3-8] CCA's failure

25  to produce firm and demonstrative objective evidence of intent confirms CCA lacked, at

26  the time CCA filed the ITU Applications, the requisite *bona fide* intent to use the RAW

27  GARDEN mark in commerce with the specific goods listed in the ITU Applications.

28  Summary judgment on BBK's Count 6 is warranted.

1

RESPECTFULLY SUBMITTED this 29th day of March, 2022.

2

3                                        */s/ Charles S. Price*
                                         Frank G. Long

4                                        J. Alex Grimsley

5                                        Charles S. Price
                                         Cindy A. Villanueva

6                                        **DICKINSON WRIGHT, PLLC**
                                         1850 N. Central Avenue, Suite 1400

7                                        Phoenix, Arizona 85004-4568

8                                        *Attorneys for Plaintiff/Counterdefendant*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of March, 2022, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants.

By: */s/ Veronica Newbanks*

4871-7102-9271  [58183-66]