**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP, | No. CV-19-05216-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Central Coast Agriculture Incorporated, et al., | |
| Defendants. | |

Before the Court are motions to seal filed by Plaintiff BBK Tobacco & Foods, LLP ("BBK") (Doc. 257) and Defendant Central Coast Agriculture Incorporated ("CCA") (Doc. 285), a Motion for Ruling on CCA's Over-Use of the "Highly Confidential" Designation (Doc. 255) filed by BBK, and a Motion for Sanctions (Doc. 278) filed by CCA. The Court rules as follows.[1]

**I.**

The parties previously stipulated to a Protective Order that permits the "most sensitive" information, including "highly sensitive and proprietary confidential information," to be designated "HIGHLY CONFIDENTIAL – FOR COUNSEL EYES ONLY." (Doc. 52 at 2–3.) Once information is so designated, it may be viewed only by counsel of the receiving party; independent experts; the Court and Court staff; and any author of co-author of the relevant document. (*Id.* at 4–5.)

---

[1] Both parties have fully briefed the issues and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

In its motion, BBK argues that CCA's use of the "Highly Confidential" designation has been "excessive and unjustified." (Doc. 255 at 2.) In particular, BBK objects to CCA's designating certain portions of several depositions as "Highly Confidential." (*Id.* at 5–10.) In accordance with the procedure set forth in the Court's Protective Order, BBK notified CCA of its objections and asked CCA to reconsider and withdraw the challenged designations. (*Id.* at 2.) CCA agreed to remove some of the designations but declined to remove others. (*Id.* at 2 & n.1.) BBK then filed the instant motion. In its response brief, CCA conceded that certain of the challenged deposition excerpts it had previously designated "Highly Confidential" were no longer entitled to that status, either because further review demonstrated the excerpts had been erroneously marked as "Highly Confidential" or because the information had been revealed publicly since the initial designation.[2] (Doc. 264 at 5–6.) Then, in its reply brief, BBK withdrew several of its objections. (*See, e.g.*, Doc. 275 at 5, 8.) Thus, the parties contest only the following "Highly Confidential" designations:

- **Al-Naser Deposition**: 71:24–74:16; 105:11–107:3; 107:18–110:16
- **Carmichael Deposition**: 65:6–66:23
- **Enoki Deposition**: 125:13–20; 126:21–24
- **DeFriel Deposition**: 112:16–113:7; 113:12–15; 135:13–137:4; 199:18–23; 200:16–21
- **Bobzin Deposition**: 56:18–63:9; 64:19–65:16; 65:23–69:1; 72:9–73:5; 80:12–85:11; 86:3–5; 103:25–104:1; 106:14–108:6; 108:18–24; 109:7–15; 111:22–112:15; 114:8–16; 115:5–8; 116:17–19; 116:25–117:3; 118:18–119:3; 120:10–24; 122:10–15
- **Clark Deposition**: 224:11–13; 224:17–23; 225:6–18; 226:19–227:18; 227:25–228:3; 230:14–19; 239:8–21; 240:19–241:9; 251:4–19; 276:9–17; 281:19–

---

[2] Indeed, even before BBK filed the instant motion, CCA informed BBK that it was removing some of its "Highly Confidential" designations. (Doc. 264 at 5–6.) Those designations were erroneously included in BBK's motion.

- 2 -

284:14; 286:2–289:1

(Docs. 255, 264, 275.) While BBK raises specific objections to each designation, the objections may generally be grouped into four basic categories: (1) the designated information is merely general, and is not specific enough to be designated as confidential; (2) the designated information has been publicly disclosed, in some instances because the information was filed publicly by CCA on the Court's docket; (3) the designated deposition excerpt contains no substantive testimony; and (4) deposition testimony about products CCA is not developing, or about strategies CCA is not pursuing, does not qualify as confidential. (*See* Doc. 275 at 5–9.)

In response, CCA argues the challenged designations are proper because the designated information relates to CCA's finances, product development strategy, or market research—all of which are categories of information the Protective Order permits to be marked "Highly Confidential." (*See* Doc. 264 at 8–10.) In addition, CCA contends the Court should deny BBK's motion in its entirety because the motion was untimely and was not filed, as it ought to have been, as a joint discovery motion. (*Id.* at 5–7.)

BBK's motion was timely. As BBK points out in its reply (*see* Doc. 275 at 3–4), the Court's Protective Order expressly provides that "any party may object to a designation of Materials as Confidential information" at "any stage of these proceedings." (Doc. 52 at 7.) BBK also followed the proper procedure for submitting its objections. Again, the Protective Order is clear on this point. The Order provides that the objecting party may file its objections at "any stage" by "mov[ing] the Court for a ruling on the objection." (*Id.* at 7–8.) "In the event any party files a ***motion*** challenging the designation or redaction of information, the [challenged] document shall be submitted to the Court, under seal, for an in-camera inspection." (*Id.* at 8.) BBK correctly followed this procedure in filing the instant motion. The Court will therefore proceed to address the substance of BBK's objections.

The Court's Protective Order provides that a party may designate information as "Highly Confidential" "only if, in the good faith belief of such party and its Counsel,

the information is among that considered to be most sensitive." (Doc. 52 at 2–3.) This "most sensitive" information may include "trade secrets . . . or other highly sensitive and proprietary confidential information, the value of which depends on protecting it from disclosure to other businesses or commercial entities." (*Id.* at 3.) It may also encompass "market research, product development plans, financial data, sales records or customer related data." (*Id.*) Information loses its "Highly Confidential" status if it is publicly disclosed by the producing party. (*Id.*)

The Court has carefully reviewed the challenged designations and deposition transcript excerpts with this standard in mind, and concludes that the five following "Highly Confidential" designations are improper:

- **Al-Naser Deposition**: 105:11–107:3
- **Bobzin Deposition**: 72:9–73:5; 80:12–83:18 (83:18 to 85:11, however, was properly designated "Highly Confidential"); 115:5–8; 116:17–19

The information contained in these excerpts does not qualify as either "Highly Confidential" or "Confidential" under the terms of the Protective Order. The information is either generic and non-proprietary (*see* Al-Naser Deposition at 105:11–107:3; Bobzin Deposition at 72:9–73:5, 80:12–83:18), or is so vague as to preclude any reasonable possibility that its disclosure might adversely affect CCA (*see* Bobzin Deposition at 115:5–8, 116:17–19).[3]

The other challenged portions of the transcripts, however, were properly designated as "Highly Confidential." CCA is a privately held company whose "market research, product development plans, financial data, sales records, [and] customer related data" are "highly sensitive and proprietary." (Doc. 52 at 2–3.) This is especially true given the intensely competitive and rapidly changing nature of the emerging cannabis market.

---

[3] The Court also declines to redesignate these excerpts as "Confidential" because CCA made no attempt in its brief to explain why the excerpts meet the definition of "Confidential" set forth in the Protective Order. But even if CCA had done so, the Court doubts whether it could have made such an argument persuasively given the nature of the information.

To effectively compete in such a market, CCA must be able to protect the information it reasonably perceives as proprietary or confidential. On the other hand, of course, CCA cannot interfere with BBK's ability to litigate and have meaningful discussions with counsel by over-designating disclosed information as "Highly Confidential." The Court believes that de-designating the above deposition excerpts, while retaining the remaining designations, strikes the appropriate balance between these competing objectives.

Three points informed the Court's decisions regarding the challenged designations. First, as CCA mentions in its response (Doc. 264 at 3 n.4), BBK's submitted excerpts, in several instances, were not sufficient for the Court to evaluate the validity of CCA's designations. In several cases, important context was omitted. BBK should, as a matter of best practices, have attached the entire transcript of each deposition. Second, statements or questions made by BBK's counsel at depositions are validly subject to designation by CCA if they contain confidential information, notwithstanding BBK's arguments to the contrary. To hold otherwise would permit BBK to avoid the operation of the Court's Protective Order simply by having its counsel ask about CCA's confidential information in depositions. Third, information about products CCA is not developing or strategies CCA is not pursuing, like information about products CCA is developing and strategies CCA is pursuing, can be confidential. BBK cannot indirectly obtain information about CCA's business plans by inquiring in depositions about the products CCA is *not* developing. In addition, information about products CCA has chosen not to develop may itself have independent value, as such information may shed light on CCA's proprietary market research.

For these reasons, the Court will grant Plaintiff's motion in part. The five deposition excerpts listed above will no longer be designated "Highly Confidential" or "Confidential."

## II.

CCA petitions the Court to sanction BBK and its counsel under Federal Rule of

Civil Procedure 11. The relevant facts are as follows. In April 2021, BBK discovered several websites displaying an image of BBK's RAW-branded cones in packaging bearing CCA's Raw Garden name and logo (the "Image").[4] (Doc. 283 at 4.) Later that same month, BBK filed notices on the Court's docket evincing its intent to serve subpoenas duces tecum on several nonparties who BBK thought were associated with the websites on which the Image was displayed. (*See* Docs. 137, 138, 139, 140.) Through the subpoenas, BBK sought to compel the nonparties to produce documents identifying purchases, sales, and shipments of "Raw Garden Premium joints." (*Id.*) The Image was attached to each subpoena. (*See, e.g.*, Doc. 137 at 9.) The nonparties did not respond. (Doc. 283 at 5.)

A few days after BBK filed its notices, CCA's counsel emailed BBK's counsel about the Image. The email read, in part:

> This is not a CCA product. Indeed, the pre-rolls themselves look like BBK cones that someone – not CCA – has placed in a Raw Garden box and photographed (or photoshopped). We are investigating who is behind this fraud on CCA and would like a representation from you that neither BBK nor your firm played any role in this. I am not making any accusation here, just asking for the representation so we can rule your firm and your client out as possibilities.

(Doc. 278-2 at 3.) In response, BBK's counsel stated that "[w]e have no information about the origin of these images, other than what is attached to the subpoenas." (*Id.* at 2.) Counsel did not discuss the Image further until, approximately six months later, BBK included the Image in its opposition to CCA's motion for summary judgment. (*See* Doc. 246 at 10.)

CCA contends the Court should sanction BBK and its counsel for "knowingly sponsoring – indeed, featuring – in its summary judgment opposition brief a fake photo of a non-existent or counterfeit Raw Garden pre-roll product." (Doc. 278 at 2.) In CCA's

---

[4] A few months earlier, in January and February 2021, two CCA executives, Khalid Al-Naser and Thomas Martin, testified under oath in depositions that CCA does not sell flower or pre-roll products and, if CCA did choose to do so in the future, it would not market such products under the Raw Garden brand. (*See* Docs. 278-3, 278-4.) CCA also indicated in its verified responses to BBK's interrogatories that it does not sell any pre-roll products. (*See* Doc. 230-10.)

- 6 -

view, BBK and its counsel made a "knowingly false factual representation that CCA sells Raw Garden pre-rolls." (*Id.* at 5.) BBK makes three arguments in response. First, the Image is not falsified evidence, but rather "a genuine image obtained from publicly available . . . websites." (Doc. 283 at 9–12.) Second, the Image was not used in BBK's opposition to show that CCA actually sold the depicted product, but rather to demonstrate that "CCA's Raw Garden and BBK's RAW products can be, and have been, used together." (*Id.* at 12.) Third, the evidence supports an inference that CCA sold the product depicted in the Image. (*Id.* at 13–17.)

Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). This codified requirement that a filing's factual allegations have evidentiary support requires counsel to conduct a "reasonable investigation" into such allegations. *See Estate of Blue v. Cty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997). The failure to do so may result in the imposition of appropriate sanctions. Fed. R. Civ. P. 11(c). Nevertheless, courts must exercise "extreme caution" when imposing the "extraordinary remedy" of Rule 11 sanctions. *Operating Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

The Court finds that Rule 11 sanctions are warranted in this case, because BBK stated allegations in its opposition brief that counsel must have known were false. BBK's arguments against sanctions are unavailing. First, while the Court agrees with BBK that there is no evidence BBK or its counsel fabricated or falsified evidence, that is not the sole basis for sanctions under Rule 11. Rather, as mentioned above, sanctions may be imposed where, as here, counsel fails to reasonably investigate factual allegations contained in a court filing. Second, BBK's contention that it did not use the Image to

show that CCA actually sold the depicted product belies reality. Immediately preceding the Image, BBK's opposition reads: "BBK first learned, in October 2018, that CCA was selling products using the Raw Garden name. Today, CCA distributes Raw Garden brand marijuana products to locations where the general public can purchase them along with products using BBK's Family of RAW Marks. The companies' products, both using a brand with the predominant word 'raw,' can be, and are, used together for some products, as shown below (Raw Garden product using RAW cones)." (Doc. 246 at 10.) This language clearly implies CCA sold the product depicted in the Image. Indeed, the language goes beyond implication, by expressly referring to the product depicted in the Image as a "Raw Garden product."

Further, as CCA notes in its reply, it is unclear why BBK would want to include the Image in its opposition if not to suggest the depicted product was in fact sold by CCA. (*See* Doc. 288 at 4.) An unauthenticated image depicting "nothing more than a photo-shopped 'idea' for a combined product" (Doc. 283 at 13) is both irrelevant and inappropriate for use in a brief resisting summary judgment. *See* Fed. R. Civ. P. 56; *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Authentication is a 'condition precedent to admissibility.'"). That BBK argues otherwise, rather than acknowledging its error and withdrawing or correcting its opposition brief, counsels in favor of ordering sanctions. *See* Fed. R. Civ. P. 11 advisory committee's notes to 1993 amends. (noting that "a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation"); *Kajander v. City of Phoenix*, No. 2:09-cv-02164-JAT, 2010 WL 2573003, at *6 (D. Ariz. June 22, 2010) ("Sanctions are indeed a harsh penalty . . . . However, Plaintiff had the opportunity to voluntarily withdraw her Complaint after receiving proper notice of Defendant's Motion. Plaintiff continues to expend the Court's precious resources by reasserting meritless arguments.").

Finally, the evidence did not support an inference that CCA sold the product depicted in the Image. That CCA previously sold pre-roll products on a limited basis does not indicate CCA currently sells such products, much less that CCA does so under the Raw Garden brand. Nor did CCA's interrogatory responses suggest it sold pre-roll products. BBK makes much of the color of a single line in a 54,836-entry spreadsheet. (Doc. 283 at 15–16.) However, CCA only "highlighted in red" those "product[s] that CCA was able to determine *at this time* were not sold under a Raw Garden brand." (Doc. 284-1 at 29 (emphasis added).) Further, even if CCA's failure to highlight the pre-roll sales row did constitute an affirmative representation that its pre-roll products were sold under the Raw Garden brand, it was still unreasonable for BBK to represent that CCA sold the imaged product, given that CCA specifically and explicitly informed BBK the Image was fraudulent and not a real Raw Garden product.

For all these reasons, the Court finds sanctions warranted under Rule 11. Sanctions will, however, be ordered only against BBK's counsel. Nothing in the record suggests wrongful conduct on the part of BBK. Rather, the sanctionable conduct exclusively concerns counsel's failure to conduct a reasonable factual investigation and ensure the factual allegations in the challenged filing had evidentiary support. *See Kajander*, 2010 WL 2573003, at *5.

Having determined that sanctions are warranted, the Court must decide what sanctions are appropriate. While sanctions may be either monetary or nonmonetary, in either case they "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 175 (C.D. Cal. 2002) ("Rule 11 is not designed as a fee-shifting provision or to compensate the opposing party. Its primary purpose is to deter sanctionable conduct."). Monetary sanctions may be imposed only "on motion and [when] warranted for effective deterrence." Fed. R. Civ. P. 11(c)(4). CCA moves for attorneys' fees and costs in the instant motion (*see* Doc. 278 at 9), and the Court finds that the award of such fees is appropriately calculated to deter BBK's

counsel from engaging in future misconduct. *See Kajander*, 2010 WL 2573003, at *7 ("The district court has wide discretion in awarding attorney's fees under Rule 11." (quoting *United States v. 87 Skyline Terrace*, 26 F.3d 923, 927 (9th Cir.1994))). Thus, the Court will award CCA its reasonable attorneys' fees and costs incurred as a result of BBK's counsel's misconduct. *See* Fed. R. Civ. P. 11(c)(4) ("[I]f imposed on motion and warranted for effective deterrence, [the Court may] direct[] payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.").

### III.

The public has a right to inspect and copy public judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 567 (1978). Although that right is not absolute, there is a "strong presumption in favor of access to court records." *Ctr. for Auto Safety v. Chrysler Grp.*, LLC, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *Foltz v. State Farm Mut. Aut. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). The party seeking to seal a judicial record bears the burden of overcoming that presumption by either showing "compelling reasons" if the record is a dispositive pleading or "good cause" if the record is a non-dispositive pleading. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006); *see also Ctr. for Auto Safety*, 809 F.3d at 1096–97.

In BBK's pending motion to seal, BBK seeks to file under seal the transcript excerpts discussed in connection with BBK's motion regarding CCA's over-use of the "Highly Confidential" designation. (Doc. 257.) BBK's motion appears to be unopposed. (Doc. 264 at 6.) As discussed above, the Court's Protective Order provides that, "in the event any party files a motion challenging the designation or reduction of information, the document shall be submitted to the Court, under seal, for an in-camera inspection." (Doc. 52 at 7.) Thus, good cause supports BBK's unopposed motion to seal and the motion will be granted.

In CCA's pending motion to seal, CCA seeks to file "a one-page document that contains a portion of CCA's confidential sales information for the year 2016 and 2017." (Doc. 285 at 2.) CCA's motion, like BBK's is unopposed. (*See* Doc. 290.) As the Court

has discussed in prior orders (*see* Docs. 186, 194, 217, 259), good cause exists to seal the parties' proprietary and non-public financial data. Thus, CCA's motion to seal (Doc. 285) will be granted.

### IV.

Accordingly,

**IT IS ORDERED granting in part** BBK's Motion for Ruling on CCA's Over-Use of the "Highly Confidential" Designation (Doc. 255), as described herein.

**IT IS FURTHER ORDERED granting** CCA's Motion for Sanctions (Doc. 278). CCA will be awarded reasonable attorneys' fees and costs arising directly out of BBK's counsel's misconduct. Such fees and costs shall be imposed only against BBK's counsel. Within ten (10) days of the date of this Order, CCA shall file a motion for attorneys' fees that complies with the Local Rules.

**IT IS FURTHER ORDERED granting** BBK's Motion to Seal (Doc. 257).

**IT IS FURTHER ORDERED granting** CCA's Motion to Seal (Doc. 285).

**IT IS FINALLY ORDERED** directing the Clerk of Court to file Exhibits 1–6 to BBK's Motion for Ruling on CCA's Over-Use of the "Highly Confidential" Designation (lodged at Doc. 256) and Exhibit 3 to Exhibit H of BBK's Opposition to Defendant's Motion for Sanctions (lodged at Doc. 284) under seal.

Dated this 4th day of April, 2022.

Michael T. Liburdi
United States District Judge