WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP,<br><br>        Plaintiff,<br><br>v.<br><br>Central Coast Agriculture Incorporated,<br><br>        Defendant. | No. CV-19-05216-PHX-MTL<br><br>**ORDER**<br><br>**NOT FOR PUBLICATION** |

Before the Court are Defendant Central Coast Agriculture Inc.'s ("CCA") motion to exclude testimony of Francis X. Burns (Doc. 489) and Plaintiff BBK Tobacco & Foods LLP's ("BBK") motion to limit the opinions and testimony of Dr. David Blackburn (Doc. 483). The Court rules as follows.

**I.     LEGAL STANDARD**

A party offering expert testimony must establish that the testimony satisfies Rule 702 of the Federal Rules of Evidence.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

>  (c) the testimony is the product of reliable principles and methods; and
>
>  (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

As gatekeepers, trial judges make a preliminary assessment about the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993). "[T]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. To meet the requirements of Rule 702, an expert must be qualified, his opinion must be based on sufficient facts or data and be the product of reliable principles and methods, and his testimony must fit the case such that his opinion is relevant. *Id.* at 588-95.

The Rule 702 inquiry is "flexible." *Id.* at 594. The focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. Because the requirements of Rule 702 are conditions for determining whether expert testimony is admissible, a party offering expert testimony must show by a preponderance of the evidence that the expert's testimony satisfies Rule 702. Fed. R. Evid. 702. Previously, "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. Yet, parties may still raise matters of weight rather than admissibility under Rule 104(a) if the sufficiency of the expert's basis for the opinion is admissible. *Id.*

**II.   DISCUSSION**

BBK seeks disgorgement of CCA's profits if CCA is found to have infringed on BBK's mark. (Doc. 1 at 17, ¶ 11.) Each disputed expert, Mr. Burns and Dr. Blackburn, opine about the equitable theory of disgorgement of profits.

Under the Lanham Act, an accused infringer's profits may be awarded as damages. 15 U.S.C. § 1117(a). The Lanham Act requires when "assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.* The parties disclosed these experts to opine on this. Each expert opinion, however, must first satisfy Rule 702 and *Daubert* standards. As such, the Court addresses each motion to exclude in turn.

### A.    Mr. Burns

CCA does not move against Mr. Burns' opinion as it relates to CCA's revenues. (Doc. 489 at 15.) Instead, CCA argues that (1) Mr. Burns' profit disgorgement theory is unreliable[1] and (2) his reasonable royalty opinion should be excluded for improper disclosure and because it is unreliable.

#### 1.    Profit Disgorgement

CCA claims that Mr. Burns' disgorgement opinion is unreliable because he inappropriately calculates profits by multiplying revenues by the "contribution margin," which includes only variable costs.[2] (Doc. 489 at 16.) BBK responds that Mr. Burns' opinion provides an analytical explanation of the CCA data to support his methodology for the calculation. (Doc. 495 at 13–14.) BBK further explains that CCA provided the contribution margin and is to blame if it only includes variable costs. (Doc. 495 at 12–13.)

Mr. Burns' report explains the information and data he reviewed, including the "CCA Financial Statements" that "contain[ed] CCA's annual balance sheet and profit and loss statement for calendar years 2016 through 2020" and the "contribution margin" that "CCA identified the variable costs associated with its cannabis-related Raw Garden Product sales." (Doc. 494-1 at 9–10.) His report explains the computation for CCA revenue and variable profit from Raw Garden products. (*Id.* at 11–13.) Related to variable costs,

---

[1] CCA also argues that the burden is on it, not BBK, to show profit disgorgement under 15 U.S.C. § 1117(a), and as such, Mr. Burns should not opine on this issue. Yet, CCA does not point to any authority preventing BBK from opining on this issue if the opinion satisfies Rule 702. As such, the Court focuses the analysis on whether Mr. Burns meets Rule 702 standards.

[2] The contribution margin also known as the "Contribution Margin Analysis" is a data field CCA identified as the variable costs associated with its cannabis-related Raw Garden Product sales. (Doc. 517-1 at 134.)

1  Mr. Burns explained that the analysis used "CCA's reported cannabis-related revenues and
2  cannabis-related direct costs such as labor and materials, allow[ing] for the determination
3  of an annual contribution margin (i.e., variable profit) for CCA cannabis products." (*Id.* at
4  12.)
5        CCA argues that because Mr. Burns testified to not using CCA's consolidated
6  income statement that the variable profit calculation is inaccurate. (Doc. 489 at 17.) Yet,
7  Mr. Burns testified that he reviewed that statement and that he did not consider net income
8  from there "[b]ecause there's no way…to know what those expenses are." (Doc. 494-5 at
9  27.) Mr. Burns also focused his data on Raw Garden products only and identified why he
10 excluded some statements because he could not confirm that the data was for Raw Garden
11 products. (*See* Doc. 494-1 at 14–15.) CCA also takes issue with Mr. Burns not using the
12 P&L statement. (Doc. 489 at 17–18.) Mr. Burns explained in his report that he was
13 calculating *variable* profits, meaning that the additional categories of costs flagged by CCA
14 in its brief may not be necessary. (Doc. 494-1 at 11.)
15       The Court finds that the methodology employed by Mr. Burns unreliable because
16 his testimony and report show that he did not "more likely than not" have "a sufficient
17 basis to support an opinion." *See* Fed. R. Evid. 702 advisory committee's note to 2023
18 amendment. As discussed, BBK does not have the burden to prove expenses at trial. BBK
19 instead uses Mr. Burns' expertise to rebut expenses that CCA may present at trial. Even
20 though Mr. Burns does explain the data and calculations used, he only presents variable
21 costs. Mr. Burns admits in his report that he does not have complete expense data for the
22 Raw Garden products and explained in his report that "CCA may provide additional
23 information directly or through expert testimony regarding the calculation of variable profit
24 for the Raw Garden Products. In the event such additional information is provided, I expect
25 to have the opportunity to review and rebut any expense analysis offered by CCA in this
26 matter." (Doc. 494-1 at 11.) Because Mr. Burns' calculation does not include all Raw
27 Garden brand expenses, the Court finds the methodology unreliable.
28       The Court therefore grants CCA's motion (Doc. 489) insofar as precluding Mr.

Burns from opining about CCA's expenses.

### 2. Reasonable Royalty

CCA argues that pursuant to the MIDP Order, BBK was required to disclose its reasonable royalty damages theory and to disclose the license agreement Mr. Burns relied on for his reasonable royalty calculation. (Doc. 489 at 18 citing Doc. 5 at 5.) As a result of this nondisclosure, CCA argues that the Court's Scheduling Order provides that "parties that fail to timely disclose relevant information *will be precluded from using it* in the case and may be subject to other sanctions." (*Id.* citing Doc. 32 at 2 n.1.) BBK argues that it put CCA on notice of its intent to seek disgorgement of ill-gotten gains under an unjust enrichment theory, so CCA should not be surprised by the reasonable royalty analysis. (Doc. 495 at 15.) BBK does not dispute that it did not disclose a reasonable royalty damages theory, nor does it dispute that is did not disclose the license agreement. (*See* Doc. 495.)

The MIPD Order required BBK to "[p]rovide a computation of each category of damages claimed by [BBK], and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered." (Doc. 5 at 7, ¶ 5.) BBK's disclosures did not include a reasonable royalty damages computation. (*See* Doc. 489-11 at 149–54.)

Fact discovery closed on May 14, 2021. (Doc. 31 at 2.) CCA received Mr. Burns' expert report on August 13, 2021. (Doc. 489 at 19.) In the report, Mr. Burns opined on a reasonable royalty damages calculation and concluded that a 15% royalty rate would be reasonable based on the license agreement between BBK and Gateway. (Doc. 494-1 at 17–21.) This license agreement does not bear a Bates number, presumptively indicating it was not produced by BBK during discovery.

The Court finds that BBK's non-disclosure was neither harmless nor substantially justified. *See* Fed. R. Civ. P. 37(c)(1); *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1191–92 (9th Cir. 2022) (holding that a district court abuses its discretion when imposing Rule 37(c)(1), Fed. R. Civ. P., sanctions without first considering whether the non-disclosure is harmless or substantially justified). Here, BBK did disclose its intention to seek

disgorgement of ill-gotten gains under a theory of unjust enrichment. (Doc. 489-11 at 151–52.) BBK claims that the "reasonably royalty" is a sub-theory of profit disgorgement. (Doc. 495 at 15–16.) Yet, reasonably royalty awards are atypical in trademark cases.

In *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208–09 (3d Cir. 1999), the court held that the district court erred by awarding royalties for both past and future sales when there was not a finding of bad faith. The court found that a "royalty is a measure of damages for past infringement, often used in patent cases and in the context of trade secrets, but its use in trademark has been atypical." *Id.* at 208. Rather, the court found that royalties were awarded for past trademark infringement only when it was for continued use of the mark contemplated by the parties based on a licensing agreement. *Id.* at 208–09.

Furthermore, "the valuation of a royalty payment is very difficult" when "a negotiation for [such] royalt[ies] never took place." *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1351 (7th Cir. 1994). The analysis requires a court to "review the probable happenings at a hypothetical bargaining table between parties that might well have never chosen to bargain with each other on a voluntary basis." *Id.*

Here, BBK and CCA never contemplated a licensing agreement. Had CCA known about a reasonable royalty damages calculation before the close of discovery, it may have found different experts or further researched reasonable royalties independently. As such, the Court finds that CCA is prejudiced by this non-disclosure. Therefore, Mr. Burns' reasonable royalty analysis (Doc. 494-1 at 17–21, ¶¶ 39–49) and any related testimony must be stricken under Rule 37(c)(1).

The Court therefore grants CCA's motion (Doc. 489) insofar as precluding Mr. Burns from opining about a reasonable royalty calculation.

**B.     Dr. Blackburn**

BBK challenges the rebuttal expert report of Dr. Blackburn, a damages expert retained by CCA. (Doc. 483.) BBK argues that Dr. Blackburn's methodology is unreliable because it does not (1) answer the relevant expense question and (2) use a reliable

methodology. (*Id.*)

### 1. Relevance

BBK argues that Dr. Blackburn's use of a "but for" methodology is irrelevant to answering which expenses may be deducted from CCA's gross revenues. (Doc. 483 at 6–7.)

Dr. Blackburn's methodology considers that "'but-for' the alleged infringement, what revenue would CCA have earned and what costs would it have incurred in making those revenues." (Doc. 517-1 at 13.)

The testimony of an expert must be relevant. *Daubert*, 509 U.S. at 589. Here, Dr. Blackburn's use of a "but for" analysis for an infringement disgorgement calculation is one of the ways experts may calculate disgorgement. *See Kamar Int'l, Inc. v. Russ Berrie & Co.*, 752 F.2d 1326, 1332 (9th Cir. 1984) ("The real question, as we see it, is whether any of the overhead expenses were *caused by* the production or sale of the infringing goods, not the proportionate amount of sales of the goods in relation to total sales." (emphasis added)); *see also* Roman L. Weil et al., *Litigation Services Handbook: The Role of the Financial Expert Expert* ch. 19, at 30 (6th ed. 2017) ("Most cases award the infringer's profits to make the infringer forgo profit it would not have earned *but for* its wrongful acts." (emphasis added)). Therefore, the Court finds Dr. Blackburn's methodology relevant.

### 2. Reliability

BBK argues that Dr. Blackburn's "but for" methodology is unreliable because it inappropriately allocates CCA's expenses and profits. (Doc. 483 at 8–9.)

#### i. Expenses

BBK argues that Dr. Blackburn's "but for" methodology inappropriately led him to deduct even more expenses than those involved in generating the Raw Garden branded products. (Doc. 483 at 8.) CCA argues that Dr. Blackburn relied on the "but for" methodology and the data presented to arrive at his conclusions that addition cost should be deducted from the revenues. (Doc. 497 at 12–14.)

In his report, Dr. Blackburn explained that he understood the contribution margin

to include some, not all, of the costs of goods sold ("COGS"). (Doc. 517-1 at 16.) He also explained that he learned other statements, including the consolidated income statement identify other costs that were not included in the contribution margin. (*Id.* at 17.) Dr. Blackburn further explained that he found that given the magnitude of the revenues, the variable costs from the contribution margin were insufficient and that these other costs categories, including *all* COGS, *all* advertising and sales, *all* general administrative expenses, *all* research and development, and some other costs, should be considered. (*Id.* at 17, 19.) Dr. Blackburn created Attachment 4 deducting these various costs. (*Id.* at 60.)

The Court finds that Dr. Blackburn's methodology unreliable because his testimony and report show that he did not "more likely than not" have "a sufficient basis to support an opinion." *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendment. CCA accepts Mr. Burns' revenue calculation, which finds that approximately 97% of CCA's revenues can be attributed to the Raw Garden brand. (Doc. 489 at 15; Doc. 517-1 at 16.) Dr. Blackburn uses Mr. Burns' revenue calculations in his analysis. (Doc. 517-1 at 16–19.) Though Mr. Burns finds that 97% of CCA's revenues are attributable to the Raw Garden brand, Dr. Blackburn recommends deducting every expense accrued by CCA, not only those attributable from Raw Garden products. (*See* Doc. 517-1 at 19.) For example, Dr. Blackburn testified that he deducted 2020 research and development expenses for CCA products never sold from revenues from earlier years. (Doc. 483-2 at 10.) The Court finds this methodology unreliable because it includes expenses that are not be attributable to the Raw Garden brand.

The Court therefore grants BBK's motion (Doc. 483) insofar as precluding Dr. Blackburn from opining about his "but for" methodology to explain CCA's expenses.

### ii. Profits

BBK takes issue with Dr. Blackburn using consumer confusion data to apportion CCA's profits related to the alleged infringing Raw Garden products. (Doc. 483 at 12–13.) CCA argues that Dr. Blackburn properly uses this methodology to assess which CCA revenues were not attributable to consume confusion. (Doc. 497 at 14–15.)

Dr. Blackburn used BBK's own surveys as a proxy for the percentage of consumers who purchased Raw Garden products without the possibility of any confusion with BBK's RAW brand. (Doc. 517-1 at 20.) Dr. Blackburn explains that "the flip side of [BBK's proposed actual confusion percentage of 12.4 percent] is that at least 87.6 percent of CCA's customers and potential customers were not confused by the allegedly infringing trademark." *Id.* (emphasis omitted).

BBK relies on *adidas America, Inc. v. Skechers USA, Inc.*, No. 3:15-cv-01741-HZ, 2017 WL 3319190, *28, (D. Or. Aug. 3, 2017), for the proposition that defendant cannot use likelihood of confusion surveys for attributable profits. (Doc. 483 at 12–13.) In *adidas*, however, the Court determined at the summary judgment stage whether the defendant met its burden to show costs. *Id.* at *24-25. The *adidas* court found that the defendant did not meet is burden to show profit disgorgement with likelihood of confusion surveys alone. *Id.* at *20.

CCA identifies cases where courts have allowed parties to use confusion surveys to distinguish profits. *See, e.g.*, *Stone Creek Inc. v. Omnia Italian Design Inc.*, No. CV-13-00688-PHX-DLR, 2018 WL 1784689, at *3 (D. Ariz. Apr. 12, 2018) (allowing the use of a brand awareness survey to demonstrate "the infringing products were purchased for reasons unrelated to consumer perception of an affiliation between Stone Creek and the infringing products"); *Plasticolor Molded Prod. v. Ford Motor Co.*, 713 F. Supp. 1329, 1350 (C.D. Cal. 1989) ("We need simply determine an appropriate overall percentage of confusion and apply it to Plasticolor's total profits in order to arrive at a figure representing profits attributable to confusion."), *vacated on other grounds*, 767 F. Supp. 1036 (C.D. Cal. 1991).

Whether CCA meets its burden to establish costs is not the question before the Court. Instead, the Court must determine whether Dr. Blackburn meets the requirements under Rule 702.

The Court finds Dr. Blackburn's consumer confusion appropriation a reliable methodology because his testimony and report show that he "more likely than not" had "a

sufficient basis to support an opinion." *See* Fed. R. Evid. 702 advisory committee's note to 2023 amendment. Here, Dr. Blackburn uses a similar methodology as those identified in the cases cited by CCA. Specifically, he uses the percentage of those not confused by the alleged infringement to find not all profits can be attributed to the infringement. (Doc. 517-1 at 21.)

### III.   CONCLUSION

Accordingly,

**IT IS ORDERED granting** CCA's motion to exclude Francis X. Burns (Doc. 489), as described herein.

**IT IS FURTHER ORDERED granting in part and denying in part** BBK's motion to exclude Dr. David Blackburn (Doc. 483), as described herein.

**IT IS FINALLY ORDERED denying** BBK's motion to supplement and correct the record (Doc. 542) as moot. The Court resolved the motions (Docs. 489, 483) on the written briefs and the record without CCA's presumed new argument raised at oral argument (Doc. 542 at 2).

Dated this 31st day of January, 2025.

Michael T. Liburdi
United States District Judge