**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP,<br><br>Plaintiff,<br><br>v.<br><br>Central Coast Agriculture Incorporated, et al.,<br><br>Defendants. | No. CV-19-05216-PHX-MTL<br><br>**ORDER** |

This action arises out of a trademark dispute between Plaintiff BBK Tobacco & Foods, LLP ("BBK") and Defendant Central Coast Agriculture Incorporated ("CCA"). BBK manufactures, distributes, and sells smoking-related products bearing its trademarked "RAW" branding.[1] (Doc. 443 at 1.) CCA markets and sells cannabis products under the "Raw Garden" brand and exclusively through California-licensed dispensaries and mobile delivery services. (*Id.* at 2.) BBK claims CCA infringed its RAW trademarks by producing, using, advertising, distributing, selling, and offering to sell its products under the Raw Garden brand. (*Id.* at 3.)

The Court reopened summary judgment after this matter was remanded from the United States Court of Appeals for the Ninth Circuit. (Docs. 466, 470.) Pending before the Court are BBK's motion for partial-summary judgment (Doc. 478) and CCA's motion for summary judgment (Doc. 485). The motions are fully briefed, and the Court held oral argument on February 4, 2025.

---

[1] BBK's marks include: "RAW," "RAW ORGANIC," "RAW ARTESANO," "SUPERNATURAL RAW," "RAW CONNOISSEUR," and "RAW BLACK."

Many of the facts have been reported at length in prior Orders. (*See* Docs. 151, 443.) The Court will therefore discuss relevant facts only as necessary.

## I. LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding that the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

When the "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal quotations omitted). The summary judgment standard operates differently depending on whether the moving or non-moving party has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the movant bears the burden of proof on a claim at trial, the movant "must establish beyond controversy every essential element" of the claim based on the undisputed material facts to be entitled to summary judgment. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation and internal quotations omitted). If the movant fails to make this showing, summary judgment is inappropriate, even if the non-moving party has not introduced contradictory evidence in response. When, on the other hand, the non-movant bears the burden of proof on a claim at trial, the movant may prevail either by citing evidence negating an essential element of the non-movant's claim or by showing that the non-movant's proffered evidence is insufficient to establish an

essential element of the non-movant's claim. *See Celotex*, 477 U.S. at 322-23; *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

## II. ANALYSIS

### A. CCA's Laches and Statute of Limitations Defenses

The parties both move for summary judgment on CCA's laches and statute of limitations defenses. (Doc. 478 at 7-20; Doc. 485 at 11-17.)

#### 1. Laches

BBK argues that CCA's laches affirmative defense fails because CCA cannot prove that BBK's delay was unreasonable and prejudicial.[2] (Doc. 487 at 7-18.) CCA argues that BBK's delay in filing the lawsuit creates a presumption of laches that BBK cannot overcome. (Doc. 485 at 11-17.)

"The affirmative defense of laches is an equitable time limitation on a party's right to bring suit, which is derived from the maxim that those who sleep on their rights, lose them." *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018) (internal quotations omitted). To establish a laches defense, CCA must "prove both an unreasonable delay by the plaintiff and prejudice to itself." *See id.*

In trademark disputes, laches bars the claim when "the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time." *Id.* The Ninth Circuit makes laches determinations with reference to the statute of limitations period for the claim at issue. *Id.* This means that when a plaintiff files within the period, a strong presumption against laches exists, whereas if a plaintiff files outside that period the presumption is reversed. *Id.*

Because the Lanham Act does not contain a statute of limitations, the Ninth Circuit presumes that Congress intended to use "the limitations period from the most closely analogous action under state law." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d

---

[2] BBK also argues that the federal illegality of CCA's business precludes equitable relief. (Doc. 478 at 6-7.) As discussed in a prior Order, "BBK initiated this action and forced CCA to defend itself. It would be manifestly unjust to preclude CCA from challenging the validity of the marks upon which BBK's claims are based." (Doc. 443 at 48-49.) The Court finds that same reasoning applies here.

829, 836 (9th Cir. 2002). The parties here agree that the most analogous Arizona statute of limitations is three-years for fraud. (Doc. 485 at 11-12 (*citing Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1140 (9th Cir. 2010)); Doc.478 at 8); *see also* A.R.S. § 12-543.

### a. Length of Delay

The parties disagree as to when the laches clock started. CCA argues that the clock started in July 2016, when the parties interacted during the 2016 Chalice Cup festival. (Doc. 485 at 12.) BBK argues that it could not have known that CCA's Raw Garden brand was infringing before September 18, 2016 (three-years before the lawsuit was filed). (Doc. 478 at 9.) Specifically, BBK argues that CCA was in the cannabis "services" industry rather than the cannabis "products" industry, meaning that the likelihood of confusion did not exist prior to 2018 when CCA started offering products. (Doc. 478 at 9-10.)

To measure the length of the delay, courts "start the clock when the plaintiff knew (or should have known) of the allegedly infringing conduct," and "stop it when the lawsuit in which the defendant seeks to invoke the laches defenses is initiated." *Eat Right Foods Ltd.*, 880 F.3d at 1116 (internal quotations omitted).

CCA's predecessors were formed in 2008 by Thomas Martin and Khalid Al-Naser when they began growing and trading cannabis for use under California's Compassionate Use Act. (Doc. 443 at 2.) BBK and CCA (or its predecessors) have attended many of the same trade shows and competitions, including the 2016 Chalice Cup festival, a cannabis industry gathering held annually in southern California. (*Id.* at 2-3.)

At the 2016 Chalice Cup, a BBK brand ambassador and a BBK volunteer visited CCA's Raw Garden booth and spoke with CCA employees. (Doc. 485-14 at 17-19; Doc. 485-20 at 7.) BBK's brand ambassador, Michael D'Aquinsto, "saw a 'Raw Garden' booth that displayed cartridges, pre-rolls[,] and apparel," and he also traded some of BBK's "RAW papers for two hats with the 'Raw Garden' name on them, gave one hat to Rodney Peters and took the other one home." (Doc. 485-16 at 26.) D'Aquisto gave his RAW business cards to CCA representatives and discussed potentially working together. (Doc.

485-14 at 20.)

Afterwards, on July 16, 2016, BBK's marketing purchasing manager, Dale Mercer, sent an email with a screenshot of CCA's @raw_garden Instagram page to BBK's general counsel, Brendan Mahoney. (Doc. 486-6; Doc. 485-18 at 9.) The email contains only the screenshot—no accompanying text—and the subject line has been redacted due to attorney-client privilege. (Doc. 486-6; Doc. 485-18 at 14.) Nonetheless, deposition testimony from Mr. Mercer explains that "I saw that post based on my investigation and my normal process is if I think it is something that my general counsel needs to see, I am going to do it immediately so I don't forget." (Doc. 485-18 at 14.)

Mr. Mercer also testified that he followed @dr_budz, the Instagram page of Rodney Peters, who was the BBK volunteer at the 2016 Chalice Cup and later became a BBK brand ambassador. (Doc. 485-18 at 15; Doc. 502-6 at 3.) The @dr_budz page also follows @raw_garden. (Doc. 486-6; Doc. 485-18 at 15.) Also on July 16, 2016, @dr_budz posted a photo of RAW rolling papers, cannabis, and a hat with the Raw Garden logo. (Doc. 487-15.) The post is captioned "Shout out to @raw_garden for the #Slymer to roll the #rawlife247 way. Got the hat too. They are an all organic gardening for the patients. Glad we could talk at @chalicefestival using my Limited Edition . . . ." (*Id.*)

Here, the undisputed material facts show that BBK should have known about the allegedly infringing conduct by July 16, 2016. Though the initial interactions between BBK and CCA were between marketing representatives and not executives of the company, BBK's executives admit to knowing about CCA's Raw Garden brand. Most importantly, Mr. Mercer felt compelled to notify Mr. Mahoney of the Raw Garden brand after the interactions from the Chalice Cup. This indicates some sort of concern.

BBK claims that CCA did not break out into a related market until 2018, so it had no reason to be concerned about its Raw Garden brand until then. The Court finds this argument unpersuasive. The images from social media show that BBK staff found the products complementary in 2016. Furthermore, in 2014, CCA posted images of RAW rolling papers on social media in conjunction with Raw Garden cannabis (Docs. 496-15,

- 5 -

496-16); *see, e.g.*, *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 990-91 (9th Cir. 2009) (concluding that, even though only one party initially offered DSL, both companies offered very similar services (internet, e-mail, web hosting) within the same geographic area with similar names so that defendant should have reasonably known of the alleged infringing conduct).

These undisputed facts show that BBK executives knew of the Raw Garden brand, found it significant, and as such, should have known of allegedly infringing conduct on July 16, 2016.

### b. Overcoming Laches Presumption

Because BBK filed the lawsuit on September 18, 2019, more than three years after July 16, 2016, the presumption of laches applies. *See Eat Right Foods Ltd.*, 880 F.3d at 1115. BBK can overcome this presumption if it "can show that its delay in suing was nonetheless reasonable." *See id.* at 1117; *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th Cir. 2014).

Courts use the following factors from *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983), to determine whether a plaintiff's delay in bring the case was unreasonable and barred by laches:

> 1. strength and value of trademark rights asserted;
> 
> 2. plaintiff's diligence in enforcing mark;
> 
> 3. harm to senior user if relief denied;
> 
> 4. good faith ignorance by junior user;
> 
> 5. competition between senior and junior users; and
> 
> 6. extent of harm suffered by junior user because of senior user's delay.

*La Quinta*, 762 F.3d at 878; *Internet Specialties*, 559 F.3d at 991.

BBK argues that the Ninth Circuit's mandate impacts analysis for the strength and value of the trademark rights (factor 1) and harm to senior user (factor 3). The Court previously found the RAW mark is "likely descriptive and at most suggestive." (Doc. 443

at 34.) As for the harm to the senior user, this factor "turns largely on the court's analysis of the likelihood of confusion." *Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1193 (N.D. Cal. 2015). The Court previously found no likelihood of confusion between the RAW mark and Raw Garden. (Doc. 443 at 25, 44.) The Ninth Circuit, however, found that BBK raised material issues of fact regarding the strength of the marks and likelihood of confusion under the *Sleekcraft* factors. (Doc. 466-1 at 3.) Regardless, even assuming these factors weigh in favor of unreasonable delay, the undisputed material facts show that the remaining *E-System* factors weight in favor of BBK—meaning, the delay was reasonable.

The Court finds BBK was diligent in enforcing its RAW mark (factor 2). The delay in filing the lawsuit outside the statute of limitations is less than three-months. Also, the undisputed facts show that BBK tried to defend its mark within the three-years after July 16, 2016.

On April 17, 2017, BBK received a trademark watch notice indicating that CCA filed a U.S. Patent and Trademark Office ("USPTO") application with its intent to use the "Raw Garden" mark. (Doc. 229-2 at 8 ¶ 28, 166-67.) On April 25, 2017, BBK filed a letter of protest for CCA's application claiming a notification of prior registrations and a likelihood of confusion with BBK's RAW mark. (Doc. 229-2 at 175-77.) The USPTO approved CCA's application on December 27, 2017, and published the CCA application for opposition on January 16, 2018. (Doc. 229-2 at 166-67.) That same day, BBK filed with the Trademark Trial and Appeal Board a request for a 90-day extension to oppose the Raw Garden application. (*Id.*; *id.* at 179.) The parties then engaged in settlement negotiations from May 31, 2018, to December 20, 2018.[3] (Doc. 229-2 at 9 ¶ 35; Doc. 418-1.) This short delay along with the parties' settlement negotiation alone can be enough to overcome the laches presumption. *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (holding district court did not abuse its discretion after

---

[3] CCA does not dispute that settlement discussions occurred during this timeline. (*See* Doc. 502 at 13-14.) CCA, however, objects to the summary exhibit of settlement communications (Doc. 418-1) as insufficiently voluminous, inadmissible hearsay and lacking proper foundational documentation. (Doc. 502 at 14 n.7.) The Court, however, does not use this exhibit for the truth of the matter asserted (i.e., the content of the settlement negotiations), but rather, to show that settlement discussions occurred during 2018.

finding a two-year delay reasonable, barring laches, because the parties were actively engaged in settlement negotiations); *Eat Right Foods*, 880 F.3d at 1118-19 (remanding laches claim back to the district court after finding a material disputed fact as to whether the plaintiff's delay was reasonable if the parties were actively engaged in settlement negations).

For similar reasons, the Court finds that CCA did not suffer harm because of BBK's short delay of three months (factor 6). CCA claims that it suffers evidentiary prejudice because of the delay in filing the lawsuit. Allegedly, because of the delay, various witnesses (including BBK witnesses) do not remember the facts from the past. (Doc. 485 at 16.) The Court finds this unpersuasive. If BBK filed the lawsuit three months earlier, within the three-year statute of limitations, the laches presumption would fail, and the parties would likely still experience the same minimal degree of memory degradation. CCA also claims that it experiences expectation-based prejudice because it thought it had a cordial relationship with BBK—that CCA would not have invested in the Raw Garden brand had it known BBK opposed it. (*Id.*) Yet, the undisputed facts show that BBK opposed the use of the Raw Garden mark as early as April 27, 2017, when it filed its letter with the USPTO.

The Court also finds the factors of good faith ignorance by CCA (factor 4) and competition between BBK and CCA (factor 5) weigh in favor of BBK. CCA claims that no evidence exists that CCA "sought to free-ride on [BBK's] good will or otherwise take unfair advantage of the similarity between the two companies' marks." (Doc. 485 at 15 quoting *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1028 (9th Cir. 2018).) *See also Fitbug*, 78 F. Supp. 3d at 1194 (finding good faith ignorance factor considers whether the defendant had prior knowledge of the plaintiff's mark before it decided to adopt the name). CCA claims that BBK and CCA are not competitors because CCA's products contain cannabis, while none of BBK's products do, and that its merchandise is merely incidental to CCA's brand. (Doc. 485 at 15.) Undisputed facts show, however, that CCA knew of the RAW brand and that the Raw Garden products are complementary to BBK's RAW brand. John De Friel, CCA's chief executive officer, knew

of BBK's RAW branded rolling papers since 2005 (Doc. 496-14 at 4), and in 2014, CCA and others posted images of RAW rolling papers on social media in conjunction with Raw Garden cannabis (Docs. 496-15, 496-16). CCA also reached out to BBK in 2017 about the possibility of the RAW branded cones being printed with "Raw Garden." (Doc. 485-20 at 20-24.) Furthermore, CCA even notes in its papers that the Court previously found that some of BBK's products use the RAW mark on of its "federally-illegal drug paraphernalia"—another complementary product. (Doc. 502 at 8 n.1.)

On balance, the Court finds the undisputed material facts show that the *E-System* factors weight in favor of BBK and show that the delay was reasonable. As such, laches does not bar BBK's trademark claims.

Therefore, with respect to the laches defense, the Court grants BBK's motion (Doc. 478 at 7-18) and denies CCA's motion (Doc. 485 at 11-17).

### 2. Statute of Limitations

BBK and CCA both move for summary judgment on whether the statute of limitations ran on BBK's Arizona common law infringement and unfair competition claims. (Doc. 478 at 19-20; Doc. 485 at 17.)

Both claims are subject to a three-year statute of limitations. *See Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 989-90 (D. Ariz. 2007). Yet, under the doctrine of continuing tort, "a tort claim based on a series of related wrongful acts is considered continuous, and accrual begins at the termination of the wrongdoing, rather than at the beginning." *Crus v. City of Tucson*, 243 Ariz. 69, 74 (App. 2017).

Here, the fact that BBK did not file the claims until September 18, 2019, outside the three-year statute of limitations, does not preclude BBK's state-law claims in their entirety. *See* 4 *McCarthy on Trademarks and Unfair Competition* § 31:33 (4th ed.) ("Usually, infringement is a continuing wrong, and the statute of limitations is no bar except as to damages beyond the statutory period."). Rather, the claims are limited to the three-years preceding the filing of the lawsuit. *See, e.g.*, *Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 WL 1839117, at *4 (N.D. Cal. Aug. 17, 2004).

Therefore, with respect to statute of limitations, the Court grants BBK's motion (Doc. 478 at 19-20) and denies CCA's motion (Doc. 485 at 17) as a matter of law. BBK's Arizona common law infringement and unfair competition claims are limited to the three-year time period before September 18, 2019.

### B. CCA's Other Defenses

BBK moves for summary judgment on CCA's remaining affirmative defenses (1) acquiescence, (2) waiver, (3) estoppel, (4) unclean hands, and (5) other defenses.

#### 1. Acquiescence

"Acquiescence, as a defense to trademark infringement, requires that (1) the senior user actively represented that it would not assert a right or a claim, (2) the delay between the active representation and assertion of the right or claim was not excusable, *and* (3) the delay caused the defendant undue prejudice." *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1180 (S.D. Cal. 2023) (emphasis added). Acquiescence requires an affirmative word or deed conveying consent to use the trademark. *Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 988-89 (9th Cir. 2010).

For similar reasons that the laches defense fails, the Court finds CCA's acquiescence defense must also fail. As discussed, no evidence suggests that BBK actively represented it would not assert its right in the RAW mark. In fact, BBK contested CCA's use of Raw Garden with the USPTO in 2017. Also, as discussed, the Court found the three-month delay in filing the lawsuit reasonable.

The Court therefore grants BBK's motion (Doc. 478 at 18) with respect to the acquiescence defense.

#### 2. Waiver

"A waiver is an intentional relinquishment or abandonment of a known right or privilege." *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 602 (9th Cir. 1995) (citation omitted). The "waiver must be manifested in an unequivocal manner." *Monster Energy Co. v. BeastUp LLC*, 395 F. Supp. 3d 1334, 1367 (E.D. Cal. 2019). "An implied waiver of rights will be found where there is 'clear, decisive and unequivocal' conduct which

indicates a purpose to waive the legal rights involved." *Amwest Sur. Ins. Co.*, 54 F.3d at 602-03.

CCA presents evidence that BBK representatives (1) learned of the Raw Garden at the 2016 Chalice Cup festival and discussed potential collaboration because each had the word "Raw" in their name and exchanged merchandise and business cards (Doc. 485-14 at 18-20) and (2) made social media posts "shout[ing] out to @raw_garden" (Doc. 486-7). CCA also contacted BBK for pricing of the RAW rolling papers because "we had had a positive interaction with one of their reps at [the] Chalice [Cup] the year before." (Doc. 485-20 at 7.)

BBK argues that there is no evidence in the record of a "clear, decisive and unequivocal" manifestation of its intent to relinquish any of its trademark rights. (Doc. 478 at 19.)

Viewing these facts in the light most favorable to CCA, these actions do not show a material disputed fact that BBK expressed "clear, decisive and unequivocal conduct" to relinquish or abandon its trademark rights. Nothing about BBK's behavior is decisive or clear, and these actions are not from BBK executives, but people who work in marketing. There is no evidence that these marketing employees had any authority to make decisions impacting BBK's legal rights. To the contrary, as discussed, BBK opposed CCA's 2017 application to the USPTO—showing BBK's intent to defend its trademark rights. *See, e.g.*, *Monster Energy Co.*, 395 F. Supp. 3d at 1367 (finding the defendant provided no evidence of "clear, decisive and unequivocal" conduct and that the plaintiff sought to enforce its rights).

The Court therefore grants BBK's motion (Doc. 478 at 19) with respect to CCA's waiver defense.

### 3. Estoppel

"Unlike waiver, estoppel focuses not on a party's intent, but rather on the effects of his conduct on another. Estoppel arises only when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance

upon this belief." *adidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1075 (D. Or. 2008). CCA must prove: (1) BBK knew CCA was selling potentially infringing cannabis products and merchandise; (2) BBK's actions or failure to act led CCA to reasonably believe that BBK did not intend to enforce its trademark right against CCA; (3) CCA did not know that BBK actually objected to the sale of its potentially infringing products; *and* (4) due to its reliance on BBK's actions, CCA will be materially prejudiced if BBK is allowed to proceed with its claim. *See id.*

Here, viewing the facts in favor of CCA, the Court finds that BBK's actions did not lead CCA to reasonably believe that BBK did not intend to enforce its trademark rights against CAA. The undisputed facts show that BBK opposed the use of the Raw Garden mark as early as April 27, 2017, when it filed its letter with the USPTO.

The Court therefore grants BBK's motion (Doc. 478 at 19) with respect to CCA's estoppel defense.

### 4.     Unclean Hands

BBK argues, in part, that CCA ignored the Court's Scheduling Order (Doc. 31) and improperly injected a new unclean hands affirmative defense in its third MIDP supplemental disclosures from September 5, 2024. (Doc. 478 at 20; Doc. 478-25.) In essence, BBK wants the Court to preclude CCA from presenting evidence that may be improperly disclosed—a sanction under Federal Rule of Civil Procedure 37(c)(1). BBK, however, does not brief the issue under the Rule 37(c)(1) standard.

The Court finds this argument regarding improper disclosure better suited for a motion in limine before trial, rather than a motion for summary judgment. In the motion in limine, the parties can address the appropriate Rule 37(c)(1) standard, including whether the alleged late disclosure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1191-92 (9th Cir. 2022).

The Court therefore denies BBK's motion (Doc. 478 at 20-22) with respect to CCA's unclean hands defense.

### 5. Other Defenses

BBK argues that CCA's first, second, seventh, tenth, eleventh, and thirteenth affirmative defenses are not affirmative defenses because CCA does not meet its burden of proof. (Doc. 478 at 22.)

The Court finds that BBK has not met its burden as the moving party that summary judgment is proper. *See, e.g.*, *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived."); *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1089 (9th Cir. 2017) ("Because [the party] failed to provide any argument or authority to support this claim on appeal, we do not consider it.").

Here, BBK simply lists the defenses by their numeric classification without a document citation, expecting the Court to hunt for these defenses from a docket that is over 550 docket entries and counting. BKK's legal authority is sparce—providing only a list of string citations—expecting the Court to link each string cite to a defense. This is a catch-all argument, and BBK does not meet its burden to show it is entitled to summary judgment. *See* Fed. R. Civ. P. 56.

The Court therefore denies BBK's motion (Doc. 478 at 22) as to CCA's first, second, seventh, tenth, eleventh, and thirteenth affirmative defenses.

### C. BBK's Cybersquatting Claim

CCA moves for summary judgment on BBK's cybersquatting claim. (Doc. 485 at 17-20.) CCA argues that no disputed material fact of bad faith exists for the cybersquatting claim to survive summary judgment. (*Id.*)

CCA registered the "rawgarden.farm" and "rawgarden.co" domain names on October 10, 2016, and has used them for its Raw Garden business since. (Doc. 485-11 at 5-17.) The rawgarden.farm website is used to provide information about CCA's farming and cannabis products, and the rawgarden.co website is used to sell merchandise. (Doc. 485-11 at 3; Doc. 496-12; Doc. 397-4 at 5-17.) In 2018, CCA filed trademark applications with the California Secretary of State to use the Raw Garden mark, and in the application,

CCA indicated that it had been using the mark since 2016. (Doc. 485-26; Doc. 485-27.)

Cybersquatting occurs when "a person other than the trademark holder registers the domain name of a well[-]known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005). The primary elements of a cybersquatting claim under the Anti-Cybersquatting Consumer Protection Act ("ACPA") are: "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1219 (9th Cir. 2012) (internal quotations omitted).

The ACPA lists "nine nonexclusive factors for courts to consider in determining whether bad faith exists." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009). These factors are:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).

The first four factors tend "to indicate an absence of bad faith intent to profit from the goodwill of the mark, the next four tend to indicate that bad faith does exist and the last factor points in either direction, depending on the degree of distinctiveness and fame of the mark." 4 McCarthy on Trademarks and Unfair Competition § 25A:53 (5th ed.).

Even assuming that BBK's mark is distinctive or famous (factor IX), the Court finds that the ACPA factors weigh in favor of CCA. *See Lahoti*, 586 F.3d at 1202 (stating that "the ACPA itself notes that use of the listed criteria is permissive" and that "the most important grounds for finding bad faith are the unique circumstances of the case"). CCA concedes in its papers that factors II and IV do not apply here.[4] (Doc. 485 at 19.) CCA has shown, however, that factors I and III strongly indicate that bad faith does not exist. Since the inception of the websites, CCA has used them for the bona fide offering of goods and services—namely information about CCA's farming practices, its cannabis products, and its merchandise. CCA also applied for trademark rights to the Raw Garden mark with California in 2018.

BBK also argues that factor I weights in favor of bad faith because CCA does not have federal trademark rights. (Doc. 496 at 16-17.) The statute, however, defines factor I

---

[4] At oral argument, CCA argues that factor II weights in its favor. The Court relies instead on the original arguments raised in the briefs.

- 15 -

1 as "the trademark or other intellectual property rights," and does not expressly limit such rights to *federal* trademark rights. *See* § 1125(d)(1)(B)(i). BBK does not provide any authority to support that the statute limits such rights to federal ones only. Instead, BBK cites to authority that precludes a party from exercising federal trademark rights when the business engages in federally illegal activity. *See, e.g.*, *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682, 689 (9th Cir. 2022) ("Only *lawful* use in commerce can give rise to trademark priority.") (emphasis in original); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 890-91 (N.D. Cal. 2019) (holding a plaintiff's illegality of products under federal law renders it unable to challenge a defendant's federal trademark). As such, the Court finds that factor I and factor III weigh against bad faith.

As for factors V through VIII, the Court finds that no evidence showing CCA's intent to divert consumers from BBK's rawthentic.com to rawgarden.farm or rawgarden.co (factor V); no evidence that CCA has tried to sell, transfer, or assign the domain names (factor VI); no evidence that CCA provided false information when registering the domain names—in fact, CCA has maintained accurate information in its annual renewals (factor VII); and no evidence that CVA register or acquired additional domain names other than the two at issue (factor VIII).

BBK has not presented any evidence to show a material disputed fact. (*See* Doc. 496.) Instead, BBK argues that the Ninth Circuit found material issues of fact regarding CCA's "intent to confuse." (Doc. 496 at 17; *see also* Doc. 466-1 at 3.) Yet, the Ninth Circuit's mandate expressly states that the *Sleekcraft* factors are a "'poor fit' for the cybersquatting confusion analysis," and remanded to this Court "to conduct this separate analysis." (Doc. 466-1 at 5.) Factor V of the ACPA considers CCA's "*intent to divert customers* from the mark owner's online location . . . by creating a likelihood of confusion," not an "intent to confuse." *See* § 1125(d)(1)(B)(i) (emphasis added).

BBK also argues that intent to divert can be found where the domain name was registered after the defendant became aware of its mark. (Doc. 496 at 18.) Specifically, BBK relies on an interrogatory response explaining that Mr. De Friel became aware of

RAW branded rolling papers in or around 2005 while visiting a smoke shop in Seattle. (Doc. 496-14 at 4.) This evidence is insufficient when compared to the cases cited by BBK.

For example, in *Sporty's Farm LLC v. Sportman's Market, Inc.*, 202 F.3d 489, 499 (2d Cir. 2000), the Second Circuit found ample evidence that the defendant planned to enter into direct competition with the plaintiff's consumer market, including that evidence supported that the defendant was "fully aware that *sporty's* was a very strong mark" and that the court below found that the defendant "registered sportys.com for the primary purpose of keeping [the plaintiff] from using that domain name." Furthermore, the court found most factors weighed in favor of bad faith. *Id.*; *see also Venetian Casino Resort, LLC v. Venetiangold.com*, 380 F. Supp. 2d 737, 744 (E.D. Va. 2005) (finding intent to divert consumers when the defendant knew about the plaintiff's Las Vegas casino before registering the domain names of VenetianCasinoVegas.com and VenetianCasinoUSA.com and did not use the domain names for the defendant's own use).

On balance, viewing the facts in the light most favorable to BBK, the Court finds that no genuine dispute as to any material fact exists, and CCA is entitled to judgment as a matter of law.

The Court therefore grants CCA's motion (Doc. 485 at 17-20) as to BBK's cybersquatting claim.

**D.    BBK's Profit Disgorgement Remedy**

CCA moves for summary judgment on BBK's profit disgorgement claim. (Doc. 485 at 20-22.) CCA argues that as a matter of law that BBK's profit disgorgement theory should be rejected because CCA's purported profits are derived from the sale of federally illegal cannabis products, which violates the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801, *et seq.* (*Id.* at 21.)

The CSA makes it unlawful for any person "to manufacture, distribute, or dispense" a controlled substance. 21 U.S.C. § 841(a). It designates cannabinoids as a Schedule I controlled substance. *Id.* § 812. Courts have found against awarding damages from profits earned on business that process and sell cannabis. *See, e.g.*, *J. Lilly, LLC v. Clearspan*

*Fabric Structures Int'l, Inc.*, No. 3:18-cv-01104-HZ, 2020 WL 1855190, at *12 (D. Or. Apr. 13, 2020) (refusing to award lost profits to a plaintiff who alleged that defendant's conduct caused plaintiff to lose profits on its own illegal cultivation and sale of marijuana). Courts acknowledge, however, that "[t]he mere fact of marijuana's involvement does not by itself automatically preclude [the party] from seeking redress. As the [c]ourt recognized in the prior ruling, case law suggests no such hard-and-fast rule." *Sensoria, LLC v. Kaweske*, 548 F. Supp. 3d 1011, 1026-28 (D. Colo. 2021) (dismissing claims based on theft, fraud, negligent misrepresentation, breach of fiduciary duty, civil conspiracy, unjust enrichment, and securities claims reasoning the court could not "vindicate equity in or award profits from a business that grows, processes, and sells marijuana").

CCA concedes that no court has addressed this issue specifically in the context of trademark infringement. (Doc. 485 at 21.) In one unpublished case, a district court found that an award of profit disgorgement would "run afoul of federal law." *Wildflower Brands Inc. v. Camacho*, No. 2:22-CV-09044-MCS-PLA, 2023 WL 3150091, at *2 (C.D. Cal. Mar. 20, 2023). Yet, *Wildflower Brands* can be distinguished because it was a breach of contract dispute between two cannabis companies. *See id.* at *1. In fact, most cases cited by CCA are distinguishable, because *both parties* were engaged in the federally illegal cannabis industry. *See, e.g.*, *Sensoria*, 548 F. Supp. 3d at 1026-28; *J. Lilly*, 2020 WL 1855190, at *12. Here, however, only CCA operates in this space.

BBK alleges that CCA violated its lawful trademark rights with its legal products. In the cases cited by CCA, the courts decline to award damages when doing so would benefit the party violating CSA federal law. If the jury finds CCA infringed on BBK's trademark, BBK may seek profit disgorgement—allowing CCA to be immune from a damages claim would incentivize, not discourage, the violation of federal criminal law.

The Court therefore denies CCA's motion (Doc. 485 at 20-22) as to BBK's claim for profit disgorgement.

### E. BBK's Punitive Damages Remedy

CCA moves for summary judgment on BBK's punitive damages claim. (Doc. 485

at 22.) BBK seeks punitive damages with its unfair competition claim under Arizona law. (Doc. 485-13 at 47.) CCA argues that (1) under Arizona law, punitive damages are rarely available and (2) no evidence of bad faith or evil mind exists on the part of CCA to award punitive damages. (Doc. 485 at 22.)

"Punitive damages are awarded only in the most egregious of cases, where a plaintiff proves by clear and convincing evidence that the defendant engaged in reprehensible conduct and acted with an evil mind." *Medasys Acquisition Corp. v. SDMS, P.C.*, 203 Ariz. 420, 424 (2002) (internal quotations omitted). "A motion for summary judgment on the availability of punitive damages 'should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence.'" *Rindlisbacher v. Steinway & Sons Inc.*, 497 F. Supp. 3d 479, 515 (D. Ariz. 2020) (quoting *Dawson v. Withycombe*, 216 Ariz. 84, 111 (Ct. App. 2007)); *see also Dawson*, 216 Ariz. at 112 ("[A]n evil hand guided by an evil mind which either consciously sought to damage the victim or acting intentionally, knowing that its conduct was likely to cause unjustified, significant damage to the victim motives so improper, or conduct so oppressive, outrageous or intolerable that such an evil mind may be inferred.") (cleaned up).

BBK presents evidence that CCA, specifically, Mr. De Friel, knew of BBK's RAW rolling papers since 2005. (Doc. 496-14 at 4.) And, in 2014, CCA posted images of RAW branded rolling papers on social media in conjunction with Raw Garden products. (Docs. 496-15, 496-16.) BBK also claims that Messrs. Marin and Al-Naser contradict themselves because they claim they personally did not know of the RAW brand until late 2016, but that they admit they likely personally posted the 2014 social media posts. (Doc. 496-8 at 4-5.) BBK also presents that Messrs. Martin and Al-Naser contradicted themselves again when they explained that they ran searches to see if other companies were using "Raw Garden" and limited the search to cannabis products, but then later identified a restaurant and food company unrelated to the cannabis industry. (Doc. 496 at 22 (citing Doc. 485-3 at 12-13).)

BBK also argues that CCA's motive to associate itself with the RAW mark is plain

because CCA's own expert found that 79 percent of respondents stated they recognized the RAW mark. (Doc. 496 at 22 (citing Doc. 496-17 at 10.)) Yet, in that same report, the expert also found that only 3.7 to 8.3 percent thought it could be linked to Raw Garden. (Doc. 496-17 at 10.) In addition, in 2017, CCA reached out to collaborate with BBK asking to have the RAW branded cones printed with Raw Garden. (Doc. 485-20 at 13, 20-24.)

Viewing the facts in the light most favorable to BBK, the Court finds that no genuine issue of material fact exists to show that CCA acted with an evil mind by clear and convincing evidence. The actions identified by BBK are insufficient for a reasonable jury to find that CCA "acted with the oppressive, outrageous, or intolerable conduct necessary to establish an evil mind." *See Dawson*, 216 Ariz. at 92, 111-12 ("[The] allegations with respect to [CEO's] state of mind when he made that statement involved [his] knowledge of the priorities and [the company's] financial condition. . . .[I]t denotes neither conscious awareness of the harmful nature of the fraud, nor deliberate contravention with Dawson's rights."); *see also Bodett v. CoxCom, Inc.*, 366 F.3d 736, 740 n.3 (9th Cir. 2004) ("A party cannot create a dispute of fact by simply questioning the credibility of a witness.").

The Court therefore grants CCA's motion (Doc. 485 at 22) as to BBK's claim for punitive damages.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED granting in part and denying in part** BBK's motion for partial-summary judgment (Doc. 478), as described herein.

**IT IS FURTHER ORDERED granting in part and denying in part** CCA's motion for summary judgment (Doc. 485), as described herein.

Dated this 28th day of February, 2025.

Michael T. Liburdi
United States District Judge