**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BBK Tobacco & Foods LLP, | No. CV-19-05216-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Central Coast Agriculture Incorporated, et al., | |
| Defendants. | |

This action arises out of a trademark dispute that has followed a circuitous route, and the parties show no signs of relenting soon. Pending before the Court are nineteen motions in limine—thirteen filed by Plaintiff BBK Tobacco & Foods, LLP ("BBK") (Docs. 585, 586, 587, 588, 589, 590, 591, 592, 593, 595, 596, 597, and 598) and six filed by Defendant Central Coast Agriculture, Inc. ("CCA") (Docs. 599, 600, 601, 603, 605, and 606). The Court finds that oral argument would not assist the resolution of these issues and is therefore unnecessary under Local Rule 7.2(f). The Court rules as follows.

**<u>BBK's Motion in Limine No. 1 (Doc. 585)</u>**: BBK moves to exclude CCA's updated unclean hands defense arguing that it was untimely disclosed on September 5, 2025—after the May 14, 2021 MIDP Order deadline and the Court's August 27, 2025 hearing limiting supplemental disclosures. (Doc. 585 at 5.) CCA argues that the disclosed information (that BBK allegedly improperly registered and used CCA's Raw Garden brand name) did not occur until after May 14, 2021, and as such, CCA timely supplemented its disclosures within 30 days of when this Court resumed jurisdiction over the case. (Doc. 621.)

Under Rule 37(b)(2)(A)(ii), Fed. R. Civ. P., when a party does not obey a discovery order, the court may "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Here, after the case was remanded from the Ninth Circuit, the parties filed a joint status report on August 20, 2024. (Doc. 469.) In the report, the parties provided their positions on supplementing financial disclosures. (*Id.*) At the subsequent hearing, the parties presented their positions on reopening discovery. (Doc. 477.) This Court, ultimately, granted the parties' stipulation to supplement financial disclosures and update related rebuttal expert reports. (Doc. 476.) During these proceedings, CCA did not request to supplement disclosures, and in fact, opposed reopening discovery to fulfill BBK's requests. (Doc. 477.) Though it was impracticable for CCA to follow the May 14, 2021 deadline, given the timeline that has unfolded, CCA should have requested leave from the Court to supplement its disclosures with this information. As such, the Court finds CCA's disclosure untimely.

Finally, even if the Court permitted CCA's untimely disclosure, under Rule 37(c)(1), Fed. R. Civ. P., this untimely disclosure is neither substantially justified nor harmless. *See Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1191-92 (9th Cir. 2022). As discussed, the late disclosure is not substantially justified, because CCA had the opportunity to request leave to supplement its disclosures in the joint status report and at the August 27, 2025 hearing. Second, the late disclosure is not harmless, because CCA never disclosed documents or witnesses to support its new unclean hands defenses, thereby prejudicing BBK. The Court therefore **grants** BBK's Motion (Doc. 585) to exclude CCA's unclean hands defense.

**<u>BBK's Motion in Limine No. 2 (Doc. 586) and CCA's Motion in Limine No. 6 (Doc. 606)</u>**: BBK and CCA filed cross-motions in limine addressing whether the parties may refer to the legality of their respective products and businesses at trial. (Docs. 586, 606.) BBK seeks to preclude any reference to its RAW-brand products as "unlawful," "illegal," or "drug paraphernalia." (Doc. 586 at 2.) CCA moves to preclude BBK from (1) referring to CCA or its witnesses as "drug dealer[s]," a "federally illegal business," or

using similar pejorative language before the jury; and (2) arguing that CCA cannot defend itself because its cannabis products or business is illegal under federal law.[*] (Doc. 606 at 2.) BBK asks the Court to consider these motions together. (Doc. 617 at 2 n.1.) The Court grants both motions in part and denies them in part.

Regarding BBK's Motion (Doc. 586), in the July 2022 Order, the Court held that the goods listed in BBK's challenged trademark registrations—including rolling papers, cigarette tubes, rolling machines, trays, and grinders—are "traditionally intended for use with tobacco" and therefore exempt from the Controlled Substances Act under 21 U.S.C. § 863(f)(2). (Doc. 443 at 54-55.) The Ninth Circuit affirmed that point. *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, No. 22-16190, 2024 WL 1364300, at *2 (9th Cir. Apr. 1, 2024). Those determinations are final and constitute the law of the case. *See Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (noting that "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case"). To the extent CCA references RAW-branded items outside its counterclaims, it may offer limited factual evidence about their function or marketplace context but not invite the jury to decide their legality under the Controlled Substances Act. *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1034 (9th Cir. 2015) (noting that the law of the case doctrine does not apply if "the evidence on remand is substantially different"). Counsel should refrain from characterizing either party's products or conduct as "illegal," "criminal," or as "drug paraphernalia," as such references risk confusing or misleading the jury under Federal Rule of Evidence ("Rule") 403. *See Hsu v. Puma Biotechnology, Inc.*, No. SACV 15-00865 AG (SHKx), 2018 WL 11669124, at *3 (C.D. Cal. Oct. 24, 2018) (prohibiting counsel from referring to a party's conduct as "criminal or illegal" before the jury).

But BBK's Motion sweeps too broadly. Evidence describing the nature and marketplace setting of the parties' products—such as the fact that CCA sells cannabis

---

[*] In the parties' proposed final pretrial order, BBK agreed to "exclude any argument that CCA should not be able to defend itself at all in this litigation because of the illegality of CCA's products under federal law." (Doc. 645-1 at 39.)

goods in state-licensed dispensaries while BBK sells rolling papers and accessories—is relevant to *Sleekcraft* factors including proximity of the goods, marketing channels, and likelihood of expansion. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). The likelihood-of-expansion factor may include testimony that regulatory barriers limit BBK's ability to enter the cannabis market, but that evidence must be presented neutrally and without argument about federal illegality. Broader argument on cannabis legality or enforcement policy would waste time and confuse the jury.

Finally, CCA's Motion (Doc. 606) is granted to the extent it precludes BBK or its witnesses from using the labels signaled by the parties such as "drug dealer," "illegal business," or "illegal narcotics." Such language lacks probative value and poses an undue risk of prejudice under Rule 403. Both motions are otherwise denied without prejudice to the extent they seek vague or categorical exclusions of unspecified "similar" or "like" statements. *See United States v. Lewis*, 493 F. Supp. 3d 858, 861 (C.D. Cal. 2020). Therefore, the Motions (Docs. 586, 606) are **granted in part and denied in part**, as explained above.

**BBK's Motion in Limine No. 3 (Doc. 587)**: BBK moves to exclude "[e]vidence or argument relating to CCA's Dismissed Affirmative Defenses." (Doc. 587 at 3.) CCA argues that BBK's motion is overbroad and better suited for objections of specific evidence at trial. (Doc. 623.) The Court's February 28, 2025 Order resolving the renewed motions for summary judgment dismissed CCA's affirmative defenses of laches, statute of limitations, waiver, estoppel, and acquiescence. (Doc. 556 at 9-11.) This Court's summary judgment ruling constitutes the law of the case. *See Thomas*, 983 F.2d at 154. CCA, therefore, is precluded from asserting these affirmative defenses at trial. "Generally, evidence of dismissed claims is no longer relevant and can be excluded . . . . However, evidence of dismissed claims can be admitted if relevant for a limited purpose." *Zhang v. Cnty of Monterey*, No. 17-CV-00007-LHK, 2021 WL 1788615, *5 (N.D. Cal. May 4, 2021). The Court also finds, however, BBK's current motion too broad. The proper course of conduct is for BBK to object at trial and allow the Court to make a ruling on relevance

then. The Court therefore **denies without prejudice** BBK's Motion (Doc. 587), as described herein.

**BBK's Motion in Limine No. 4 (Doc. 588)**: BBK moves to preclude either side from questioning witnesses about their personal use of cannabis as irrelevant, prejudicial, and likely to confuse the jury. (Doc. 588.) CCA argues that cannabis use is relevant to the likelihood-of-confusion analysis under the *Sleekcraft* factors because whether a witness uses cannabis is relevant to a jury's assessment of that testimony. (Doc. 624 at 2.)

Rule 401 provides that evidence is relevant if "it has a tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Here, a witness's use of cannabis does not tend to make any fact of consequence for the infringement claims more or less probable. Based on the current arguments, the Court finds witnesses' cannabis use irrelevant under Rules 401 and 402.

Furthermore, even if some marginal probative value exists, like one's perception of an event while under the influence of cannabis, the danger of unfair prejudice, confusion, and improper adverse inference substantially outweighs any existing probative value. *See* Fed. R. Evid. 403. Similarly, a witness's cannabis use is not a trait related to his or her truthfulness under Rule 608.

The Court's ruling, however, does not preclude a party during cross-examination from raising the issue on a narrow non-propensity basis, such as perception at a specific event, by making a Rule 104 proffer outside the jury's presence with a limiting instruction. Therefore, the Court **grants in part and denies in part** BBK's Motion (Doc. 588), as described herein.

**BBK's Motion in Limine No. 5 (Doc. 589)**: BBK moves to exclude (1) a 2023 article published by Forbes magazine, referring to the founder of BBK, Joshua Kesselman, as the "Pinocchio of Pot," and "(2) any related publicity." (Doc. 589 at 2.) The Court will exclude the article itself, the epithet, and the reporter's opinions. These materials are irrelevant to the likelihood-of-confusion analysis and risk unfair prejudice, confusion, and

distracting side litigation. Courts have excluded similar evidence under Rule 403, including inflammatory nicknames. *See United States v. Green*, 648 F.2d 587, 593 (9th Cir. 1981) (affirming the exclusion of evidence under Rule 403 as prejudicial, including testimony about a defective LSD batch and the prejudicial nickname term "Acid King" for inflaming the jury). The article also qualifies as extrinsic character evidence barred by Rules 404 and 608(b).

But the Motion is overbroad to the extent it seeks to bar all references to statements BBK or Mr. Kesselman themselves made to Forbes. Party admissions may be admissible under Rule 801(d)(2) if properly authenticated, and specific conduct may be probed on cross-examination under Rule 608(b), subject to Rule 403 balancing. The Court will therefore allow limited questioning about specific, attributable statements tied to BBK or its founder, but counsel may not publish or admit the article itself. The request to exclude undefined "related publicity" is denied without prejudice as vague. *See Lewis*, 493 F. Supp. at 861 ("The failure to specify the evidence that a motion in limine seeks to exclude constitutes a sufficient basis upon which to deny the motion." (citation modified)). Accordingly, the Motion (Doc. 589) is **granted in part and denied in part**.

**BBK's Motion in Limine No. 6 (Doc. 590)**: BBK moves to preclude CCA from presenting evidence or argument relating to BBK's removal of certain statements on its RAW-branded packaging and materials as ordered in 2021 under *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16-cv-03401 (N.D. Ill.) arguing this evidence is irrelevant and prejudicial. (Doc. 590.)

Based on the current record, the Court finds the packaging changes irrelevant and do not bear on the *Sleekcraft* factors for the RAW versus "Raw Garden" likelihood-of-confusion analysis because the *Republic Technologies* court did not alter BBK's use, continuity, or duration of the RAW marks. *See* Fed. R. Evid. 401. Furthermore, CCA cannot attempt to use the packaging changes to imply that BBK and Mr. Kesselman (who was not a party to the *Republic Technologies* case) are generally "untruthful" because this is an example of propensity evidence and barred under Rules 404 and 608. *See* Fed. R.

Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); Fed. R. Evid. 608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."). Finally, presenting evidence of the packaging changes because of the lawsuit would invite a trial within a trial about the different issues and standards raised in the *Republic Technologies* case that could confuse the jury. *See* Fed. R. Evid. 403. CCA claims that the jury would be confused by the changes in packaging, but the changes are statements being removed from the packages, not changes to the RAW mark itself.

The Court therefore **grants** BBK's Motion to exclude statements removed from packaging related to the *Republic Technologies* litigation (Doc. 590).

**BBK's Motion in Limine No. 7 (Doc. 591)**: BBK moves to exclude evidence or argument regarding Mr. Kesselman's decades-old conviction for selling drug paraphernalia. (Doc. 591 at 2.) Rule 609(b) establishes a strong presumption against admitting convictions more than ten years old, and the conviction here is more than twenty-five years old and unrelated to truthfulness. Its limited probative value is therefore substantially outweighed by the danger of unfair prejudice. *See United States v. Bensimon*, 172 F.3d 1121, 1126 (9th Cir. 1999) (noting that "convictions over 10 years old will be admitted *very rarely and only in exceptional circumstances*." (quoting Fed. R. Evid. 609(b) advisory committee's note) (emphasis in original)). The Court will therefore exclude the conviction as extrinsic character evidence under Rules 403 and 609(b).

That said, the Motion is overbroad to the extent it seeks to preclude all references to Mr. Kesselman's prior conviction regardless of context. CCA argues BBK's own witnesses, including Mr. Kesselman, have repeatedly referenced his arrest and conviction in interviews and public statements when telling the origin story of the RAW brand. (Doc. 627 at 1-2.) If Plaintiff elicits testimony along these lines, Defendant may cross examine on the same topic, subject to Rule 403 balancing. *See United States v. Dunbar*,

104 F. App'x 638, 640 (9th Cir. 2004) (permitting cross-examination on an old conviction once the defendant introduced it during direct examination); *see also United States v. Perry*, 857 F.2d 1346, 1352 (9th Cir. 1988) (holding that the defendant "opened the door" to detailed cross on prior convictions by attempting to explain them away). The Court will therefore preclude the conviction as a general matter under Rule 609(b), but reserves judgment on limited cross-examination if Plaintiff first raises the subject. The Motion (Doc. 591) is therefore **granted in part and denied in part**.

**BBK's Motion in Limine No. 8 (Doc. 592)**: BBK moves to preclude CCA from presenting evidence or argument related to its ownership of any trademark rights in the "Raw Garden" name arguing it is irrelevant. (Doc. 592.) Evidence is relevant if it has a tendency to make a fact more or less probable. Fed. R. Evid. 401. Under *Sleekcraft*, a factor for jurors to consider is the "defendant's intent in selecting the mark." *Sleekcraft*, 599 F.2d at 348-49. Here, CCA's California trademark rights and registrations in "Raw Garden" are relevant to this *Sleekcraft* factor because it may show CCA's intent to use the mark lawfully. Furthermore, the Court finds that the probative value is not substantially outweighed by any prejudice or juror confusion because the jurors should reasonably be able to distinguish between California trademark issues versus federal trademark infringement. *See* Rule 403. The Court therefore **denies with prejudice** BBK's Motion (Doc. 592).

**BBK's Motion in Limine No. 9 (Doc. 593) and CCA's Motion in Limine No. 4 (Doc. 603)**: The parties filed cross-motions in limine addressing whether CCA's financial data may be referenced at trial. (Docs. 593, 603.) Both parties agree that BBK's profit disgorgement claim is off the table, for now, and that CCA's profit figures are irrelevant. (Doc. 645-1 at 39; Doc. 593 at 3; Doc. 603 at 3 n.1, 4 n.2.) The dispute instead narrows to whether CCA's gross revenue from its sale of "Raw Garden" branded products has any relevance for the jury.

BBK tucked into a footnote the argument that such sales figures are "persuasive evidence" of the unfair marketplace advantage CCA allegedly gained from using the "Raw

Garden" name. (Doc. 593 at 3 n.3.) In other words, BBK attempts to reserve the possibility of introducing evidence this Court has already held irrelevant to the jury trial.

By BBK's own framing, the central question for the jury is "whether CCA's use of the 'Raw Garden' name for its cannabis products have caused, or are reasonably likely to cause, purchasers of those products to believe mistakenly that the products share some origination, association or affiliation with BBK's products identified by its family of RAW marks." (Doc. 594 at 3.) The Court agrees with CCA that revenue numbers do not make it "more or less probable" that consumers were or would be confused.

Indeed, the Court has already spoken on this point. In the August 5, 2025 Order, the Court held that CCA's revenue numbers "are relevant to an issue that will be tried to the Court, not a jury." (Doc. 576 at 2.) The Court reiterated the same conclusion when BBK advanced a nearly identical argument in briefing over a protective order. (*See* Doc. 575 at 4-5.) The issue is therefore neither new nor unsettled: CCA's gross revenues may bear on equitable remedies, but they have no place before the jury tasked with deciding likelihood of confusion.

CCA's Motion (Doc. 603) is **granted** and BBK's Motion (Doc. 593) is therefore **denied** as moot. The parties may not (1) make any reference to BBK's disgorgement of profits claim, or (2) present any evidence, testimony, or argument regarding CCA's revenues, profits, or other financial information before the jury.

**<u>BBK's Motions in Limine Nos. 10 & 11 (Docs. 595, 596)</u>**: BBK moves to exclude any evidence or argument that its family of RAW marks is merely descriptive (Doc. 595) and that its marks are invalid as marks merely descriptive of the goods and services they identify (Doc. 596). BBK argues in the motions that CCA should be precluded from claiming that the RAW marks are "merely descriptive" because the law presumes BBK's marks are distinctive, CCA failed to disclose the argument as required by the MIDP Order, and the argument is irrelevant and prejudicial. (Doc. 595 at 4, 6; Doc. 596 at 5.)

Under the MIDP, defendants must "fairly expose the facts and issues to be litigated." *IceMOS Tech. Corp. v. Omron Corp.*, No. CV-17-02575-PHX-JAT, 2020 WL 2527018,

at *3 (D. Ariz. May 18, 2020) (quoting *Bryan v. Riddel*, 178 Ariz. 472, 477 (1994)). The plaintiff of a trademark action "bears the ultimate burden of proof that his or her mark is valid" and when "the PTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive." *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010); *see also Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009) ("There can be no serious dispute with the principle that a federal trademark registration of a particular mark supports the distinctiveness of that mark, because the PTO should not otherwise give it protection."). Under the *Sleekcraft* factors, the strength of the mark relies in part on "its placement on a continuum of marks." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002) (citation omitted).

Here, BBK should have reasonably known that CCA would contest the distinctiveness of the mark because the *Sleekcraft* factors rely on this determination. Furthermore, BBK has been on notice since the first round of summary judgment motions that CCA planned to challenge the distinctiveness of the RAW marks. (*See* Doc. 246.) Finally, the Court finds, based on this record, the distinctiveness of the mark relevant and not prejudicial. BBK has the burden to prove trademark infringement, and therefore, will need to defend challenges to the distinctiveness of the mark made by CCA. The Court therefore **denies without prejudice** both Motions (Docs. 595, 596).

**BBK's Motion in Limine No. 12 (Doc. 597)**: BBK moves to preclude CCA and its witnesses from presenting any argument or commentary regarding the absence of instances of actual confusion past May 2021. After this case was remanded from the Ninth Circuit, the Court reopened discovery for a limited purpose, to supplement financial information and related rebuttal expert reports. (Docs. 470, 476.) The Court did not allow the parties to supplement anything else past the close of the MIDP deadline of May 14, 2021. (*Id.*; Doc. 31.) BBK argues that CCA should be prohibited from saying no evidence exists for lack of confusion past May 14, 2021, because this could mislead the jurors into thinking no confusion simply existed, not that the Court did not permit supplemental disclosures around

1   this issue. (Doc. 597.)

2       The Court finds no probative value from allowing CCA to introduce statements or

3   argument regarding the lack of confusion evidence past May 14, 2021, and finds that this

4   is substantially outweighed by the risk of prejudice to BBK. *See* Fed. R. Evid. 403. Instead,

5   the Court will provide an instruction to the jurors that discovery concluded on May 14,

6   2021, and that no inference should be drawn from the absence of evidence after that date.

7   As such, the Court **grants** BBK's Motion (Doc. 597).

8       **BBK's Motion in Limine No. 13 (Doc. 598)**: BBK moves to exclude any reference

9   at trial to court-ordered sanctions issued against any party or counsel, in this or any other

10  case. (Doc. 598 at 1.) Evidence or argument about sanctions is irrelevant to the remaining

11  claims for trademark infringement, false designation, and unfair competition. *See* Fed. R.

12  Evid. 401-402. Even if marginally relevant, their probative value is outweighed by the

13  danger of unfair prejudice and jury confusion. Fed. R. Evid. 403. The Court will therefore

14  preclude the parties and witnesses from referencing prior sanctions orders, including those

15  in *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16-C-3401 (N.D.

16  Ill.), or in this action.

17      If BBK introduces evidence touching on the authenticity dispute that gave rise to

18  the prior sanctions order, CCA may seek leave to reference that order for impeachment or

19  clarification, subject to Rule 403 balancing and a limiting instruction. The Court recognizes

20  that the "opening the door" doctrine permits otherwise inadmissible evidence only to rebut

21  a misleading impression created by the opposing party's presentation. *See Microsoft Corp.*,

22  795 F.3d at 1055 n.23. Unless BBK first raises the issue, all references to sanctions remain

23  excluded under Rules 401-403. Therefore, the Motion (Doc. 598) is **granted in part and**

24  **denied in part**, as described herein.

25      **CCA's Motion in Limine No. 1 (Doc. 599)**: CCA moves to preclude BBK and

26  Mr. Kesselman from presenting evidence related to "purported actual confusion."

27  (Doc. 599 at 5.) CCA argues that Mr. Kesselman's testimony of any actual confusion is

28  inadmissible hearsay and untimely disclosed. Mr. Kesselman testified during his deposition

1  with CCA that third parties had expressed confusion to him. (*Id.* at 3.) BBK supplemented

2  its MIDP disclosures on the day discovery closed, three days after Mr. Kesselman's

3  deposition.

4      Here, Mr. Kesselman's testimony is not untimely disclosed because BBK

5  supplemented its disclosures within a reasonable time of discovery and before discovery

6  closed. Also, upon consideration of *Lahoti v. VeriCheck, Inc.*, 636 F.3d 501, 509 (9th Cir.

7  2011), the Court finds based on the current record that Mr. Kesselman's testimony

8  regarding third parties' statements about their confusion is not hearsay if it's offered to

9  show the speaker's state of mind. *See id.* (holding customers' statements of confusion were

10  hearsay but admissible under the state of mind exception)*;* Fed. R. Evid. 803(3). Concerns

11  CCA has with the credibility of Mr. Kesselman's testimony can be resolved through cross-

12  examination at trial. The Court therefore **denies without prejudice** CCA's Motion

13  (Doc. 599).

14      **CCA's Motion in Limine No. 2 (Doc. 600)**: CCA moves to preclude any evidence

15  or argument concerning the unrelated and voluntarily dismissed *Spitzer* class action.

16  (Doc. 600 at 2.) Although BBK omitted *Spitzer* from its final MIDP disclosure, the topic

17  was disclosed in prior supplements and explored at Mr. Kesselman's deposition, providing

18  sufficient notice under General Order 17-08 and Rule 37(c)(1), Fed. R. Civ. P.

19  *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011).

20  Nonetheless, the *Spitzer* pleadings, allegations, and disposition are of minimal probative

21  value to the remaining trademark claims and pose a risk of unfair prejudice, jury confusion,

22  and a mini-trial on collateral issues. *See* Fed. R. Evid. 403; *Tennison v. Circus Circus*

23  *Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) (affirming exclusion where collateral

24  disputes would spawn a "mini-trial"). The parties and witnesses may not refer to the *Spitzer*

25  allegations or resolution before the jury.

26      BBK may, however, seek to present narrowly tailored, otherwise admissible

27  evidence of contemporaneous third-party confusion or reputational impact tied to the

28  existence (but not the merits) of the *Spitzer* lawsuit. Any such evidence must first be offered

1   outside the jury's presence with a proper foundation and non-hearsay purpose or valid
2   exception. Accordingly, the Motion (Doc. 600) is **granted in part and denied in part** as
3   set forth above.

4       **CCA's Motion in Limine No. 3 (Doc. 601)**: CCA moves to preclude BBK
5   employee Ian Kobe from offering opinions at trial on (1) likelihood of confusion and
6   (2) the commercial strength or reputation of the RAW mark. (Doc. 601 at 2.) In the July
7   2022 Order, the Court held that Mr. Kobe may offer expert testimony only on the narrow
8   topic of the industry's use of the color green in cannabis packaging. (Doc. 443 at 20-22.)
9   The Court also held that he may not testify as an expert that companies use different colors
10  within a brand, because that subject is within lay understanding and not helpful under Rule
11  702. (*Id.* at 20-21.) BBK does not dispute this limitation. It states that Mr. Kobe's expert
12  testimony "will be limited, consistent with this Court's ruling on the Daubert motion, only
13  to use of the color green by cannabis companies." (Doc. 612 at 2.) Accordingly, the Court
14  reaffirms its prior ruling.

15      The Court reserved for another day ruling on Mr. Kobe's lay testimony. (Doc. 443
16  at 19.) This is that ruling.

17      First, BBK clarifies that Mr. Kobe will not offer any lay opinion on the likelihood
18  of confusion factor. (Doc. 612 at 3.) The only remaining issue is his proposed lay testimony
19  on commercial strength.

20      Mr. Kobe may offer limited Rule 701 lay testimony that is (1) rationally based on
21  his personal perceptions in the course of his work, (2) helpful to the jury's understanding,
22  and (3) not based on scientific, technical, or other specialized knowledge. Fed. R. Evid.
23  701. Any such testimony must rest on a proper foundation. *See Brighton Collectibles, Inc.*
24  *v. Renaissance Grp. Int'l*, No. 06-CV-1115 H (POR), 2008 WL 5500659, at *3 (S.D. Cal.
25  May 13, 2008). Accordingly, the Motion (Doc. 601) is **denied without prejudice**. CCA
26  may renew its objections at trial if BBK fails to establish an adequate foundation or if the
27  testimony exceeds the limits of Rule 701.

28  . . . .

**CCA's Motion in Limine No. 5 (Doc. 605)**: CCA moves to exclude several screenshots of social media posts that BBK identified in discovery as evidence of marketplace confusion. (Doc. 605 at 2.) CCA argues that the posts cannot be authenticated, constitute inadmissible hearsay, and present undue prejudice. (*Id.*)

CCA's argument is well-taken. *See United States v. Browne*, 834 F.3d 403, 412 (3d Cir. 2016) (noting that social media evidence presents unique authentication challenges because of "the great ease with which a social media account may be falsified or a legitimate account may be accessed by an imposter"). "Courts have considered social media comments and posts authenticated where the comments were authored by parties or witnesses, or even where the comment could be associated with what appeared to be a real account and profile with an identifying photo and name." *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548, 2022 WL 4596697, at *5 (C.D. Cal. July 29, 2022) (citation omitted); *see also United States v. Papoyan*, No. CR 24 04228 001 TUC JGZ (BGM), 2025 WL 239130, at *3 (D. Ariz. Jan. 17, 2025) (noting that social media content may be authenticated through "the testimony of a witness with knowledge or '[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'" (quoting Fed. R. Evid. 901)).

Here, CCA argues that the screenshots originate from third-party accounts with non-identifying usernames and inactive URLs, raising legitimate concerns about reliability. (Doc. 605 at 4-5.) BBK offers no testimony from the original posters or other direct identifying evidence, relying instead on metadata and capture attestations from its vendor. (*See* Doc. 616).

CCA also raises a valid hearsay concern. The posts consist of out-of-court statements by unidentified third parties, and BBK has not established that the authors are actual consumers or that their posts reflect a then-existing belief relevant to Rule 803(3). *See* Fed. R. Evid. 801(c), 803(3).  BBK contends that the posts are offered only to show the existence of public online references linking the parties' marks and to support inferences of possible confusion—not to prove that the posters themselves were, in fact,

1    confused. (Doc. 616 at 5-6.) The Court will defer a final hearsay ruling until BBK
2    establishes the purpose and foundation for these exhibits at trial.

3          Accordingly, the Motion (Doc. 605) is **denied without prejudice**. The Court will
4    consider the admissibility of these exhibits at trial, subject to BBK laying foundation.

5          **IT IS THEREFORE ORDERED** that the following motions are **granted**: BBK's
6    Motions in Limine Nos. 1 (Doc. 585), 6 (Doc. 590), and 12 (Doc. 597); and CCA's Motion
7    in Limine No. 4 (Doc. 603).

8          **IT IS FURTHER ORDERED** that the following motions are **granted in part and**
9    **denied in part**, consistent with this Order: BBK's Motions in Limine Nos. 2 (Doc. 586),
10   4 (Doc. 588), 5 (Doc. 589), 7 (Doc. 591), and 13 (Doc. 598); and CCA's Motions in Limine
11   Nos. 2 (Doc. 600) and 6 (Doc. 606).

12         **IT IS FURTHER ORDERED** that the following motions are **denied**, consistent
13   with this Order: BBK's Motions in Limine Nos. 3 (Doc. 587), 8 (Doc. 592), 9 (Doc. 593),
14   10 (Doc. 595), and 11 (Doc. 596); and CCA's Motions in Limine Nos. 1 (Doc. 599),
15   3 (Doc. 601) and 5 (Doc. 605).

16         **IT IS FURTHER ORDERED** that the parties must confer before trial to update
17   their witness and exhibit lists consistent with these rulings.

18         **IT IS FINALLY ORDERED** that all rulings are subject to reconsideration at trial
19   in light of the evidence and context then presented.

20         Dated this 15th day of October, 2025.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge

- 15 -