**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

BBK Tobacco & Foods LLP,

Plaintiff,

v.

Central Coast Agriculture Incorporated,

Defendant.

No. CV-19-05216-PHX-MTL

**ORDER**

Before the Court is Plaintiff BBK Tobacco & Foods, LLP's ("BBK") Motion for New Trial (Doc. 734). The Motion is fully briefed. (Docs. 758, 760.) The Court will deny the Motion.*

**I.**

BBK sells rolling papers and related smoking accessories under several "RAW" trademarks. Central Coast Agriculture, Inc. ("CCA") is a California cannabis company that sells cannabis products under the "Raw Garden" mark. BBK sued CCA in 2019, asserting trademark infringement and related Lanham Act claims. The Court's September 10, 2020 scheduling order set a fact discovery deadline of May 14, 2021 and incorporated the disclosure obligations of the Mandatory Initial Discovery Pilot Project. (Doc. 31 at 2; *see* Doc. 5.) That deadline was never extended. The Court later granted CCA partial summary judgment (Doc. 443), and the Ninth Circuit reversed in part and remanded (Doc. 466).

At an August 2024 trial setting conference, the parties agreed on the record that only

* The Court finds that oral argument will not assist in the resolution of the motion. *See* LRCiv. 7.2(f).

their financial disclosures would be supplemented, limited to truing up the data, with no new methodologies or arguments. (Doc. 477 at 12-19.) The Court so ordered and permitted supplemental financial expert reports and depositions. (Doc. 476.) Neither party asked to reopen discovery more broadly.

Three months later, BBK moved for leave to supplement its disclosures with recently issued trademark registrations and material concerning CCA's evolving product line and packaging. (Doc. 522.) The Court denied the motion, finding no good cause under Federal Rule of Civil Procedure ("Rule") 16(b)(4) where BBK had the opportunity to raise these concerns at the trial setting conference and did not, and identified no authority that a four-year interval between the disclosure deadline and trial was itself improper. (Doc. 557 at 2-3.)

The case was tried to a jury, which quickly returned a verdict for CCA. (Doc. 706.) BBK now moves for a new trial under Rule 59. (Doc. 734.)

**II.**

"The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). "Regardless of the grounds asserted for a new trial, the court has substantial discretion in denying a new trial, and it should grant one only where it is convinced that a miscarriage of justice has occurred." *Conti v. Corp. Servs. Grp., Inc.*, 30 F. Supp. 3d 1051, 1061 (W.D. Wash. 2014), *aff'd*, 690 F. App'x 473 (9th Cir. 2017) (mem.).

For motions for new trials based on evidentiary disputes, "[a] new trial is only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party." *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (citation omitted). A harmless evidentiary error is not grounds for a new trial—the Court can only grant a new trial if the error affected a party's substantial rights. Fed. R. Civ. P. 61. Similarly, where an error in jury instructions is harmless, a new trial is not warranted. *Cheffins v. Stewart*, 825

F.3d 588, 596 (9th Cir. 2016); *Kennedy v. S. Cal. Edison Co.*, 268 F.3d 763, 770 (9th Cir. 2001) (explaining that "[h]armless error review applies to jury instructions in civil cases").

**III.**

BBK argues that three categories of error produced a miscarriage of justice: (1) the Court's enforcement of the May 2021 discovery cutoff, which BBK contends operated as a categorical evidentiary bar and led the Court to deny requested jury instructions and judicial notice concerning BBK's registrations; (2) the Court's rulings sustaining relevance and Federal Rule of Evidence 403 objections to evidence BBK offered in response to CCA's trial narratives; and (3) the Court's rulings admitting testimony from CCA's survey expert and limiting testimony from BBK's. (Doc. 734 at 6.) None warrants a new trial.

**A.**

BBK argues that the Court, by treating the May 2021 discovery cutoff as an evidentiary boundary, created a "time bubble" that left the jury to resolve a 2025 dispute on 2021 facts. (Doc. 734 at 6.) BBK develops the argument in three parts: that the cutoff operated as a categorical evidentiary rule and was therefore legal error; that it caused the Court to deny BBK's requested instructions and requests for judicial notice concerning its registrations; and that it excluded evidence of CCA's evolving marks and of actual confusion. The Court takes each in turn.

**1.**

BBK first contends that the Court adopted a per se rule excluding all evidence postdating May 14, 2021, without "on-the-spot balancing of probative value and prejudice." (Doc. 734 at 7 (citing *Sidibe v. Sutter Health*, 103 F.4th 675, 703 (9th Cir. 2024)).)

When BBK moved before trial to admit post-cutoff evidence should CCA "open the door," the Court denied the motion without prejudice, explaining that it could not "give . . . a pre-ruling on every single permutation that could happen at trial" and that the question was "better suited to be raised during the trial." (Docs. 687 at 30, 32; 673 at 2.) And BBK was in fact permitted to present evidence concerning CCA's pre-roll product.

(Doc. 714 at 28-29, 140-143.) Further, the individual rulings BBK challenges rested on individualized grounds, as discussed below.

*Sidibe v. Sutter Health* is not to the contrary. There, the district court wholesale excluded categories of evidence going to the heart of the party's case as too remote in relation to the limitations period, without balancing. *Sidibe*, 103 F.4th at 691-92, 703-04. The Ninth Circuit reversed the district court's exclusion of "pre-2006 evidence," finding that the district court abused its discretion. *Id.* at 705. But the court of appeals made clear that its decision did not prevent "district courts from setting reasonable limits on the introduction of evidence or from conducting the proper balancing test under Rule 403." *Id.* at 704. The Court here set a "reasonable limit" as it enforced a Rule 16 scheduling order governing the parties' disclosure obligations, and made item-by-item rulings as evidence was offered.

BBK's own conduct confirms that it understood the cutoff as a disclosure boundary rather than a categorical evidentiary bar. At the trial setting conference, when the Court asked what further discovery was needed, the parties agreed on the record to limit supplementation to financial data and related expert reports. (Doc. 477 at 12-19.) BBK raised the present concerns three months later, in a motion the Court denied for lack of good cause under Rule 16(b)(4). (Docs. 522, 557.) BBK then proposed a version of a jury instruction substantially similar to what the Court ultimately gave, which instructed jurors that discovery concluded in 2021 and directed the jury to draw no inference from the absence of later evidence. (Docs. 642 at 26; 682 at 26.)

BBK replies that seeking leave to supplement is not the same as seeking to reopen discovery. (Doc. 760 at 6, 12.) The distinction between supplementation and discovery is immaterial. Whichever label applies, Rule 26 required disclosure and Rule 16(b)(4) required good cause to modify the deadline, and the Court found the latter absent.

**2.**

BBK next argues that the Court invoked the cutoff to deny it the benefit of the statutory presumptions attaching to its registrations, pointing to the Court's refusal to give

its proposed validity instruction and its order declining to take judicial notice of post-2021 registrations and of incontestable status. (Doc. 734 at 9-13.)

The Court need not resolve whether these rulings were correct, because BBK was not prejudiced by either. Incontestability matters only to the question of whether a registered mark is valid and protectable. *See ClaimSolution Inc. v. TheBest Claims Sols. Inc.*, No. CV-23-02379-PHX-MTL, 2025 WL 2419925, at *9 n.8 (D. Ariz. Aug. 21, 2025) ("The status of incontestability relates solely to the *validity* of the registered mark. The . . . commercial and marketplace strength of the mark relates solely to the separate issue of *infringement* of the mark." (quoting 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:155 (5th ed. 2025))).

An incontestable registration is evidence of validity. 15 U.S.C. § 1115(b); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196 (1985). But it does not bear on likelihood of confusion, and it does not make a mark commercially strong. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n.3 (9th Cir. 2002) ("[W]hether EMI's mark is descriptive or suggestive does not affect whether EMI must prove secondary meaning, the relative strength or weakness of EMI's mark does affect whether a consumer would likely be confused by the marks Smith uses."); *see ClaimSolution*, 2025 WL 2419925, at *9 n.8 ("[T]he incontestable status of Plaintiff's mark does not, by itself, establish the mark's strength.").

Validity was not a contested issue at this trial. CCA represented that it did not intend to argue that BBK's RAW mark was invalid (Doc. 632 at 2 n.1), and it did not do so. The jury was instructed that BBK could prove validity by showing registration with the USPTO (Doc. 710 at 28), the Court took judicial notice of BBK's registration and ownership of relevant marks (Doc. 682 at 21-24), and BBK argued in closing that its registrations established validity and protectability (Doc. 725 at 14-16). Adding a conclusive presumption on top of an uncontested point would not have changed the verdict.

BBK responds that CCA argued in closing that its mark was descriptive and had not acquired secondary meaning, which BBK characterizes as an invalidity argument in

disguise. (Doc. 760 at 10-11.) But CCA made that argument under the strength-of-mark factor of the *Sleekcraft* analysis, which, as discussed above, is a separate analysis from incontestability. *See Entrepreneur Media*, 279 F.3d at 1142 n.3. Had the Court given BBK every instruction and every judicial notice it requested, CCA would have remained free to argue—and the jury free to find—that BBK's marks were conceptually weak. The presumptions BBK sought would have resolved a question no one was asking.

**3.**

BBK's remaining contention is that the cutoff kept from the jury evidence of CCA's evolving packaging and expanding product line, and evidence of actual confusion occurring after May 2021. (Doc. 734 at 13-16.)

The cutoff was not the basis for these rulings. BBK never offered the packaging and product line evidence at trial, despite the Court's denial of its pretrial motion without prejudice and its direction that BBK raise the issue if CCA opened the door. (*See* Doc. 673 at 2.) The airport testimony was excluded for lack of foundation and under Rule 403 after a hearing outside the presence of the jury. (Doc. 714 at 154-63.) Mr. Zaydenberg's testimony was excluded because BBK had disclosed him in the final pretrial order as a witness to the parties' marketing, not to confusion. (Docs. 719 at 122-24; 660 at 25.) The Cisneros statement drew a hearsay objection that BBK elected not to test. (*See* Doc. 714 at 18-19.)

In any event, BBK has not shown substantial prejudice. *See Ruvalcaba*, 64 F.3d at 1328. BBK does not contend that the verdict was contrary to the clear weight of the admitted evidence, arguing instead that the general verdict makes harmlessness unknowable. (*See* Doc. 760 at 1.) But it is BBK's burden to show the claimed errors more probably than not affected the verdict, and BBK has not carried it.

**B.**

BBK's second ground is that the Court misapplied Rules 401 and 403 in ways that prevented it from rebutting what it calls CCA's "false narratives" at trial: (1) CCA's environmental claims, (2) its portrayal of itself as a small family-owned California

operation, and (3) its avoidance of the federal illegality of its business. (Doc. 734 at 16-18.)

But the evidence BBK sought to introduce on each of these subjects had little to do with the question the jury was left to decide. As this was a trademark infringement case, the jury's task was to determine whether CCA's use of the word "raw" in Raw Garden was likely to cause confusion with BBK's RAW marks. Whether CCA ran unpermitted generators, whether it is backed by institutional investors, and whether its products remain illegal under federal law say nothing about whether a consumer encountering the two marks would think they came from the same source. BBK's contrary argument is that this evidence would have damaged the credibility of CCA's witnesses. But the Court was not required to permit a series of collateral disputes in order to make CCA a less appealing defendant. *See* Fed. R. Evid. 403. And because that evidence bore on the jury's impression of CCA rather than on likelihood of confusion, its exclusion did not affect BBK's substantial rights. *See* Fed. R. Civ. P. 61.

In any event, BBK was permitted to make the points it says it was denied. It told the jury that CCA's products are illegal under federal law. (Docs. 714 at 32; 716 at 83; 725 at 29.) It elicited testimony that CCA has institutional investors. (Doc. 723 at 45-46.) And the jury heard evidence that RAW and Raw Garden products are sold in the same California dispensaries, evidencing the market overlap BBK says the revenue figures would have shown. (Doc. 714 at 125-27.) BBK thus received the substance of what it says it was denied, and none of these rulings warrants a new trial.

**C.**

BBK's final ground concerns the Court's rulings on expert testimony. BBK argues that the Court permitted CCA's survey expert, Dr. Tülin Erdem, to offer legal conclusions about the sufficiency of survey results, and that it improperly excluded opinions from BBK's survey expert, Dr. Jeffrey Stec, along with underlying survey materials. (Doc. 734 at 18-22.)

**1.**

BBK first argues that the Court improperly permitted Dr. Erdem to testify regarding

legal standards, contending that the Court "erroneously permitted Dr. Erdem to testify about pure issues of law and summarize the holdings of over a dozen reported court cases." (*Id.* at 19.) BBK points to her reference to the McCarthy treatise in testifying that "if the numbers are less than 20 percent, the idea is that the numbers are too low to rule for confusion." (*Id.*)

Dr. Erdem testified, based on her experience as a scholar and as a litigation expert, that net confusion figures around ten percent are low, that figures below fifteen percent are low, and that twenty percent would be a stronger number. (Doc. 722 at 69-71.) Asked what materials informed her opinion, she identified the survey and trademark literature she had cited in her report, including McCarthy. (*Id.*) That is a description of the authorities on which an expert relied, which Rule 703 contemplates and which is a proper subject of cross-examination. *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1061 (9th Cir. 2003) ("Rule 703 allows an expert to formulate an opinion based on facts or data which are 'reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" (quoting Fed. R. Evid. 703)).

The Court addressed this concern when BBK raised it at trial. BBK objected to a demonstrative exhibit summarizing McCarthy's view that figures below twenty percent must be viewed carefully. The Court explained that if the witness had relied on the treatise as part of her evaluation, that reliance was subject to direct testimony and cross-examination. But if she were to say anything along the lines of "this is the law" or "this is what courts say how the evidence should be interpreted," the Court would likely sustain an objection and order the testimony stricken. (Doc. 722 at 9-10, 15-16.) Dr. Erdem did not do so. She did not describe McCarthy as a legal treatise, did not summarize case holdings, and did not tell the jury what result to reach.

BBK's remaining objection is that Dr. Erdem's characterization of the treatise was inaccurate because McCarthy in fact reports courts finding confusion at lower rates. (Doc. 734 at 19-20.) But BBK's disagreement with how Dr. Erdem read the treatise she relied on is an argument for cross-examination, not exclusion. *See Waterwatch of Or. v.*

*Winchester Water Control Dist.*, No. 3:20-CV-01927-IM, 2025 WL 1067620, at *5 (D. Or. Feb. 20, 2025) ("[C]ross-examination, not exclusion, is the proper method to 'negate the facts or factual assumptions underlying an expert's opinion.'" (quoting *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018))).

**2.**

BBK next argues that the Court "compounded the error in allowing Dr. Erdem's testimony by erroneously excluding at trial Dr. Stec's opinions about the statistical significance of the survey results." (Doc. 734 at 20.) BBK points to two instances where the Court precluded Dr. Stec from opining on the statistical significance of his survey results because of a failure to disclose those opinions in his expert report. (*Id.* at 20-21.) The Court did so because it found that CCA would otherwise have suffered prejudice, having had no opportunity to examine the expert's analysis and offer rebuttal expert opinion. (*See* Doc. 719 at 4-6.)

As CCA argues, it is undisputed that Dr. Stec did not disclose in his Rule 26 report any opinion about the statistical significance of his survey results. (*See* Doc. 719 at 8-9.) BBK responds that the opinion was sufficiently disclosed at his deposition. (Doc. 734 at 21.) The Court need not resolve that dispute, because the exclusion did not substantially prejudice BBK. Dr. Stec sought to testify only that his survey results are statistically significant "because they are different than zero"—not that they established a likelihood of confusion. (*See* Doc. 719 at 8-9.) Because the jury heard the underlying confusion figures, any error excluding that opinion was harmless under Rule 61.

**3.**

BBK also challenges the Court's exclusion of four exhibits drawn from Dr. Stec's report. (Doc. 734 at 22.) The Court excluded these exhibits as hearsay and because, as anonymous surveys, they presented "reliability problems." (Doc. 719 at 146-48.) BBK argues that these exhibits do not constitute hearsay because they reflect third parties' "state of mind." (Doc. 734 at 22.) But CCA responded that BBK "showed many of the verbatim survey responses to the jury numerous times during the trial" (Doc. 758 at 22), and BBK's

reply does not address that point. *See Castellanos v. Maya*, 725 F. App'x 489, 493 (9th Cir. 2018) (mem.) (noting that a party may waive argument on issue raised in response by failing to address it in reply). Whatever the merits of the hearsay ruling, BBK has not shown that excluding these four exhibits affected its substantial rights. *See* Fed. R. Civ. P. 61.

Finally, BBK suggests these rulings compounded one another, leaving CCA free to disparage BBK's survey evidence while BBK's own expert was constrained. (Doc. 734 at 20.) Neither ruling was erroneous, and neither individually nor in combination substantially prejudiced BBK's presentation. *See Ruvalcaba*, 64 F.3d at 1328.

**IV.**

The rulings BBK challenges were within the Court's discretion. BBK has not shown that any of them, individually or in combination, substantially prejudiced its presentation at trial or resulted in a miscarriage of justice.

**IT IS THEREFORE ORDERED** that BBK's Motion for New Trial (Doc. 734) is **DENIED**.

Dated this 20th day of August, 2026.

Michael T. Liburdi

Michael T. Liburdi
United States District Judge