**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

BBK Tobacco & Foods LLP,

Plaintiff,

v.

Central Coast Agriculture Incorporated, et al.,

Defendants.

No. CV-19-05216-PHX-MTL

**ORDER**

Lawfare is not limited to politics. It occurs in business when a company pushes flimsy legal arguments with scorched-earth, win-at-any-expense litigation to bully its competitors into submission. Such tactics result in extreme legal expenses that hinder economic growth and drive-up consumer costs.

In about two hours, after a two-week trial, the jury returned a verdict fully in favor of Central Coast Agriculture, Inc. ("CCA"). It rejected BBK Tobacco & Foods, LLP's ("BBK") arguments that CCA's trademark infringed BBK's simply because the two share the word "raw." The jury's verdict makes perfect sense, since the trademarks have nothing else in common other than this three-letter combination. Tellingly, BBK could not introduce a single instance of actual customer confusion.

And this case was no quick skirmish. It was litigated over more than seven years, through a trip to the Ninth Circuit and a two-week jury trial, before CCA prevailed.

CCA now moves to recover its attorneys' fees and non-taxable expenses under the Lanham Act, 15 U.S.C. § 1117(a). (Doc. 744.) The Court held oral argument on June 23,

2026, and has considered the parties' briefing. For the reasons explained below, the Court finds that CCA is the prevailing party, and that this is the rare "exceptional" case that warrants an award of attorneys' fees to the prevailing party. CCA's motion will be granted in part and denied in part.

## I. BACKGROUND

This case involves two businesses that manufacture and sell smoking-related products. Plaintiff BBK produces, distributes, and sells rolling papers, smoking accessories, and branded merchandise, including clothing, under several "RAW" trademarks. Defendant CCA cultivates cannabis at farms in California and manufactures cannabis products—including vape oils, cannabis concentrates, and pre-rolled joints—as well as branded merchandise, which it sells under the "Raw Garden" brand.

BBK alleges that CCA infringed its RAW trademarks by producing, using, advertising, distributing, and selling products under the Raw Garden label. BBK's amended complaint brought seven claims: trademark infringement, false designation of origin, and anti-cybersquatting under the Lanham Act; trademark infringement and unfair competition under Arizona common law; a petition to void several of CCA's trademark applications for lack of a bona fide intent to use the marks in commerce; and false advertising under the Lanham Act. CCA counterclaimed, seeking to cancel several of BBK's trademark registrations for fraud and unlawful use.

This Court dismissed BBK's false advertising claim, and the parties later cross-moved for summary judgment on the remaining claims. The Court granted summary judgment to CCA on BBK's trademark claims, granted summary judgment to BBK on its petition to invalidate several of CCA's trademark applications, and granted summary judgment to BBK on CCA's counterclaim to cancel BBK's registrations for unlawful use.

On appeal, the Ninth Circuit affirmed this Court's grant of summary judgment in favor of BBK on its claim to invalidate several of CCA's trademark applications. *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, 97 F.4th 668, 672 (9th Cir. 2024). The court also affirmed this Court's grant of summary judgment on CCA's unlawful-use

counterclaim. *BBK Tobacco & Foods LLP v. Cent. Coast Agric., Inc.*, No. 22-16190, 2024 WL 1364300, at *2 (9th Cir. Apr. 1, 2024). But the panel, voting two to one, reversed this Court's grant of summary judgment in favor of CCA on BBK's trademark claims: trademark infringement, false designation of origin, and anti-cybersquatting under the Lanham Act, and trademark infringement and unfair competition under Arizona common law. *Id.* at *1.

On remand, the Court reopened summary judgment and granted summary judgment in favor of BBK on some of CCA's defenses and in favor of CCA as to BBK's cybersquatting and punitive-damages claims. (Doc. 556.) This left the remaining BBK claims to go to trial: federal trademark infringement, federal false designation of origin and representation, Arizona trademark infringement, and Arizona unfair competition. On the eve of trial, BBK chose to no longer pursue its Arizona common-law claims, and the Court dismissed them with prejudice. (Doc. 657.)

After a two-week trial in October and November 2025, the jury quickly returned a verdict for CCA and against BBK on the two remaining federal trademark claims, and judgment was entered accordingly. (Docs. 706-707.) A few post-trial motions followed. Among them is CCA's motion for attorneys' fees and related non-taxable expenses, which the Court now resolves.

## II. LEGAL STANDARD

Under the Lanham Act, "[t]he court in exceptional cases *may* award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (emphasis added). The party seeking fees must establish any facts supporting its award under the totality of the circumstances and by a preponderance of the evidence. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam). Even if on those facts the Lanham Act "permits" an award, it "does not mandate" one. *See Nutrition Distrib. LLC v. IronMag Labs*, LLC, 978 F.3d 1068, 1081 (9th Cir. 2020). Instead, the district court retains equitable discretion to decide whether to award fees. *See SunEarth, Inc.*, 839 F.3d at 1181.

## III. DISCUSSION

CCA requests $5,526,987.50 in attorneys' fees and $534,390.96 in related non-taxable costs as the prevailing party in what it calls an "exceptionally weak case." (Doc. 744 at 2.) BBK opposes, arguing that (1) CCA is not a prevailing party, (2) this is not an "exceptional case," and (3) even if the Court considers a fee award, CCA's fee request is unreasonable. (Doc. 756.) The Court considers each argument in turn.

### A. Prevailing Party

An award of fees under the Lanham Act runs to "the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). The Court therefore begins with BBK's contention that CCA is not the prevailing party. (*See* Docs. 756 at 6 n.2; 755 at 7-10.) The "touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). "The threshold for sufficient relief to confer prevailing party status is not high." *Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009). A party need not prevail on all of its claims to be the prevailing party. *San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725, 741 (9th Cir. 2009).

CCA has made the required showing. It obtained a defense verdict on the two federal trademark claims that went to trial, and judgment was entered in its favor. As the Court explained in its prior order, that result leaves CCA free to use its RAW GARDEN mark without the threat of an infringement suit by BBK. (Doc. 460 at 3.) The jury's verdict confirms on the merits what the Court already concluded on summary judgment, and the Ninth Circuit's reversal required only that the claims be tried rather than decided on the papers. BBK made this same argument after the 2022 summary judgment ruling, and the Court rejected it. (*Id.*)

BBK responds that the judgment is "split" or "mixed," and that under *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 38 F.4th 1372 (11th Cir. 2022), and similar cases, this is a legal "tie" with no prevailing party. (Doc. 755 at 7-11.) The Court disagrees.

Those cases turn on the premise that the litigation restored the status quo ante and left neither side's legal position changed. *Royal Palm Props., LLC,* 38 F.4th at 1381. But the Court has already determined that BBK's victories worked no alteration of the parties' relationship. (Doc. 460 at 3.) Voiding CCA's pending intent-to-use applications left both parties free to use the marks just as before and defeating CCA's cancellation counterclaims left BBK's registrations just as they already stood. (*Id.*) CCA's victory is different. Had BBK prevailed on the infringement claims, CCA would have faced damages and an injunction against its Raw Garden brand, and the defense verdict removed that exposure.

Nor does BBK's successful defense of CCA's counterclaims make it the prevailing party, because CCA succeeded on the infringement claims that drove the litigation. *See Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 3:04-CV-00029-MO, 2012 WL 13184345, at *1 (D. Or. Mar. 30, 2012). Because CCA alone obtained a material alteration of the parties' legal relationship, the Court concludes that CCA is the prevailing party under 15 U.S.C. § 1117(a). The remaining question is whether this is an exceptional case warranting a fee award.

**B. Exceptional Case**

"An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *see SunEarth, Inc.*, 839 F.3d at 1181 (applying the "exceptional case" standard to Lanham Act claims).

**1. Objective Merits**

BBK's Lanham Act claims, as well as its abandoned state-law claims, required showing a likelihood of confusion between BBK's RAW marks and CCA's Raw Garden mark. "The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). The Ninth Circuit uses the eight *Sleekcraft* factors to guide the likelihood of confusion

analysis: (1) strength of the mark; (2) the proximity or relatedness of the companies' goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting its mark; and (8) the likelihood of expansion into other markets. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

The Court begins with the significance of the Ninth Circuit's prior ruling, on which BBK heavily relies. (*See* Doc. 756 at 11.) BBK argues the court of appeals already found the *Sleekcraft* evidence "evenly matched or tip[ped] only slightly in favor of either party" and remanded for trial, foreclosing any finding that its position was weak. *BBK Tobacco & Foods LLP*, 2024 WL 1364300, at *1.

The Court does not read the memorandum disposition so broadly. The court of appeals reversed because, in its view, likelihood of confusion is a factual question ordinarily reserved for the trier of fact. *See id.*; *see also Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) ("[T]he question of likelihood of confusion is routinely submitted for jury determination as a question of fact." (citation omitted)). Its "evenly matched" observation established only that the question could not be resolved on summary judgment. *BBK Tobacco & Foods*, 2024 WL 1364300, at *1. The panel offered that characterization without elaboration, and, in any event, it described a summary judgment record rather than the proof ultimately presented at trial.

Further, the panel was not unanimous even on that point. Judge Bumatay, concurring in part and dissenting in part, would have affirmed summary judgment against BBK on the infringement and unfair-competition claims, reasoning that the marks "look nothing alike" apart from the shared word "RAW" and that the dissimilarity was dispositive of confusion. *Id.* at *2-3 (Bumatay, J., concurring in part and dissenting in part). He further noted that this Court's findings as to the "obvious and significant differences between the parties' marks, the absence of actual confusion, and the low net confusion rates" supported the conclusion that no reasonable juror could find for BBK. *Id.* at *3; *see Teetex LLC v. Zeetex, LLC*, No. 20-CV-07092-JSW, 2022 WL 2439176, at *2 (N.D. Cal. July 5, 2022)

(“With regard to the substantive strength of a party’s litigation position, courts in this district tend to award fees when a plaintiff persists with a clearly untenable claim *or adduces no evidence in support of its position*.” (emphasis added)).

That a member of the court of appeals panel found BBK’s proof insufficient as a matter of law confirms the weakness of BBK’s position. And this Court, having presided over a two-week trial and observed the evidence develop live before the jury, is well positioned to assess the strength of the merits of BBK’s arguments. *See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014) (“[A]s a matter of the sound administration of justice, the district court is better positioned to decide whether a case is exceptional, because it lives with the case over a prolonged period of time.” (citation modified)).

The trial bore out that weakness on the factors most central to BBK’s theory. First, BBK offered no credible evidence of actual confusion, even though the RAW and Raw Garden brands had been sold in some of the same California dispensaries together for more than five years. The absence of actual confusion over so lengthy a period of concurrent use in the same market is itself powerful evidence that confusion is unlikely. *See, e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002).

This is not a new development. At summary judgment, the Court found the record “contain[ed] no evidence of actual instances of confusion,” and that the relevant deposition testimony of BBK’s founder, Mr. Kesselman, was “uncorroborated and self-serving” and insufficient even to create a triable issue, particularly because BBK’s own Rule 30(b)(6) witness was unaware of any confusion. *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 615 F. Supp. 3d 982, 1020 (D. Ariz. 2022), *aff’d in part*, *rev’d in part and remanded*, No. 22-16190, 2024 WL 1364300 (9th Cir. Apr. 1, 2024), and *aff’d*, 97 F.4th 668 (9th Cir. 2024) (quoting *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)).

Trial did not change the picture. BBK’s actual-confusion proof again rested on anecdotal, uncorroborated testimony from Mr. Kesselman—including testimony that roughly fifty people had approached him expressing confusion—which the jury was free

to and evidently did reject. (Docs. 714 at 150, 158, 163; 715 at 1-9.) That BBK could marshal no more than this, after years of head-to-head sales in the same dispensaries, strongly indicates confusion was not occurring. *See Cohn*, 281 F.3d at 842.

Second, BBK's affirmative confusion evidence reduced to Dr. Stec's survey, which produced net confusion rates of roughly 11.9 percent. (Doc. 719 at 39.) As the Court explained at summary judgment, rates in that range are "not so high as to constitute persuasive evidence in favor of confusion," and "survey confusion numbers that go below 20% need to be carefully viewed against the background of other evidence weighing for and against a conclusion of likely confusion." 615 F. Supp. 3d at 1021 (quoting 6 McCarthy on Trademarks § 32:188). Weighed against the marks' visual dissimilarity and the lack of other evidence of confusion, the survey did not show that confusion was "probable, not simply a possibility." *Id.* (quoting *Cohn*, 281 F.3d at 842).

The Ninth Circuit's "evenly matched" description of the summary judgment record does not diminish these points. The thin survey and the absence of actual confusion remained fixed features of the case through trial, and the jury, deliberating less than two hours, was no more persuaded by them than the Court had been at summary judgment—or than Judge Bumatay, who pointed to "the absence of actual confusion[] and the low net confusion rates" as confirming that no reasonable juror could find for BBK. *BBK Tobacco & Foods*, 2024 WL 1364300, at *3 (Bumatay, J., concurring in part and dissenting in part); *see also Legalforce Rapc Worldwide P.C. v. MH Sub I, LLC*, No. 24-CV-00669-JSC, 2026 WL 1329654, at *9 (N.D. Cal. May 13, 2026) (holding that a trademark infringement action was "exceptional" under *Octane Fitness* in part because "[t]here was no instance of actual confusion.").

The Court is likewise unpersuaded that BBK's position on the similarity of the marks was substantial. Marks must be compared as a whole and as they appear in the marketplace, rather than by taking a deconstructionist view of the different components of the marks, and across appearance, sound, and meaning. *See Off. Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993). Apart from the shared term "raw," the Court found

the marks "visually . . . not similar" and possessed of "significantly different commercial impressions," such that "consumers could readily distinguish between the parties' products as they appear in the marketplace"—a dissimilarity that "weigh[ed] strongly against a likelihood of confusion." 615 F. Supp. 3d at 1013-15. BBK's effort to establish similarity rested almost entirely on the parties' shared use of a single three letter common word. Judge Bumatay, surveying the same marks, put it plainly: apart from "RAW," the marks "look nothing alike." *BBK Tobacco & Foods*, 2024 WL 1364300, at *2 (Bumatay, J., concurring in part and dissenting in part); *see Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1080-81 (9th Cir. 2020).

The Court does not, however, rest its exceptional-case finding on the weakness of BBK's position alone. BBK's claims survived summary judgment at the court of appeals and were tried to a jury, and its corrective-advertising theory was not frivolous in isolation, given the Court's denial of CCA's Rule 50(a) motion directed at it. (Doc. 724 at 23-24.) The Court therefore treats the weakness of BBK's proof as one circumstance weighing toward exceptionality, not an independent ground.

**2. Subjective Motivations and Manner of Litigation**

A case may also be exceptional because of "the unreasonable manner in which [it] was litigated," independent of the substantive strength of the claims. *Octane Fitness*, 572 U.S. at 554. Counsel's conduct is attributable to the party for this purpose, and litigation tactics that "[go] beyond zealous advocacy" can render a case exceptional. *Las Vegas Skydiving Adventures LLC v. Groupon, Inc.*, No. 2:18-CV-02342-APG-VCF, 2022 WL 2664124, at *2 (D. Nev. July 11, 2022). The manner in which BBK litigated this case supplies the additional showing that, combined with the weakness of its proof, makes this case exceptional.

The most significant example is one the Court has already addressed. In opposing CCA's first motion for summary judgment, BBK relied on a photograph of a purported Raw Garden product bearing RAW-branded cones, and the Court sanctioned BBK's counsel under Rule 11 for advancing allegations about that photograph "that counsel must

have known were false." (Doc. 382 at 7-9.) BBK now argues the sanction cannot bear on exceptionality because the Court found no evidence that BBK itself fabricated the photograph. (Doc. 756 at 14.) But the Court sanctioned counsel for sponsoring evidence counsel had been repeatedly warned was not genuine, and a party's counsel's conduct is properly considered in the exceptional-case analysis. *See Las Vegas Skydiving*, 2022 WL 2664124, at *2. Knowingly pressing fabricated evidence to defeat summary judgment is the sort of conduct that makes a case stand out from others. *See Teetex LLC*, 2022 WL 2439176, at *2.

That conduct did not stand alone. BBK introduced, both before and during trial, late-disclosed evidence of supposed actual confusion that it had never produced in discovery, including an affidavit dated years after the close of fact discovery and testimony that roughly fifty people had approached Mr. Kesselman expressing confusion. That testimony was at odds with BBK's own verified discovery responses, in which it had repeatedly denied awareness of any actual confusion. (Docs. 714 at 150, 158, 163; 715 at 1-9.) A litigant's reliance on confusion evidence it withheld through discovery and sprang at trial supports an exceptional-case finding. *See Teetex LLC*, 2022 WL 2439176, at *3.

BBK's litigation conduct also reflected its underlying objective. From the outset, BBK pursued scorched-earth tactics aimed at securing exclusive rights to the ordinary word "raw." That objective was of a piece of BBK's broader litigation practice of strong-arming other companies out of using the term, as BBK repeatedly threatened and sued businesses that incorporate "raw" into their marks. (Doc. 744 at 10 n.7 (citing, *e.g.*, *BBK Tobacco & Foods, LLP v. Atmos Technology LLC*, Case No. 2:12-cv-00453 (D. Ariz.); *BBK Tobacco & Foods, LLP v. Rodawg LLC*, Case No. 2:12-cv-02656 (D. Ariz.); *BBK Tobacco & Foods, LLP v. World of Glass of Central Florida II*, LLC, Case No. 2:21-cv-00620 (D. Ariz.); *BBK Tobacco & Foods, LLP v. J&C Corp.*, Case No. 1:24-cv-01466 (D. Colo.)); *see also* Doc. 489-11 at 102-05.)

Trademark law does not exist to let a single company annex a common, descriptive

word and wield costly infringement suits to keep competitors from using it. *See Skydiving Sch., Inc. v. GoJump Am., LLC*, 703 F. Supp. 3d 1215, 1225 (D. Haw. 2023), *aff'd*, No. 24-1822, 2025 WL 502491 (9th Cir. Feb. 14, 2025) (holding that "monopolization" of ordinary words "is not the purpose of, nor permitted by, trademark law"). Such an effort to monopolize ordinary language is anticompetitive, and it is the sort of motivation *Octane Fitness* permits the Court to weigh in deciding whether a case stands out from others. *See* 572 U.S. at 554 n.6; *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) (explaining "the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first[ ]" and, as a result, "[i]f any confusion results, that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." (quotation omitted)).

What emerged at trial sharpened the point. Mr. Kesselman testified that he regarded "Raw Garden" as a "great name" that belonged within BBK's family of RAW brands. (Docs. 714 at 33; 715 at 81.) The trial record indicates that part of BBK's aim was to position itself to claim the "raw" name for its own use as the cannabis market moves toward national legalization. (Doc. 714 at 32-33, 134-35.) The Court finds that BBK's motivation in pursuing this litigation weighs in favor of an exceptional-case finding under *Octane*.

Considering the totality of the circumstances, the Court finds that CCA has shown by a preponderance of the evidence that this case is exceptional under 15 U.S.C. § 1117(a). CCA is therefore eligible for an award of reasonable attorneys' fees, and the Court turns to the amount.

**C. Reasonable Fees**

Having determined that an award of attorneys' fees is warranted, the Court must determine an appropriate award. CCA requests $5,526,987.50 in fees "that it was forced to incur following the Court's July 19, 2022 summary judgment order." (Doc. 744 at 14.)

In exceptional cases, the district court "may award *reasonable* attorney fees." 15 U.S.C. § 1117(a) (emphasis added). Such fees may include those accrued in the motion for

fees. *See Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1224 (9th Cir. 2023). They also may include non-taxable costs which track with the fees. *See Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012), *abrogated on other grounds* by *SunEarth, Inc.*, 839 F.3d at 1179. The calculation of a fee award begins with determining "the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993).

BBK objects to CCA's fee request on four grounds: (1) the hourly rates are unreasonable for the forum; (2) the supporting documentation is inadequate because of block billing; (3) the request includes unrecoverable clerical tasks; and (4) the request is excessive because it reflects duplicative effort. (Doc. 756 at 16-20.) The Court begins with the reasonableness of the rates.

### 1. Reasonableness of Hourly Rate

CCA seeks fees for counsel from Goodwin Procter LLP in San Francisco and Ballard Spahr LLP in Phoenix, though most of the claimed fees were billed by Goodwin's California attorneys. BBK argues those rates are unreasonable for this forum.[*] (Doc. 756 at 11-12.) CCA responds that the case was complex, required expertise in both California cannabis law and trademark litigation, and proceeded in Arizona only because BBK chose to sue here. (Doc. 761 at 9.) The Court agrees with BBK that CCA's rates exceed those reasonable for this forum.

A reasonable hourly rate is determined by "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). The relevant community is ordinarily the forum in which the court sits, here, the District of Arizona. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Out-of-forum rates may be used only "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization

[*] CCA's specific hourly rates are set forth in materials filed under seal, and the Court does not recite them here.

required to handle properly the case." *Id.* The party seeking out-of-forum rates bears the burden of proving that local counsel was unavailable. *See Barjon v. Dalton*, 132 F.3d 496, 500-01 (9th Cir. 1997).

CCA has not carried that burden. The Court does not doubt that this case was complex or that experience in cannabis-related trademark litigation was useful. But complexity alone does not justify out-of-forum rates; the question is whether qualified counsel was unavailable in the District of Arizona. *See id.* CCA's own staffing answers it. CCA retained Ballard Spahr in Phoenix for its "intellectual property expertise and its established presence in Arizona" (Doc. 744-5 ¶ 4), and CCA does not contend that Ballard Spahr or other Arizona firms were unable or unwilling to handle the matter. That CCA preferred its California counsel, or that the case is in Arizona because BBK filed here, does not make local counsel unavailable within the meaning of *Camacho*. The Court therefore measures CCA's rates against those prevailing in the District of Arizona.

CCA's own Arizona counsel attests that intellectual property litigation commands higher rates, and that for senior partners handling trademark litigation of this kind, rates in Phoenix "generally range from $700/hour to $1,200/hour." (Doc. 744-5 ¶ 16.) Recent decisions in this District confirm that experienced trademark litigators command rates within that range. *See, e.g.*, *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, 2020 WL 1694739, at *8 (D. Ariz. Apr. 7, 2020) (approving $890 per hour for a lead partner and $355 for a senior paralegal in Lanham Act litigation); *Coe v. Red Voice Media Inc.*, 2025 WL 918334, at *5 (D. Ariz. Mar. 26, 2025) ($750 for a partner, $500 for an associate); *OSN Labs, LLC v. Phoenix Energy, LLC*, 2024 WL 2832437, at *3 (D. Ariz. June 4, 2024) ($745 for a partner, $495 for an associate); *BoxNic Anstalt v. Gallerie degli Uffizi*, 2020 WL 2991561, at *2 (D. Ariz. June 4, 2020) ($725 for a partner, $250-$575 for associates, $170-300 for a paralegal).

Weighing this evidence, and accounting for the specialized and complex nature of this trademark litigation and the experience of CCA's counsel, the Court finds the following reasonable forum rates: $890 per hour for partners, $500 per hour for associates,

and $150 per hour for paralegals and other litigation-support timekeepers. Goodwin Procter counsel Jeremy Lateiner, an intellectual property and cannabis-practice attorney who is neither a partner nor an associate, is compensated at an intermediate rate of $650 per hour, reflecting his seniority and specialization.

**2. Reasonable Hours**

Having set the reasonable forum rates, the Court turns to the hours expended. The lodestar requires determining a reasonable number of compensable hours. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The Court reviews the billing records and excludes "those hours for which it would be unreasonable to compensate," *id.* at 1203, including any time that is "excessive, redundant, or otherwise unnecessary," *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). At the same time, this review calls for "rough justice, not . . . auditing perfection," and the Court "need not, and indeed should not, become [a] green-eyeshade accountant[]." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Within that framework, the burden of identifying specific objectionable entries rests on the party opposing the fee. *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

CCA seeks fees for the work of its Goodwin Procter and Ballard Spahr timekeepers performed after the July 19, 2022 summary judgment order. (Doc. 744 at 14.) BBK raises three objections to the hours: that CCA's entries are impermissibly block billed, that they include non-compensable clerical work, and that they reflect duplicative effort by multiple attorneys. (Doc. 756 at 18-20.)

The Court begins with a procedural obstacle to BBK's entry-level objections. Section 8 of the Court's Scheduling Order required a party opposing a fee motion to "email to the Court and opposing counsel a copy of the moving party's spreadsheet, adding any objections to each contested billing entry (next to each row, in an additional column) to enable the Court to efficiently review the objections." (Doc. 31 at 7.) BBK did not do this. Although BBK submitted sealed exhibits collecting examples of the entries it contends are block billed, clerical, or duplicative, it did not key its objections to the entries on CCA's

spreadsheet in the manner the Order required. The purpose of that requirement is to allow the Court to evaluate a specific objection alongside the specific entry it challenges. Presented instead with freestanding exhibits, the Court would have to match each challenged entry back to CCA's master spreadsheet, confirm its hours and rate, and account for the overlap BBK concedes exists among its categories. The burden of identifying objectionable entries with specificity rests on the party opposing the fee, not on the Court. *See Gates*, 987 F.2d at 1397-98. The Court therefore declines to undertake that reconstruction and addresses BBK's objections as follows.

**i. Clerical Tasks and Duplicative Effort**

BBK's clerical and duplication objections each depend on the Court accepting BBK's characterization of particular entries—that a given task was clerical rather than substantive, or that a second attorney's time was redundant rather than a reasonable division of labor. Those are exactly the type of contentions the Scheduling Order required BBK to present in keyed form, and BBK did not.

The objections are also contestable on their face. CCA represents that the entries BBK labels clerical are largely substantive paralegal work—hearing preparation, document review, and preparation of the trial exhibit list—which is compensable. *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Yarovoy v. Tesla Motors, Inc.*, No. 23-CV-04182-JSC, 2024 WL 2412547, at *5 (N.D. Cal. May 22, 2024).

And the mere participation of more than one attorney in a task "does not necessarily constitute an unnecessary duplication of effort." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir.1989)). Because these objections were not presented in the required form, and the Court will not reconstruct them entry by entry from BBK's sealed exhibits, they are overruled. To the extent BBK contends that specific paralegal entries are non-compensable clerical work, that entry-level contention was likewise not presented as the Scheduling Order required, and the Court does not reach it.

. . . .

**ii. Block Billing**

Block billing, which lumps multiple tasks into a single time entry, can impede the Court's ability to assess whether the time billed was reasonable. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Unlike the clerical and duplication objections, block billing is observable on the face of the records and bears on the Court's independent obligation to award only reasonable fees.

The Court has reviewed CCA's itemized statement and observes that some entries combine multiple tasks. The Court will not undertake the entry-by-entry tabulation BBK proposes. It declines to do so both because BBK did not present that tabulation in the form the Scheduling Order required, and because the steep 25% reduction BBK seeks is unwarranted. (*See* Doc. 756 at 19.) CCA, for its part, contends that no reduction is appropriate but that any reduction should not exceed 5%. (*See* Doc. 761 at 10 n.9 (citing *Multiple Energy Techs., LLC v. Casden*, 2025 WL 579641, at *18 (C.D. Cal. Feb. 21, 2025)).)

The Court exercises its discretion to impose a modest across-the-board reduction to the lodestar to account for the block billing it has observed. *See Gonzalez*, 729 F.3d at 1203 (holding that a reduction of no more than 10% may be imposed as a "haircut" in the court's "discretion" without more "specific explanation"). The Court finds a 3% reduction appropriate. That figure accounts for the diminished ability to assess the affected entries without overreaching and falls below the ceiling CCA proposed.

**iii. Lodestar Calculation**

Applying the reasonable forum rates set above to the hours billed during the post-summary judgment period, the lodestar is calculated as follows:

. . . .

. . . .

. . . .

. . . .

. . . .

| Timekeeper | Rate | Hours | Total Award |
|---|---|---|---|
| **Partners** | $890.00 | 842.2 | $749,558.00 |
| **Counsel** | $650.00 | 1,288.3 | $837,395.00 |
| **Associates** | $500.00 | 1,944.2 | $972,100.00 |
| **Paralegals & Support** | $150.00 | 532.4 | $79,860.00 |
| **Adjusted Lodestar** | | **4,607.1** | **$2,638,913.00** |

Reducing this figure by 3% to account for block billing yields a total fee award of **$2,559,745.61**.

Beyond resolving BBK's objections, the Court has independently reviewed CCA's fee request and supporting documentation, as it must, to ensure the award is reasonable. *See Gates*, 987 F.2d at 1401. Having reduced CCA's out-of-forum rates to those prevailing in this District and applied a reduction for block billing, the Court finds that the resulting award of $2,559,745.61 reflects a reasonable fee for the work reasonably required to defend this exceptional case through trial and is consistent with the "rough justice" the fee inquiry calls for rather than "auditing perfection." *Fox*, 563 U.S. at 838.

**D. Non-Taxable Costs**

CCA also seeks $534,390.96 in non-taxable costs incurred after the July 19, 2022 summary judgment order. (Doc. 744 at 17-18.) In an exceptional case, a prevailing party may recover reasonable out-of-pocket litigation expenses that would normally be billed to a fee-paying client, even if those expenses are not taxable under 28 U.S.C. § 1920. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). CCA seeks costs in six categories: electronic-discovery vendor charges, trial graphics and presentation, mediation fees, travel, rebuttal expert fees, and pretrial and trial transcripts. (Doc. 744 at 17-18.)

BBK does not dispute that these categories are recoverable. It argues only that CCA failed to establish the costs are reasonable, and that two items in particular should be reduced: Dr. Blackburn's expert fee, because the Court partially excluded his report, and

the transcript costs, because they were billed by multiple providers. (Doc. 756 at 21-22.) The Court is not persuaded. CCA supported each category with the underlying invoices, which itemize the charges and allow the Court to assess their reasonableness. (Doc. 744-7.) BBK identifies no authority barring recovery of an expert's fee merely because part of his report was excluded, and the use of more than one transcript provider over a multi-year litigation does not, without more, render the transcript costs unreasonable. Having reviewed the supporting invoices, the Court finds the requested non-taxable costs reasonable and awards them in full.

## IV. CONCLUSION

**IT IS ORDERED** that CCA's Motion for Attorneys' Fees and Related Non-Taxable Expenses (Doc. 744) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is granted as to CCA's entitlement to fees and non-taxable costs as the prevailing party in an exceptional case, and as to the award of non-taxable costs in full. It is denied to the extent CCA seeks attorneys' fees exceeding $2,559,745.61.

**IT IS FURTHER ORDERED** that CCA is awarded attorneys' fees against BBK in the amount of $2,559,745.61.

**IT IS FURTHER ORDERED** that CCA is awarded non-taxable costs against BBK in the amount of $534,390.96.

**IT IS FINALLY ORDERED** that BBK must pay these amounts to the Goodwin Procter LLP trust account **within twenty-eight days of the date of this Order**. BBK must file a notice of compliance **within one day** of payment.

Dated this 20th day of August, 2026.

Michael T. Liburdi

Michael T. Liburdi
United States District Judge